# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| **BIBB COUNTY SCHOOL DISTRICT,** | : | |
| | : | |
| | : | **CIVIL ACTION NO.** |
| | : | **5:16-cv-00549-MTT** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **ROMAIN DALLEMAND,** | : | |
| **THOMAS TOURAND,** | : | |
| **PROGRESSIVE CONSULTING** | : | |
| **TECHNOLOGIES, INC.,** | : | |
| **ISAAC CULVER, III,** | : | |
| **COMPTECH COMPUTER** | : | |
| **TECHNOLOGIES, INC.,** | : | |
| **ALLEN J. STEPHEN, III,** | : | |
| **PINNACLE/CSG, INC., and** | : | |
| **CORY MCFARLANE,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Bibb County School District (hereinafter referred to as "BCSD") and sets forth the following Complaint against Defendants Romain Dallemand, Thomas Tourand, Progressive Consulting Technologies, Inc., Isaac Culver, III, CompTech Computer Technologies, Inc., Allen J. Stephen, III, Pinnacle/CSG, Inc. and Cory McFarlane, individually and collectively as follows:

# I.  JURISDICTION AND VENUE

### 1.

This Court has federal subject matter jurisdiction of the federal RICO claim as a federal question pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964 (civil remedies for RICO violations) and supplemental jurisdiction of the State law claims pursuant to 28 U.S.C. § 1367(a).

### 2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b) and 18 U.S.C. § 1965(a) and (b).  Venue and personal jurisdiction is proper under 18 U.S.C. § 1965(a) because Defendants reside, are found, have an agent, or transact their affairs in this District.  Venue and personal jurisdiction is also proper under 18 U.S.C. § 1965(b) in this forum because the ends of justice require that any Defendant residing in another district be brought before this Court.

### 3.

Venue is proper under 28 U.S.C. § 1391(a) and (b) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.  Venue is also proper under principles of pendent venue because all claims arise out of the same nucleus of operative facts.  Defendants are subject to personal jurisdiction in this District, having had more than minimum contacts with Georgia, as their

conduct and connection with Georgia are such that they should reasonably anticipate being haled into Court here.

4.

Plaintiff BCSD resides at 484 Mulberry Street, Macon, Bibb County, Georgia 31201.

5.

Defendant Romain Dallemand ("Dallemand"), former Superintendent of BCSD, is a resident of Naples, Collier County, Florida.  Defendant Dallemand is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant Dallemand at 291 18th Avenue NE, Naples, Collier County, Florida 34120.

6.

Defendant Thomas Tourand ("Tourand"), former Executive Director of Technology for BCSD, is a resident of Georgia.  Defendant Tourand is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon this Defendant at 2215 Plantation Drive, Macon, Jones County, Georgia 31211.

7.

Defendant Progressive Consulting Technologies, Inc. ("Progressive") is a corporation with its principal place of business located in Macon, Bibb County, Georgia.  Defendant Progressive's Registered Agent and Chief Executive Officer,

Isaac Culver, III, resides in Bibb County, Georgia. Thus, Defendant Progressive is subject to the venue and jurisdiction of this Court. Service of process may be perfected upon this Defendant by and through its Registered Agent, Isaac Culver, III, at 971 Washington Street, Macon, Bibb County, Georgia 31201.

<p align="center">8.</p>

Defendant Isaac Culver, III ("Culver"), Chief Executive Officer of Progressive, is a resident of Bibb County, Georgia. Defendant Culver is subject to the venue and jurisdiction of this Court. Service of process may be perfected upon this Defendant at 3551 West Point Circle, Lizella, Bibb County, Georgia 31052.

<p align="center">9.</p>

Defendant CompTech Computer Technologies, Inc. ("CompTech") is a legal entity with its principal place of business located in Dayton, Montgomery County, Ohio. Defendant CompTech has an office in Warner Robins, Georgia. Its Registered Agent, Allen J. Stephen, III, President and Chief Executive Officer of Defendant CompTech, is located in Dayton, Montgomery County, Ohio. Defendant CompTech is subject to the venue and jurisdiction of this Court. Service of process may be perfected upon Defendant CompTech by and through its Registered Agent, Allen J. Stephen, III, at 4130 Ardery Avenue, Suite 100, Dayton, Montgomery County, Ohio 45406.

10.

Defendant Allen J. Stephen, III ("Stephen"), President and Chief Executive Officer of Defendant CompTech, is a resident of Ohio. Defendant Stephen is subject to the venue and jurisdiction of this Court. Service of process may be perfected upon this Defendant at 4707 Old Hickory Place, Dayton, Montgomery County, Ohio 45426.

11.

Defendant Pinnacle/CSG, Inc. ("Pinnacle") is a legal entity with its principal place of business located in Tallahassee, Florida. Defendant Pinnacle is subject to the venue and jurisdiction of this Court. Service of process may be perfected upon this Defendant by and through its Registered Agent, Masha Mariia Stewart, at 1718 Peachtree St. NW, No. 181, Atlanta, Fulton County, Georgia 30309.

12.

Defendant Cory McFarlane ("McFarlane"), Chief Visionary and President of Defendant Pinnacle, is a resident of Florida. Defendant McFarlane is subject to the venue and jurisdiction of this Court. Service of process may be perfected upon this Defendant at 2171 Peachtree Road, NE, Apt. 701, Atlanta, Fulton County, Georgia 30309-6305.

13.

This Court has personal jurisdiction over Defendants Tourand, Progressive, McFarlane and Culver because each reside in the Middle District of Georgia. The Court has personal jurisdiction over Defendants Dallemand, CompTech, Stephen, Pinnacle, and McFarlane because each transacted business in the Middle District of Georgia, committed tortious acts and omissions in the Middle District of Georgia, and committed tortious injuries in the Middle District of Georgia caused by acts or omissions outside of Georgia and they each regularly do or solicit business and engage in other persistent courses of conduct and derive substantial revenue from goods used or consumed or services rendered in the Middle District of Georgia.

## II. **PARTIES**

14.

BCSD, by and through the Board of Public Education for Bibb County, Georgia (the "Board"), has established and it operates and maintains a public school system for the school-age children of Macon-Bibb County, Georgia. BCSD is a body corporate capable of holding a legal or beneficial interest in property and does, in fact, hold legal interests in property in Bibb County.

15.

Defendant Dallemand and BCSD entered into an Employment Contract dated February 1, 2011 whereby Defendant Dallemand was employed as BCSD's

Superintendent for a term commencing on February 1, 2011 and terminating on June 30, 2013.

## 16.

Defendant Tourand was BCSD's Executive Director of Technology from July 2012 until August 2013.

## 17.

Defendant Progressive is an information technology company located in Macon, Bibb County, Georgia which at all times relevant to this Complaint acted as Technical Project Manager for BCSD.

## 18.

Defendant Culver is the Chief Executive Officer of Defendant Progressive.

## 19.

Defendant CompTech is a provider of information technology engineering and program management services headquartered in Dayton, Ohio.  Defendant CompTech purported to sell 15,000 NComputing devices and related accessories to BCSD which were incompatible with existing BCSD infrastructure.

## 20.

Defendant Stephen is the President and Chief Executive Officer of Defendant CompTech.

21.

Defendant Pinnacle is a construction firm headquartered in Tallahassee, Leon County, Florida. Defendant Pinnacle was paid $3,247,200 by BCSD for certain items that it never delivered to BCSD.

22.

Defendant McFarlane is "Chief Visionary" and Chief Executive Officer for Defendant Pinnacle.

### III. <u>FACTS</u>

### A. The Technology Project

23.

On November 3, 2009, the voters of Bibb County, Georgia passed a referendum for a five-year extension of the collection of a one percent (1%) sales tax for the purpose of funding BCSD capital improvement projects including technology upgrades for BCSD and the 24,600 school children of Bibb County. These school children along with BCSD were the victims of the wrongful, fraudulent and illegal conduct of the Defendants described in this Complaint.

24.

With the goal of upgrading technology for its students, BCSD set out to determine its technology needs and retained Elert & Associates ("Elert"), to

perform a technology audit. The audit included assessing current technology systems, identifying needs, and recommending next steps.

25.

The overall purpose of upgrading BCSD's technology was to ensure that all BCSD students receive a high-quality education that prepares them to be competitive and successful in a global economy. The technology upgrades were designed to provide BCSD's students with ready access to needed tools, including a wide variety of technology systems.

26.

On December 11, 2011, Elert presented its Technology Assessment Report and Recommendations to the Board. The technology systems upgrades recommended by Elert included, among other things, campus and classroom multimedia systems, administrative systems, financial and accounting software, personal computers, and servers (the "Technology Project").

27.

The technology upgrades recommended by Elert required significant purchases by BCSD.

## B. Bidding Procedures

### 28.

Board Policy DJED governs bid procedures for purchases by BCSD.  Board

Policy DJED, in effect at all times relevant to this Complaint, provided in pertinent

part:

### <u>Bidding Procedures</u>

Procedures for purchases are listed below.  Purchases may not exceed
given ranges without following the proper bidding protocol.  No
requisition shall be split or other action taken to circumvent the
requirements for competitive bidding.
…

$6001+    Invitation for Bid (IFB) or Request for Proposal (RFP)
documents will be prepared and mailed/provided to vendors.
Specifications from the using school/department shall be sent to the
purchasing department.  Vendors will be given a minimum of twelve
working days from the date of the bid document to complete the bid
and return it to the purchasing department by the date and time
requested.

All IFB's and RFP's will be advertised in the legal ads of the local
newspaper two (2) times during the twelve (12) day period to allow
for the widest dissemination of solicitations.  IFB's and RFP's will be
opened and publicly read aloud at the time and date stated.
…

### <u>Unauthorized Purchases</u>
No person shall order the purchase of any materials, supplies or
services or make any contract for materials, supplies, or for services to
be paid for from Board funds except as provided by this policy.
…

**Awards of Bid/Contract**

All contracts for the purchase of equipment, materials, supplies and services which exceed $500,000 shall be awarded by the board of education.  The Superintendent or his Director of Purchasing shall have the authority, within budget limitations to award all other contracts for the purchase of equipment, supplies and services.

29.

All Defendants are charged with knowledge of BCSD Bid Procedures and Board Policies.

30.

District officials are only authorized to disburse funds upon order of the board of education and a district official has no authority to obligate a board of education under any agreement unless such official has previously obtained authorization from the board of education.  Agreements obtained without proper authorization from the board of education are void.

**C.   Reorganization of Purchasing Department and Selection of Defendant Tourand as Executive Director of Technology**

31.

In April, 2011, Defendant Dallemand, in order to execute his scheme to maneuver around Board policy and avoid bid procedures related to BCSD purchases and expenditures, initiated a reorganization of the BCSD Purchasing Department following the March 31, 2011 retirement of Larry King, the BCSD

Director of Purchasing. Defendant Dallemand first eliminated the position of Director of Purchasing.  He then reorganized purchasing procedures in a way that proposed purchases, like those involved in this Complaint, would be reviewed and approved by employees unfamiliar with BCSD bid procedures.  Dallemand's reorganization was essential to the execution of the Defendants' scheme to defraud BCSD which is described in this Complaint.

32.

To accomplish the Defendants' scheme, Defendant Dallemand caused a chart reflecting organizational changes to the BCSD purchasing process to be posted on the BCSD website so that the chart would be widely disseminated to potential vendors, like the Defendants in this case, so that bid procedures and Board approval could be more easily avoided allowing purchases to proceed without the oversight called for by bid procedures and state law.  The significant purchases and expenditures made in connection with technology upgrades approved by Bibb County voters in November, 2009, provided Dallemand and his co-conspirators with their opportunity.

33.

In June and July of 2012, BCSD began the process of hiring a new Executive Director of Technology. The Executive Director of Technology would be responsible for implementing the Technology Project as recommended by Elert.

34.

In early July 2012, applicants for the Executive Director of Technology position were interviewed by a panel made up of BCSD administrators. A qualified applicant was recommended, but was rejected by Defendant Dallemand.

35.

Defendant Dallemand then directed that additional applicants be allowed to apply for the Executive Director of Technology position. Defendant Dallemand selected two candidates for a final round of interviews, one of which was Defendant Tourand. The other applicant selected by Defendant Dallemand had no experience for the job.

36.

The panel that Defendant Dallemand assembled to interview Defendant Tourand and the additional applicant did not recommend Defendant Tourand. Instead, the panel chose not to recommend either applicant for the position.

37.

Defendant Dallemand required each member of the panel he assembled to interview applicants to sign a confidentiality agreement that stated that the panel members could not talk about the interview process.

38.

After having the assembled panel members sign the confidentiality

agreement to prevent the panel from sharing information about the applicants with

Board members, Defendant Dallemand made a recommendation to the Board on

July 19, 2012 to hire Defendant Tourand as BCSD's Executive Director of

Technology.

39.

One of Defendant Tourand's references on his employment application

submitted to BCSD by wire in July, 2012 was Defendant Culver, CEO of

Defendant Progressive.  After Defendant Tourand was hired as BCSD's Executive

Director of Technology, Defendant Tourand recommended Defendant Progressive

to become Technical Project Manager for the Technology Project.

40.

On the same day that Defendant Tourand was hired, Cheryl Canty-Aaron

("Ms. Canty-Aaron") was hired as Capital Program Administrator.  Ms. Canty-

Aaron was hired in very much the same manner as Defendant Tourand.  Both were

essentially hand-picked by Defendant Dallemand.

41.

Defendant Dallemand manipulated the hiring process in such a way to

ensure that newly hired employees, like Defendant Tourand and Ms. Canty-Aaron,

felt obligated to fully support Defendant Dallemand and enable him to maneuver around Board policy to allow Defendant Dallemand and his co-conspirators to defraud BCSD of taxpayer funds.

42.

Defendant Tourand's and Ms. Canty-Aaron's approvals were necessary for the financial transactions involving the accounting and financial software and NComputing devices at issue because both the BCSD Executive Director of Technology and BCSD Capital Program Administrator were required to sign-off on the use of funds for those transactions.

### D. Technical Project Management Services

43.

Consistent with Elert's December 2011 Technology Assessment Report and Recommendations, on June 25, 2012 BCSD opened to the public Request for Qualifications ("RFQ") No. 12-72 for Technical Project Management Services for Bibb County Technology Projects (the "Technology Project"). RFQ No. 12-72 invited companies to provide their qualifications for managing the Technology Project on behalf of BCSD.

44.

The purpose of RFQ No. 12-72 was to begin the process of securing a "Technical Project Manager" that would provide technical project management

and network management support to BCSD for the Technology Project.  The stated purpose of RFQ No. 12-72 was to find "qualified applicants who wish to be pre-qualified to provide technical oversight" for technology infrastructure and hardware upgrades with ESPLOST and E-rate funding.  "Those individuals who [were] pre-qualified would then be asked to bid on the future work once funding was secured and the scope of the work [was] finalized."

45.

The Technical Project Manager would also "provide on-site management of vendors at the various locations/schools" on technology upgrades as well as "support the overall infrastructure upgrade and respond to, detect, report, record, diagnose, and resolve the occurrence of network faults as well as measure network performance and connectivity on a daily basis."

46.

On or about July 18, 2012, Defendant Progressive submitted a response to RFQ No. 12-72.  One of the three references submitted with Defendant Progressive's response was an undated email from Defendant Stephen, Chief Executive Officer of Defendant CompTech.  Within five months, Defendant Progressive would initiate a fraudulent, illegal and unauthorized wire transfer of $3,768,000.00 of BCSD's funds to Defendant CompTech.

47.

Defendant Tourand, who recently received an employment reference from Progressive's CEO, Defendant Culver, and whose hiring by BCSD was manipulated by Defendant Dallemand, served on the review panel that selected Defendant Progressive as one of three companies that pre-qualified under RFQ No. 12-72. Ms. Canty-Aaron also served on this review panel.

48.

On August 17, 2012, BCSD posted Request for Proposals ("RFP") No. 13-09 for "Technical Project Management for E-Rate Construction." RFP No. 13-09 specifically provided that "[T]his bid is only open to the following prequalified companies: PCTI (i.e. Progressive Consulting Technologies, Inc.), CORE ECS, Rosser/Tala (JV). Please contact Thomas Tourand for further information and bid documents."

49.

The stated purpose of RFP No. 13-09 was "to hire a Technical Project Management firm to perform turnkey design and implementation of upgrade and renovation work for the technology infrastructure and E-Rate Construction Projects for forty-one (41) schools, Central Office, and all support facilities that comprise the BCSD."

50.

Prior to Progressive even submitting a response to RFP No. 13-09,

Dallemand allowed Progressive to begin invoicing BCSD for work which Elert and

Associates was already under contract to provide.

51.

On September 17, 2012, Defendant Progressive submitted a response to RFP

No. 13-09 entitled "Contract Administration Plan," which included proposed

hourly rates for Defendant Progressive's personnel.

52.

The review panel, which included Defendant Tourand and Ms. Canty-Aaron,

determined that the contract called for by RFP No. 13-09 should be awarded to

Defendant Progressive.

53.

On September 20, 2012, the Board voted to authorize BCSD "to negotiate a

contract with Progressive Consulting Technologies, Inc. of Macon for Technical

Project Management Services and E-Rate Construction Projects."

54.

The Board never authorized Defendant Dallemand to either negotiate or

execute a contract with Defendant Progressive.

55.

On September 24, 2012, Defendant Dallemand signed a "Services Agreement" with Defendant Progressive.

56.

Defendant Dallemand had no authority to execute the Services Agreement on behalf of BCSD, so the Services Agreement is void.

57.

The Services Agreement contained a significantly increased schedule for hourly rates for personnel than the schedule in Defendant Progressive's September 17, 2012 "Contract Administration Plan" that had been submitted to BCSD just one week earlier and that was presented to the Board when the Board voted to authorize BCSD to negotiate a contract with Defendant Progressive. The Board was never advised of and never approved Defendant Progressive's new schedule of hourly rates or the Services Agreement.

58.

The hourly rates contained in the September 24, 2012 Services Agreement contained 24 new positions not contained in Defendant Progressive's September 17, 2012 "Contract Administration Plan."

59.

Defendant Progressive's September 17, 2012 "Contract Administrative Plan" contained no hourly rate higher than $95.00 per hour. The September 24, 2012 Services Agreement contained 18 positions to be paid $95.00 per hour or more.  Defendant Progressive simply added the word "Senior" in front of five of the previously described positions and materially increased the hourly rates.

60.

On October 11, 2012, BCSD Purchase Order No. 70-36372 in the initial amount of $500,000.00 was prepared for "Contract Services on Technology Infrastructure" payable to Defendant Progressive pursuant to the September 24, 2012 Services Agreement.

61.

Defendant Progressive quickly depleted the $500,000.00 provided for in the October 11, 2012 purchase order without significant improvement in technology for BCSD's schools.

62.

On December 10, 2012, Defendant Dallemand removed Ron Collier ("Mr. Collier") from his position of Chief Financial Officer ("CFO"), reassigned him to another position, and began an investigation into Mr. Collier's department after

Mr. Collier expressed concerns about Defendant Dallemand's expenditures of public funds.

63.

On December 12, 2012, Defendant Dallemand assigned to Sharon Roberts ("Mrs. Roberts") the duties and responsibilities of CFO.

64.

At the time Mrs. Roberts was appointed the duties and responsibilities of CFO, an atmosphere of fear and intimidation persisted throughout BCSD. Employees were in constant fear of losing their jobs or being demoted if they did not do what Defendant Dallemand said.

65.

On December 18, 2012, without soliciting bids and without seeking Board approval, Defendant Tourand, with Defendant Dallemand's knowledge and approval, authorized an additional $500,000.00 to be paid to Defendant Progressive, bringing the total amount to be paid to Defendant Progressive to $1,000,000.00 in violation of Board Policy DJED which provides that "[n]o requisition shall be split … to circumvent the requirements of competitive bidding."

66.

The only written documentation addressing the additional $500,000.00 to be paid to Defendant Progressive is a handwritten notation made by Defendant Tourand stating "Amend + $500K" on the original Purchase Order No. 70-36372 along with Defendant Tourand's signature and a date of December 18, 2012.

67.

The Board was not informed of Defendant Progressive receiving an additional $500,000.00, nor was the Board asked to approve the payment of an additional $500,000.00 to Defendant Progressive. Progressive eventually was paid approximately $1,000,000.00 for its services as Technical Project Manager.

68.

Progressive was paid for its services as Technical Project Manager upon submission of separate invoices to BCSD.  The invoices were inflated, fraudulent and contained charges for hours that Progressive had not worked.

69.

On June 18, 2013, Defendants Progressive and Culver, caused to be transmitted to BCSD by wire an email with attached inflated and fraudulent invoices dated March 4, 2013, April 3, 2013 and May 13, 2013 seeking payment of the invoices.

70.

On July 22, 2013, Defendants Progressive and Culver, caused to be transmitted to BCSD by wire an email seeking payment of fraudulent and inflated Progressive invoices.

71.

On August 6, 2013, Defendant Culver transmitted to BCSD by wire a summary of hours fraudulently representing the hours Progressive spent working on the Technology Project and seeking payment for the inflated hours.

72.

On August 8, 2013, Defendants Progressive and Culver caused to be transmitted by wire an email to BCSD along with attached fraudulent and inflated invoices dated February 21, 2013, March 4, 2013, April 3, 2013, May 13, 2013, June 9, 2013 and July 9, 2013 hours and seeking payment of the fraudulent invoices and for hours that Progressive had not worked.

73.

On August 13, 2013, Defendant Culver transmitted by wire to BCSD an hours report falsely representing the work performed by Progressive on the Technology Project and seeking payment for the inflated hours reflected in the report.

74.

On August 16, 2013, BCSD made its last payment to Progressive in the amount of $220,193.40 for Progressive's fraudulent work as Technical Project Manager.

75.

Defendants Progressive and Culver have never been able to account for the hours charged and work performed which were reflected in the sparsely worded, fraudulent and inflated invoices submitted by Progressive.

76.

On September 30, 2013, Defendants Progressive and Culver caused to be transmitted by wire to BCSD a white paper discussing the utilization of NComputing devices at BCSD fraudulently representing that the NComputing devises were appropriate and compatible for BCSD when Culver and Progressive knew that they were not and concealing their role in the purchase of the devices.

**E.  The Pinnacle Items**

77.

One of the projects Defendant Progressive was in charge of managing through its work for BCSD was upgrading the BCSD accounting and financial software.  Defendant Progressive was not supposed to be the vendor of any hardware or software provided to BCSD in connection with the Technology

Project.  Nevertheless, Defendants Progressive and Culver wrongfully acted as a

vendor and wrongfully initiated for and arranged a sham purchase from Defendants

Pinnacle and McFarlane for the Pinnacle Items as described below.

78.

No bids for accounting and financial software were ever solicited and no

Request for Proposals were ever advertised as required by Board Policy DJED.

Instead, Defendants Dallemand, Progressive, and Culver simply chose to purchase

Proscenium Enterprise Suites accounting and financial software purportedly from

Defendant Pinnacle, a construction firm located in Tallahassee, Florida with which

Defendants Progressive and Culver had close ties.

79.

Defendants Dallemand, Tourand, Progressive, and Culver, did not seek or

obtain any input from BCSD employees regarding the purchase of the Proscenium

Enterprise Suites accounting and financial software. BCSD's Director of

Accounting nor its Chief Financial Officer were consulted about BCSD's

accounting and financial software needs or the particular product offered by

Defendant Pinnacle prior to the purchase.

80.

Defendant McFarlane, the "Chief Visionary" and Chief Executive Officer

for Defendant Pinnacle, signed a licensing agreement dated November 12, 2012.

BCSD nor its Board had any knowledge of this license agreement and did not approve the license agreement as required by BCSD Bid Procedures. The license agreement is therefore void. BCSD had no knowledge of the license agreement on December 18, 2012 when it was presented with the Pinnacle Invoice described below.

<div align="center">81.</div>

Defendants Pinnacle and McFarlane sent by wire, by mail, or by private commercial carrier Defendant Pinnacle's Invoice No. 112352 dated December 13, 2012 (the "Pinnacle Invoice") from Florida to Defendant Progressive in Georgia for $3,247,200.00 for 24,600 Proscenium Enterprise Suites, Breeze Budget Accounting Systems, Presence Leave and Teacher Substitute Pay System, Presence Teacher Certification Tracking System, Attendance Management System, setup and configuration, annual license fee and training (the "Pinnacle Items").

<div align="center">82.</div>

Defendants Pinnacle and McFarlane affixed to the Pinnacle Invoice a Government Services Administration ("GSA") number which bears no relation to the Pinnacle Items.

<div align="center">83.</div>

Defendants Progressive and Culver endorsed the purchase of the purported Pinnacle Items. Attached to the Pinnacle Invoice presented to BCSD's interim

CFO, Sharon Roberts, in her office for payment on December 18, 2012 by

Defendants Progressive, Culver and Tourand was a Program Manager's

Certification for Payment, on Progressive letterhead, executed by Defendant

Culver and dated December 13, 2012. The Program Manager's Certification for

Payment fraudulently certifies that payment is authorized, proper and that the

quantity ordered is appropriate. The Program Manager's Certification for Payment

and the Pinnacle Invoice were presented to BCSD for the first time on December

18, 2012.

84.

The Pinnacle Invoice was fraudulent. The Pinnacle Items do not exist.

85.

Defendant Pinnacle did not own the purported Pinnacle Items which are

described in the Pinnacle Invoice when the invoice was presented to Mrs. Roberts

for payment and Defendants Dallemand, Progressive, Culver, Pinnacle and

McFarlane knew that Pinnacle did not.

86.

Pinnacle did not own the domain name or website associated with the

purported Pinnacle Items at the time the invoice was sent to Progressive or at the

time the invoice was paid by BCSD.

87.

The domain name and website for the purported Pinnacle Items was

www.ProsceniumSoft.com ("Proscenium website").

88.

The purported Pinnacle Items described in the Pinnacle Invoice with

associated domain name and website were owned by Progressive Networks, Inc., a

domestic profit corporation dissolved in 2009.  Progressive Networks, Inc.

acquired the domain name and Proscenium website on or about September 12,

2007.  Progressive Networks, Inc. was the actual owner of the Proscenium website,

until it was deleted between August 11, 2014 and August 15, 2014.

89.

Defendant Culver was CFO of Progressive Networks, Inc. and Dave Carty,

the Vice President of Defendant Progressive, was CEO and registered agent.  The

principal office address for Progressive Networks, Inc. was 971 Washington

Avenue, Macon, Georgia 31201-6720 which has been the principal office address

for Defendant Progressive since 2001.  Defendants Progressive and Culver, along

with Dave Carty were owners of Progressive Networks, Inc. at all times relevant to

this Complaint.

90.

From at least April 10, 2011 until the Proscenium website was deleted, sometime between August 11, 2014 to August 15, 2014, the Proscenium website was hosted by Defendant Progressive on Progressive's server(s). Prior to its deletion between August 11, 2014 to August 15, 2014, the Proscenium website shared IP Address 98.175.2.100 with several other websites associated with Progressive, including my-pcx.com, progressive.com, progressive.net, and thinkpcti.com. The location of IP Address 98.175.2.100 is Macon, Georgia.

91.

From April 10, 2011 until it was deleted between August 11, 2014 and August 15, 2014, Defendants Progressive, Culver, Pinnacle, and McFarlane, through the Proscenium website, falsely and fraudulently advertised that Proscenium Software exists and that it "provides a suite of software applications to support the administrative needs of schools and school district offices" which it did not.

92.

From April 10, 2011, until it was deleted between August 11, 2014 and August 15, 2014 the Proscenium website falsely and fraudulently advertised that "Proscenium Software" was copyrighted. There never has been a copyright for "Proscenium Software."

93.

Even though Defendants Progressive and Culver were owners of the Proscenium website until it was deleted, the Proscenium website fraudulently listed Defendant Pinnacle's contact information instead of Defendant Progressive from March 30, 2013 until the website was deleted.

94.

The Proscenium website was an advertisement, the purpose of which was to induce schools and school districts, like BCSD, by means of misrepresentation and fraud to purchase "Proscenium Software" from Defendants. The Proscenium website fraudulently advertised the "Proscenium Software" which did not exist from April 10, 2011 until the website was deleted.

95.

For over three years, Defendants Progressive, Culver, Pinnacle and McFarlane, through the Proscenium website, misrepresented the existence, purpose, and utility of the Proscenium Software Suite to schools and school districts which viewed the website. These misrepresentations were made as part of their regular way of doing business.

96.

On March 30, 2013, registration of the Proscenium website was updated to show Pinnacle and Harold Knowles as the purported owners of the Proscenium

website with associated Pinnacle Items. However, the Proscenium website continued to be hosted on Progressive's server(s) and maintained the same IP Address in Macon, Georgia until it was deleted.

97.

On June 25, 2013, registration of the Proscenium website was updated to show Pinnacle and Defendant McFarlane as the purported owners of the Proscenium website with associated software. Still, the Proscenium website continued to be hosted on Progressive's server(s) and maintained the same IP Address in Macon, Georgia until it was deleted.

98.

Between August 11, 2014 and August 15, 2014, the Proscenium Software website was deleted making it much more difficult to ascertain the ownership of the purported Pinnacle Items for the purpose of concealing the fraud committed by Defendants Dallemand, Progressive, Culver, Pinnacle, and McFarlane.  The deletion followed initiation of an investigation by the Georgia Attorney General, an audit of the purchases by Mauldin and Jenkins, calls for an investigation by a Macon-Bibb commissioner and numerous Macon Telegraph articles questioning the purchase and reporting the investigation.

99.

The number of Pinnacle Items ordered was based on the number of students enrolled in BCSD schools rather than the number of BCSD employees who would actually be using them.  The Pinnacle Invoice charged BCSD $132.00 per student for each of BCSD's 24,600 students.  Thus, Defendants Dallemand, Tourand, Progressive, Culver, Pinnacle and McFarlane fraudulently caused BCSD to overpay for unneeded Pinnacle Items.

100.

On December 18, 2012, Defendant Tourand and Ms. Canty-Aaron, among others, approved the Pinnacle Invoice for payment.

101.

On December 18, 2012, just before BCSD adjourned for its winter break and eight days after Defendant Dallemand removed Mr. Collier from the CFO position, Defendants Dallemand, Tourand, Progressive and Culver demanded that the Mrs. Roberts immediately wire $3,247,200.00 from a BCSD account in Macon, Georgia to an account in Tallahassee, Florida in payment of the fraudulent Pinnacle Invoice.

102.

Defendants Tourand and Culver informed Mrs. Roberts that Defendant Dallemand wanted the payment to be wired to Defendant Pinnacle immediately

and did not want a check to be sent to Defendant Pinnacle.  Mrs. Roberts was

surprised by the request to wire the funds as BCSD never wired funds for

purchases but instead mailed checks. Further, Board Policy DJEJ required that all

bills be paid by check.  Mrs. Roberts told Defendants Dallemand, Tourand and

Culver that funds could not be wired immediately because funds needed to first be

transferred.

<div align="center">103.</div>

On December 18, 2012, Mrs. Roberts, met with Defendant Dallemand to

express concerns about the purchase of the Pinnacle Items because of the lack of

any consultation about the purchase of such an expensive accounting and financial

software program. Mrs. Roberts also expressed concerns to Defendant Dallemand

about wiring funds to Defendant Pinnacle.

<div align="center">104.</div>

Despite the concerns expressed by Mrs. Roberts, Defendant Dallemand

replied that a decision had been made and demanded that she immediately wire

funds to Defendant Pinnacle.

<div align="center">105.</div>

On December 19, 2012, Mrs. Roberts again expressed her concerns about

the purchase of the Pinnacle Items to Defendant Dallemand.  Defendant Dallemand

again directed and demanded that Mrs. Roberts wire the funds to Defendant Pinnacle "now."

106.

There were problems with wiring the funds to Defendant Pinnacle. Defendant Culver, while in Georgia, phoned Defendant McFarlane in Florida to obtain additional instructions to initiate the wire transfer.  Defendant McFarlane then phoned Mrs. Roberts in Georgia with wiring instructions.

107.

On December 19, 2012, Mrs. Roberts was forced and manipulated by Defendant Dallemand, joined and assisted by Defendants Tourand and Culver, to immediately wire $3,247,200.00 from BCSD's account in Georgia to Defendant Pinnacle's bank in Florida.   Mrs. Roberts wired this money against her wishes because of a fear that Defendant Dallemand would take adverse employment actions against her if the funds were not wired as directed.

108.

The BCSD Board was not aware of and did not approve the supposed purchase of the Pinnacle Items as required by Board policies.

109.

Defendants Progressive and Culver fraudulently initiated and arranged with Defendants Pinnacle and McFarlane the sham purchase of the purported Pinnacle Items in which Culver and Progressive had an ownership interest.

110.

Defendants Progressive, Culver, Pinnacle and McFarlane impermissibly profited from the $3,247,200.00 payment by BCSD to Defendant Pinnacle for the Pinnacle Items which were never provided.

111.

Defendants Progressive and Culver improperly fraudulently acted as a vendor in the Pinnacle purchase and fraudulently concealed this fact from BCSD and its Board.

112.

During their December 18, 2012 meeting, Defendant Dallemand told Mrs. Roberts that he would arrange for Mrs. Roberts to meet with someone from Defendant Pinnacle after the holidays to start the process of converting from the old financial software system to Defendant Pinnacle's system.  Defendant Pinnacle, however, never assisted BCSD with the process.

113.

Indeed, Defendant Pinnacle has never provided any of the Pinnacle Items for which BCSD paid $3,247,200.00.  Defendant Pinnacle has only had a Tennessee company ship from Tennessee a single inexpensive Ingram Micro password protected server to Defendant Progressive in Georgia by Federal Express.  Defendant Culver and Henry Scott, a Progressive employee, delivered the server to BCSD representing to BCSD's Executive Director of Technology that it contained the Pinnacle software for which BCSD paid.  The server is completely blank except for a reference that it is password protected to Defendant Culver.

114.

Defendant Tourand was observed in the spring of 2013 cutting the shipping label off of the box containing the server and shredding it.  Defendant Tourand also told an employee in BCSD's Technology Department, "You have never seen this before, you have not seen this come in."  Defendant Tourand left the box taped up and put a post-it note on it that read "do not touch."

## F.  The CompTech Items

115.

Another significant technology upgrade that Defendant Progressive was charged with implementing was providing BCSD students at each of BCSD's schools with direct access to technology in the learning environment.

116.

Defendant Progressive chose to address this need by ordering NComputing devices, which are virtual desktops that enable multiple users to simultaneously share a single operating system.

117.

Defendants Progressive, Culver, Dallemand and Tourand decided to purchase 15,000 NComputing devices for BCSD.

118.

No bids were solicited and no Request for Proposals were issued or advertised for the purchase of the NComputing devices as required by applicable BCSD policies.

119.

There was no Board approval of the purchase of the NComputing devices as required by BCSD policies.

120.

On December 18, 2012, Defendant CompTech, transmitted by wire in interstate commerce from Ohio to Georgia, an invoice in the amount of $3,768,000.00 (the "CompTech Invoice") to be paid by BCSD for 15,000 NComputing L300 devices, 15,000 1-year warranties, 15,000 vSpace Management Centers, 15,000 Premium Support vSpace Servers (annual), 15,000 Premium

Support vSpace Management Centers, and charges for installation of the 15,000 NComputing L300 devices (the "CompTech Items").

121.

The CompTech Invoice was fraudulent.

122.

Defendants CompTech and Stephen caused to be affixed to the CompTech Invoice a GSA number which bears no relation to the NComputing devices.

123.

The purchase of the NComputing devices was the largest purchase of NComputing devices in the United States in 2012, yet there was no attempt to negotiate a discounted price on behalf of BCSD based on the large quantity ordered.

124.

On December 18, 2012, just hours after Mrs. Roberts was presented with the $3,247,200.00 Pinnacle Invoice, Defendant Culver submitted the $3,768,000.00 CompTech Invoice to Mrs. Roberts for payment. Defendant Tourand and Ms. Canty-Aaron had already approved the CompTech Invoice for payment.

125.

As with the Pinnacle Invoice, on December 18, 2012, Defendants Dallemand, Tourand, Progressive and Culver improperly, illegally and without

authority directed, coerced, manipulated and demanded that Mrs. Roberts pay the CompTech Invoice by wire without the legally required Board approval and in violation of applicable BCSD policies. The CompTech Invoice could not be wired then because funds needed to first be transferred.

126.

On December 19, 2012, Mrs. Roberts expressed concerns about the purchase of the CompTech Items to Defendant Dallemand. Defendant Dallemand demanded that Mrs. Roberts wire $3,768,000.00 to Defendant CompTech "now." Mrs. Roberts waited several days to wire these funds because of her serious concerns about the purchase. On December 21, 2012, Mrs. Roberts wired $3,768,000.00 from a BCSD account in Georgia to Defendant CompTech's bank in Ohio against her wishes because of her fear that Defendant Dallemand would take adverse employment actions against her if the funds were not wired as directed.

127.

Shortly after receiving the $3,768,000.00, Defendant CompTech wired from an account in Ohio all but $50,000.00 of the $3,768,000.00 it received from BCSD to Defendant Progressive in Georgia. BCSD was unaware of this arrangement.

128.

Shortly thereafter, Defendants Progressive and Culver wired, mailed, or sent by a private or commercial carrier from Georgia substantially less than the $3,718,000.00 it had received from CompTech to another state to purchase NComputing devices for an amount that was substantially less than the amount paid by BCSD for the devices.  Defendants Progressive and Culver kept the difference.

129.

Under the terms of the September 21, 2012 Services Agreement signed by Defendants Dallemand and Progressive, Defendant Progressive was not supposed to be a vendor of any hardware or software provided in connection with the Technology Project.

130.

The 15,000 NComputing devices were delivered to BCSD, but they are unusable and not compatible with existing BCSD infrastructure.  The 15,000 NComputing devices are not suited for the purposes intended and neither Defendant Progressive nor BCSD were ever able to have the devices operate as represented. Only 300 of the devices were ever installed and they do not operate properly. The remaining devices are unusable and are currently being stored in BCSD's warehouse.

131.

Each of the NComputing devices needed additional equipment such as a computer screen, keyboard, an Ethernet cord and a computer mouse in order to be operated by a student.  A licensing agreement would also need to be purchased on a yearly basis for each of the 15,000 devices to access software for the devices. The appropriate equipment needed to operate the 15,000 NComputing devices would have required BCSD to invest significantly more funds in this project than the $3,768,000.00 already spent. Defendants Dallemand, Tourand, Culver and Progressive were aware of the need for additional equipment and licenses when the decision to order these devices was made.  Like the decision to purchase the CompTech Items themselves, the need for this additional equipment was never disclosed to the Board.

132.

In addition to profiting from the CompTech purchases, Defendants Culver and Progressive coerced payment for and recommended purchase of the NComputing devices for the additional reason that they hoped to continue to fraudulently charge BCSD for the installation of the additional equipment needed to make the NComputing devices operational.

## G. Failure in Deployment of Pinnacle Items

### 133.

The purported Pinnacle Items were never deployed as promised by Defendants Dallemand, Tourand, Progressive, Culver, Pinnacle and McFarlane.

### 134.

In January 2013, Mrs. Roberts met with Defendant Dallemand about the software supposedly purchased from Defendant Pinnacle. Defendant Dallemand, who on December 18, 2012 advised Mrs. Roberts that he would arrange for a representative of Defendant Pinnacle to start the process of converting the old software to the newer Pinnacle software, told Mrs. Roberts that she would receive a call from Stanley Williams, an employee of Defendant Pinnacle, regarding a demonstration of the software.

### 135.

On or around January 30, 2013, Stanley Williams met with Mrs. Roberts and only showed her a webpage which in essence was a sales pitch for the software. There was no demonstration of the software and no training was provided. The single, inexpensive server that Defendants Pinnacle and Progressive delivered to BCSD on January 24, 2013 was not included in the presentation made to Mrs. Roberts.

136.

Following the January 30, 2013 meeting, there were no additional efforts made by Defendants Dallemand, Tourand, Progressive, Culver, Pinnacle or McFarlane to setup, configure or train BCSD employees to access or use the Proscenium Enterprise Suites software despite the inclusion of these services in the Pinnacle Invoice.

137.

BCSD never received the purported Pinnacle Items for which it paid $3,247,200.00. BCSD has never seen the Pinnacle Items in any demonstration or otherwise. The Pinnacle Items do not exist.

138.

Pinnacle, a construction firm in Tallahassee, Florida, did not have and never has had the capability, expertise or ability to develop or produce the Pinnacle Items or to provide the Pinnacle Items to BCSD. Pinnacle did not have the capability, expertise or ability to install, set up or configure the Pinnacle Items or to train BCSD on the use of the Pinnacle Items.

**H. Failure in Deployment of NComputing Devices**

139.

Northeast High School ("Northeast") was selected to serve as BCSD's pilot school for the deployment of 300 NComputing devices.

140.

In late March and early April 2013, Defendant Progressive's employees attempted to install 300 of the 15,000 NComputing devices at Northeast. Defendants CompTech and Stephen were not involved in the installation process even though the CompTech Invoice included a fee of $351,750.00 for "NComputing L300 installation."

141.

The deployment and installation of the NComputing devices at Northeast was a complete failure. There were compatibility issues with the NComputing devices working with the existing technology infrastructure at Northeast. Defendants Tourand, Progressive, Culver, CompTech and Stephen were unable to come up with a solution to address the issues relating to the NComputing devices. These compatibility issues would have been obvious if just a single NComputing device had been tested for compatibility purposes before ordering and paying for 15,000 NComputing devices.

I.    **Defendant Dallemand's Severance Agreement**

142.

On December 5, 2012, Defendant Dallemand entered into a new Employment Contract with BCSD that extended his term of employment to

December 31, 2015 and provided other substantial benefits to Defendant Dallemand.

143.

On January 17, 2013, which was only a little more than one (1) month after the date Defendant Dallemand's new Employment Agreement was executed, Defendant Dallemand told the members of the Board that he could not work with them and asked the Board to "buy out" his contract.

144.

After a short period of negotiation, Defendant Dallemand and the Board and BCSD agreed to the terms of Defendant Dallemand's Severance Agreement dated February 25, 2013.

145.

In accordance with the terms of the Severance Agreement, on February 26, 2013, BCSD wired $42,500.68 from Georgia to the Bank of New York Mellon in New York for the benefit of Defendant Dallemand.

146.

In accordance with the terms of the Severance Agreement, on February 26, 2013, BCSD wired $259,643.33 from Georgia to the Wells Fargo Bank NA in Minnesota for the benefit of Defendant Dallemand.

147.

Defendant Dallemand was in a fiduciary relationship with BCSD and its Board at all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013 and Defendant Dallemand owed BCSD and its Board the duties of a fiduciary throughout that entire period of time.

148.

Defendant Dallemand was in a relationship of trust and confidence with BCSD and its Board at all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013 and Defendant Dallemand owed BCSD and its Board a duty of utmost good faith.

149.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty to prepare and submit to the Board recommendations relative to all matters requiring action of the Board.

150.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to place before the Board such necessary and helpful facts, information and reports as were needed to ensure the making of informed decisions by the Board.

151.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to keep the Board informed about the activities operating under the Board's authority.

152.

 At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board a clear and detailed explanation of any proposed procedure which would involve departure from established policy.

153.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board a clear and detailed explanation of any proposed procedure which would involve the expenditure of substantial sums.

154.

Defendant Dallemand had a duty and responsibility to communicate to the Board and BCSD that, on December 19, 2012, he caused BCSD to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items.

155.

Defendant Dallemand, in bad faith, failed to communicate to the Board and BCSD that, on December 19, 2012, he caused BCSD to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items.  Rather, Defendant Dallemand suppressed the disclosure of that information to the Board and BCSD.

156.

At no time before the execution of the Severance Agreement on February 25, 2013 did Defendant Dallemand fulfill his duty and responsibility to the Board and BCSD to communicate to them that, on December 19, 2012, he caused BCSD to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items.

157.

Had Defendant Dallemand fulfilled his duty and responsibility to the Board and BCSD and disclosed to them that, on December 19, 2012, he caused the District to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items, the Board and BCSD would not have entered into the Severance Agreement with Defendant Dallemand.

158.

Defendant Dallemand's failure to fulfill his duty and responsibility to communicate to the Board and BCSD before the execution of the Severance

Agreement that, on December 19, 2012, he caused BCSD to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items and his suppression of that information from the Board and BCSD before the execution of the Severance Agreement constitutes fraud.

159.

Defendant Dallemand had a duty and a responsibility to communicate to the Board and BCSD that, on December 21, 2012, he caused BCSD to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the CompTech Items.

160.

Defendant Dallemand, in bad faith, breached his duties and responsibilities to the Board and BCSD and failed to communicate to them that, on December 21, 2012, he caused BCSD to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the CompTech Items.  Rather, Defendant Dallemand suppressed the disclosure of that information to the Board and BCSD.

161.

At no time before the execution of the Severance Agreement on February 25, 2013 did Defendant Dallemand fulfill his duty and responsibility to the Board and BCSD to communicate to them that, on December 21, 2012, he caused BCSD

to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the CompTech Items.

162.

Had Defendant Dallemand fulfilled his duty and responsibility to the Board and BCSD and disclosed to them that, on December 21, 2012, he caused the District to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the CompTech Items, the Board and BCSD would not have entered into the Severance Agreement with Defendant Dallemand.

163.

Defendant Dallemand's failure to fulfill his duty and responsibility to communicate to the Board and BCSD before the execution of the Severance Agreement that, on December 21, 2012, he caused BCSD to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the CompTech Items and his suppression of that information from the Board and BCSD before the execution of the Severance Agreement constitutes fraud.

164.

Defendant Dallemand procured the Severance Agreement by fraud and it was therefore void under O.C.G.A. § 13-5-5.

165.

The processing and timing of the payment of the Pinnacle Invoice and the CompTech Invoice are related to the Defendants' scheme to defraud BCSD.  The invoices were processed and paid immediately prior to the 2012 winter break, after Mr. Collier was removed as CFO and prior to significant changes in the membership of the BCSD Board.

166.

Defendant Dallemand, knowing that there would soon be significant changes in the membership of the BCSD Board and that he would soon be asking the Board to "buy out" his new contract, forced BCSD employees to process the payments to Defendants Pinnacle and CompTech in late December 2012 to insure that the funds would be transferred prior to his departure from his position as BCSD's Superintendent.

167.

The Severance Agreement obligated BCSD to (1) pay Defendant Dallemand $350,000.00; (2) grant Defendant Dallemand pension benefits based on that sum; (3) pay Defendant Dallemand's health insurance premiums for another year and four months; (4) indemnify Defendant Dallemand for his acts while employed as superintendent; and (5) release BCSD's claims against Defendant Dallemand.

168.

The consideration for the Severance Agreement was illegal as a violation of Ga. Const. Art. 3, § 6, ¶ VI(a) because BCSD did not receive any prospective substantial benefit in return from Defendant Dallemand and the release was an impermissible forgiveness of a debt or obligation owing to the public. Further, the indemnification was an impermissible waiver of sovereign immunity.

169.

Because the consideration for the Severance Agreement was illegal, the Severance Agreement was void as against public policy and under O.C.G.A. § 13-3-45.

## COUNT I

## RICO Sections 1962(c), 1962(d) and 1964(c)

170.

The allegations of paragraph 1 through 169 are incorporated herein by reference.

171.

This Count is asserted against all Defendants.

172.

Pursuant to 18 U.S.C. § 1962(c) of the United States Racketeer Influenced and Corrupt Organizations Act (the "federal RICO Act"), it is "unlawful for any

person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt."

173.

Pursuant to 18 U.S.C. § 1962(d) it is unlawful for any person to conspire to violate any of the provisions of 18 U.S.C. § 1962(c).

174.

Pursuant to 18 U.S.C. § 1964(c) "[a]ny person injured in his business or property by a reason of a violation of Section 1962 of this chapter may sue therefor in any appropriate United States district court…."

175.

To constitute an offense under the federal RICO Act, "at least two acts of racketeering activity" are required to have been committed.

176.

Collectively, the Defendants agreed to form and, in fact, formed an enterprise (the "Enterprise") that was engaged in, or the activities of which affected, interstate commerce.  Each Defendant was associated with the Enterprise.

177.

Defendants conspired and agreed to and did conduct and participate in the conduct of the Enterprise's affairs through an ongoing pattern of racketeering activity and for the common, ongoing and unlawful purpose of intentionally defrauding BCSD and other schools and school districts of their money and property to the Defendants' benefit.  The acts of racketeering of the Defendants were intentional and designed to deceive and, in fact, did deceive BCSD.

178.

Defendants intentionally devised and intentionally participated in a scheme to defraud BCSD and other schools and school districts of money and property.

179.

The Defendants met and conferred throughout the course of their conspiracy to discuss and plan their scheme, to assign roles of each Defendant, the division of responsibilities of each Defendant and the payment each Defendant would receive for their intentional commission of the racketeering acts set forth below.

180.

Defendant Culver and other representatives of Progressive, including Henry Scott and Dave Carty, met with Defendant Dallemand behind closed doors on a nearly daily basis at BCSD offices from July, 2012 through February, 2013 to discuss and plan the scheme, to assign roles of each Defendant, the division of

responsibilities for each Defendant and payments or benefits each Defendant would receive for their intentional commission of the racketeering acts set forth below in furtherance of the Defendants' scheme to defraud BCSD of its money and property. Defendants Progressive, Culver and Dallemand communicated with Defendants Pinnacle, CompTech, McFarlane and Stephen by phone and email to discuss the scheme, assign roles for each Defendant and the payments or benefits each Defendant would receive for their participation in the scheme, including the commission of the racketeering acts set forth below.

181.

The acts of racketeering of the Defendants were intentional and include the following:

A. <u>Defendant Dallemand</u> – Defendant Dallemand intentionally engaged in acts and intentionally participated in a scheme the purpose of which was to defraud BCSD and other schools and school districts of money and property and which acts are indictable under the provisions of 18 U.S.C. § 1343, 18 U.S.C. § 2314, and 18 U.S.C. § 2315 when

(i)    In April, 2011, Defendant Dallemand, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme intentionally reorganized purchasing procedures at

BCSD by first eliminating the position of Director of Purchasing. He then reorganized purchasing procedures in a way that proposed purchases and expenditures, like those involved in this Complaint, would be reviewed and approved by employees unfamiliar with BCSD bid procedures. This reorganization was designed to avoid bid procedures and board approval which was essential to execute the Defendants' scheme to maneuver around Board policies to defraud BCSD. As an incident to Defendants' scheme, in April, 2011, Defendant Dallemand caused a chart reflecting organizational changes to be posted by wire in interstate commerce on the BCSD website so that it would be widely disseminated to potential vendors, like the Defendants in this case, so that bid procedures and board approval could be avoided allowing the Defendants to execute their fraudulent scheme;

(ii)    On December 19, 2012, Defendant Dallemand, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, fraudulently, intentionally, improperly, illegally and without authority, directed, coerced, demanded and caused to be transmitted by means of wire $3,247,200.00 from BCSD

in Georgia to Defendant Pinnacle in Florida for the purported

purchase of the Pinnacle Items without soliciting bids and without

Board approval in violation of applicable BCSD policies.  Defendant

Dallemand intentionally represented to BCSD's employees that the

payment was legal and proper when he knew that it was not.  Further,

Defendant Dallemand knew the funds he demanded and caused to be

transmitted by wire to Defendant Pinnacle were taken from BCSD by

fraud;

(iii)    On December 21, 2012, Defendant Dallemand, having intentionally

devised  a scheme with other Defendants to defraud BCSD and other

schools and school districts of money and property and for purposes

of executing such  scheme, fraudulently, intentionally, improperly,

illegally and without authority, directed, coerced, demanded and

caused to be transmitted by means of wire from BCSD in Georgia to

Defendant CompTech in Ohio $3,768,000.00 for the purported

purchase of the CompTech Items without soliciting bids and without

Board approval in violation of BCSD policies.  Defendant Dallemand

intentionally represented to BCSD's employees that the payment was

legal and proper when he knew that it was not.  Further, Defendant

Dallemand knew the funds he demanded and caused to be transmitted to Defendant CompTech were taken from BCSD by fraud;

(iv)    On February 26, 2013, Defendant Dallemand, having intentionally devised  a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, fraudulently, intentionally, improperly, illegally and without authority directed, demanded and caused to be transmitted by wire from BCSD in Georgia to the Bank of New York Mellon in New York $42,500.68 of the funds paid to Defendant Dallemand in connection with the Severance Agreement Defendant Dallemand had procured by fraud.  Defendant Dallemand intentionally transmitted the money in interstate commerce knowing it had been taken from BCSD by fraud.  Defendant Dallemand also intentionally received and possessed the money after it had crossed a State boundary and after it had been taken from BCSD by fraud;

(v)    On February 26, 2013, Defendant Dallemand, having intentionally devised  a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such  scheme, fraudulently, intentionally, improperly, illegally and without authority directed, demanded and caused BCSD

employees to transmit by wire $259,643.33 of the funds paid to

Defendant Dallemand in connection with the Severance Agreement

Defendant Dallemand had intentionally procured by fraud from BCSD

in Georgia to the Wells Fargo Bank NA in Minnesota. Defendant

Dallemand caused the money to be transmitted in interstate commerce

knowing it had been taken from BCSD by fraud. Defendant

Dallemand also intentionally received and possessed the money after

it had crossed a State boundary and after it had been taken from

BCSD by fraud.

B. <u>Defendants Progressive and Culver</u> – Defendants Progressive and Culver

intentionally engaged in acts and intentionally participated in a scheme the

purpose of which was to defraud BCSD and other schools and school

districts of money and property which acts are indictable under the

provisions of 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 2314 and 18

U.S.C. § 2315 when

(i)     Defendants Progressive and Culver having intentionally devised a

scheme with other Defendants to defraud BCSD and other schools and

school districts of money and property and for purposes of executing

such scheme, by use of wire in interstate commerce, acquired the

domain name www.ProsceniumSoft.com, (the "Proscenium website")

on or about September 12, 2007 which was an essential part of their

scheme to defraud BCSD and other schools and school districts.

From at least April 10, 2011 until sometime between August 11, 2014

and August 15, 2014, as a regular part of Defendants' business, the

Proscenium website was hosted by Defendant Progressive on

Progressive's server during which time the website falsely and

fraudulently advertised that the Proscenium Software exists and that it

provides " a suite of software application to support the administrative

needs of schools and district school offices" when it did not exist in

furtherance of Defendants' scheme to defraud BCSD and other

schools and school districts of money and property;

(ii)    From April 10, 2011 until the Proscenium website was deleted

sometime between August 11, 2014 and August 15, 2014, Defendants

Progressive and Culver having intentionally devised a scheme with

other Defendants to defraud BCSD and other schools and school

districts of money and property and for purposes of executing such

scheme, as a regular part of Defendants' business, falsely and

fraudulently advertised on the Proscenium website that the

"Proscenium Software" was copyrighted when Proscenium Software

has never been copyrighted in furtherance of Defendants' scheme to

defraud BCSD and other schools and school districts of money and property;

(iii)    From April 10, 2011 until the Proscenium website was deleted sometime between August 11, 2014 and August 15, 2014, Defendants Progressive and Culver, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property, and for purposes of executing such scheme, as a regular part of Defendants' business, fraudulently advertised Proscenium Software on its website the purpose of which was to induce schools and school districts, including BCSD, by means of misrepresentations and fraud to purchase "Proscenium Software" from Defendants which did not exist in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts;

(iv)    From April 10, 2011 until the Proscenium website was deleted sometime between August 11, 2014 and August 15, 2014, Defendants Progressive and Culver having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, as a regular part of Defendants' business, fraudulently and intentionally through the Proscenium website, misrepresented the

existence and utility of Proscenium software to BCSD and other

schools and school districts which viewed the website;

(v)     Defendants Progressive and Culver having intentionally devised a

scheme with other Defendants to defraud BCSD and other schools and

school districts of money and property and for purposes of executing

such scheme, fraudulently and intentionally executed a Project

Manager's Certification for Payment dated December 13, 2012

intentionally representing to BCSD that payment of the fraudulent

Pinnacle Invoice was authorized and proper, and that the Pinnacle

Items were appropriate when Defendants Progressive and Culver

knew that they were not and where they knew that Progressive

Networks, Inc. rather than Pinnacle owned the purported Pinnacle

Items which fact they concealed.  Defendants Progressive and Culver

intentionally transmitted this fraudulent document or caused this

document to be transmitted by wire or sent by mail in interstate

commerce, from Georgia to Defendant Pinnacle in Florida.  The

fraudulent Manager's Certification was included with the fraudulent

Pinnacle Invoice which was presented by Defendants Culver and

Tourand to Sharon Roberts in her office on December 18, 2012 for

payment;

(vi)    On December 19, 2012, Defendants Progressive and Culver, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally telephoned from Georgia Defendants Pinnacle and McFarlane in Florida to obtain wiring instructions for BCSD to pay the fraudulent Pinnacle Invoice;

(vii)   On or around December 18, 2012, Defendants Progressive and Culver, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme by wire in interstate commerce intentionally arranged a sham purchase of the purported Pinnacle Items which did not exist, in which they had an ownership interest, in which they impermissibly profited in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts.

(viii)  On or around January 24, 2013, Defendants Progressive and Culver, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, received an inexpensive Ingram Micro server which Defendant Pinnacle

intentionally caused to be shipped from Tennessee via private or commercial carrier in interstate commerce to Defendant Progressive in Georgia. Defendant Culver and Henry Scott, a Progressive employee, delivered the server to BCSD's technology department and intentionally and fraudulently represented to the BCSD Executive Director of Technology that it contained the Pinnacle Items for which BCSD paid $3,247,200.00 when Defendants Progressive and Culver knew that it did not;

(ix) On or after December 18, 2012, Defendants Progressive and Culver, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing such scheme, while in Georgia intentionally received by wire that was transmitted by Defendant CompTech in interstate commerce from Ohio all but $50,000.00 of the $3,768,000.00 that had previously been transmitted by wire by BCSD to Defendant CompTech to pay the CompTech Invoice. Defendants Progressive and Culver were aware that the funds transmitted to them by wire in interstate commerce by Defendant CompTech had been obtained from BCSD by fraud;

(x)     On or after December 18, 2012, Defendants Progressive and Culver intentionally received and possessed the $3,718,000.00 intentionally wired to them by Defendant CompTech which had crossed a State boundary after the money had been taken from BCSD by fraud in furtherance of the Defendants' scheme to defraud BCSD of money and property;

(xi)    On or after December 18, 2012, Defendants Progressive and Culver, having intentionally devised  a scheme to defraud BCSD and other schools and school districts with other Defendants and for purposes of executing such  scheme, while in Georgia intentionally transmitted or caused to be transmitted by wire in interstate commerce, intentionally placed in a post office or authorized depository for mail matter to be sent or delivered by the U.S. Postal Service, or intentionally sent or delivered by a private or commercial carrier in interstate commerce an amount that was substantially less than the amount BCSD paid to Defendant CompTech for the CompTech Items and an amount that was substantially less than the amount Defendant CompTech wired to Defendants Progressive and Culver to another state to purchase the CompTech Items.  Defendants Progressive and Culver intentionally and fraudulently retained the difference between the amount they

received from CompTech and the amount sent to another state to purchase the CompTech Items as part of the Defendants' scheme to defraud BCSD and other schools and school districts of money and property;

(xii)    On or after December 18, 2012, Defendants Progressive and Culver intentionally transmitted or transferred in interstate commerce part of the $3,718,000.00 (more than $5,000.00) it intentionally and fraudulently received from Defendant CompTech knowing the money had been taken by fraud;

(xiii)   On March 30, 2013, Defendants Progressive and Culver having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme by wire in interstate commerce assisted Defendants Pinnacle and Harold Knowles of Pinnacle to update the Proscenium website registration to show Pinnacle and Harold Knowles as the purported owners of the Proscenium website with associated Pinnacle Items in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property.  However, the Proscenium website continued to be hosted on Progressive servers and maintained the

same I.P. address in Macon, Georgia until it was deleted between
August 11, 2014 and August 15, 2014;

(xiv)   On June 18, 2013, Defendants Progressive and Culver having
intentionally devised a scheme with other Defendants to defraud
BCSD and other schools and school districts of money and property
and for purposes of executing such scheme, intentionally caused to be
transmitted to BCSD by wire in interstate commerce an email along
with fraudulently inflated Progressive invoices dated March 4, 2013,
April 3, 2013 and May 13, 2013 seeking payment of the fraudulent
invoices for the purposes of defrauding BCSD of its money and
property in furtherance of the Defendants' scheme to defraud BCSD
and other schools and school districts of money and property;

(xv)    On June 25, 2013, Defendants Progressive and Culver having
intentionally devised a scheme with other Defendants to defraud
BCSD and other schools and school districts and for purposes of
executing such scheme by wire in interstate commerce assisted
Defendants Pinnacle and McFarlane to update the Proscenium website
to show Defendants Pinnacle and McFarlane as the purported owners
of the Proscenium website with associated software even though the
Proscenium website continued to be hosted on Progressive's server

and maintained the same IP address in Macon, Georgia until it was deleted sometime between August 11, 2014 and August 15, 2014 in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property;

(xvi) On July 22, 2013, Defendants Progressive and Culver having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, fraudulently and intentionally transmitted to BCSD by wire in interstate commerce an email seeking payment of fraudulent and inflated Progressive invoices dated March 4, 2013, April 3, 2013 and May 13, 2013 in furtherance of Defendants' scheme to defraud BCSD;

(xvii) On August 6, 2013, Defendants Progressive and Culver having intentionally devised a scheme with other Defendants to intentionally defraud BCSD and other schools and school districts of money and property and for purposes for executing such scheme, caused to be transmitted by wire in interstate commerce to BCSD, a summary of hours purportedly representing the hours Progressive worked on the Technology Project but which fraudulently inflated the hours and

seeking payment for fraudulent inflated hours in furtherance of the

Defendants' scheme to defraud BCSD of money and property;

(xviii) On August 8, 2013, Defendants Progressive and Culver, having

intentionally devised a scheme with other Defendants to intentionally

defraud BCSD and other schools and school districts of money and

property and for purposes of executing such scheme, transmitted by

wire in interstate commerce to BCSD an email seeking payment of

fraudulent  and inflated Progressive invoices dated February 21, 2013,

March 4, 2013, April 3, 2013, May 13, 2013, June 9, 2013 and July 9,

2013 in furtherance of the Defendants' scheme to defraud BCSD and

other schools and school districts of money and property;

(xix)   On August 13, 2013, Defendants Progressive and Culver having

intentionally devised a scheme with other Defendants to intentionally

defraud BCSD and other schools and school districts of money and

property and for the purpose of executing the scheme transmitted to

BCSD by wire in interstate commerce an hours report falsely

representing the work performed by Progressive on the Technology

Project in an effort to receive payment for the fraudulent invoices in

furtherance of the Defendants' scheme to defraud BCSD and other

schools and school districts of money and property;

(xx)  On September 30, 2013, Defendants Progressive and Culver having devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, caused to be transmitted by wire in interstate commerce to BCSD a white paper discussing the utilization of NComputing devices at BCSD and representing that the NComputing devices were appropriate for application in the Bibb County Schools when they knew that they were not and concealing their role and profit in the purchase of the devices in furtherance of the Defendants' scheme to defraud BCSD and other schools and school districts of money and property;

(xxi)  At some time between August 11, 2014 and August 15, 2014, Defendants Progressive and Culver having devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, deleted the Proscenium website making it much more difficult to ascertain the ownership of the Pinnacle Items in an attempt to conceal from BCSD, the public, the Macon Telegraph and the investigations of the Georgia Attorney General the fraud committed by Defendants Dallemand, Progressive, Culver, Pinnacle and

McFarlane in furtherance of the Defendants' scheme to defraud

BCSD and other schools and school districts of money and property.

C. <u>Defendants Pinnacle and McFarlane</u> – Defendants Pinnacle and McFarlane intentionally engaged in acts and intentionally participated in a scheme the purpose of which was to defraud BCSD and other schools and school districts of money and property, and  which acts are indictable under the provisions of 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 2314 and 18 U.S.C § 2315 when

(i)     Defendants Pinnacle and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing such scheme, signed a Software Subscribers License which was never signed by BCSD or approved by the BCSD Board and which was later transmitted by wire in interstate commerce from Florida to Georgia intentionally representing that Defendant Pinnacle would provide BCSD with the Pinnacle Items which they did not own, which did not exits, and which they did not have the expertise to develop, install, set up, configure and which they never provided and had no intention of providing and which license BCSD had no knowledge of on December 18, 2012 when presented with the Pinnacle Invoice;

(ii)     Defendants Pinnacle and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing such scheme, intentionally transmitted or caused to be transmitted by wire in interstate commerce or placed or caused to be placed in a post office or authorized depository for mail matter to be sent or delivered by the U.S. Postal Service, or placed or caused to be placed with a private or commercial carrier to be sent or delivered by that private or commercial carrier in interstate commerce from Florida to Georgia, the fraudulent Pinnacle Invoice in the amount of $3,247,200.00 to Defendants Progressive and Culver and presented to BCSD for the first time on December 18, 2012 by Defendants Culver and Tourand for the Pinnacle Items which they did not own and did not exist, intentionally representing to BCSD that Pinnacle would provide the Pinnacle Items which Pinnacle never provided, had no intention of providing and had no ability, capacity or expertise to provide;

(iii)    On December 19, 2012, Defendants Pinnacle and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and

for purposes of executing such scheme, intentionally received and participated in a phone conversation while in Florida with Defendant Culver, who was in Georgia, in which Defendant Culver requested wiring instructions for use by BCSD in paying the fraudulent Pinnacle Invoice in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts;

(iv)    On December 19, 2012, Defendants Pinnacle and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing such scheme, while in Florida, intentionally provided wiring instructions by phone to BCSD in Georgia for use by BCSD to pay the fraudulent Pinnacle Invoice in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property;

(v)    On December 19, 2012, Defendants Pinnacle and McFarlane, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally received and retained in Florida $3,247,200.00 that BCSD had transmitted by wire in interstate commerce from Georgia in payment of the Pinnacle Items

that they never provided to BCSD and had no intention of providing

to BCSD.  Defendants Pinnacle and McFarlane knew that the funds

they  received and retained were sent to them without proper authority

and were procured from BCSD by fraud and, in fact, intentionally

participated in and were complicit in the fraud;

(vi)    On December 19, 2012, Defendants Pinnacle and McFarlane having

intentionally devised a scheme with other Defendants to defraud

BCSD and other schools and school districts of money and property

intentionally received by wire and possessed $3,247,200.00 taken

from BCSD by fraud which had crossed a State boundary and which

Defendants Pinnacle and McFarlane knew to have been taken from

BCSD by fraud;

(vii)   On or around January 24, 2013, Defendants Pinnacle and McFarlane,

having intentionally devised a scheme to defraud BCSD and other

schools and school districts with other Defendants and for purposes of

executing such scheme, caused a single inexpensive blank Ingram

Micro server to be placed with a private or commercial carrier in

interstate commerce to be sent or delivered from Tennessee to

Defendant Progressive in Georgia intentionally representing to BCSD

that the server contained the product for which BCSD had paid

$3,247,200.00 to Defendant Pinnacle when Defendants Pinnacle and McFarlane knew that it did not;

(viii)  From March 30, 2013 until deletion of the Proscenium website, Defendants Pinnacle and McFarlane, having devised a scheme to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme misrepresented the existence, purpose and utility of the Proscenium Software Suites to BCSD and other schools and school districts which viewed the website.  The Pinnacle Defendants' misrepresentations about the Proscenium website and ownership of Proscenium Software were made as part of Defendants' regular way of doing business.  The Proscenium website was an advertisement the purpose of which was to induce schools and school districts by means of misrepresentation and fraud to "purchase Proscenium software"  from Defendants which they did not own and which did not exist in furtherance of the Defendants' scheme to defraud BCSD and other schools and school districts;

(ix)  On March 30, 2013, having devised a scheme to defraud BCSD and other schools and school districts of money and property and for purposes of executing the scheme, Defendants Pinnacle and

McFarlane by wire in interstate commerce updated the Proscenium website to show Pinnacle and Harold Knowles as the purported owners of the Proscenium website with associated Pinnacle Items although the website continued to be hosted by Progressive and maintained the same Progressive IP address in Macon, Georgia in furtherance of their scheme and their conspiracy to defraud BCSD and other schools and school districts of money and property;

(x)    On June 25, 2013, Defendants Pinnacle and McFarlane, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, by wire in interstate commerce updated the registration for the Proscenium website to show that Pinnacle and Defendant McFarlane were the owners of the Proscenium website with associated software which did not exist in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property.  Still, the Proscenium website continued to be hosted on Progressive's server(s) and maintained the same IP address in Macon, Georgia until it was deleted;

(xi)    At some time between August 11, 2014 and August 15, 2014, Defendants Pinnacle and McFarlane having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing the scheme, by use of wire in interstate commerce caused the Proscenium website to be deleted in an effort to conceal their fraudulent conduct from BCSD, the public, the Macon Telegraph and the investigations of the Georgia Attorney General.

D.    Defendants CompTech and Stephen – Defendants CompTech and Stephen intentionally engaged in acts and intentionally participated in a scheme the purpose of which was to defraud BCSD and other schools and school districts of money and property and which acts are indictable under the provisions of 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 2314 and 18 U.S.C. § 2315  when

(i)    In 2012, Defendants CompTech and Stephen, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally transmitted by wire in interstate commerce from Ohio to Georgia, caused to be transmitted by wire in interstate commerce from Ohio to Georgia, placed or

caused to be placed in a post office or authorized depository for mail

matter to be sent or delivered by the U.S. Postal Service, or placed or

caused to be placed with a private or commercial carrier to be sent or

delivered by that private or commercial carrier in interstate commerce

from Ohio to Georgia, a letter of recommendation in support of

Defendant Progressive's effort to become BCSD's Technical Project

Manager, which recommendation was attached to Defendant

Progressive's July 18, 2012 response to RFQ No. 12-72;

(ii)   By invoice dated December 17, 2012, on December 18, 2012

Defendants CompTech and Stephen, having intentionally devised a

scheme with other Defendants to defraud BCSD and other schools and

school districts of money and property and for purposes of executing

such scheme, intentionally transmitted or caused to be transmitted by

wire in interstate commerce from Ohio to Georgia, the fraudulent

CompTech Invoice to be paid by BCSD for the CompTech Items that

BCSD was purportedly purchasing from Defendant CompTech and

which were completely incompatible with existing BCSD

infrastructure.  Defendants CompTech and Stephen fraudulently

represented to BCSD employees by sending the CompTech Invoice to

BCSD that Defendant CompTech would supply the CompTech Items

but had no intention of doing so and instead promptly and intentionally diverted all but $50,000.00 of the $3,768,000.00 it received to Defendants Progressive and Culver in furtherance of the Defendants' scheme to defraud BCSD.  Further, the CompTech Invoice fraudulently charged BCSD for installation of the CompTech Items but Defendant CompTech never installed any of the CompTech Items or intended to CompTech Items.  The CompTech Invoice also fraudulently overcharged BCSD for unneeded accessories and support;

(iii)  On December 21, 2012, Defendants CompTech and Stephen, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts and for purposes of executing such scheme, intentionally and fraudulently retained in Ohio $50,000.00 of the $3,768,000.00 that BCSD had transmitted by wire in interstate commerce from Georgia to Ohio in payment for the CompTech Items.  Defendants CompTech and Stephen were aware that the funds Defendant CompTech received were sent to Defendant CompTech without proper authority and were procured from BCSD by fraud and, in fact, were complicit in the fraud.  Defendants

CompTech and Stephen further knew that BCSD was overcharged for unneeded accessories and support;

(iv)    Defendants CompTech and Stephen intentionally received and possessed money in the amount of $3,768,000.00 that had crossed a State boundary after being taken from BCSD by fraud in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property;

(v)    Shortly after receiving the illegal, unauthorized payment from BCSD, Defendants CompTech and Stephen, having intentionally devised a scheme with other Defendants to defraud BCSD and for purposes of executing such a scheme, intentionally transmitted or caused to be transmitted by wire in interstate commerce from Ohio to Georgia all but $50,000.00 of the $3,768,000.00 it received from BCSD without the knowledge of BCSD.  Defendants CompTech and Stephen knew that the funds Defendant CompTech received and diverted to Defendant Progressive were obtained from BCSD by fraud in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property; and

(vi)    Defendants CompTech and Stephen intentionally transmitted or transferred in interstate commerce money in the amount of

$3,718,000.00 they knew had been taken from BCSD by fraud in furtherance of Defendants' scheme to defraud BCSD of money and property.

E.  <u>Defendant Tourand</u> – Defendant Tourand intentionally engaged in acts and intentionally participated in a scheme the purpose of which was to defraud BCSD and other schools and school districts of money and property and which acts are indictable under the provisions of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 2314  when

(i)     On or about December 18, 2012, Defendant Tourand, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, while in Georgia received from Defendant CompTech the CompTech Invoice which Defendant CompTech had transmitted by wire in interstate commerce from Ohio, to BCSD and presented it to BCSD for payment knowing that it was fraudulent in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property;

(ii)    On December 19, 2012, Defendant Tourand, having intentionally devised  a scheme with other Defendants to defraud BCSD and other schools and school districts of  money and property and for purposes

of executing such scheme, intentionally, improperly, illegally and without authority directed, coerced, demanded and caused BCSD employees to transmit by means of wire $3,247,200.00 from a BCSD account in Georgia to Defendant Pinnacle in Florida for the purported purchase of the Pinnacle Items without soliciting bids and without Board approval in violation of applicable BCSD policies. Defendant Tourand represented to BCSD's employees that the payment was legal and proper when he knew that it was not. Further, Defendant Tourand knew the funds that he demanded and caused to be transmitted by wire to Defendant Pinnacle were obtained from BCSD by fraud;

(iii)    On December 21, 2012, Defendant Tourand, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally, improperly, illegally and without authority directed, coerced, demanded and caused BCSD employees to transmit by means of wire from a BCSD account in Georgia to Defendant CompTech in Ohio $3,768,000.00 for the purported purchase of the CompTech Items which were completely incompatible with existing BCSD infrastructure without soliciting

bids and without Board approval in violation of BCSD policies.
Further, Defendant Tourand knew that the funds he demanded and
caused to be transmitted to Defendant CompTech were obtained from
BCSD without authority and by fraud in furtherance of Defendants'
scheme to defraud BCSD and other schools and school districts of
money and property; and

(iv)    Defendant Tourand intentionally transmitted or transferred in
interstate commerce money in the amount of $7,015,200.00 he knew
to have been taken from BCSD by fraud in furtherance of Defendants'
scheme to defraud BCSD of its money and property.

182.

Defendants Dallemand, Tourand, Progressive, Culver, Pinnacle, and
McFarlane knew the money transmitted by wire by BCSD from Macon, Georgia to
Pinnacle in Florida on December 19, 2012 was taken by fraud and in furtherance of
their intentional scheme to defraud BCSD and other schools and school districts.

183.

Defendants Dallemand, Tourand, Progressive, Culver, CompTech, and
Stephen knew the money transmitted by wire by BCSD from Macon, Georgia to
CompTech in Ohio on December 21, 2012 was taken by fraud and in furtherance
of their scheme to defraud BCSD and other schools and school districts.

184.

Pursuant to and in furtherance of their fraudulent scheme to defraud BCSD and other schools and school districts, the Defendants agreed to and voluntarily and intentionally participated in and knowingly committed multiple, continuous and related acts of wire fraud, mail fraud and violations of 18 U.S.C. § 2314 and 18 U.S.C. § 2315 as specified above.

185.

The acts of the Defendants set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5). Each of the Defendants committed the above listed acts willfully and in furtherance of their scheme to defraud BCSD and other schools and school districts and with actual knowledge that the acts were illegal.

186.

The Defendants have directly and indirectly conducted and participated in and agreed to conduct and participate in the conduct of the Enterprise's affairs through the pattern of racketeering activity described above in violation of 18 U.S.C. § 1962(c).

187.

The Defendants intentionally conspired to, agreed to and intentionally participated in the scheme in violation of 18 U.S.C. § 1962(c) as set forth herein in violation of 18 U.S.C. 1962(d).

188.

Defendant Dallemand fraudulently suppressed material information from BCSD in connection with the supposed purchase of the Pinnacle Items and the CompTech Items when he had a duty to disclose it.

189.

BCSD was directly damaged as a result of Defendants Dallemand's fraudulent suppression of material information as (i) neither Defendant CompTech or any other Defendant provided items that were compatible with BCSD's infrastructure and did not provide all of the CompTech Items for which BCSD paid $3,768,000.00, (ii) neither Defendant Pinnacle or any other Defendant provided the Pinnacle Items for which BCSD paid $3,247,200.00, (iii) Progressive was paid in $500,000.00 for inflated and unauthorized work and (iv) BCSD paid Defendant Dallemand $350,000.00 in severance pay.  BCSD continues to be damaged as a result of the CompTech purchases because of the cost associated with the storage of the 15,000 unusable NComputing devices and accessories.

190.

Defendants Dallemand, Tourand, Progressive, Culver, CompTech, and
Stephen fraudulently represented to BCSD's employees that the purchase of the
CompTech Items was legally authorized, that payment was legal and proper and
that the CompTech Items ordered were appropriate when they were not and the
Defendants knew they were not.

191.

BCSD's employees reasonably and justifiably relied on the fraudulent
representations of Defendants Dallemand, Tourand, Progressive, Culver,
CompTech, and Stephen and BCSD was directly damaged as a result as neither
Defendant CompTech nor any other Defendant provided items that were
compatible with BCSD's infrastructure and did not provide all of the CompTech
Items for which BCSD paid $3,768,000.00.

192.

In committing the above listed acts, Defendants Dallemand, Tourand,
Progressive, Culver, Pinnacle, and McFarlane fraudulently represented to BSCD's
employees that the purchase of the Pinnacle Items was legally authorized, that
payment was legal and proper and that the quantity ordered was appropriate when
it was not and they knew that it was not.  Defendants Dallemand, Tourand,
Progressive, Culver, Pinnacle, and McFarlane further falsely represented to

BCSD's employees that Defendant Pinnacle would provide the Pinnacle Items to BCSD when Defendant Pinnacle did not have the ability to provide the Items, had no intention of providing the Items, did not own the Items and the Items did not exist which these Defendants knew.

193.

BCSD's employees reasonably and justifiably relied on the fraudulent representations of Defendants Dallemand, Tourand, Progressive, Culver, Pinnacle, and McFarlane and was directly damaged as a result because Defendant Pinnacle never provided any of the Pinnacle Items for which BCSD paid $3,247,200.00.

194.

As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) and § 1962(d) set forth above, BCSD has been directly injured in its business and property in an amount that exceeds $7,865,200.00.

195.

The Defendants' pattern of racketeering activities both threaten repetition in the future and are part of the Defendants' regular way of doing business.

196.

Defendant Culver has publically announced that Progressive continues to do business and have contracts with CompTech involving government purchases.

197.

CompTech and Progressive have formed a partnership, CompTech-Progressive, formed on March 8, 2011.  United States Office of Personnel Management ("OPM") records reflect five recent contracts with OPM.  The "kickoff" for the first of these contracts was April 7, 2014 and the completion date for the last contract is July 6, 2017.  CompTech-Progressive is based in Ohio but the majority of its work is in Middle Georgia.

198.

CompTech maintains an office in Warner Robins, Georgia.

199.

Defendants CompTech, Progressive and Pinnacle continue to seek government contracts including contracts with schools and school districts.  Defendants CompTech and Progressive also seek government contracts as project managers which will enable them to perpetrate schemes and frauds involving kickbacks, fraudulent purchases and bid avoidance designed to enrich themselves like the scheme described in this Complaint.

200.

Defendants CompTech and Progressive continue to work in the computer industry allegedly developing software thereby providing the opportunity to develop schemes and to commit fraud like described in this Complaint.

201.

Defendant Dallemand is currently vigorously seeking employment throughout the country so he can again be employed as a school superintendent.

202.

In 2009, while Dallemand was superintendent of schools in Rochester, Minnesota a whistleblower suit was filed alleging concerns about spending and hiring practices. In 2012, the Rochester Minnesota school board paid $320,000.00 to settle the suit.

203.

Frauds and schemes are a regular way of doing business for Defendants as demonstrated by the existence of the Proscenium website which fraudulently posted advertisements for Proscenium Software for schools and school districts for over three years which software did not exist. The website advertised that Proscenium Software was copyrighted, when it was not, which further shows that frauds and schemes are a regular part of Defendants' business.

204.

Defendant Progressive in its attempts to obtain school district and government contracts, fraudulently represented its credentials on its website when it stated that Progressive was "Maturity Model Integrated Certified Company," and set forth credentials for "Software Engineering Institute and Carnegie Mellon"

which it did not have.  These representations further demonstrate that frauds and

schemes are regular part of Defendants Progressive and Culver's business and

attempts to gain school and government business.

## COUNT II – GEORGIA RICO

205.

The allegations of paragraph 1 through 204 are incorporated herein by

reference.

206.

This Count is asserted against all Defendants.

207.

Section 16-14-4 of the Georgia Racketeer Influenced and Corrupt

Organizations Act ("Ga. RICO") provides:

(a)     It shall be unlawful for any person, through a pattern of
        racketeering activity or proceeds derived therefrom, to
        acquire or maintain, directly or indirectly, any interest in
        or control of any enterprise, real property, or personal
        property of any nature, including money.

(b)     It shall be unlawful for any person employed by or
        associated with any enterprise to conduct or participate
        in, directly or indirectly, such enterprise through a pattern
        of racketeering activity.

(c)     It shall be unlawful for any person to conspire or
        endeavor to violate any of the provisions of subsection
        (a) or (b) of this Code section.  A person violates this
        subsection when:

(1)    He or she together with one or more persons conspires to violate any of the provisions of subsection (a) or (b) of this Code section and any one or more of such persons commits any overt act to effect the object of the conspiracy; or

(2)    He or she endeavors to violate any of the provisions of subsection (a) or (b) of this Code section and commits any overt act to effect to the object of the endeavor.

208.

Collectively and individually, the Defendants, through a pattern of racketeering activity, acquired and maintained control of and retained money from BCSD as set forth in Count I above.

209.

As noted in Count I above, Defendants, collectively and individually, were associated with the Enterprise. The purpose of the Enterprise was to intentionally defraud BCSD of its money and property to the Defendants' benefit.

210.

Defendants, collectively and individually, have conspired and agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity to commit overt acts to effect the object of the conspiracy and for the purpose of intentionally defrauding BCSD of money to the Defendants' benefit. The acts of racketeering of the Defendants were designed to deceive and, in fact, did deceive BCSD.

211.

The specific acts demonstrating a pattern of racketeering activity of each of the Defendants are set forth in Count I above and by this reference are incorporated herein.

212.

BCSD's employees reasonably and justifiably relied on the fraudulent representations of the Defendants set forth in Counts I above and BCSD was directly damaged as a result.

213.

As a direct result of Defendants' collective racketeering activities, BCSD has been damaged in an amount that exceeds $7,865,200.00.

214.

Defendants have acted with the specific intent to cause harm to BCSD. BCSD is therefore entitled to punitive damages against Defendants with no limitation regarding the amount of punitive damages which may be awarded.

## **COUNT III – FRAUD**

215.

The allegations of paragraphs 1 through 214 are incorporated herein by reference.

216.

This Count is asserted against all Defendants.

217.

The Defendants made false representations of material facts to BCSD's employees which the Defendants knew were false.  Defendants also fraudulently concealed material information from BCSD's Board that they had a duty to disclose.  The concealments of information and false representations were made for the purpose of and with the intention of deceiving BCSD and did, in fact, deceive BCSD.

218.

Certain false representations and concealments of material facts which Defendants made to or from BCSD and its employees are set forth in Count I above which are incorporated herein by this reference as if set forth fully herein.

219.

Additional false representations of material facts and concealments of fact made to BCSD and its employees by the Defendants include, but are not limited to, the following:

A. Defendants Dallemand, Tourand, Culver and Progressive each had a duty to disclose to the Board and seek Board approval of the purchase of the Pinnacle Items and the CompTech Items but instead conspired to avoid

bid procedures and fraudulently concealed the purchases from BCSD and its Board in violation of Board Policy DJED;

B. Defendants Dallemand, Culver and Progressive had a duty to disclose to BCSD and its Board the actual vendor of the Pinnacle Items, the ownership of the Pinnacle Items and that the Pinnacle Items did not exist but instead fraudulently concealed this information;

C. Defendants Dallemand and Tourand, who each had a duty to disclose to the Board and seek Board approval of expenditures in excess of $500,000.00, failed to disclose to BCSD and the Board the December 18, 2012 $500,000.00 increase in Purchase Order No. 70-36372  payable to Defendant Progressive. Defendant Progressive was eventually paid $1,000,000.00 for its work at Technical Project Manager.  Instead, Defendants Dallemand and Tourand conspired to avoid bid procedures and Board approval and fraudulently concealed this increase from BCSD and its Board in violation of Board Policy DJED;

D. On December 18, 2012, Defendant Dallemand while in his office and Defendants Progressive and Culver in the office of Mrs. Roberts falsely represented to BCSD and Mrs. Roberts that payment of the fraudulent Pinnacle Invoice was properly authorized and lawful when they knew

that it was not because of the complete failure to comply with Board

Policy DJED and because they knew the Pinnacle Items did not exist;

E. On December 18, 2012, Defendants Dallemand while in his office and

Defendants Progressive and Culver while in Mrs. Roberts' office falsely

represented  to Mrs. Roberts that payment of the unauthorized and

fraudulent Pinnacle Invoice was proper by demanding that she pay the

Pinnacle Invoice when they knew that Pinnacle did not own the Pinnacle

Items and did not have the capacity, expertise or ability to develop, set up

or configure the Pinnacle items or to train BCSD to use the Items;

F. Defendants Progressive and Culver fraudulently initiated, arranged and

negotiated the purchase from Pinnacle of the Pinnacle Items in which

they had an ownership interest and concealed their interest in the

Pinnacle Items from BCSD and its Board;

G. Defendants Progressive and Culver fraudulently acted as a vendor in

connection with the purchase of the NComputing devices which they had

a duty to disclose to BCSD but fraudulently concealed;

H. Defendants Progressive and Culver fraudulently acted as a vendor in

connection with the purchase of the Pinnacle Items which they had a duty

to disclose to BCSD but fraudulently concealed;

I.  On December 18, 2012, Defendants Dallemand, Tourand, Progressive and Culver falsely represented to Mrs. Roberts in her office that payment of the fraudulent CompTech Invoice was properly authorized and lawful when they knew it was not because of the complete failure to comply with Board Policy DJED;

J.  On December 18, 2012, Defendant Tourand approved the fraudulent Pinnacle Invoice for payment by BCSD when he knew that payment violated Board Policy DJED;

K.  On December 18, 2012, Defendant Tourand approved the fraudulent CompTech Invoice for payment by BCSD when he knew that payment violated Board Policy DJED;

L.  On December 18, 2012, Defendants Dallemand, Tourand, Progressive, Culver, Pinnacle and McFarlane made fraudulent representations to Sharon Roberts in her office as to the number of Proscenium Enterprise Suites and related systems and accessories BCSD needed by overcharging BCSD for unneeded equipment when they submitted the fraudulent Pinnacle Invoice for payment;

M. On December 19, 2012, Defendant Dallemand fraudulently represented to Mrs. Roberts in her office and in his office that payment of the fraudulent Pinnacle Invoice and the fraudulent CompTech Invoice was

authorized, lawful and proper when he knew that it was not because of the complete failure to comply with Board Policy DJED;

N. Defendants Progressive and Culver fraudulently represented to Mrs. Roberts in her office that the purchase of the Pinnacle Items was authorized, lawful and that payment was proper by executing the Program Manager's Certificate dated December 13, 2012 for payment when they knew that the purchase violated Board Policy DJED, when they knew that Pinnacle did not own the Pinnacle Items and where they had an ownership interest in the purported Pinnacle Items which Program Manager's Certificate was presented to BCSD for the first time by Defendant Culver in Mrs. Robert's office on December 18, 2012;

O. Defendants Pinnacle and McFarlane fraudulently and intentionally represented to BCSD's employees that Defendant Pinnacle would provide to BCSD the Pinnacle Items when it sent the fraudulent Pinnacle Invoice dated December 13, 2012 to Defendant Progressive which was presented to BCSD by Defendants Culver and Tourand in Mrs. Robert's office for the first time on December 18, 2012.  Defendant Pinnacle did not own the Pinnacle Items, did not have the ability, capacity or expertise to provide the Pinnacle Items and never provided the Pinnacle Items to BCSD;

P.  On December 18, 2012, Defendants Dallemand, Tourand, Progressive, Culver, CompTech and Stephen fraudulently represented to BCSD's employees and Mrs. Roberts in her office and Defendant Dallemand again on December 19, 2012 in his office that the CompTech Items were economical and compatible with existing BCSD infrastructure when they knew that they were not;

Q.  Defendants Dallemand, Tourand, Progressive, Culver, CompTech and Stephen fraudulently represented the cost of the CompTech Items to BCSD's employees and Mrs. Roberts in her office on December 18, 2012 when they caused BCSD's employees to pay the fraudulent CompTech Invoice;

R.  Defendants Dallemand, Tourand, Progressive, Culver, CompTech and Stephen fraudulently represented to BSCD's employees in Mrs. Robert's office and at the BCSD district office the role of Defendant CompTech in the purchase of the CompTech Items by invoicing BCSD for the purchase of the CompTech Items and demanding that Mrs. Roberts make payment to Defendant CompTech without disclosing that Defendant CompTech intended to promptly divert the funds paid to Defendant CompTech by BCSD to Defendant Progressive;

S.  Defendants Dallemand, Tourand, Progressive and Culver had a duty to disclose the role of Defendant CompTech in the purchase of the CompTech Items and that the funds received by Defendant CompTech would be promptly diverted to Defendant Progressive.  Instead, they concealed the role of Defendant CompTech from BCSD's employees in furtherance of their scheme to defraud BCSD;

T.  Defendants Dallemand, Tourand, Progressive and Culver fraudulently represented to BCSD's Board the hourly rates which would be charged by Defendant Progressive for personnel working on the Technology Project by representing to the Board in Defendant Progressive's September 17, 2012 Contract Administration Plan that certain rates would be charged and one week later significantly changing those rates without notice to the Board and concealed the new rates from the Board;

U.  Defendant Tourand, who had a duty to disclose his close business relationship with Defendant Progressive and Defendant Culver at the September 20, 2012 BCSD Board Meeting fraudulently concealed that relationship when he recommended that Defendant Progressive be selected as Technical Project Manager;

V.  Defendants Dallemand, Tourand, Progressive, Culver, CompTech and Stephen fraudulently represented that Defendant CompTech had or

would install the CompTech Items by coercing BCSD's employees, in

Mrs. Robert's office on December 18, 2012, and Defendant Dallemand

again on December 19, 2012 in Defendant Dallemand's office to pay the

CompTech Invoice which included charges for installation of the

CompTech Items when they knew that the CompTech Items were not

installed, and where Defendant CompTech had no intention of and never

installed the CompTech Items;

W. On or about January 24, 2013, Defendants Pinnacle, McFarlane,

Progressive and Culver fraudulently represented the contents of a

shipment of a single inexpensive, blank Ingram Micro server that was

password protected to Defendant Progressive by representing to the

BCSD Executive Director of Technology that it contained the Pinnacle

Items for which BCSD paid $3,247,200.00 when they knew that it did

not;

X. Defendants Pinnacle and McFarlane fraudulently represented that

Defendant Pinnacle would setup and configure the Pinnacle Items and

train BCSD personnel when Defendant Pinnacle had no intention of

doing so and, did not have the capability, ability or expertise to do and

where they did not even own the Pinnacle;

Y. On or about January 24, 2013, Defendants Pinnacle and McFarlane made fraudulent representations as to the ability of BCSD to access the password protected inexpensive Ingram Micro server which they provided BCSD; and

Z. On January 30, 2013, Defendants Pinnacle and McFarlane falsely represented to BCSD that Pinnacle would provide the Pinnacle Items and would train BCSD employees to operate the Proscenium Enterprise Suite software when Stanley Williams met with interim CFO Sharon Roberts.

220.

BCSD justifiably relied on the false representations of material facts of the Defendants listed above as well as those set forth in Count I and sustained total damages in an amount that exceeds $7,865,200.00 as a proximate result of the Defendants' material and false representations.

221.

Defendants acted with the specific intent to cause harm to BCSD. BCSD is therefore entitled to punitive damages against Defendants with no limitation regarding the amount of punitive damages which may be awarded.

222.

Defendants have acted in bad faith, been stubbornly litigious, and have

caused BCSD unnecessary trouble and expense so as to justify an award of

attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT IV - BREACH OF CONTRACT AS TO DEFENDANT DALLEMAND

223.

The allegations of paragraphs 1 through 222 are incorporated herein by

reference.

224.

This Count is asserted against Defendant Dallemand.

225.

Defendant Dallemand entered into a valid, binding, and enforceable

Employment Contract with BCSD whereby he took office as BCSD's

Superintendent beginning in February 2011.  Defendant Dallemand's Employment

Contract commenced on February 1, 2011 and was set to terminate on June 30,

2013.

226.

On December 5, 2012, upon the prior approval by BCSD to renew his

Employment Contract, Defendant Dallemand executed another Employment

Contract on December 5, 2012 to extend his term as BCSD's Superintendent. The term of the renewed Employment Contract was from January 1, 2013 until December 31, 2015.

227.

At all relevant times, BCSD fully performed its obligations pursuant to Defendant Dallemand's Employment Contracts.

228.

Defendant Dallemand was bound by the terms of his Employment Contracts with BCSD.

229.

Each of Defendant Dallemand's Employment Contracts required, among other things, that Defendant Dallemand:

- "[F]aithfully and diligently perform all duties, and shall assume all responsibilities connected with the Superintendency of the District as provided by law, regulations of the State Board, and by the policies, rules and regulations of the District.... ;

- [S]ee that all policies of the Board are implemented.... ;

- Prepares and submits to the Board recommendations relative to all matters requiring Board action, placing before the Board such necessary and helpful facts, information and reports as are needed to ensure the making of informed decisions.... ;

- Secures and nominates for employment the best qualified and most competent teachers and supervisory and administrative personnel; and

- Submit to the Board a clear and detailed explanation of any proposed procedure which would involve either departure from established policy or the expenditure of substantial sums."

230.

Defendant Dallemand materially breached his Employment Contracts with BCSD by failing to comply with Board Policy DJED in connection with the purchases from Defendants Pinnacle and CompTech and the additional $500,000.00 paid to Defendant Progressive as described in the Complaint.

231.

Defendant Dallemand materially breached his Employment Contracts with BCSD by failing to disclose and concealing from the Board the purchases from Defendants Pinnacle and CompTech and the additional $500,000.00 paid to Defendant Progressive as described in this Complaint.

232.

Defendant Dallemand materially breached his Employment Contracts with BCSD by failing to secure and nominate for employment the best qualified and most competent administrative personnel when he nominated Defendant Tourand to become BCSD's Executive Director of Technology.

233.

Defendant Dallemand materially breached his Employment Contracts by failing to submit to the Board a clear and detailed explanation of departures from established policy and the expenditure of substantial funds in connection with the amounts for the supposed purchases of the Pinnacle Items and the CompTech Items and the additional $500,000.00 paid to Defendant Progressive as described in this Complaint.

234.

As a direct and proximate result of Defendant Dallemand's material breaches of his Employment Contract, BCSD was damaged in an amount in excess of $7,865,200.00.

235.

The material breaches by Defendant Dallemand entail fraud as set forth in this Complaint and therefore punitive damages are appropriate. Defendant Dallemand also acted with the specific intent to cause harm to BCSD. Therefore, BCSD entitled to punitive damages against Defendant Dallemand with no limitation regarding the amount of punitive damages which may be awarded.

236.

Defendant Dallemand has acted in bad faith, been stubbornly litigious, and has caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT V- BREACH OF CONTRACT
## AS TO DEFENDANT PROGRESSIVE

237.

The allegations of paragraphs 1 through 236 are incorporated herein by reference.

238.

This Count is asserted against Defendant Progressive.

239.

BCSD has alleged that Services Agreement that is the subject of this Count V is void because it was entered into by Defendant Dallemand without authority. BCSD therefore only asserts this Count V in the event that the Court finds that the Services Agreement is not void.

240.

In response to RFP No. 13-09, Defendant Progressive submitted, on September 17, 2012, a document entitled "Contract Administration Plan" to BCSD which included, among other items, Defendant Progressive's detailed approach to

the planning and management of BCSD's Technology Project as well as proposed

hourly rates for Defendant Progressive's personnel to perform such services.

241.

On September 24, 2012, Defendant Dallemand and Defendant Culver, on

behalf of Defendant Progressive, executed a "Services Agreement" which

contained a summation of "Contract Services" and "Deliverables" which

Defendant Progressive was to furnish to BCSD.

242.

The Services Agreement submitted by Defendant Progressive contained a

significantly increased schedule for hourly rates for personnel than Defendant

Progressive's September 17, 2012 Contract Administration Plan. The Board was

never advised of and never approved Defendant Progressive's new schedule of

hourly rates.

243.

At all relevant times, BCSD fully performed its obligations pursuant to the

respective Services Agreement with Defendant Progressive.

244.

Defendant Progressive was bound by the Services Agreement and the

representations contained in the Contract Administration Plan, which served as the

basis for the award of the Services Agreement, in its role as Project Manager for BCSD's Technology Project.

245.

The Agreement provides in Section 4.01 that Progressive's services "shall be performed on a best efforts basis." Section 1.02 of the Agreement refers to deliverables in Exhibit B. Exhibit B provides that Progressive "shall participate in long range technical planning" and "evaluate and recommend new and evolving network technologies." Progressive breached these provisions and did not undertake the performance of the Agreement in good faith as set forth in Counts I and III above which are incorporated herein.

246.

Further Defendant Progressive, by and through Defendant Culver, materially breached the Services Agreement including its duty of good faith and fair dealing in performance of the Agreement with BCSD when it engaged in those actions that include, but are not limited to, the following:

A. Defendant Progressive materially breached its contract by failing to disclose to the Board and seek Board approval of the supposed purchases from Defendant Pinnacle and Defendant CompTech described in this Complaint and by failing to abide by the procedures mandated by Board Policy DJED;

B. Defendant Progressive materially breached its contract by, without authority and power, representing to Mrs. Roberts on December 18, 2012 in Roberts' office that payment of the fraudulent Pinnacle Invoice was authorized, lawful and proper when Defendant Progressive knew that it was not;

C. Defendant Progressive materially breached its contract when, without authority and power, Defendant Culver represented to Mrs. Roberts in her office on December 18, 2012 that payment of the fraudulent CompTech Invoice was authorized, lawful and proper when Defendant Progressive knew that it was not;

D. Defendant Progressive materially breached its contract by inflating the number of Pinnacle Items needed by BCSD for the Technology Project as evidenced by the fraudulent Pinnacle Invoice;

E. Defendant Progressive materially breached its contract by failing to ensure that Defendant Pinnacle properly developed, implemented and installed the Pinnacle Items;

F. Defendant Progressive materially breached its contract when Defendant Culver executed, without pertinent authority, the Program Manager's Certificate for payment to Defendant Pinnacle for the Pinnacle Items when Defendant Progressive knew that the purchase violated Board Policy DJED which Culver delivered to Sharon Roberts on December 18, 2012;

G. Defendant Progressive materially breached its contract by initiating and participating in the supposed purchase of the Pinnacle Items;

H. Defendant Progressive materially breached its contract by recommending to BCSD that the CompTech Items, which Defendant Progressive and others caused BCSD to purchase on December 21, 2012, were economical and compatible with existing BCSD infrastructure when Defendant Progressive knew that they were not;

I. Defendant Progressive materially breached its contract when it misrepresented the cost of the CompTech Items to BCSD;

J. Defendant Progressive materially breached its contract by initiating, participating and actually purchasing the CompTech Items in violation of its contract with BCSD; and

K. Defendant Progressive materially breached its contract by failing to install or have installed the CompTech Items.

247.

As a direct and proximate result of Defendant Progressive's material breaches of contract, BCSD has been directly and proximately damaged in an amount that exceeds $7,865,200.00.

248.

The material breaches by Defendant Progressive described above entail

fraud and therefore BCSD is entitled to recover punitive damages.  Defendant

Progressive also acted with the specific intent to cause harm to BCSD.  Therefore,

BCSD is entitled to punitive damages against Defendant Progressive with no

limitation regarding the amount of punitive damages which may be awarded.

249.

Defendant Progressive has acted in bad faith, been stubbornly litigious and

has caused BCSD unnecessary trouble and expense so as to justify an award of

attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT VI – BREACH OF CONTRACT
## AS TO DEFENDANT PINNACLE

250.

The allegations of paragraphs 1 through 249 are incorporated herein by

reference.

251.

This Count is asserted against Defendant Pinnacle.

252.

Georgia law permits multiple documents to be considered a single contract

"as long as all the necessary terms are contained in signed contemporaneous

writings." *Bd. of Regents for Univ. Syst. Of Georgia v. Tyson,* 261 Ga. 368, 369 (1991).

### 253.

Defendant Pinnacle prepared and sent the fraudulent Pinnacle Invoice dated December 13, 2012 to Defendant Progressive for $3,247,200.00 for the Pinnacle Items.  The Pinnacle Invoice included charges for setup and configuration of the Pinnacle Items and training.   The Pinnacle invoice was first presented to BCSD by Defendants Progressive and Culver along with Defendant Progressive's Program Manager's Certification of Payment on December 18, 2012.

### 254.

The Pinnacle Invoice and the BCSD general journal entry confirming the wiring of $3,247,200.00 to Defendant Pinnacle on December 19, 2012 serve as contemporaneous writings providing for the material terms of the contract.

### 255.

Defendant Pinnacle materially breached its contract with BCSD because Defendant Pinnacle has never provided the Pinnacle Items called for by the contract and for which BCSD paid Defendant Pinnacle.

256.

Pinnacle materially breached its contract with BCSD because Pinnacle failed to set up and configure the Pinnacle Items as called for by the contract and for which BCSD paid Defendant Pinnacle.

257.

Defendant Pinnacle materially breached its contract with BCSD because Defendant Pinnacle failed to train BCSD staff as called for by the contract and for which BCSD paid Defendant Pinnacle.

258.

As a direct and proximate result of these material breaches, BCSD has sustained direct damages in an amount in excess of $3,247,200.00.

259.

The material breaches by Defendant Pinnacle described above entail fraud and therefore BCSD is entitled to recover punitive damages. Defendant Pinnacle also acted with the specific intent to cause harm to BCSD. Therefore, BCSD is entitled to punitive damages against Defendant Pinnacle with no limitation regarding the amount of punitive damages which may be awarded.

260.

Defendant Pinnacle has acted in bad faith, been stubbornly litigious, and has caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT VII – BREACH OF CONTRACT AS TO DEFENDANT COMPTECH

261.

The allegations of paragraphs 1 through 260 are incorporated herein by reference.

262.

This Count is asserted against Defendant CompTech.

263.

Defendant CompTech, by and through Defendant Stephen and in conjunction with Defendant Progressive, fraudulently invoiced BCSD on December 17, 2012 in the amount of $3,768,000.00 for the CompTech Items which included a charge for installation of all of the CompTech Items.

264.

On December 21, 2012, a wire was sent from BCSD to Defendant CompTech for payment in full of the CompTech Invoice for the CompTech Items including installation of the CompTech Items.

265.

Defendant CompTech never installed the CompTech Items and never intended to install the CompTech Items despite invoicing BCSD and receiving payment from BCSD for installation.

266.

The CompTech Items are unusable and not compatible with existing BCSD infrastructure. The CompTech Items are not suited for BCSD and neither Defendant Progressive nor BCSD were ever able to have the CompTech Items operate as represented.

267.

Defendant CompTech materially breached the terms of its contract by not performing the services indicated despite receiving $3,768,000.00 in unauthorized payment from BCSD.

268.

As a direct result of this material breach, BSCD has sustained direct damages in an amount that exceeds $3,768,000.00.

269.

The material breaches by Defendant CompTech described above entail fraud and therefore BCSD is entitled to recover punitive damages. Defendant CompTech also acted with the specific intent to cause harm to BCSD. Therefore,

BCSD is entitled to punitive damages against Defendant CompTech with no limitation regarding the amount of punitive damages which may be awarded.

270.

Defendant CompTech has acted in bad faith, been stubbornly litigious, and has cause BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT VIII - NEGLIGENCE OF DEFENDANTS PROGRESSIVE AND CULVER

271.

The allegations of paragraphs 1 through 270 are incorporated herein by reference.

272.

This Count is asserted against Defendants Progressive and Culver.

273.

Defendants Progressive and Culver had a duty to insure that the appropriate BCSD policies were adequately followed and applied and had a duty not to act or otherwise conduct themselves in a manner that was in derogation of BCSD's policies.

274.

Defendants Progressive and Culver breached these duties by negligently approving and certifying payments to Defendants Pinnacle and CompTech and

without verifying compliance with BCSD Policy DJED and in violation of BCSD Policy DJED as described in this Complaint.

275.

Moreover, Defendants Progressive and Culver had a duty to insure that the services and products being obtained, i.e. the Pinnacle Items and the CompTech Items) were compatible, functional or otherwise appropriate for BCSD prior to such purchases.

276.

Defendants Progressive and Culver were negligent in failing to perform simple and basic due diligence to insure the compatibility of the CompTech Items with existing BCSD infrastructures before recommending and approving the payment of $3,768,000.00 to Defendant CompTech for the CompTech Items.

277.

Defendants Progressive and Culver negligently failed to test the CompTech Items to determine whether the CompTech Items were compatible and functional with BCSD's existing infrastructure.

278.

As a result of Defendants Progressive's and Culver's negligent failure to conduct simple and basic testing of the CompTech Items, BCSD incurred damages in an amount exceeding $3,768,000.00.

279.

Defendants Progressive and Culver negligently failed to test or have

demonstrated the capabilities and functions of the Pinnacle Items to determine

whether they were appropriate for the needs of BCSD prior to certifying for

payment by BCSD $3,247,200.00 to Defendant Pinnacle.

280.

Defendants Progressive and Culver negligently failed to determine whether

the Pinnacle Items even existed before certifying for payment by BCSD

$3,247,200.00 to Defendant Pinnacle for the Pinnacle Items.

281.

Defendants Progressive and Culver negligently failed to determine whether

the quantity of Proscenium Enterprise Suites ordered was the appropriate amount

for the needs and uses of BCSD.

282.

Defendants Progressive and Culver negligently failed to require that the

Pinnacle Items be delivered, setup and configured by Defendant Pinnacle.

283.

As a result of Defendants Progressive's and Culver's negligent failure to

perform simple tests or make reasonable inquiries, BCSD incurred damages in the

amount of $3,247,200.00 which it paid for the Pinnacle Items that Defendant Pinnacle never even provided to BCSD.

284.

As the proximate result of such breach, BCSD has sustained direct damages in an amount that exceeds $7,015,200.00.

## COUNT IX – UNJUST ENRICHMENT

285.

The allegations of paragraphs 1 through 284 are incorporated herein by reference.

286.

Defendants have unjustly retained to their benefit public funds from BCSD which they received to the detriment of BCSD as set forth in this Complaint.

287.

It would be unjust to allow Defendants to retain the public funds they received through their illegal and fraudulent conduct as set forth in this Complaint.

288.

Board Policy DJED requires the solicitation of bids, advertisement for bids, and Board approval for expenditures in excess of $6,001.00.

289.

All Defendants were aware of and are charged with knowledge of the requirements of Board Policy DJED but conspired to avoid the bidding requirements of Board Policy DJED as bids were not solicited, advertisements for bids were not made, and Board approval was not obtained for supposed purchases of the Pinnacle Items and CompTech Items described in this Complaint.

290.

Because Defendants knew that the competitive bid requirements were not complied with and because Defendants fraudulently conspired to avoid these requirements and avoid Board approval for the purchases and expenditures as described in this Complaint, Defendants are not entitled to payment.

291.

Defendant Pinnacle never provided the Pinnacle Items for which BCSD paid. The CompTech Items for which BCSD paid Defendant CompTech are unusable because they are incompatible with existing BCSD infrastructure and Defendant CompTech never installed or intended to install the CompTech Items for which Defendant CompTech was paid. The additional $500,000.00 paid to Progressive was unauthorized and violated Board policies. The severance paid to Defendant Dallemand was based on fraud.

292.

Defendants' retention of the fraudulently obtained public monies violates the principles of justice, equity, and good conscience.

293.

Defendants have acted in bad faith and unjustly enriched themselves at BCSD's expense and as a direct result of Defendants bad faith conduct have damaged BCSD in the amount of $7,865,200.00 as described in this Complaint and equitably ought to return or compensate BCSD in the amount of $7,865,200.00 for the fraudulently obtained funds.

294.

Defendants have acted with the specific intent to cause harm to BCSD. BCSD is therefore entitled to punitive damages against Defendants with no limitation regarding the amount of punitive damages which may be awarded.

295.

Defendants have acted in bad faith, been stubbornly litigious and have caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT X – BREACH OF FIDUCIARY DUTY
## AS TO DEFENDANT DALLEMAND

296.

The allegations of paragraphs 1 through 295 are incorporated herein by reference.

297.

This claim is asserted against Defendant Dallemand.

298.

Defendant Dallemand was in a fiduciary relationship with BCSD and the Board at all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013 and Defendant Dallemand owed BCSD and its Board the duties of a fiduciary throughout that entire period of time.

299.

Defendant Dallemand was in a relationship of trust and confidence with BCSD and its Board at all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013 and Defendant Dallemand owed BCSD and its Board a duty of utmost good faith.

300.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty to prepare and submit to the Board recommendations relative to all matters requiring action of the Board.

301.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to place before the Board such necessary and helpful facts, information and reports as were needed to insure the making of informed decisions by the Board.

302.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to keep the Board informed about the activities operating under the Board's authority.

303.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board a clear and detailed explanation of any proposed procedure which would involve departure from established policy.

304.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board a clear and detailed explanation of any proposed procedure which would involve the expenditure of substantial sums.

305.

Defendant Dallemand had a duty and responsibility to communicate to the Board and BCSD that, on December 19, 2012, he caused the District to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items.

306.

Defendant Dallemand, in bad faith, failed to communicate to the Board and BCSD that, on December 19, 2012, he caused BCSD to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items. Rather, Defendant Dallemand suppressed the disclosure of that information to the Board and BCSD.

307.

Defendant Dallemand had a duty and a responsibility to communicate to the Board and BCSD that, on December 21, 2012, he caused BCSD to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the CompTech Items.

308.

Defendant Dallemand had a duty and responsibility to communicate to the Board and BCSD that, on December 18, 2012, a $500,000.00 increase was made to Purchase Order No. 70-36372 payable to Defendant Progressive, bringing the total amount to be paid to Defendant Progressive to $1,000,000.00.

309.

Defendant Dallemand, in bad faith, breached his duties and responsibilities to the Board and BCSD and failed to communicate that, on December 18, 2012, a $500,000.00 increase was made to Purchase Order No. 70-36372 payable to Defendant Progressive, bringing the total amount to be paid to Defendant Progressive to $1,000,000.00. Rather, Defendant Dallemand suppressed the disclosure of that information to the Board and BCSD.

310.

As a direct and proximate result of Defendant Dallemand's breach of his fiduciary duties, BCSD entered into a Severance Agreement with Defendant Dallemand and paid Defendant Dallemand $350,000.00.

311.

As the proximate result of such breach, BSCD has sustained direct damages in an amount that exceeds $7,865,200.00.

312.

Defendant Dallemand acted with the specific intent to cause harm to BCSD. Therefore, BCSD is entitled to punitive damages against Defendant Dallemand with no limitation regarding the amount of punitive damages which may be awarded.

313.

Defendant Dallemand has acted in bad faith, has been stubbornly litigious, and has caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT XI – INDUCING AND AIDING BREACH OF FIDUCIARY DUTY

314.

The allegations of paragraphs 1 through 313 are incorporated herein by reference.

315.

This Count is asserted against Defendants Tourand, Progressive, Culver, CompTech, Stephen, Pinnacle and McFarlane (the "Count XI Defendants").

316.

The Count XI Defendants, through their improper, wrongful and fraudulent activities described in Counts I through X of this Complaint, wrongfully, and without privilege intentionally colluded and acted to procure a breach of Defendant Dallemand's fiduciary duty to BCSD and its Board.

317.

The Count XI Defendants acted with knowledge that Defendant Dallemand owed a fiduciary duty to BCSD and its Board and acted purposefully and with intent to injure BCSD and its Board.

318.

The Count XI Defendants knowingly and substantially assisted Defendant Dallemand in breaching his fiduciary duty to BCSD and its Board as set forth in Counts I through X of this Complaint.

319.

As a direct and proximate result of the Count XI Defendants' actions and assistances, Defendant Dallemand breached his fiduciary duties to BCSD.

320.

The Count XI Defendants acted purposefully, with malice and with the intent to injure BCSD and its Board and as a result directly and proximately damaged BCSD in an amount in excess of $7,865,200.00.

321.

The Count XI Defendants acted with the specific intent to cause harm to BCSD.  Therefore, BCSD is entitled to punitive damages against the Count XI Defendants with no limitation regarding the amount of punitive damages which may be awarded.

322.

The Count XI Defendants have acted in bad faith, been stubbornly litigious, and have caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT XII – RESCISSION OF THE SEVERANCE AGREEMENT

323.

The allegations of paragraphs 1 through 322 are incorporated herein by reference.

324.

As has been alleged above in Paragraphs 153-161 and Counts I, II, and III, Defendant Dallemand made false representations and concealed material facts from BCSD concerning the payments that were made to Defendants Pinnacle, CompTech, and Progressive.

325.

Defendant Dallemand knew that these representations and concealments were false.

326.

Defendant Dallemand made these false representations and concealments with the intent to induce BCSD to enter into the Severance Agreement.

327.

BCSD justifiably relied on Defendant Dallemand's false representations and concealments because Defendant Dallemand owed a fiduciary duty to BCSD.

328.

BCSD was damaged as a result of Defendant Dallemand's false representations and concealments, which damages include the $350,000.00 that BCSD paid to Defendant Dallemand under the terms of the Severance Agreement.

329.

After Defendant Dallemand left his position as superintendent of the Bibb County school system, he lost his teacher's license and BCSD hired a new superintendent.

330.

After BCSD discovered Defendant Dallemand's fraud, it was both impossible and unreasonable for BCSD to offer to restore Defendant Dallemand to his position as superintendent because he could no longer serve in that position due to the loss of his teacher's license and that position was already held by someone else.

331.

The Severance Agreement is void under O.C.G.A. § 13-5-5 because of the fraud committed by Defendant Dallemand and BCSD is entitled to rescission of the Severance Agreement.

## DEMAND FOR JURY TRIAL

BCSD demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BCSD prays for the following relief:

1.   The issuance of process as to each Defendant;

2.   A Judgment in favor of Plaintiff and against each Defendant in
     amount that includes:

     a.   Damages in an amount not less than $7,865,200.00;

     b.   As to BCSD's claims set forth in Count I above, threefold the
          amount of damages BCSD has sustained by reason of the
          violations of 18 U.S.C. § 1962 that are described in Count I,
          and the cost of this suit including a reasonable attorney's fee;

     c.   As to BCSD's claims that are set forth in Count II above, three
          times the actual damages sustained by reasons of the violations
          of O.C.G.A. § 16-14-4 that are described in Count II, punitive
          damages, attorneys' fees in the trial and appellate courts and
          costs of investigation and litigation reasonably incurred;

     d.    Punitive damages in such amount that will punish, penalize and
          deter each Defendant;

     e.    Expenses of litigation, including attorneys' fees pursuant to

         O.C.G.A. § 13-6-11;

     f.    Interest;

     g.    The costs of this action; and

3.    Such other relief that this Honorable Court deems just and

appropriate.

Date:  April 3, 2017.


          /s/Warren W. Plowden, Jr.
          W. WARREN PLOWDEN, JR.
          STATE BAR NO. 582200
          Attorney for Plaintiff
          Bibb County School District


          /s/Thomas W. Joyce
          THOMAS W. JOYCE
          STATE BAR NO. 405527
          Attorney for Plaintiff
          Bibb County School District


          /s/Brandon A. Oren
          BRANDON A. OREN
          STATE BAR NO. 554277
          Attorney for Plaintiff
          Bibb County School District

OF COUNSEL:
JONES CORK, LLP
435 Second Street
P.O. Box 6437
Macon, Georgia 31208-6437
(478) 745-2821
warren.plowden@jonescork.com
tom.joyce@jonescork.com
brandon.oren@jonescork.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served all Defendants with the foregoing First Amended Complaint on April 03, 2017 by using the Court's CM/ECF facilities:

Date:  April 3, 2017.

<div style="margin-left:40%">

/s/Thomas W. Joyce
THOMAS W. JOYCE
Jones Cork, LLP
P.O. Box 6437
Macon, Georgia 31208-6437
Phone: (478) 745-2821
Fax: (478) 743-9609
Tom.joyce@jonescork.com

</div>