IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **BIBB COUNTY SCHOOL DISTRICT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 5:16-CV-549 (MTT) |
| ) | |
| **ROMAIN DALLEMAND,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

Isaac Culver, III and Progressive Consulting Technologies Inc. (the "Progressive Defendants") jointly move to dismiss Counts I, III, V, VIII, and XI of Plaintiff's Amended Complaint (Doc. 59) for failure to state a claim. Doc. 70. Alternatively, the Progressive Defendants move the Court to compel arbitration of their claims. The motion to dismiss is **DENIED**. The motion to compel arbitration remains under advisement.

**A.   The Progressive Defendants have not shown that Counts I, III, and VIII are time-barred**

The Progressive Defendants argue that Counts I (federal RICO), III (fraud), and VIII (negligence) are barred by the applicable four-year statutes of limitation. Doc. 70-1 at 5-9. "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

The parties' briefs focus on when the applicable statutes of limitations began to accrue, the Progressive Defendants contending that the accrual for all claims began no later than October 11, 2012 (two months outside of the limitations period), when Progressive submitted, and the Plaintiff paid, Progressive's first invoice for $500,000. Doc. 70-1 at 7-9. Recognizing that the discovery rule is applicable to the RICO and fraud claims, the Progressive Defendants further argue that fellow-Defendant

Dallemand's knowledge of a "potential RICO violation" and "the alleged fraud" can be imputed to the Plaintiff.  *See id.* at 8 ("Plaintiff clearly discovered the alleged fraud on September 24, 2012 at the very latest when the Superintendent of BCSD was presented with a Services Agreement that, according to Plaintiff, contained significantly higher rates."); *see also id.* at 7-8 (relying on Dallemand's removal of Ron Collier as Chief Financial Officer and investigation of Collier's department as reason to discover "a potential RICO violation").  The Plaintiff's allegations place Dallemand squarely in the middle of the scheme; accordingly, any argument that the Plaintiff knew or should have known something simply because Dallemand knew it is, to be charitable, surprising.[1]  Clearly, the Court cannot say as a matter of law that a fraudster's knowledge of his employer's injury can be imputed to his employer when the employer is the victim of the fraud.

Moreover, as to the state-law claims, the Plaintiff has alleged acts of actual fraud involving moral turpitude by the Progressive Defendants that concealed the Plaintiff's injury well into the limitations period.  *Cf. Shipman v. Horizon Corp.*, 245 Ga. 808, 809, 267 S.E.2d 244, 246 (1980). ("[W]here the gravamen of the action is other than actual fraud, such as constructive fraud, negligence, breach of contract, etc., . . . separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing his action [will toll the statute of limitations] until the fraud is discovered or should have been discovered . . .").[2]  And, as to the federal RICO claim, whether the Plaintiff knew or should have known of the October 11, 2012 injury is also not

---

[1]   To the extent that the Progressive Defendants are arguing that the Plaintiff was otherwise put on notice of an injury by these events, they have certainly not demonstrated that this conclusion follows as a matter of law from the Plaintiff's Amended Complaint.  The Court recognizes that these considerations do not negate dismissal of the negligence claim, where the discovery rule does not appear applicable; however, tolling, discussed hereinafter, does.

[2]   Tolling of an actual fraud claim is more easily proven.  "[W]here . . . actual fraud is the gravamen of the action . . . the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered.  No other independent fraudulent act is required to toll the statute." *Id.* at 808, 267 S.E.2d 244, 246.

dispositive. While recovery for the October 11, 2012 injury under RICO may be time-barred, the Plaintiff does not seek recovery for this injury, but rather the more substantial injuries (which are alleged as separate predicate acts), occurring later, within the limitations period. *Cf. Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013) ("[I]f a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act.").

Because it is not "apparent from the face of the complaint" that Counts I, III, and VIII are time-barred, these claims may not be dismissed on statute of limitations grounds.

### B. Progressive's merger defense does not warrant dismissal of Counts III and V

Progressive argues that Count V, Progressive's breach of contract—the September 24, 2012, "Services Agreement" and the representations in the previous, September 17, 2012, "Contract Administration Plan"—must be dismissed because the merger clause in the Services Agreement prevents consideration of the Contract Administration Plan.[3] But Progressive is not entitled to raise this defense because it failed to raise it in its motion to dismiss the Plaintiff's initial Complaint (Doc. 25).

Under Federal Rule of Civil Procedure 12(g)(2), a defendant, subject to a few exceptions, may not raise a defense in a Rule 12 motion that was "available" to it, "but omitted from [an] earlier motion." Count V of the Plaintiff's initial Complaint contained a breach of contract claim against Progressive that was, for all relevant purposes, identical to Count V of the Amended Complaint. The substance of the alleged contract, including the incorporation of the representations contained in the Contract Administration Plan, is the same, word-for-word, in the two complaints. *Compare* Doc. 1 ¶ 191 ("Defendant Progressive was bound by the Services Agreement *and the*

---

[3] The Progressive Defendants fail to explain why the merger doctrine warrants dismissal of the entire breach of contract claim, which, on its face, does not solely rely on the representations in the Contract Administration Plan. *See* Doc. 59 ¶ 246.

*representations contained in the Contract Administration Plan*, which served as the basis for the award of the Services Agreement, in its role as Project Manager for BCSD's Technology Project.") (emphasis added) *with* Doc. 59 ¶ 244 (same).  The difference between the breach of contract claims alleged in the two complaints is that in the Amended Complaint the breach of contract claim is made in the alternative to the Plaintiff's separate claim, not made in the initial Complaint, that the Services Agreement is void for lack of authority.[4]  *See* Docs. 1 ¶¶ 185-95; 59 ¶ 239.  But the Plaintiff's contention that Progressive is bound by "the representations contained in the Contract Administration Plan," which is what arguably runs afoul of the merger clause in the Services Agreement, has not changed an iota.  Accordingly, the merger defense to Count V was available to Progressive when it filed its previous motion; Progressive may not raise it now.[5]

It appears, though this is not at all clear from their briefs, that the Progressive Defendants also raise merger as a bar to any of the Plaintiff's claims for fraud in Count III arising out of acts prior to the execution of the Services Agreement.  *See* Doc. 70-1 at 11 (seeking dismissal of breach of contract claim alone); *see also id.* at 9 (referring to

---

[4]  The Bibb County School District operates "by and through the Board of Public Education for Bibb County, Georgia (the 'Board')."  Doc. 59 ¶ 14. In the Amended Complaint, the Plaintiff alleges that the Services Agreement is void because it was executed only by Dallemand, who was never authorized by the Board "to either negotiate or execute a contract with Defendant Progressive," and "contained a significantly increased schedule for hourly rates for personnel than the . . . Contract Administration Plan" previously presented to the Board for approval.  *Id.* ¶ 53-57.  "District officials are only authorized to disburse funds upon order of the board of education and a district official has no authority to obligate a board of education under any agreement unless such official has previously obtained authorization from the board of education.  Agreements obtained without proper authorization from the board of education are void."  *Id.* ¶ 30.  Under the Board policies, "All contracts for the purchase of equipment, materials, supplies and services which exceed $500,000 shall be awarded by the board of education. The Superintendent or his Director of Purchasing shall have the authority, within budget limitations to award all other contracts for the purchase of equipment, supplies and services."  *Id.* ¶ 28.

[5]  The Progressive Defendants' reply brief refers to a "merger and rescission" defense.  Doc. 89 at 2, 4.  Progressive has never articulated a rescission defense to the Plaintiff's breach of contract claim.  The Progressive Defendants' reference to a rescission defense appears to relate to their argument that the Plaintiff's claims for fraud preceding the execution of the Services Agreement in Count III are barred by the merger clause because the Plaintiff did not rescind the contract prior to bringing this action.  Doc. 70-1 at 10-11.

fraud in caption); Doc. 89 at 2 (making one, isolated reference to fraud). Again, this defense was available to the Progressive Defendants when they filed their first motion to dismiss, and they cannot raise it now. Moreover, the Progressive Defendants miss the import of the Plaintiff's lack-of-authority allegation. They somehow construe it as implicating the doctrine of fraudulent inducement and from there, rescission, in support of their merger defense to the Plaintiff's allegations of preformation fraud. Docs. 70-1 at 10; 89 at 2-4. But the allegation is that Dallemand had no authority to bind the Plaintiff and, accordingly, no contract was formed with Progressive regardless of any fraud by the Progressive Defendants.

Ironically, when the Plaintiffs did not claim that the Services Agreement was void for lack of authority and the Plaintiff's breach of contract claim was not made in the alternative to this claim, the Defendants may have had a merger defense to any fraud preceding the execution of the Services Agreement. But the allegation that the Plaintiff never agreed to the Services Agreement, rather than making the merger defense "available," undermines its premise—Plaintiff being bound by the merger clause in the Services Agreement.

In sum, to the extent that the Progressive Defendants assert a merger defense to Count III, the defense was available to them when they filed their previous motion, so Rule 12(g)(2) bars them from asserting it here. But, in any event, the merger defense does not warrant dismissal of Count III in light of the Plaintiff's allegation that the Services Agreement containing the merger clause is void for lack of authority.

**C.    A claim for inducing and aiding breach of fiduciary duty is recognized under Georgia law**

Lastly, the Progressive Defendants argue that Count XI, inducing and aiding a breach of fiduciary duty, does not state a recognized claim under Georgia law. Doc. 70-1 at 13-14. While this once appeared correct, it is no longer after *Insight Technology, Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 23-26, 633 S.E.2d 373, 377-79 (2006), as

noted by the Plaintiff in its response brief.  The Progressive Defendants' reply brief does not even acknowledge *Insight Technology*, instead doubling down on Eleventh Circuit cases decided before *Insight Technology*.  Doc. 89 at 4 (citing *Munford v. Valuation Research Corp. (Matter of Munford, Inc.)*, 98 F.3d 604, 613 (11th Cir. 1996) and *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1157 (11th Cir. 2006)[6]).

"[F]ederal courts [sitting in diversity] must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).  Of course, district courts are bound by the decisions of the Eleventh Circuit; but, as the Eleventh Circuit has recognized, when "state law changes or is clarified in a way that is inconsistent with the state law premise of one of our earlier decisions, the prior panel precedent rule does not bind us to follow our earlier decision." *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009) (citation and quotation marks omitted).  The Court has reviewed the Eleventh Circuit opinions cited by the Defendants.  The Eleventh Circuit simply relied on the absence of Georgia case law expressly recognizing a claim for inducing and aiding a breach of fiduciary duty.  *See, e.g.*, *Official Comm. of Unsecured Creditors of PSA, Inc.*, 437 F.3d at 1157.[7]  But after *Insight Technology*, it can no longer be said that "Georgia courts have not recognized a cause of action for aiding and abetting a breach of fiduciary duties." *Cf. id.*  Accordingly, in light of *Insight*

---

[6]   *Official Committee of Unsecured Creditors of PSA, Inc.* was published January 30, 2006.  *Insight Technology* was published June 20, 2006.

[7]   *Monroe v. Board of Regents of the University System of Georgia*, 268 Ga. App. 659 S.E.2d 219 (2004), which was relied on in *Official Committee of Unsecured Creditors of PSA, Inc.* for this proposition, was expressly clarified by *Insight Technology*.  *Insight Tech., Inc.*, 280 Ga. App. at 23, 633 S.E.2d at 377.

*Technology*, the cases cited by the Progressive Defendants do not require dismissal of Count XI.

The Progressive Defendants' motion (Doc. 70) is accordingly **DENIED in part**, i.e., to the extent that it seeks dismissal of Counts I, III, V, VIII, and XI, and remains under advisement to the extent that it seeks to compel arbitration. As the Court noted at the July 18, 2017 hearing, the parties have until August 8, 2017 to submit further briefs addressing the considerations raised by the Court regarding the motion to compel arbitration.[8]

**SO ORDERED**, this 21st day of July, 2017.

                                           S/ Marc T. Treadwell
                                           MARC T. TREADWELL, JUDGE
                                           UNITED STATES DISTRICT COURT

---

[8] The Progressive Defendants have also filed a motion requesting "a hearing for oral argument on [their] 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint." Doc. 71. This motion is **MOOT**.