IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BIBB COUNTY SCHOOL DISTRICT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ROMAIN DALLEMAND, *et al.*, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 5:16-CV-549 (MTT) |

## ORDER

Isaac Culver, III, and Progressive Consulting Technologies Inc. (the "Progressive Defendants") have moved to compel arbitration pursuant to an arbitration clause in a Services Agreement allegedly executed by the Bibb County School District (the "School District"). Doc. 70. This Order addresses whether the alleged arbitration agreement contains a delegation clause—a provision giving the arbitrator the authority to resolve disputes relating to the enforceability and validity of the agreement. If it does not, then this Court must decide the issue of arbitrability. As discussed below, the Court finds no delegation clause in the arbitration agreement.

## I. BACKGROUND

On December 15, 2016, the School District filed an eleven-count complaint against Defendants Romain Dallemand, Thomas Tourand, Progressive Consulting Technologies, Inc., Isaac Culver, III, CompTech Computer Technologies, Inc., Allen J. Stephen, III, Pinnacle/CSG, Inc., and Cory McFarlane. *See generally* Doc. 1. That complaint asserted claims against the Progressive Defendants for federal and state

RICO violations (Counts I and II), fraud (Count III), breach of contract (Count V against Defendant Progressive but not Culver), negligence (Count VIII), unjust enrichment (Count IX), and inducing and aiding breach of fiduciary duty (Count XI). *See generally id.* In response to the Progressive Defendants' motion to dismiss, or in the alternative, to compel arbitration (Doc. 25), the School District filed an amended complaint on April 3, 2017. *See generally* Doc. 59. Notably, the amended complaint alleges that the Services Agreement is void and thus asserts a contract claim against the Progressive Defendants only in the alternative. *See id.* at ¶¶ 30, 56, 164, 169, 239, 331. The Progressive Defendants again moved to dismiss, or in the alternative, to compel arbitration. Doc. 70. On July 18, 2017, the Court held a hearing to consider various motions. *See generally* Doc. 98. At this hearing, the Court announced it would deny the Progressive Defendants' motion to dismiss[1] but questioned the adequacy of the parties' briefs on the arbitration issue. *Id.* at 2. Thus, the Court instructed both parties to submit supplemental briefs regarding the motion to compel arbitration. *Id.* The parties complied. Docs. 120; 121.

Only in their supplemental brief do the Progressive Defendants claim there is a delegation clause in the Services Agreement. Doc. 120 at 7. The failure to raise this issue earlier is significant given that the School District contends the Services Agreement was the very vehicle employed by the Progressive Defendants and former District Superintendent and Co-Defendant Romain Dallemand, who purportedly signed the agreement on behalf of the School District, to defraud the School District of millions of dollars. *See, e.g.*, Doc. 121 at 10-12. Not surprisingly, the School District claims that Dallemand, as the Progressive Defendants' co-conspirator in their fraudulent scheme,

---

[1] The Court did so on July 21, 2017. Doc. 99.

could not by his fraud bind the School District to a contract. *Id.* at 12-13. Moreover, apart from fraud, the School District argues that Dallemand never had authority to sign the agreement because the Board had not given him that authority. *Id.* at 9.

## II. **DISCUSSION**

The enforceability of an arbitration agreement is a matter of contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, the "question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis added) (internal quotation marks, citations, and alterations omitted). Parties may show their clear and unmistakable intent to submit to an arbitrator the threshold issue of arbitrability by including a delegation clause in their arbitration agreement. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." (internal citations omitted)). If an arbitration agreement contains a delegation clause, the arbitrator, rather than the Court, determines arbitrability. *See id.* at 72.

In *Rent-A-Center*, the United States Supreme Court clearly stated what language constitutes a delegation clause; a delegation clause exists when an arbitration agreement expressly gives "the arbitrator exclusive authority to resolve any dispute relating to the . . . enforceability . . . of [the] Agreement." *Rent-A-Center*, 561 U.S. at 71 (internal quotation omitted). There is no real mystery to this, and whether a delegation

clause exists is generally easy to determine.  *See, e.g., Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263 (11th Cir. 2017) (noting that the relevant arbitration agreement contained a delegation clause which stated "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable."); *Parnell v. Cashcall, Inc.*, 804 F.3d 1142, 1147-48 (11th Cir. 2015) (holding that a sub-provision defining the word "dispute" to include "any issue concerning the validity, enforceability, or scope of . . . the Arbitration agreement" is an express delegation clause that "unambiguously commits to the arbitrator the power to determine the enforceability of the agreement to arbitrate.") (internal quotations omitted); *Johnson v. Keybank Nat'l Ass'n*, 754 F.3d 1290, 1292 (11th Cir. 2014) (noting that the relevant agreement contained a delegation clause which stated "[a]ny Claim shall be resolved . . . by binding arbitration" and defined a "Claim" as "any claim, dispute, or controversy between you and us arising from or relating to this Agreement . . . including, without limitation, the validity, enforceability, or scope of this Arbitration Provision or this Deposit Account Agreement.").[2]

Here, the Progressive Defendants belatedly contend that the first sentence of the arbitration agreement contains a delegation clause which is "broad in scope." Doc. 120

---

[2] Parties may also incorporate the American Arbitration Association's Commercial Arbitration Rules into their arbitration agreement to establish a delegation clause.  *See, e.g., U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014); *see also Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005) ([b]y incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").  Of relevance, the AAA Rules provide that the arbitrator shall have the power to "rule on his or her own jurisdiction, including any objections with respect to th*e existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim*." *Commercial Arbitration Rules and Mediation Procedure*, AM. ARB. ASS'N Rule 7(a) (Oct. 13, 2013), *available at* https://www.adr.org/sites/default/files/CommercialRules.pdf (emphasis added).

at 7. Indeed, what they contend to be the delegation clause is the arbitration agreement itself.

> Section 6.04 – Arbitration: *Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration in accordance with the Arbitration Rules of the state* [sic.] *of Georgia*. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Qualified Arbitrators shall be selected by the parties in accordance with the Arbitration Rules of the state [sic.] of Georgia. Each party shall have the right of discovery as set forth in the Federal Rules of Civil Procedure. The Arbitration shall be administered by a mutually agreed upon third party.

Doc. 70-2 at 4 (emphasis added). The Progressive Defendants cite no authority supporting their assertion that the general delegation of disputes to arbitration can also be a delegation of the issue of arbitrability. Most certainly, this is because none exists. Nothing in this sentence shows unambiguous evidence that the parties intended to commit the issue of arbitrability to an arbitrator. The Supreme Court could not have been more clear—that intent must be "clear and unmistakable." *First Options*, 514 U.S. at 944; *see also Rent-A-Center*, 561 U.S. at 69 n.1 (noting the requirement for "clear and unmistakable evidence" to arbitrate arbitrability is a heightened standard). Accordingly, the Court has the power to address the validity and enforceability of the arbitration agreement.

The Progressive Defendants do not address in their briefs the standard the Court must use to resolve the arbitrability issue; the School District does. The Progressive Defendants shall respond to the School District's position on that issue within fourteen days.

**SO ORDERED**, this 18th day of September, 2017.

<u>S/ Marc T. Treadwell</u>  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT