### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **BIBB COUNTY SCHOOL DISTRICT,** | |
| Plaintiff, | |
| v. | Civil Action No. 5:16-cv-549 (MTT) |
| **ROMAIN DALLEMAND; CLIFFARD WHITBY; WHITBY, INC.; CENTRAL GEORGIA PARTNERSHIP FOR INDIVIDUAL AND COMMUNITY DEVELOPMENT;  POSITIVENTURES INITIATIVE, LLC; INTEGRATED TECHNOLOGIES CONSULTING, LLC; PROGRESSIVE CONSULTING TECHNOLOGIES, INC.; PROGRESSIVE PROPERTY MANAGEMENT, LLC; ISAAC CULVER, III; DAVE CARTY; COMPTECH COMPUTER TECHNOLOGIES, INC.; ALLEN J. STEPHEN, III; PINNACLE/CSG, INC.; CORY MCFARLANE; HAROLD KNOWLES; and KNOWLES & RANDOLPH, P.A;** | Jury Trial Demanded |
| Defendants. | |

### SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Bibb County School District (hereinafter referred to as "BCSD")

and sets forth the following as its Second Amended Complaint against Defendants Romain

Dallemand; Cliffard Whitby; Whitby, Inc.; Central Georgia Partnership for Individual and

Community Development; Positiventures Initiative, LLC; Integrated Technologies Consulting,

LLC; Progressive Consulting Technologies, Inc.; Progressive Property Management, LLC; Isaac

Culver, III; Dave Carty; CompTech Computer Technologies, Inc.; Allen J. Stephen, III;

Pinnacle/CSG, Inc.; Harold Knowles; Knowles and Randolph, P.A.; and Cory McFarlane individually and collectively as follows:

## I.  JURISDICTION, VENUE, AND PARTIES

### a.  Subject Matter Jurisdiction

1.

This Court has federal subject matter jurisdiction of the federal RICO claim as a federal question pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964 (civil remedies for RICO violations) and supplemental jurisdiction of the State law claims pursuant to 28 U.S.C. § 1367(a).

### b.  Venue

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b) and 18 U.S.C. § 1965(a) and (b).  Venue and personal jurisdiction is proper under 18 U.S.C. § 1965(a) because Defendants reside, are found, have an agent, or transact their affairs in this District. Venue and personal jurisdiction is also proper under 18 U.S.C. § 1965(b) in this forum because the ends of justice require that any Defendant residing in another district be brought before this Court.

3.

Venue is proper under 28 U.S.C. § 1391(a) and (b) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.  Venue is also proper under principles of pendent venue because all claims arise out of the same nucleus of operative facts. Defendants are subject to personal jurisdiction in this District, having had more than minimum

contacts with Georgia, as their conduct and connection with Georgia are such that they should reasonably anticipate being haled into Court here.

### c.  Parties

4.

Plaintiff Bibb County School District ("BCSD"), by and through the Board of Public Education for Bibb County, Georgia (the "Board of Education"), has established and it operates and maintains a public school system for the school-age children of Macon-Bibb County, Georgia.  BCSD is a body corporate capable of holding a legal or beneficial interest in property and does, in fact, hold legal interests in property in Bibb County.  The BCSD is a local government that received federal assistance in excess of $10,000 during the one-year periods beginning January 1, and ending December 31, for the calendar years 2012, 2013, 2014, 2015, 2016 and 2017.  The BCSD resides at 484 Mulberry Street, Macon- Bibb County, Georgia.

5.

Defendant Romain Dallemand ("Dallemand") is a former Superintendent of Schools for the BCSD.  Defendant Dallemand is a resident of Naples, Collier County, Florida.  Defendant Dallemand is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant Dallemand at 291 18th Avenue NE, Naples, Collier County, Florida.

6.

Defendant Cliffard Whitby ("Whitby") is a resident of Monroe County, Georgia. Defendant Whitby is subject to the venue and jurisdiction of this Court.  Defendant Whitby is the Chief Executive Officer, Chief Financial Officer and Registered Agent of Defendant Whitby, Inc.  Defendant Whitby is also the Executive Director of Defendant Central Georgia Partnership

for Individual and Community Development ("CGPICD").  Additionally, Defendant Whitby is the Registered Agent for Defendant Positiventures Initiative, LLC.  Service of process may be perfected upon Defendant Whitby at 304 Deer Creek Drive, Monroe County, Georgia 31029.

7.

Defendant Whitby, Inc. is a Georgia for profit corporation whose principal office and principal place of doing business is 1680 Broadway, Macon-Bibb County, Georgia.  Defendant Whitby, Inc. was formed and created by Defendant Whitby.  Defendant Whitby, Inc. is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant Whitby, Inc. by and through its Registered Agent, Defendant Whitby, at 1680 Broadway, Macon-Bibb County, Georgia.

8.

Defendant CGPICD is a purported domestic non-profit corporation located in Macon, Bibb County, Georgia.  Defendant CGPICD was formed and created by Defendant Whitby. Defendant CGPICD is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant CGPICD by and through its registered agent G. Boone Smith, IV 688 Walnut Street, Suite 100, Macon-Bibb County, Georgia 31201.

9.

Defendant Positiventures Initiatives, LLC is a Georgia limited liability company whose principal office and principal place of doing business is the same as Defendant, Whitby, Inc.'s 1680 Broadway, Macon-Bibb County, Georgia.   Defendant Positiventures was formed and created by Defendant Whitby.  Defendant Positiventures is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon this Defendant by and through its Registered Agent, Cliffard Whitby, at 1680 Broadway, Macon-Bibb County, Georgia.

10.

Defendant Integrated Technologies Consulting, LLC ("Integrated") purports to be an information technology company.  It is a Maryland limited liability corporation that regularly conducts real estate business in Macon-Bibb County, Georgia.  Defendant Integrated was formed and created by Defendant Whitby and his brother-in-law, Tyrone Lewis.  Defendant Integrated has its principal office and principal place of doing business in Forestville, Maryland.  Service of process may be perfected upon this Defendant through its registered agent, Monique S. Lewis, Suite 501, 2110 Brooks Drive, Forestville, Maryland 20747.  Integrated is subject to the venue and jurisdiction of this Court.

11.

Defendant Progressive Consulting Technologies, Inc. ("Progressive Consulting") purports to be an information technology company.  At times relevant to this Complaint, Defendant Progressive Consulting acted as Technical Project Manager for BCSD.  Defendant Progressive Consulting is a Georgia profit corporation with its principal office and place of doing business at 971 Washington Avenue, Macon-Bibb County, Georgia.  Defendant Progressive Consulting is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant Progressive Consulting by and through its Registered Agent, Isaac Culver, III ("Culver"), at 971 Washington Street, Macon-Bibb County, Georgia.

12.

Defendant Progressive Property Management, LLC ("Progressive Property") is a Georgia limited liability company.  Defendant Progressive Property's principal office and principal place of doing business is the same as Defendant Progressive Consulting's, 971 Washington Avenue, Macon-Bibb County, Georgia. Defendant Progressive Property is subject to the venue and

jurisdiction of this Court.  Service of process may be perfected upon Defendant Progressive

Property by and through its Registered Agent, Defendant Dave Carty ("Carty") at 971

Washington Street, Macon-Bibb County, Georgia.

13.

Defendant Isaac Culver, III ("Culver") is a resident of Macon-Bibb County, Georgia.

Defendant Culver is Defendant Progressive Consulting's Chief Executive Officer and Registered

Agent.  Defendant Culver is subject to the venue and jurisdiction of this Court.  Service of

process may be perfected upon Defendant Culver at 3551 West Point Circle, Macon-Bibb

County, Georgia.

14.

Defendant Carty is a resident of Macon-Bibb County, Georgia.  Defendant Carty is the

Chief Financial Officer and Secretary of Defendant Progressive Consulting.  Defendant Carty is

also the Registered Agent of Defendant Progressive Property. Defendant Carty is subject to the

venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant Carty

at 4671 Oxford Circle, Macon-Bibb County, Georgia

15.

Defendant CompTech Computer Technologies, Inc. ("CompTech") purports to be a

provider of information technology, engineering and program management services.  It is an

Ohio corporation that has its principal office and principal place of doing business in Dayton,

Montgomery County, Ohio.  Defendant CompTech also has an office in Warner Robins, Houston

County, Georgia.  Service of process may be perfected upon Defendant CompTech by and

through its Registered Agent, Defendant Allen J. Stephen, III ("Stephen") at 4130 Ardery

Avenue, Suite 100, Dayton, Montgomery County, Ohio.

16.

Defendant Stephen is Defendant CompTech's President and Chief Executive Officer. Defendant Stephen is a resident of Ohio.  Defendant Stephen is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant Stephen at 4707 Old Hickory Place, Dayton, Montgomery County, Ohio.

17.

Defendant Pinnacle/CSG, Inc. ("Pinnacle") purports to be a construction support group. Defendant Pinnacle is a Florida profit corporation.  Its principal office and principal place of doing business is 528 East Park Avenue Tallahassee, Leon County, Florida.  Defendant Pinnacle is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon Defendant Pinnacle by and through its Registered Agent in Georgia, Maria Masha Stewart, at 1718 Peachtree St. NW, No. 181, Atlanta, Fulton County, Georgia.

18.

Defendant Cory McFarlane ("McFarlane") is a resident of Florida.  Defendant McFarlane is the "Chief Visionary" and Chief Executive Officer of Defendant Pinnacle.  Defendant McFarlane is subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon this Defendant at 2171 Peachtree Road, NE, Apt. 701, Atlanta, Fulton County, Georgia.

19.

Defendant Harold Knowles ("Knowles") is a resident of Florida.  Defendant Knowles is an attorney.  He is the managing shareholder in the law firm Knowles & Randolph, P.A., ("Knowles & Randolph") which is also a Defendant in this case.  Defendant Knowles is also Defendant Pinnacle's General Counsel and Chief Financial Officer.  Defendant Knowles is

subject to the venue and jurisdiction of this Court.  Service of process may be perfected upon

Defendant Knowles at 235 N. Rosehill Drive, Tallahassee, Leon County, Florida.

20.

Defendant Knowles and Randolph is a law firm.  It is a Florida profit corporation that has

its principal office and principal place of doing business at 3065 Highland Oaks Terrace,

Tallahassee, Leon County, Florida.  Defendant Knowles and Randolph is subject to the venue

and jurisdiction of the Court.  Service may be perfected upon Knowles and Randolph by service

upon its Registered Agent, Defendant Knowles, at 3065 Highland Oaks Terrace, Tallahassee,

Leon County, Florida.

**d.  Personal Jurisdiction**

21.

This Court has personal jurisdiction over Defendants Whitby, Whitby, Inc., CGPICD,

Positiventures, Progressive Consulting, Progressive Property, Culver, and Carty because each

reside in the Middle District of Georgia.  The Court has personal jurisdiction over Defendants

Dallemand, Integrated,  CompTech, Stephen, Pinnacle, Knowles, Knowles and Randolph, and

McFarlane because each transacted business in the Middle District of Georgia, committed

tortious acts and omissions in the Middle District of Georgia, and committed tortious injuries in

the Middle District of Georgia caused by acts or omissions outside of Georgia and they each

regularly do or solicit business and engage in other persistent courses of conduct and derive

substantial revenue from goods used or consumed or services rendered in the Middle District of

Georgia.

## II. <u>Facts</u>

### a. The BCSD Employs Defendant Dallemand and Defendant Dallemand's Duties

22.

Defendant Dallemand and the BCSD entered into an Employment Contract dated February 1, 2011 whereby Defendant Dallemand was employed as BCSD's Superintendent of Schools for a term commencing on February 1, 2011 and terminating on June 30, 2013.

23.

Defendant Dallemand was in a fiduciary relationship with the BCSD and the Board of Education at all times during his tenure as BCSD's Superintendent of Schools and Defendant Dallemand owed BCSD and its Board the duties of a fiduciary throughout that entire period of time.

24.

Defendant Dallemand was in a relationship of trust and confidence with BCSD and the Board of Education at all times during his tenure as BCSD's Superintendent of Schools and Defendant Dallemand owed BCSD and the Board of Education a duty of utmost good faith.

### b. Macon Promise Neighborhood

25.

Macon Promise Neighborhood ("MPN") was a cooperative coalition of thirty-five non-profit or governmental partners that included, but was not limited to, Defendant CGPICD.

26.

On June 5, 2009, Defendant CGPICD bought the old Ballard-Hudson Middle School building (the "Building") on Anthony Road from BCSD for $220,000.00.

27.

Sometime before June 27, 2012, the exact date being unknown to the BCSD, a decision was made that the Building would be used to carry out part of MPN's initiative.

28.

In 2011, MPN received a $500,000.00 planning grant.  Thereafter, MPN developed a plan to leverage grant funding by obtaining an award from the U.S. Department of Education Promise Neighborhood Program (the "DOEPNP"), a federal public-private partnership concept aimed at reversing the cycle of intergenerational poverty through education in twenty (20) neighborhoods across the United States.

29.

The DOEPNP provided up to $5,000,000.00 annually beginning in 2013 for each participating Promise Neighborhood, contingent upon each awarded community being able to demonstrate matching funds equal to DOEPNP grant awards on a "dollar-for-dollar" basis.

30.

The required DOEPNP fund match requirement could be met through a demonstration of reallocation of existing programs, resources and in-kind contributions up to 90% of the annual DOEPNP grant amount and could be provided over multiple years.

31.

Sometime before June 27, 2012, the exact date being unknown to the BCSD, MPN made plans to submit an application for a Promise Neighborhood Implementation Grant ("the Grant') to DOEPNP.  According to the plans, Mercer University was to be the Grant applicant and Mercer University was to administer the Grant as fiscal agent and oversee all Grant activities.

32.

The deadline for submitting the Grant application was July 27, 2012 and the application had to include detailed descriptions for commitments and agreements for resources and programs which would serve as the in-kind and dollar-for-dollar match requirements.

33.

Dr. Peter Brown was the Co-Principal Investigator for the MPN and was involved with the MPN from its initial application for, and receipt of, a $500,000.00 planning grant.

34.

Sometime after February 1, 2011, but before June 27, 2012, the exact date being unknown to the BCSD, Dr. Brown approached Defendant Dallemand and asked Defendant Dallemand for his support with the MPN. At that time, however, Defendant Dallemand had his own plan, the Macon Miracle, and did not think the MPN was needed. Defendant Dallemand therefore declined to support the MPN at that time.

35.

Sometime after Defendant Dallemand's meeting with Dr. Brown, but before June 27, 2012, the exact date being unknown to the BCSD, Defendant Whitby approached Defendant Dallemand about the MPN. Defendant Whitby outlined the project to Defendant Dallemand and stated the MPN would be asking the BCSD for $1,000,000.00. Defendant Whitby explained that this would be ten-year commitment with the BCSD ultimately paying $10,000,000.00 towards the MPN over the course of the ten years.

36.

At Defendant Whitby's request, Defendant Whitby and Defendant Dallemand met at a later occasion to discuss the MPN. The exact date of this meeting is unknown to the BCSD.

During this meeting, Defendant Whitby outlined the proposal for MPN seeking support from BCSD for $1,000,000 per year for ten years. Defendant Whitby, individually and on behalf of CGPICD, explained that part of agreement would include the BCSD leasing part of the old Ballard-Hudson Middle School building CGPICD had purchased from the BCSD in 2009.

37.

Sometime between August 17, 2011 and June 27, 2012, the exact date being unknown to BCSD, Defendant Whitby, individually and on behalf of Defendant CGPICD, approached Defendant Dallemand to ensure Defendant Dallemand would support the MPN. Defendant Whitby, individually and on behalf of Defendant CGPICD, thereafter offered Defendant Dallemand $100,000.00 for his support of the MPN. Defendant Dallemand accepted this offer and agreed to support the MPN.

38.

Defendant Dallemand was not entitled to receive $100,000.00 from Defendants Whitby and CGPICD for his support of the MPN.

39.

On a later date, but also sometime between August 17, 2011, and June 27, 2012, the exact date being unknown to BCSD, Defendant Whitby, individually and on behalf of Defendant CGPICD,  offered to give Defendant Dallemand ten percent (10%) of the $1,000,000.00 the BCSD would pay for the MPN each year. Thus, Defendant Whitby, individually and on behalf of Defendant CGPICD, offered to give Defendant Dallemand $100,000.00 every year for ten (10) years for his continued support of the MPN. Defendant Dallemand agreed to accept Defendant Whitby and Defendant CGPICD's offer and understood that he needed to do so to insure the BCSD's continued support of the MPN.

40.

Defendant Dallemand was not entitled to receive ten percent (10%) of the $1,000,000.00 the BCSD would pay for the MPN each year.

41.

Defendant Whitby offered to give Defendant Dallemand ten percent (10%) of the $1,000,000.00 ($100,000.00) the BCSD would pay the MPN each year for the purpose of influencing Dr. Dallemand in the performance of acts related to the functions of Defendant Dallemand's employment with the BCSD.

42.

Defendant Dallemand was an "agent" of BCSD within the meaning of 18 U.S.C. § 666 when Defendant Whitby offered to give Defendant Dallemand $100,000.00 for his support of the MPN and when he offered to give Defendant Dallemand $100,000.00 every year for ten (10) years for his continued support of the MPN.  BCSD was also a local government that, during 2012 and all calendar years thereafter, received benefits in excess of $10,000.00 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

43.

Defendant Whitby, with intent to influence or reward Defendant Dallemand in connection with the business of, a transaction of, and a series of transactions of BCSD, corruptly offered and agreed to give Defendant Dallemand $100,000.00 for his support of the MPN and $100,000.00 every year for ten (10) years for Defendant Dallemand's his continued support of the MPN in violation of 18 U.S.C. § 666(a)(2).

44.

Defendant Whitby committed the crime of Bribery Concerning Programs Receiving Federal Funds when he corruptly offered to give Defendant Dallemand $100,000.00 for his support of the MPN and when he offered to give Defendant Dallemand $100,000.00 every year for ten (10) years for his continued support of the MPN.

45.

Defendant Whitby committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(1) when he offered to give Defendant Dallemand $100,000.00 for his support of the MPN and when he offered to give Defendant Dallemand $100,000.00 every year for ten (10) years for his continued support of the MPN.

46.

Defendant Dallemand agreed to accept ten percent (10%) of the $1,000,000.00 ($100,000.00) that BCSD would pay the MPN each year by inducing a reasonable belief in Defendant Whitby that the giving of that amount would influence Defendant Dallemand's performance or failure to perform an official action.

47.

Defendant Dallemand agreed to accept ten percent (10%) of the $1,000,000.00 ($100,000.00) then BCSD would pay the MPN each year by inducing a reasonable belief in Defendant Whitby that the giving of that amount would influence Dr. Dallemand's performance or failure to perform an official action.

48.

Defendant Dallemand, with intent to be influenced or rewarded in connection with the business of, a transaction of, and a series of transactions of BCSD, corruptly agreed to accept

Defendant Whitby's offer to give Defendant Dallemand $100,000.00 for his support of the MPN and Defendant Whitby's offer to give Defendant Dallemand $100,000.00 every year for ten (10) years for his continued support of the MPN in violation of 18 U.S.C. § 666(a)(1)(B).

49.

Defendant Dallemand committed the crime of Bribery Concerning Programs Receiving Federal Funds when he agreed to accept Defendant Whitby's offer to give Defendant Dallemand $100,000.00 for his support of the MPN and when he offered to give Defendant Dallemand $100,000.00 every year for ten (10) years for his continued support of the MPN.

50.

Defendant Dallemand committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(2) when he when he agreed to accept Defendant Whitby's offer to give Defendant Dallemand $100,000.00 for his support of the MPN and when he offered to give Defendant Dallemand $100,000.00 every year for ten (10) years for his continued support of the MPN.

51.

Prior to June 27, 2012, MPN identified Ingram-Pye Elementary School ("Ingram-Pye"), Matilda Hartley ("Hartley") Elementary School, Ballard-Hudson Middle School ("Ballard") and Southwest High School ("Southwest") as the targeted neighborhood for the DOEPNP and MPN program services and to serve as Macon's First Promise Neighborhood.

52.

On June 27, 2012, the Board of Education adopted a resolution (the "Resolution") in which it consented and agreed to the inclusion of its

> programs, resources, current-budgeted funds, and related in-kind contributions (the "Resources") for the purposes of supporting the MPN initiative and act as matching requirements for the DOEPN grant.  [The Resources were to] be aligned and allocated from the operations, curriculum, and programs of Ingram-Pye,

Hartley, Ballard and Southwest in amounts not exceed $250,000.00 per school, per year.

53.

Ron Collier was employed as the School District's Chief Financial Officer at the time.

54.

On or about July 17, 2012, Defendant Dallemand delivered to Mr. Collier a $1,000,000.00 invoice ("Invoice I") from CGPICD.  Invoice I was issued to "Macon Children's Promise Neighborhood, Mercer University" and, according to Invoice I, it was for "2012 Macon Children's Promise Neighborhood contribution for PICD."  Invoice I also provided that it was due "upon receipt."  After delivering Invoice I to Mr. Collier, Defendant Dallemand instructed Mr. Collier to have Invoice I paid from the School District's funds.

55.

Mr. Collier had concerns about Invoice I. Mr. Collier therefore decided that he needed to obtain more information about Invoice I before he paid it.  As a result, Mr. Collier did not pay Invoice I.

56.

On July 19, 2012, Defendant Dallemand went to Mr. Collier's office and asked him if Invoice I had been paid.  Defendant Dallemand also indicated that the President of Mercer University was looking at him as if he was trying to renege on the deal.  Defendant Dallemand told Mr. Collier to contact Jimmie Samuel, the President of CGPICD if he had any questions about Invoice I.  Mr. Samuel, however, called Mr. Collier before Mr. Collier had a chance to call him.  Mr. Samuel was unable to satisfactorily respond to Mr. Collier's concerns.

57.

Mr. Collier knew that the School District's Director of Accounting, Sharon Roberts, had worked with Dr. Brown on issues relating to the Grant.  Therefore, Mr. Collier contacted Mrs. Roberts to see if she could provide any information about Invoice I.  Not knowing anything about Invoice I, Mrs. Roberts e-mailed a copy of Invoice I to Dr. Brown.  Dr. Brown told Mrs. Roberts that he did not know anything about Invoice I.

58.

On the morning of July 20, 2012, Defendant Dallemand telephoned Mr. Collier at home before Mr. Collier left to go to work.  During that telephone call, Defendant Dallemand expressed that he was upset that Mrs. Roberts had contacted Dr. Brown about Invoice I. Defendant Dallemand told Mr. Collier that Mr. Collier was making Defendant Dallemand "look bad" and that Defendant Dallemand was "disappointed" in Mr. Collier.  Defendant Dallemand also told Mr. Collier that the President of the Board of Education wanted to know why Invoice I had not been paid and asked if he needed to get another Chief Financial Officer.  During the July 20, 2012 telephone call, Mr. Collier told Defendant Dallemand that he – Defendant Dallemand – should approve the payment of Invoice I.  Defendant Dallemand, however, refused to do so. Defendant Dallemand told Mr. Collier that Mr. Collier had better process a check for the payment of Invoice I by noon on July 20, 2012.  Mr. Collier, however, still had concerns about Invoice.  As a result, Mr. Collier did not pay Invoice I.

59.

On July 25, 2012, Ebony Harris, MPN's Project Director, e-mailed a message to Mr. Collier at 11:55 a.m.  That message stated the following:

Mr. Collier,

I was asked by Mr. Cliffard Whitby Macon Promise Neighborhood, Executive Director and Mr. Jimmie Samuel Partnership for Individual and Community Development, President to forward a copy of the attached invoice to you.  Please note that Mr. Samuel is out of town until tomorrow.  If you have any question regarding this Invoice please contact Mr. Whitby at 478-256-_ _ _ _.

Thanks
Ebony Harris, Project Director
Macon Promise Neighborhood

60.

The invoice Ms. Harris e-mailed to Mr. Collier on July 25, 2012 at 11:55 a.m. will hereafter be referred to as "Invoice II."

61.

Like Invoice I, Invoice II was an invoice for $1,000,000.00 from CGPICD and was due "upon receipt."  Unlike Invoice I, Invoice II was issued to the "Bibb County Board of Education" and, according to Invoice II, it was for "School System 2012 contribution for Macon Children's Promise Neighborhood match Commitment."   According to Invoice II, the School District was to make payment in the amount of $1,000,000.00 to "Central Georgia Partnership for Individual & Community Development."

62.

Just a few hours after Ms. Harris e-mailed her message and Invoice II to Mr. Collier, Defendant Dallemand caused a letter to be delivered to Mr. Collier.  The letter was delivered to Mr. Collier on July 25, 2012 at 5:55 p.m.  In his letter, Defendant Dallemand directed Mr. Collier to prepare a $1,000,000.00 "check or wire transfer (as CGPICD may direct) … to CGIPD".  Defendant Dallemand further directed Mr. Collier "to have this check or wire transfer authorization … to me no later than 5:00 p.m. on Thursday, July 26, 2012."

63.

On July 26, 2012[1], Mr. Collier caused a letter to be delivered to Defendant Dallemand in response to the letter Dr. Dallemand delivered to Mr. Collier on July 25, 2012.  In his July 26, 2012 letter, Mr. Collier told Dr. Dallemand that he could not "in good conscience write the check" as Dr. Dallemand had instructed him to do because he believed it would violate "Georgia Laws, Rules and Regulations as well as The State Board of Education Rules and Regulations."

64.

On July 31, 2012, Mr. Collier was summoned to Defendant Dallemand's office for a meeting with Defendant Dallemand about the payment to CGPICD.    After that meeting, Mr. Collier received a letter from Defendant Dallemand dated August 3, 2012.  After receiving Dr. Dallemand's August 3, 2012 letter, Mr. Collier was excluded from all discussions regarding MPN until after the Board of Education met on October 18, 2012.

65.

On July 27, 2012, the President of the Board of Education, with Defendant Dallemand's knowledge and consent, signed a Lease Agreement ("the Lease Agreement") that required the School District to lease for a period of ten (10) years from CGPICD a portion of the Building BCSD previously sold to.

66.

According to the terms of the Lease Agreement, CGPICD agreed to lease to the School District a "White Box Shell" consisting of approximately one-half of the Building.  In turn, the Lease Agreement required the BCSD to pay rent to CGPICD for ten (10) years in the amount of $575,000.00.

---

[1] Mr. Collier's letter is mistakenly dated July 27, 2012.

67.

On October 18, 2012, upon Defendant Dallemand's recommendation, the Board of Education voted and approved a Memorandum of Understanding (the "MOU") between CGPICD and BCSD. Through the MOU, it was agreed that BCSD would pay CGPICD $1,000,000.00 to customize the interior of the Building. BCSD also agreed that it would provide up to $325,000.00 per year for ten (10) years to the CGPICD for costs and services incurred in the implementation of the MPN. For 2013, those costs were anticipated to include operational expenses of the Building, including maintenance, as well as capital equipment and supplies. The payments of up to $325,000.00 per year were in addition to the $575,000.00 per year for ten (10) years that BCSD already had agreed to pay to rent a portion of the Building from CGPICD.

68.

On October 30, 2012, the BCSD gave a check to Defendant CGPICD in the amount of $1,000,000.00 (the "Check").

69.

Defendant Dallemand, induced and aided by Defendant Whitby and Defendant CGPICD, breached his fiduciary duties to the BCSD and the Board of Education when he failed to communicate to the BCSD or the Board of Education (a) that Defendant Whitby had offered Defendant Dallemand $100,000.00 for Defendant Dallemand's support of the MPN; (b) that Defendant Whitby had offered to give Defendant Dallemand $100,000.00 each year for ten (10) years for his continued support of the MPN and (c) that Defendant Dallemand had accepted Defendant Whitby's offers before the Board of Education voted to approve the MOU and before BCSD gave Defendant CGPICD the Check.

70.

Defendant Dallemand, induced and aided by Defendant Whitby and Defendant CGPICD, committed fraud upon the BCSD by failing to communicate to the BCSD or the Board of Education  (a) that Defendant Whitby offered Defendant Dallemand $100,000.00 for Defendant Dallemand's support of the MPN; (b) that Defendant Whitby had offered to give Defendant Dallemand $100,000.00 each year for ten (10) years for his continued support of the MPN, and (c) that Defendant Dallemand had accepted Defendant Whitby's offers before the Board of Education voted to approve the MOU before BCSD gave Defendant CGPICD the Check.

71.

At the time the Board of Education voted to approve a MOU and at the time BCSD gave Defendant CGPICD the Check, neither the Board of Education nor BCSD had any knowledge and had no reason to believe (a) that Defendant Whitby offered Defendant Dallemand $100,000.00 for Defendant Dallemand's support of the MPN; (b) that Defendant Whitby had offered to give Defendant Dallemand $100,000.00 each year for ten (10) years for Defendant Dallemand's continued support of the MPN, and (c) that Defendant Dallemand had accepted Defendant Whitby's offers before the Board of Education voted to approve the Memorandum of Understanding and before BCSD gave Defendant CGPICD the Check.

72.

The BCSD did not discover and had no reason to believe (a) that Defendant Whitby offered Defendant Dallemand $100,000.00 for Defendant Dallemand's support of the MPN; (b) that Defendant Whitby had offered to give Defendant Dallemand $100,000.00 each year for ten (10) years for his continued support of the MPN, or that Defendant Dallemand had accepted Defendant Whitby's offers until August 11, 2017 when Defendant Whitby and others were

indicted in this Court for Conspiracy to Pay a Bribe to an Agent of an Organization Receiving Federal Funds, Paying a Bribe to an Agent of an Organization Receiving Federal Funds, and other crimes.

73.

The Board of Education would not have approved the MOU and BCSD would not have given Defendant CGPICD the Check had it known (a) that Defendant Whitby offered Defendant Dallemand $100,000.00 for Defendant Dallemand's support of the MPN; (b) that Defendant Whitby had offered to give Defendant Dallemand $100,000.00 each year for ten (10) years for Defendant Dallemand's continued support of the MPN and (c) that Defendant Dallemand had accepted Defendant Whitby's offers before the Board of Education voted to approve the MOU and before BCSD gave Defendant CGPICD the Check.

74.

After entering into the MOU, BCSD paid certain funds (including the $1,000,000.00 represented by the Check) pursuant to the MOU and Defendants Whitby and CGPICD obtained those funds from BCSD. Defendants Whitby, and CGPICD obtained those funds by deceitful means and artificial practice with the intention of depriving BCSD of those funds.

75.

Defendants Whitby and CGPICD committed the crime of theft by deception in violation of O.C.G.A. § 16-8-3 when they obtained the funds paid by BCSD (including the $1,000,000.00 represented by the Check) pursuant to the MOU.

76.

Defendant Dallemand and Defendant Whitby both had concerns over Defendant Whitby paying Defendant Dallemand the first $100,000.00. Defendant Whitby suggested that they

create a company and route the money through the company (a) with the intent to promote the

carrying on of bribery, and (b) to conceal and disguise the nature, the location, the source, the

ownership and the control of the proceeds of bribery.  Until that was established, they agreed to

use Defendant Knowles and Defendant Knowles and Randolph as vehicles to achieve their

unlawful goals of carrying on bribery and concealing and disguising the nature, the location, the

source, the ownership and the control of the proceeds of the bribery.

77.

      Defendant Dallemand previously had met Defendant Knowles at an event in Tallahassee,

Florida.  Defendant Dallemand thereafter connected Defendant Whitby and Defendant Knowles

who began to communicate with one another.  It was thereafter agreed that Defendant Whitby

would give Defendant Knowles $100,000.00 which Defendant Knowles would then pass along

to Defendant Dallemand.

78.

      Defendant Dallemand later learned from Defendant Whitby and Defendant Knowles that

the money had been transferred and that Defendant Knowles had a check for him.

79.

      On or about November 2, 2012, Defendants Whitby, CGPICD, and Positiventures

conspired for Defendants CGPICD and Whitby to give Defendant Positiventures a check in the

amount of $950,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing

that the transaction would be designed to conceal and disguise the nature, the location, the

source, the ownership and the control of the proceeds of bribery.

80.

On November 2, 2012, three (3) days after the BCSD gave a check to Defendant CGPICD in the amount of $1,000,000.00, Defendants CGPICD and Whitby gave Defendant Positiventures a check in the amount of $950,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of bribery.

81.

Defendants Whitby and CGPICD corruptly gave Defendant Positiventures a $950,000.00 check on November 2, 2012 with intent to influence Defendant Dallemand in connection with the business of, a transaction of, and a series of transactions of BCSD in violation of 18 U.S.C. § 666(a)(2).

82.

Defendants Whitby and CGPICD committed the crime of Bribery Concerning Programs Receiving Federal Funds when they gave Defendant Positiventures the $950,000.00 check on November 2, 2012.

83.

The $950,000.00 check Defendants CGPICD and Whitby gave Defendant Positiventures on November 2, 2012 involved the proceeds of bribery and was a financial transaction that affected interstate commerce. Defendants Whitby, CGPICD, and Positiventures knew that this financial transaction involved the proceeds of bribery.

84.

Defendants Whitby, CGPICD, and Positiventures committed the crime of money laundering in violation of 18 U.S.C. § 1956(a)(1) when, on November 2, 2012, Defendants Whitby and CGPICD gave Defendant Positiventures the $950,000.00 check.

85.

Defendants Whitby, CGPICD and Positiventures committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired for Defendants CGPICD and Whitby to give Defendant Positiventures a check for $950,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of bribery.

86.

On or about November 9, 2012, Defendants Whitby, CGPICD, Positiventures, Knowles, and Knowles and Randolph conspired for Defendants Whitby and Positiventures to give Defendants Knowles and Defendant Knowles & Randolph a check in the amount of $100,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of bribery.

87.

On November 9, 2012, Defendants Whitby and Positiventures gave Defendants Knowles and Knowles and Randolph a check in the amount of $100,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the transaction was designed to conceal and

disguise the nature, the location, the source, the ownership and the control of the proceeds of bribery.

88.

Defendants Whitby and Positiventures corruptly gave Defendants Knowles and Knowles and Randolph a $100,000.00 check on November 9, 2012 with intent to influence Defendant Dallemand in connection with the business of, a transaction of, and a series of transactions of BCSD in violation of 18 U.S.C. § 666(a)(2).

89.

Defendants Whitby and Positiventures committed the crime of Bribery Concerning Programs Receiving Federal Funds when they gave Defendants Knowles and Knowles and Randolph the $100,000.00 check on November 9, 2012.

90.

The $100,000.00 check Defendant Positiventures gave Defendants Knowles and Knowles & Randolph on November 9, 2012 involved the proceeds of bribery and was a financial transaction that affected interstate commerce. Defendants Whitby, Positiventures, Knowles, and Knowles & Randolph knew that this financial transaction involved the proceeds of bribery.

91.

Defendants Whitby, Positiventures, Knowles, and Knowles & Randolph committed the crime of money laundering in violation of 18 U.S.C. § 1956(a)(1) when, on November 9, 2012, Defendant Positiventures gave Defendant Knowles and Defendant Knowles & Randolph a check for $100,000.00 check.

92.

Defendants Whitby, CGPICD, Positiventures, Defendant Knowles, and Defendant Knowles & Randolph committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when, on or about they conspired for Defendants Whitby and Positiventures to give Defendants Knowles and Knowles & Randolph a check for $100,000.00 check.

93.

Defendants Whitby, CGPICD and Positiventures committed the crime of transportation of stolen goods in violation of 18 U.S.C. § 2314 when Defendants Knowles and Knowles and Randolph gave Defendant Dallemand a check in the amount of $100,000.00 on November 9, 2012.

94.

Having crossed the Georgia boundary, Defendants Knowles and Knowles and Randolph committed the crime of receipt of stolen goods in violation of 18 U.S.C. § 2315 when they accepted from Defendants Whitby, CGPIC and Positiventures a check in the amount of $100,000.00 on November 9, 2012.

95.

On or about November 19, 2012, Defendants Dallemand, Whitby, CGPICD, Positiventures, Defendant Knowles, and Defendant Knowles & Randolph conspired for Defendants Knowles and Knowles and Randolph to give Defendant Dallemand a check in the amount of $100,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of bribery.

96.

On November 19, 2012, Defendants Knowles and Knowles and Randolph gave
Defendant Dallemand a check in the amount of $100,000.00 a check in the amount of
$100,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the
transaction was designed to conceal and disguise the nature, the location, the source, the
ownership and the control of the proceeds of bribery.

97.

Defendant Dallemand received the $100,000.00 check from Defendants Knowles and
Knowles and Randolph in or around the Tifton, Georgia area.  This was the bribe money
promised to Defendant Dallemand by Defendant Whitby for Defendant Dallemand's support of
the MPN.

98.

The $100,000.00 check that Defendant Knowles gave to Defendant Dallemand was
drawn on the trust account of Defendant Knowles & Randolph.  The words "Trust Refund"
appear on the memo line of the check.

99.

Defendant Knowles also provided Defendant Dallemand with a letter that indicated the
$100,000.00 was being returned as money Defendant Dallemand had put in Defendant Knowles'
trust account to purchase a house.  Defendant Dallemand had never used Defendant Knowles as
an attorney and had never given him money to keep in trust for any purpose.

100.

Defendants Whitby, CGPICD, Positiventures, Knowles, and Knowles & Randolph
committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(1) when Defendant

Knowles gave Defendant Dallemand a check in the amount of $100,000.00 on November 19, 2012.

101.

Defendant Dallemand committed the offense of bribery in violation of O.C.G.A. § 16-10-2(a)(2) when he accepted from Defendants Knowles and Knowles and Randolph the $100,000.00 check on November 19, 2012.

102.

Defendants Whitby, CGPICD and Positiventures caused Defendants Knowles, and Knowles & Randolph to corruptly give the $100,000.00 check to Defendant Dallemand on November 19, 2012.

103.

Defendants Whitby, CGPICD and Positiventures committed the crime of Bribery Concerning Programs Receiving Federal Funds when Defendants Knowles and Knowles and Randolph gave the $100,000.00 check to Defendant Dallemand on November 19, 2012.

104.

Defendant Dallemand, intending to be influenced or rewarded in connection with the business, a transaction, or series of transactions involving BCSD, corruptly accepted the $100,000.00 check from Defendant Knowles and Randolph in violation of 18 U.S.C. § 666(a)(1)(B).

105.

Defendants Defendant Dallemand committed the crime of Bribery Concerning Programs Receiving Federal Funds when he accepted the $100,000.00 check for Defendant Knowles and Knowles and Randolph on November 19, 2012.

106.

Defendants Knowles and Knowles and Randolph corruptly gave Defendant Dallemand the $100,000.00 check on November 19, 2012 with intent to influence Defendant Dallemand in connection with the business of, a transaction of, and a series of transactions of BCSD in violation of 18 U.S.C. § 666(a)(2).

107.

Defendants Knowles and Knowles and Randolph committed the crime of Bribery Concerning Programs Receiving Federal Funds when they gave Defendants Knowles and Knowles and Randolph the $100,000.00 check on November 19, 2012.

108.

The $100,000.00 check Defendants Knowles and Knowles and Randolph gave Defendant Dallemand on November 19, 2012 involved the proceeds of bribery and was a financial transaction that affected interstate commerce. Defendants Dallemand, Knowles, and Knowles & Randolph knew that this financial transaction involved the proceeds of bribery and was made with the intent to promote the carrying on of bribery. These defendants further knew that the transaction was designed to conceal and disguise the nature, the location, and the course of the proceeds of bribery.

109.

Defendants Dallemand, Knowles, and Knowles & Randolph committed the crime of money laundering in violation of 18 U.S.C. § 1956(a)(1) when, on November 19, 2012, Defendants Knowles and Knowles and Randolph  gave Defendant Dallemand the $100,000.00 check.

110.

Defendants Dallemand, Whitby, CGPICD, Positiventures, Knowles, and Knowles & Randolph committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when, on or about they conspired for Defendants Whitby and  Positiventures to give Defendants Knowles and Knowles & Randolph a check for $100,000.00.

111.

The $100,000.00 check given to Defendant Dallemand by Defendants Knowles and Knowles and Randolph on November 19, 2012 was consideration to which Defendant Dallemand was not entitled and was given to Defendant Dallemand for the purpose of influencing Defendant Dallemand in the performance of acts related to Defendant Dallemand's employment with BCSD.

112.

Defendants Dallemand Whitby, CGPICD, Positiventures, Knowles and Knowles and Randolph, having devised a scheme to defraud and for obtaining money by means false or fraudulent pretenses representations, transported or caused to be transported in interstate commerce of $100,000.00 Defendant Knowles and Knowles and Randolph gave Defendant Dallemand on November 19, 2012.

113.

Defendants Dallemand Whitby, CGPICD, Positiventures, Knowles and Knowles and Randolph committed the crime of transportation of stolen goods in violation of 18 U.S.C. § 2314 when Defendants Knowles and Knowles and Randolph transported the $100,000.00 check they gave Defendant Dallemand on November 19, 2012 in interstate commerce.

114.

Defendant Dallemand committed the crime of receipt of stolen goods in violation of 18

U.S.C. § 2315 when he accepted from Defendant Knowles and Knowles and Randolph a check

in the amount of $100,000.00 on November 19, 2012.

**c.  Defendant Whitby Establishes Corporation with Defendant Dallemand
and Makes Continued Payments**

115.

On or about November 8, 2012, Defendant Whitby and Defendant Dallemand established

Belhannes, LLC (herein after "Belhannes") with the Georgia Secretary of State with the intent to

promote the carrying on of bribery and to conceal and disguise the nature, location, the source,

the ownership and control of the proceeds of bribery .  Belhannes was established to allow

Defendant Whitby to transfer the bribe money to Defendant Dallemand.

116.

Defendant Whitby provided the bribery payments which are outlined below to Defendant

Dallemand.  Each of the below monetary instruments were made payable to Belhannes, LLC.

These bribery payments will hereafter be referred to as the "Belhannes Payments" and are more

fully detailed in the following chart:

| Date on monetary instrument | Amount | Type of monetary instrument |
|---|---|---|
| August 15, 2013 | $40,000.00 | Check |
| September 15, 2013 | $30,000.00 | Check |
| January 21, 2015 | $120,000.00 | Check |
| February 26, 2015 | $120,000.00 | Check |

| July 15, 2015 | $24,000.00 | Check |
|---|---|---|
| June 25, 2016 | $1,000.00 | Money Order |
| June 25, 2016 | $1,000.00 | Money Order |
| June 25, 2016 | $1,000.00 | Money Order |
| June 25, 2016 | $400.00 | Money Order |

117**.**

The Belhannes Payments crossed a State boundary, affected interstate commerce and

were made with the intent to influence Defendant Dallemand in the performance of acts related

to his employment with BCSD and to reward Defendant Dallemand, with the intent to promote

the carrying on of bribery and theft concerning programs receiving federal funds. Defendants

Whitby and Dallemand knew that the funds were unlawfully taken by fraud and that the

transactions were designed to conceal or disguise the nature, location, source, ownership and

control of the proceeds of bribery and theft all in violation of 18 U.S.C. §§ 666, 18 U.S.C. §1956,

18 U.S.C. § 2314, 18 U.S.C. § 2315 as well as O.C.G.A. § 16-10-2.

118.

Defendant Dallemand was not entitled to the Belhannes Payments but had induced a

reasonable belief by Defendant Whitby that these bribery payments would influence his

performance of official acts.

119.

On or about April 2, 2017, Defendant Whitby met with Defendant Dallemand at a

restaurant in South Georgia and provided Defendant Dallemand with $24,000.00 cash that

crossed state lines.  This payment to Defendant Dallemand was bribe money that was promised

to Defendant Dallemand to influence him in the performance of the functions of his employment

with BCSD as Dallemand had induced a reasonable belief by Defendant Whitby that the bribes would influence Defendant Dallemand in the performance of Dallemand's employment with BCSD all in violation of O.C.G.A. § 16-10-2(a), 18 U.S.C. § 666(a), 18 U.S.C. § 2314 and 18 U.S.C. § 2315.

120.

Defendant Whitby and Defendant Dallemand knew that the April 2, 2017 payment to Defendant Dallemand represented the proceeds of unlawful activity and was conducted with the intent to carry on bribery and knew that the transaction was designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of bribery in violation of 18 U.S.C. § 1956(a) and (h).

121.

BCSD did not discover and had no reason to believe that Defendant Whitby paid to Defendant Dallemand bribe money on April 2, 2017 until August 11, 2017 when they learned Defendant Whitby and others were indicted in this Court for Conspiracy to Pay a Bribe to an Agent of an Organization Receiving Federal Funds and other crimes.

**d. Knowles' Stock Offers**

122.

In 2012, the exact date being unknown to the BCSD, Defendant Knowles approached Defendant Dallemand about possible construction projects between Defendant Pinnacle and the BCSD. Defendant Knowles, individually and on behalf of Defendants Pinnacle and McFarlane and with the intent to influence Defendant Dallemand in connection with Pinnacle obtaining future construction business with BCSD, offered Defendant Dallemand stock in Defendant

Pinnacle if Defendant Dallemand were able to secure future construction contracts for Pinnacle

from BCSD.

123.

On or about November 11, 2012, Defendant Knowles, individually and on behalf of

Defendant Pinnacle, sent Defendant Dallemand an email with a draft stock purchase agreement

wherein Defendant Dallemand would obtain an unspecified amount of stock for $500,000.00.  In

the email, Defendant Knowles noted that he made it "as simple and clean as possible," and

would likely add more detail later, but wanted to give Defendant Dallemand an understanding of

the basic format.

124.

On or about December 1, 2012, Defendant Knowles individually and on behalf of

Defendant McFarlane and Defendant Pinnacle, sent Defendant Dallemand an email with another

draft stock purchase agreement.  Defendant McFarlane was copied on the email, which indicated

that once Defendant Dallemand approved the revised agreement, Defendant Knowles was ready

to execute.  The draft stock purchase agreement outlined that Defendant Dallemand would obtain

24 percent (24%) business interest of Defendant Pinnacle for $500,000.00.

125.

On or about December 2, 2012, Defendant Knowles individually and on behalf of

Defendant Pinnacle, sent Defendant Dallemand an email with another revised draft stock

purchase agreement.  The agreement also provided that Defendant Dallemand would obtain 24

percent (24%) business interest of Defendant Pinnacle for $500,000.00.  Defendant Knowles

stated that Defendant Dallemand's concerns were well-taken, and he tried to address them.

Defendant Knowles stated that he "tried to make it more transparent and specific.  But in the

global context of things, there are certain matters [he] had to leave in the document for [their]
mutual protection."

126.

Though the draft stock purchase agreements sent by Defendant Knowles and Defendant
Pinnacle on November 11, 2012, December 1, 2012, and December 2, 2012 indicated that
Defendant Dallemand would pay $500,000.00, based on conversations Defendant Dallemand
had with Defendant Knowles, Defendant Dallemand was not to pay Defendant Knowles or
Defendant Pinnacle any money.  Rather, Defendant Dallemand would obtain stock in Defendant
Pinnacle by helping Defendant Pinnacle obtain future construction contracts with BCSD

127.

The offers of stock in Defendant Pinnacle to Dallemand by Defendants Knowles,
Pinnacle and McFarlane were offers of consideration to which Defendant Dallemand was not
entitled with the purpose of influencing Defendant Dallemand in the performance of acts related
to the functions of his employment with BCSD in violation of O.C.G.A. § 16-10-2(a)(1) and 18
U.S.C. § 666(a)(2).

128.

The offers of stock in Defendant Pinnacle made to Defendant Dallemand by Defendants
Knowles, Pinnacle and McFarlane were made knowing that the stock offered represented the
proceeds of bribery and that the attempted transaction affected interstate commerce. Further, the
offer of stock was made with the intent to promote the carrying on of bribery and with the
knowledge that the proposed transaction was designed to conceal and disguise the nature, the
location, the source, the ownership and control of the proceeds of bribery in violation 18 U.S.C.
§ 1956(a)(1) and (h).

129.

BCSD did not discover and had no reason to believe that Defendant Knowles offered Defendant Dallemand stock in Pinnacle to influence Defendant Dallemand in connection with Pinnacle for the purpose of securing future contracts for Pinnacle from BCSD until August 11, 2017 when Defendant Knowles and other were indicted in this Court for Conspiracy to Pay a Bribe to an Agent of an Organization Receiving Federal Funds and other crimes.

130.

Ultimately, Defendant Dallemand resigned from his position as Superintendent of Schools for the BCSD and the BCSD did not enter into any construction contracts with Defendant Pinnacle.  Thus, Defendant Dallemand never obtained any stock in Defendant Pinnacle and never signed the stock purchase agreements that Defendant Knowles had sent him. Defendant Knowles and Defendant Pinnacle, however, subsequently would offer additional bribes to Defendant Dallemand to obtain computer software business from BCSD related to a BCSD Technology.

### e.   The Technology Project

131.

On November 3, 2009, the voters of Bibb County, Georgia passed a referendum for a five-year extension of the collection of a one percent (1%) sales tax for the purpose of funding BCSD capital improvement projects including technology upgrades for BCSD and the 24,600 school children of Bibb County.  These school children along with BCSD were the victims of the wrongful, fraudulent and illegal conduct of the Defendants described in this Complaint.

132.

With the goal of upgrading technology for its students, BCSD set out to determine its technology needs and retained Elert & Associates ("Elert"), to perform a technology audit. The audit included assessing current technology systems, identifying needs, and recommending next steps.

133.

The overall purpose of upgrading BCSD's technology was to ensure that all BCSD students receive a high-quality education that prepares them to be competitive and successful in a global economy. The technology upgrades were designed to provide BCSD's students with ready access to needed tools, including a wide variety of technology systems.

134.

On December 11, 2011, Elert presented its Technology Assessment Report and Recommendations to the Board. The technology systems upgrades recommended by Elert included, among other things, campus and classroom multimedia systems, administrative systems, financial and accounting software, personal computers, and servers (the "Technology Project").

135.

The technology upgrades recommended by Elert required significant purchases by BCSD.

**f.    Bidding Procedures**

136.

Board Policy DJED governs bid procedures for purchases by BCSD.  Board Policy DJED, in effect at all times relevant to this Complaint, provided in pertinent part:

**Bidding Procedures**

Procedures for purchases are listed below.   Purchases may not exceed given ranges without following the proper bidding protocol.   No requisition shall be split or other action taken to circumvent the requirements for competitive bidding.
…

$6001+        Invitation for Bid (IFB) or Request for Proposal (RFP) documents will be prepared and mailed/provided to vendors.   Specifications from the using school/department shall be sent to the purchasing department.   Vendors will be given a minimum of twelve working days from the date of the bid document to complete the bid and return it to the purchasing department by the date and time requested.

All IFB's and RFP's will be advertised in the legal ads of the local newspaper two (2) times during the twelve (12) day period to allow for the widest dissemination of solicitations.   IFB's and RFP's will be opened and publicly read aloud at the time and date stated.
…

**Unauthorized Purchases**

No person shall order the purchase of any materials, supplies or services or make any contract for materials, supplies, or for services to be paid for from Board funds except as provided by this policy.
…

**Awards of Bid/Contract**

All contracts for the purchase of equipment, materials, supplies and services which exceed $500,000 shall be awarded by the board of education.   The Superintendent or his Director of Purchasing shall have the authority, within budget limitations to award all other contracts for the purchase of equipment, supplies and services.

137.

All Defendants are charged with knowledge of BCSD Bid Procedures and Board

Policies.

138.

District officials are only authorized to disburse funds upon order of the board of

education and a district official has no authority to obligate a board of education under any

agreement unless such official has previously obtained authorization from the board of education.  Agreements obtained without proper authorization from the board of education are void.

### g.  Reorganization of Purchasing Department and Selection of Thomas Tourand as Executive Director of Technology

139.

In April, 2011, Defendant Dallemand, in order to execute his scheme to maneuver around Board policy and avoid bid procedures related to BCSD purchases and expenditures, initiated a reorganization of the BCSD Purchasing Department following the March 31, 2011 retirement of Larry King, the BCSD Director of Purchasing. Defendant Dallemand first eliminated the position of Director of Purchasing.  He then reorganized purchasing procedures in a way that proposed purchases, like those involved in this Complaint, would be reviewed and approved by employees unfamiliar with BCSD bid procedures.  Dallemand's reorganization was essential to the execution of the Defendants' scheme to defraud BCSD which is described in this Complaint.

140.

To accomplish the Defendants' scheme, Defendant Dallemand caused a chart reflecting organizational changes to the BCSD purchasing process to be posted on the BCSD website so that the chart would be widely disseminated to potential vendors, like the Defendants in this case, so that bid procedures and Board approval could be more easily avoided allowing purchases to proceed without the oversight called for by bid procedures and state law.  The significant purchases and expenditures made in connection with technology upgrades approved by Bibb County voters in November, 2009, provided Dallemand and his co-conspirators with their opportunity.

141.

In June and July of 2012, BCSD began the process of hiring a new Executive Director of Technology. The Executive Director of Technology would be responsible for implementing the Technology Project as recommended by Elert.

142.

In early July 2012, applicants for the Executive Director of Technology position were interviewed by a panel made up of BCSD administrators. A qualified applicant was recommended, but was rejected by Defendant Dallemand.

143.

Defendant Dallemand then directed that additional applicants be allowed to apply for the Executive Director of Technology position. Defendant Dallemand selected two candidates for a final round of interviews, one of which was Mr. Tourand. The other applicant selected by Defendant Dallemand had no experience for the job.

144.

The panel that Defendant Dallemand assembled to interview Mr. Tourand and the additional applicant did not recommend Mr. Tourand. Instead, the panel chose not to recommend either applicant for the position.

145.

Defendant Dallemand required each member of the panel he assembled to interview applicants to sign a confidentiality agreement that stated that the panel members could not talk about the interview process.

146.

After having the assembled panel members sign the confidentiality agreement to prevent the panel from sharing information about the applicants with Board members, Defendant Dallemand made a recommendation to the Board on July 19, 2012 to hire Mr. Tourand as BCSD's Executive Director of Technology.

147.

One of Mr. Tourand's references on his employment application submitted to BCSD by wire in July, 2012 was Defendant Culver, CEO of Defendant Progressive Consulting. After Mr. Tourand was hired as BCSD's Executive Director of Technology, Mr. Tourand recommended Defendant Progressive Consulting to become Technical Project Manager for the Technology Project.

148.

On the same day that Mr. Tourand was hired, Cheryl Canty-Aaron ("Ms. Canty-Aaron") was hired as Capital Program Administrator. Ms. Canty-Aaron was hired in very much the same manner as Mr. Tourand. Both were essentially hand-picked by Defendant Dallemand.

149.

Defendant Dallemand manipulated the hiring process in such a way to ensure that newly hired employees, like Mr. Tourand and Ms. Canty-Aaron, felt obligated to fully support Defendant Dallemand and enable him to maneuver around Board policy to allow Defendant Dallemand and his co-conspirators to defraud BCSD of taxpayer funds.

150.

Mr. Tourand's and Ms. Canty-Aaron's approvals were necessary for the financial transactions involving the accounting and financial software and NComputing devices at issue

because both the BCSD Executive Director of Technology and BCSD Capital Program Administrator were required to sign-off on the use of funds for those transactions.

### h. Technical Project Management Services

151.

Consistent with Elert's December 2011 Technology Assessment Report and Recommendations, on June 25, 2012 BCSD opened to the public Request for Qualifications ("RFQ") No. 12-72 for Technical Project Management Services for Bibb County Technology Projects (the "Technology Project"). RFQ No. 12-72 invited companies to provide their qualifications for managing the Technology Project on behalf of BCSD.

152.

The purpose of RFQ No. 12-72 was to begin the process of securing a "Technical Project Manager" that would provide technical project management and network management support to BCSD for the Technology Project.  The stated purpose of RFQ No. 12-72 was to find "qualified applicants who wish to be pre-qualified to provide technical oversight" for technology infrastructure and hardware upgrades with ESPLOST and E-rate funding.  "Those individuals who [were] pre-qualified would then be asked to bid on the future work once funding was secured and the scope of the work [was] finalized."

153.

The Technical Project Manager would also "provide on-site management of vendors at the various locations/schools" on technology upgrades as well as "support the overall infrastructure upgrade and respond to, detect, report, record, diagnose, and resolve the

occurrence of network faults as well as measure network performance and connectivity on a daily basis."

154.

During the RFQ bidding process, questions were submitted to BCSD, the answers to which were posted online for all applicants to review. During this process, BCSD explained that the firm selected to be the Technical Project Manager would not be able to provide installation services and oversight at the same time. Similarly, the Technical Project Manager was not to act as a vendor for the project.

155.

On July 10, 2012, Defendant Carty attended a pre-bid conference for RFQ 12-72.

156.

On July 13, 2012 Defendant Culver sent Defendant Stephen an e-mail requesting a letter of reference for the Technical Project Manager position for BCSD. Culver noted in the e-mail that the reference was "totally made up," and provided the wording for the written reference. The wording contained an outline of work purportedly performed for Defendant CompTech by Progressive Consulting. The described work, however, never took place.

157.

On July 18, 2012, Defendant Progressive Consulting submitted a response to RFQ No. 12-72. One of the three references submitted with Defendant Progressive Consulting's response was an undated email from Defendant Stephen, Chief Executive Officer of Defendant CompTech, which matched the wording requested by Culver in his email to Stephen. Within five months, Defendant Progressive Consulting would initiate a fraudulent, illegal and unauthorized wire transfer of $3,768,000.00 of BCSD's funds to Defendant CompTech.

158.

Mr. Tourand, who recently received an employment reference from Progressive's CEO, Defendant Culver, and whose hiring by BCSD was manipulated by Defendant Dallemand, served on the review panel that selected Defendant Progressive Consulting as one of three companies that pre-qualified under RFQ No. 12-72.  Ms. Canty-Aaron also served on this review panel.

159.

On August 17, 2012, BCSD posted Request for Proposals ("RFP") No. 13-09 for "Technical Project Management for E-Rate Construction." RFP No. 13-09 specifically provided that "[T]his bid is only open to the following prequalified companies: PCTI (i.e. Defendant Progressive Consulting Technologies, Inc.), CORE ECS, Rosser/Tala (JV). Please contact Thomas Tourand for further information and bid documents."

160.

On or about August 21, 2012, Mr. Tourand sent an e-mail to Defendant Culver informing him that Defendant Progressive Consulting was one of the three firms selected to respond to RFP 13-09, which was the RFP from which the Technical Project Manager would be selected.  The scope of work for the Technical Project Manager was to "provide technical project management and network management support to the BCSD."

161.

The ultimate contract for the Technical Project Manager was to include all of the terms and conditions listed in the RFP 13-09 solicitation itself, any addenda to the solicitation, the chosen firm's response to the RFP, the intent to award notification letter, and any resulting contract.  Among those terms outlined in the RFP, which would become part of any agreement

between the BCSD and the Technical Project Manager, was that "the Technical Project Management firm shall not perform any portion of a project with his own forces except as may be approved by BCSD."

162.

Prior to Defendant Progressive Consulting even submitting a response to RFP No. 13-09, Dallemand allowed Defendant Progressive Consulting to begin invoicing BCSD for work which Elert and Associates was already under contract to provide.

163.

On September 17, 2012, Defendant Progressive Consulting submitted a response to RFP No. 13-09 entitled "Contract Administration Plan," which included proposed hourly rates for Defendant Progressive Consulting's personnel. This response was signed by Defendant Culver and listed Defendants Culver and Carty as the principals of Defendant Progressive Consulting.

164.

The review panel, which included Mr. Tourand and Ms. Canty-Aaron, recommended that the contract called for by RFP No. 13-09 be awarded to Defendant Progressive Consulting.

165.

On September 20, 2012, the Board voted to authorize BCSD "to negotiate a contract with Progressive Consulting Technologies, Inc. of Macon for Technical Project Management Services and E-Rate Construction Projects."

166.

Defendant Dallemand was not authorized to enter into a contract with Defendant Progressive Consulting without approval of the Board. The Board never authorized Defendant Dallemand to enter into a contract with Defendant Progressive Consulting.

### i.  The Services Agreement

167.

On September 24, 2012, Defendant Dallemand signed a "Services Agreement" with Defendant Progressive Consulting.  As explained in RFP 13-09, the terms of the RFP solicitation were part of the "Services Agreement."

168.

Defendant Dallemand had no authority to execute the Services Agreement on behalf of BCSD, so the Services Agreement is void.

169.

The void Services Agreement contained a significantly increased schedule for hourly rates for personnel than the schedule in Defendant Progressive Consulting's September 17, 2012 "Contract Administration Plan" that had been submitted to BCSD just one week earlier and that was presented to the Board when the Board voted to authorize BCSD to negotiate a contract with Defendant Progressive Consulting.  The Board was never advised of and never approved Defendant Progressive Consulting's new schedule of hourly rates or the Services Agreement.

170.

The hourly rates contained in the void September 24, 2012 Services Agreement contained 24 new positions not contained in Defendant Progressive Consulting's September 17, 2012 "Contract Administration Plan."

171.

Defendant Progressive Consulting's September 17, 2012 "Contract Administration Plan" contained no hourly rate higher than $95.00 per hour. The void September 24, 2012 Services Agreement contained 18 positions to be paid $95.00 per hour or more.  Defendant Progressive

Consulting simply added the word "Senior" in front of five of the previously described positions and materially increased the hourly rates.

### j.  The Removal and Replacement of Mr. Collier

172.

As noted above, Ron Collier was employed as the School District's Chief Financial Officer.  Prior to December 10, 2012, Mr. Collier objected to Defendant Dallemand's illegal expenditure of public funds and refused to comply with Defendant Dallemand's orders to disburse money improperly.  On Monday, December 10, 2012, Defendant Dallemand removed Mr. Collier from his position of Chief Financial Officer.  On that same day, Defendant Dallemand delivered Mr. Collier a letter advising him that "effective immediately, you are an administrator on special assignment pending an investigation into practices within your department."

173.

Upon being given Dr. Dallemand's December 10, 2012 letter, Mr. Collier was required to remove his personal belongings from his office and vacate the office.  Mr. Collier was also required to give his keys and telephone to the School District's Deputy Superintendent of Operations and was forced to leave the School District's administrative offices by 3:00 p.m. on December 10, 2012.

174.

On December 12, 2012, Defendant Dallemand assigned to Sharon Roberts ("Mrs. Roberts") the duties and responsibilities of Chief Financial Officer.

175.

At the time Mrs. Roberts was appointed the duties and responsibilities of Chief Financial Officer, an atmosphere of fear and intimidation permeated the BCSD.  Employees were in constant fear of losing their jobs or being demoted if they did not do what Defendant Dallemand said.

### k.    Payments to Progressive Consulting

176.

On October 11, 2012, BCSD Purchase Order No. 70-36372 in the initial amount of $500,000.00 was prepared for "Contract Services on Technology Infrastructure" payable to Defendant Progressive Consulting.

177.

Defendant Progressive Consulting quickly depleted the $500,000.00 provided for in the October 11, 2012 purchase order without significant improvement in technology for BCSD's schools.

178.

On December 18, 2012, just eight (8) days after Mr. Collier had been removed from the CFO position, Mr. Tourand, with Defendant Dallemand's knowledge and approval but without soliciting bids and without seeking Board approval, authorized an additional $500,000.00 to be paid to Defendant Progressive Consulting, bringing the total amount to be paid to Defendant Progressive Consulting to $1,000,000.00 in violation of Board Policy DJED which provides that "[n]o requisition shall be split … to circumvent the requirements of competitive bidding."

179.

The only written documentation addressing the additional $500,000.00 to be paid to Defendant Progressive Consulting is a handwritten notation made by Mr. Tourand stating "Amend + $500K" on the original Purchase Order No. 70-36372 along with Mr. Tourand's signature and a date of December 18, 2012.

180.

The Board was not informed of Defendant Progressive Consulting receiving an additional $500,000.00, nor was the Board asked to approve the payment of an additional $500,000.00 to Defendant Progressive Consulting. Progressive Consulting eventually was paid in excess of $1,000,000.00 for its services as Technical Project Manager.

## l.    The Pinnacle Items

181.

One of the projects included in the Technology Project was upgrading the BCSD accounting and financial software program.

182.

Defendant McFarlane, the "Chief Visionary" and Chief Executive Officer for Defendant Pinnacle, signed a  Software Subscriber License which bears the date November 12, 2012 purporting to grant to BCSD a non-transferable license to access financial and accounting software which Pinnacle labeled "Proscenium District/School Management Systems Enterprise Suite, Budget Systems, Harmony Fund Account, Presence Leave, Teacher Substitute Pay

System, Teacher Certification Tracking and Attendance Management" (the "Proscenium Software").[2]

183.

BCSD nor its Board had any knowledge of the purported Software Subscriber License and did not approve the Software Subscriber License as required by BCSD Bid Procedures. The Software Subscriber License was never executed by BCSD or any representative of BCSD. The Software Subscriber License is therefore void.

184.

The void Software Subscriber License states that Pinnacle develops, markets and owns Proscenium Software and an internet website for Proscenium Software. Proscenium Software, however, did not exist and Pinnacle did not own an Internet website for accessing Proscenium Software.

185.

The void Software Subscriber License states that BCSD had evaluated the Proscenium Software and examined it capabilities. This is not true. BCSD had not heard of and had no knowledge of Proscenium Software. BCSD had not evaluated the Proscenium Software and examined its capabilities because the Proscenium Software did not exist.

186.

The void Software Subscriber License states that its effective date was November 12, 2012 and that the license term began November 12, 2012. According to the void Software

---

[2] BCSD refers to the accounting and financial software described by Pinnacle in the void Software Subscriber License and consisting only of the purported software itself as "Proscenium Software." Later, some of these items plus setup and configuration, annual license fee and training which is listed in a subsequent Pinnacle Invoice are referred to as "Pinnacle Items."

Subscriber License, each license term would last twelve months and each license term would automatically renew for additional periods of twelve months unless terminated.

187.

According to the void Software Subscriber License, the "initial fee" for the Proscenium Software was $3,429,240.00 and was due on November 12, 2012.  The annual subscription fee was $617,263.20.

188.

The void Software Subscriber License provided for a 30 day warranty for the purported Proscenium Software.  The void Software Subscriber License further provided that if the Proscenium Software failed to perform substantially as represented that Pinnacle would refund to BCSD the initial fee.

189.

Pinnacle never delivered the Proscenium Software. BCSD requested a refund of the initial fee.  Defendant Pinnacle refused to return the initial fee.

190.

Defendant McFarlane, on behalf of Defendant Pinnacle, and Defendant Culver, on behalf of Defendant Progressive Consulting, signed a Software Reseller Management Agreement ("Reseller Agreement") bearing the date of November 19, 2012.  In the Reseller Agreement, Defendant Progressive Consulting purports to "bestow the license name of Proscenium in perpetuity to Pinnacle/CSG."  The Reseller Agreement states Pinnacle "will provide (the "Licensed Software"); a custom build of Redstone's Dynasty Software (or similar product in nature and scope) with a moniker of Proscenium Enterprise Suite ('Proscenium')."

191.

On November 19, 2012, Defendant Progressive Consulting did not have any agreement or license to sell Redstone's Dynasty Software.  Despite Redstone's software being mentioned in the Reseller Agreement, Defendant Progressive Consulting had no contact with Redstone until February, 2013.  Defendant Progressive Consulting did subsequently enter into a Software Development Agreement with Redstone Investments on March 23, 2013 to modify Redstone's Dynasty Software.

192.

Sometime between November 19, 2012 and December 18, 2012, the exact date being unknown, Defendants Whitby and Knowles approached Defendant Dallemand about a financial transaction affecting interstate commerce wherein Defendant Pinnacle would be the company "on paper" selling an accounting and financial software program to BCSD.  Defendants Whitby, Knowles and Pinnacle offered Defendant Dallemand a bribe of $500,000.00 for the purpose of influencing him to push through a purchase by BCSD of accounting and financial software from Defendant Pinnacle.

193.

Defendant Dallemand accepted Defendants Whitby and Knowles' offer and agreed to push through and, in fact, did push through a purchase by BCSD of accounting and financial software from Defendant Pinnacle.

194.

Defendants Whitby, Knowles and Pinnacle's offer to pay Defendant Dallemand $500,000.00 was an offer of consideration to which Defendant Dallemand was not entitled and

made with the purpose of influencing Defendant Dallemand in the performance of an act related to the functions of Defendant Dallemand's employment with BCSD.

195.

Defendants Dallemand, Whitby, Knowles and Pinnacle knew that the $500,000.00 offered to Defendant Dallemand involved a transaction affecting interstate commerce and represented the proceeds of unlawful activity. The bribe was offered with the intent to carry on unlawful activity (bribery). Defendants Whitby, Knowles, Pinnacle and Dallemand knew that the bribe offered to Defendant Dallemand was designed to conceal the nature, location, source, ownership and control of the proceeds of unlawful activity.

196.

Defendant Dallemand agreed to accept $500,000.00 and induced a reasonable belief by Defendants Whitby, Knowles and Pinnacle that the giving of that amount would influence his performance of an act related to the function of his employment with BCSD. The offer to give Dallemand $500,000.00 did, in fact, influence him to push through BCSD's purchase of accounting and financial software from Defendant Pinnacle.

197.

Defendants Whitby, Knowles and Pinnacle committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(1) and 18 U.S.C. § 666(a)(2) when they offered Defendant Dallemand the $500,000.00 bribe described above.

198.

Defendant Dallemand committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(2) and 18 U.S.C. § 666(a)(1)(B) when he agreed to accept the offer of Defendants Whitby,

Knowles and Pinnacle's to pay Defendant Dallemand $500,000.00 to push through a purchase by BCSD of accounting and financial software from Defendant Pinnacle.

199.

BCSD did not discover and had no reason to believe (a) that Defendants Whitby, Knowles, Knowles and Randolph, and Pinnacle had offered to give Defendant Dallemand a bribe of the $500,000.000 to influence Defendant Dallemand to push through the purchase of software from Defendant Pinnacle or (b) that Defendant Dallemand had agreed to accept Defendants the bribe until August 11, 2017 when Defendants Whitby, Knowles and others were indicated in this Court for Conspiracy to Pay a Bribe to an Agent of an Organization Receiving Federal Funds, Paying a Bribe to an Agent of an Organization Receiving Federal Funds, and other offenses.

200.

Defendant Dallemand, induced and aided by Defendants Whitby, Knowles, Knowles and Randolph, and Pinnacle breached his fiduciary duties to BCSD and the Board of Education when he pushed through the purchase of the Pinnacle Items without communicating to the BCSD or the Board of Education that Defendants Whitby, Knowles, Knowles and Randolph and Pinnacle had offered him $500,000.00 to push the purchase through, and that he had agreed to accept Defendants Whitby, Knowles and Pinnacle's bribe.

201.

On or about December 13, 2012, Defendant Culver sent to Defendant McFarlane via email an invoice for Defendant Pinnacle to send to BCSD for the accounting and financial software which Defendant Pinnacle would purportedly provide to BCSD pursuant to Defendants' scheme to defraud BCSD. Defendant Culver requested that Defendant McFarlane transfer the information from the invoice to Pinnacle's letterhead to make it appear as if Pinnacle was the

vendor for the software and send the completed invoice back to Defendant Culver.  Defendant

Culver advised that he would send a Reseller Agreement at some point in the future.

202.

On or about December 18, 2012, Defendants Pinnacle, Knowles and McFarlane sent by

wire Defendant Pinnacle's Invoice No. 112352 bearing the date of December 13, 2012 (the

"Pinnacle Invoice") from Florida to Defendant Progressive Consulting in Georgia for

$3,247,200.00 for 24,600 Proscenium Enterprise Suites, Breeze Budget Accounting Systems,

Presence Leave and Teacher Substitute Pay System, Presence Teacher Certification Tracking

System, Attendance Management System, setup and configuration, annual license fee and

training (the "Pinnacle Items").

203.

Defendants Pinnacle, Knowles, McFarlane, Progressive Consulting and Culver affixed to

the Pinnacle Invoice a Government Services Administration ("GSA") number which bears no

relation to the Pinnacle Items and they knew that it did not.  The purpose of affixing to GSA

number was to dupe BCSD employees into believing the purchase was authorized when it was

not.

204.

Defendants Progressive Consulting and Culver endorsed the purported purchase of the

Pinnacle Items.  Attached to the Pinnacle Invoice presented to Mrs. Roberts was a Program

Manager's Certification for Payment, on Progressive Consulting's letterhead, executed by

Defendant Culver and bearing the date of December 13, 2012.  The Program Manager's

Certification for Payment fraudulently certifies that payment is authorized and proper.  The

Program Manager's Certification for Payment and the Pinnacle Invoice were presented to BCSD for the first time on December 18, 2012.

205.

No bids were ever solicited and no Requests for Proposals were ever advertised in connection with the purchase of the Pinnacle Items as required by Board Policy DJED.  Further, BCSD's Chief Financial Officer, its Director of Accounting, or other employees were not consulted in connection with the purchase and the purchase was not discussed with any of them.

206.

On December 18, 2012, Mr. Tourand, Ms. Canty-Aaron, and others approved the Pinnacle Invoice for payment.

207.

On December 18, 2012, Defendant Culver and Mr. Tourand took the Pinnacle Invoice to Defendant Dallemand and he approved it for payment.

208.

On December 18, 2012, just days before the BCSD adjourned for its winter break and just eight (8) days after Defendant Dallemand removed Mr. Collier from the CFO position, Defendants Dallemand, Progressive Consulting, and Culver demanded that Mrs. Roberts immediately wire $3,247,200.00 from a BCSD account in Macon, Georgia to an account in Tallahassee, Florida in payment of the fraudulent Pinnacle Invoice.

209.

Defendant Culver and Mr. Tourand informed Mrs. Roberts that Defendant Dallemand wanted the payment to be wired to Defendant Pinnacle immediately and did not want a check to be sent to Defendant Pinnacle.  Mrs. Roberts was surprised by the request to wire the funds as

BCSD never wired funds for purchases but instead mailed checks. Further, Board Policy DJEJ required that all bills be paid by check.  Mrs. Roberts told Defendants Dallemand and Culver and Mr. Tourand that funds could not be wired immediately because funds needed to first be transferred.

210.

On December 18, 2012, Mrs. Roberts, met with Defendant Dallemand to express concerns about the purchase of the Pinnacle Items because of the lack of any consultation about the purchase of such an expensive accounting and financial software program. Mrs. Roberts also expressed concerns to Defendant Dallemand about wiring funds to Defendant Pinnacle.

211.

During her December 18, 2012 meeting with Defendant Dallemand, Mrs. Roberts also expressed concerns to Defendant Dallemand about being unfamiliar with the accounting and financial software package that was being purchased and that she had never received any training with respect to the software.  Defendant Dallemand told Mrs. Roberts that he would arrange for Mrs. Roberts to meet with someone from Defendant Pinnacle after the holidays to start the process of converting from the old accounting and financial software system to Defendant Pinnacle's system and providing her with training.

212.

Despite the concerns expressed by Mrs. Roberts, Defendant Dallemand replied that a decision had been made and demanded that she immediately wire funds to Defendant Pinnacle.

213.

On December 19, 2012, Mrs. Roberts again expressed her concerns about the purchase of the Pinnacle Items to Defendant Dallemand.  Defendant Dallemand again directed and demanded that Mrs. Roberts wire the funds to Defendant Pinnacle "now."

214.

There were problems with wiring the funds to Defendant Pinnacle.  Defendant Culver, while in Georgia, phoned Defendant McFarlane in Florida to obtain additional instructions to initiate the wire transfer.  Defendant McFarlane then phoned Mrs. Roberts in Georgia with wiring instructions.

215.

On December 19, 2012, Mrs. Roberts was forced and manipulated by Defendants Dallemand and Culver, to immediately wire $3,247,200.00 from BCSD's account in Georgia to Defendant Pinnacle's bank in Florida.   Mrs. Roberts wired this money against her wishes because of a fear that Defendant Dallemand would take adverse actions against her if the funds were not wired as directed.

216.

The Board of Education was not aware of and did not approve the supposed purchase of the Pinnacle Items as required by its policies.

217.

Defendant Pinnacle has never provided any of the Pinnacle Items for which BCSD paid $3,247,200.00.  Defendant Pinnacle has only had a Tennessee company ship from Tennessee a single inexpensive Ingram Micro password protected server to Defendant Progressive Consulting in Georgia by Federal Express. Defendant Culver and Henry Scott, a Progressive Consulting

employee, delivered the server to BCSD representing to BCSD's Executive Director of

Technology that it contained the Pinnacle software for which BCSD paid.  The server is

completely blank except for a reference that it is password protected to Defendant Culver.

218.

Mr. Tourand was observed in the spring of 2013 cutting the shipping label off of the box

containing the server and shredding it.  Mr. Tourand also told an employee in BCSD's

Technology Department, "You have never seen this before, you have not seen this come in."

Mr. Tourand left the box taped up and put a post-it note on it that read "do not touch."

219.

The Pinnacle Invoice was fraudulent.  The Pinnacle Items do not exist and have never

existed and Defendants Dallemand, Progressive Consulting, Culver, Carty, Pinnacle, Knowles

and McFarlane knew that they did not exist.

**m.    The Pinnacle Payments**

220.

As noted above, the BCSD wired Defendant Pinnacle $3,247,200.00 on December 19,

2012.

221.

After receiving $3,247,200.00 on December 19, 2012 from BCSD in payment for the

non-existent Pinnacle Items, on December 20, 2012 Defendant Pinnacle transmitted  by means of

wire in interstate commerce $500,000.00 to another Pinnacle account controlled by Defendant

Pinnacle and labeled the "Pinnacle Technology" account ("Technology Account") in furtherance

of the Defendants' scheme to defraud BCSD.  Defendant Pinnacle knew that the money

transferred to the Technology Account involved interstate commerce and represented the proceeds of unlawful activity.  The transfer was made by Defendant Pinnacle with the intent to promote the carrying on of specified unlawful activity.  Defendant Pinnacle knew that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of unlawful activity including wire fraud in violation of 18 U.S.C. § 1956(a)(1) and (h) and 18 U.S.C. § 1343.

222.

After receiving $3,247,200.00 on December 19, 2012 from BCSD for the non-existent Pinnacle Items, Defendant Pinnacle transmitted by means of wire in interstate commerce $500,000.00 on January 3, 2013 to another Pinnacle account controlled by Defendant Pinnacle and labeled the "Pinnacle /CSG, LLC" account (the "LLC Account") in furtherance of the Defendants' scheme to defraud BCSD.  Defendant Pinnacle knew that the money transferred to the LLC Account involved interstate commerce and represented the proceeds of unlawful activity.  Defendant Pinnacle made the transfer to the LLC Account with the intent to promote the carrying on of unlawful activity and knowing that the transaction was designed to conceal and disguise the nature, the location, the ownership and the control of the proceeds of unlawful activity including wire fraud in violation of 18 U.S.C. § 1956(a)(1) and (h) and 18 U.S.C. § 1343.

223.

After receiving $3,247,200.00 on December 19, 2012 from BCSD for the non-existent Pinnacle Items and in furtherance of the Defendants' scheme to defraud BCSD, on December 20, 2012 Defendant Pinnacle transmitted by wire in interstate commerce to Defendant Knowles two separate $25,000.00 payments and then transmitted by wire on June 27, 2013 a payment of

$75,000.00 in interstate commerce knowing that the funds represented the proceeds of unlawful activity and that the transaction was designed to conceal and disguise the nature, location, source and ownership and control of the proceeds of unlawful activity including wire fraud. The transmissions to Defendant Knowles were made by Defendant Pinnacle with the intent to promote the carrying on of unlawful activity all in violation 18 U.S.C. § 1956(a)(1) and (h) and 18 U.S.C. § 1343.

224.

After receiving $3,247,200.00 on December 19, 2012 from BCSD in payment for the non-existent Pinnacle Items in furtherance of the Defendants' scheme to defraud BCSD, on December 21, 2012 Defendant Pinnacle transmitted $45,000.00 by means of wire communication in interstate commerce to Defendant McFarlane knowing that the funds represented the proceeds of unlawful activity and that the transaction was designed to conceal and disguise the nature, location, source and ownership and control of the proceeds of unlawful activity including wire fraud. The transfer to Defendant McFarlane was made with the intent to promote the carrying on of unlawful activity including wire fraud all in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1956(a)(1) and (h).

225.

On January 8, 2013, Defendant Pinnacle gave Defendants Knowles and Knowles and Randolph $100,000.00 knowing that the funds would be passed along by them to Defendant Positiventures to reimburse Defendant Positiventures for the bribe money that was paid to Defendant Dallemand on November 19, 2012.

226.

On January 10, 2013, Defendants Knowles and Knowles and Randolph gave Defendant Positiventures $100,000.00.

227.

The January 10, 2013 payment of $100,000.00 by Defendants Knowles and Knowles and Randolph to Positiventures was made to reimburse Defendant Positiventures for the $100,000.00 Positiventures had paid to Defendants Knowles and Knowles and Randolph on November 9, 2012 for Knowles and Randolph to give to Defendant Dallemand as a bribe. Knowles and Randolph did, in fact, pay a bribe of $100,000.00 to Defendant Dallemand on November 19, 2012.

228.

The January 8, 2013 and January 10, 2013 payments described above were financial transactions which affected interstate commerce and Defendants Whitby, Positiventures, Pinnacle, Knowles, McFarlane and Knowles and Randolph knew that the transaction involved the proceeds of bribery.

229.

The January 8, 2013 payment and the January 10, 2013 payments described above were each made in connection with a transaction affecting interstate commerce and involving the use of a financial institution engaged in interstate commerce and were made with the intent to promote the carrying on of bribery. Defendants Whitby, Positiventures, Pinnacle, Knowles, Knowles and Randolph and McFarlane knew that the payments were designed to conceal and disguise the nature, the location, the source, the ownership and control of the proceeds of unlawful activity in violation of 18 U.S.C. §§ 1956(a)(1) and (h) and 18 U.S.C. § 666(a)(2).

230.

BCSD did not discover and had no reason to believe that Defendants Whitby,

Positiventures, Pinnacle, Knowles, Knowles and Randolph and McFarlane committed the crime

of money laundering described above until August 11, 2017 when Defendants Whitby, Knowles,

Positiventures and others were indicted in this Court for Conspiracy to Pay a Bribe to an Agent

of an Organization Receiving Federal Funds and other crimes.

231.

Sometime after the BCSD wired the $3,247,000.00 to Defendant Pinnacle, the exact date

being unknown, Defendants Dallemand, Whitby, Knowles, and McFarlane met to discuss the

money that was due to each of them following the transaction between the BCSD and Defendant

Pinnacle.

232.

Sometime in 2015, the exact date being unknown, Defendant Dallemand contacted by

email or telephone Defendant Knowles to solicit the bribe money that Defendants Whitby,

Knowles and Knowles and Randolph promised him for his pushing through BCSD's purchase of

the Pinnacle Items.   Defendant Dallemand solicited the bribe money knowing that the bribe

money represented the proceeds of bribery and with the intent of carrying on bribery and

knowing that the transaction was designed to conceal or disguise the nature, location, source

ownership and control of the proceeds of bribery in violation of 18 U.S.C. § 1956(a)

233.

Defendant Dallemand solicited the bribe money from Defendant Knowles in 2015

because Defendant Dallemand had induced a reasonable belief by Defendants Whitby, Knowles

and Pinnacle that such payment would influence Dallemand in the performance of his official

acts related to the functions of his employment with BCSD in violation of O.C.G.A. § 16-10-2(a)(2) and 18 U.S.C. §666(a)(a)(1).

234.

BCSD did not discover and had no reason to believe that in 2015 Defendant Dallemand had solicited from Defendant Knowles the bribery money which Defendants Whitby and Knowles promised to Defendant Dallemand for pushing through the purchase of the Pinnacle Items until August 11, 2017 when Defendants Whitby, Knowles and others were indicted in this Court for Conspiracy to Pay a Bribe to an Agent of an Organization Receiving Federal Funds and other crimes.

235.

Defendants Dallemand, Whitby, Pinnacle, McFarlane, Knowles and Positiventures received payments from the BCSD for the Pinnacle Items that were never provided to BCSD.

### n.    Failure in Deployment of Pinnacle Items

236.

The purported Pinnacle Items were never deployed as promised by Defendants Dallemand, Progressive Consulting, Culver, Carty, Pinnacle, Knowles and McFarlane.

237.

In January 2013, Mrs. Roberts met with Defendant Dallemand about the software supposedly purchased from Defendant Pinnacle.  Defendant Dallemand, who on December 18, 2012 advised Mrs. Roberts that he would arrange for a representative of Defendant Pinnacle to start the process of converting the old software to the newer Pinnacle software, told Mrs. Roberts

that she would receive a call from Stanley Williams, an employee of Defendant Pinnacle, regarding a demonstration of the software.

238.

On or around January 30, 2013, Stanley Williams met with Mrs. Roberts and only showed her a webpage which in essence was a sales pitch for the software. There was no demonstration of the software and no training was provided. The single, inexpensive server that Defendants Pinnacle and Progressive Consulting delivered to BCSD on January 24, 2013 was not included in the presentation made to Mrs. Roberts.

239.

Following the January 30, 2013 meeting between Mrs. Roberts and Mr. Williams, there were no additional efforts made by Defendants Dallemand, Progressive Consulting, Culver, Carty, Pinnacle, Knowles or McFarlane to setup, configure or train BCSD employees to access or use the Proscenium Enterprise Suites software despite the inclusion of these services in the Pinnacle Invoice.

240.

BCSD never received the purported Pinnacle Items for which it paid Pinnacle $3,247,200.00. BCSD has never seen the Pinnacle Items in any demonstration or otherwise. The Pinnacle Items do not exist.

241.

Pinnacle, a construction firm located in Tallahassee, Florida, did not have and never has had the capability, expertise or ability to develop or produce the Pinnacle Items or to provide the Pinnacle Items to BCSD. Pinnacle did not have the capability, expertise or ability to install, set up or configure the Pinnacle Items or to train BCSD on the use of the Pinnacle Items.

242.

Because the Pinnacle Items which Defendants Pinnacle, Knowles and McFarlane sold to BCSD for $3,247,200.00 did not exist, on February 19, 2013, Defendant Pinnacle paid Redstone Investments ("Redstone/Dynasty") located in Irvine, California, $35,000.00 for Defendant Progressive Consulting to obtain a license for Dynastysoft.ASP Enterprise software ("Dynasty software").  Defendants Progressive Consulting, Culver, Carty, Pinnacle, McFarlane and Knowles unsuccessfully attempted to convert the Dynasty Software into an accounting and financial software package they could pass off to BCSD as "Proscenium Software."

243.

Defendants Progressive Consulting, Culver and Carty, not Defendant Pinnacle or McFarlane, communicated with Redstone/Dynasty by email about the purchase.  The license for the Dynasty software was in the name of Defendant Progressive Consulting rather than Defendant Pinnacle who BCSD actually paid for software.  Defendant Pinnacle has never held the license for the Dynasty Software.

244.

On July 2, 2013, seven months after Defendant Knowles caused a $100,000.00 bribe to be paid to Defendant Dallemand to obtain BCSD contracts and seven months after Defendant Knowles offered Defendant Dallemand a $500,000.00 bribe to push through BCSD's purchase of non-existent Proscenium Software from Defendant Pinnacle, Defendant Knowles wrote to BCSD, who was attempting to gain possession of the software for which it paid, complaining that BCSD's lack of transparency was unfair.  Defendant Knowles specifically stated in this July, 2013 letter that Defendant Pinnacle "stands ready to perform its outstanding obligations to

implement and install the technology applications which [BCSD] previously engaged us to install."

245.

Defendant Knowles knew the Proscenium Software did not exist when he wrote the July 2, 2013 letter to BCSD and knew that Pinnacle did not stand ready to install the software for which BCSD paid.

246.

Defendant Knowles did not advise BCSD in his July 2, 2013 letter that he had paid a $100,000.00 bribe to Defendant Dallemand or that he had offered a bribe of $500,000.00 to Defendant Dallemand, which Defendant Dallemand accepted, for Dallemand to push through the purchase of the Proscenium Software from Pinnacle.

247.

Beginning in February, 2013 until May, 2014, various unsuccessful attempts were made by Defendants Progressive Consulting, Culver and Carty, as well as Redstone/Dynasty and ZDK Softworks, a software company located in Bibb County Georgia, to convert the Dynasty software into a product which Pinnacle could pass off to BCSD as "Proscenium Software." Defendants' Pinnacle and McFarlane offered minimal assistance.

248.

On February 25, 2014, Defendant Knowles again wrote to BCSD fraudulently representing that "Pinnacle has always stood ready (and stands ready) to deliver the School District the product it purchased." The product did not exist and Pinnacle has never been able to produce the product which BCSD purchased. Defendant Knowles knew that the Proscenium

Software did not exist and that Pinnacle could not produce the Pinnacle Items when he wrote the February 25, 2014 letter to BCSD.

249.

On April 28, 2014, approximately 16 months after BCSD paid for the Pinnacle Items and five (5) months after the first 12-month "license term" set forth in the void Software Subscriber's License expired, the Dynasty Software with modifications was finally tested but, according to an email from Phil Ahn, CEO of Redstone/Dynasty to Defendant Culver, the testing was a "disaster" and everything was lost. Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles and McFarlane made no other attempts to develop the software.

250.

Three years later, on May 5, 2017, BCSD requested in this lawsuit that Pinnacle produce to BCSD within 30 days for inspection and testing the non-existent Pinnacle Items for which BCSD paid.

251.

On May 22, 2017, 17 days after BCSD requested that Defendant Pinnacle produce for inspection and testing the non-existent Pinnacle Items, Defendant McFarlane emailed Redstone/Dynasty offering to pay Redstone/Dynasty to install on his laptop computer the Dynasty software along with any remnants and parts of the failed attempts to modify the software. Defendants McFarlane, Knowles and Pinnacle hoped to demonstrate the software to BCSD and represent to BCSD, this Court and Middle District of Georgia jurors that whatever Redstone/Dynasty installed on McFarlane's computer was actually the "Proscenium Software" for which BCSD paid Pinnacle.

252.

Defendant McFarlane wrote to Redstone/Dynasty on May 22, 2017 concealing the reason

that he was asking Redstone/Dynasty to install software on his computer, McFarlane wrote:

> I know it's been sometime since you have worked for us on the Dynastysoft .ASP Enterprise Suite. I know we had some customization done and a few other things over the years. I would like to pay you for your services so we can bring the system up either on a virtual server I can get you access to or mailing you a laptop so it can be placed on there. I have some files and related information but can't seem to figure out what was done and I am sure you still have everything you worked on so I figure it's easier to pay you for your time.

253.

Redstone/Dynasty promptly replied to McFarlane's email on May 22, 2017:

> If you need a service like this, I need to have your code up to date. Otherwise, I will have to pull my hairs pretty bad.
> I charge for code upgrade, 15% of product price ($53K) per year. Since my service ended some time in 2014, total charge will be 15%/year *$35K *3 years.

254.

Satisfied with the Redstone/Dynasty proposal and hoping to masquerade the Dynasty

Software as the "Proscenium Software" for which BCSD paid, McFarlane replied:

> I would like to move forward. I want to confirm a couple things:
>
> 1. Where should I mail the laptop to? I assume to buy a new one online and have it directly shipped to you, is this ok?
> 2. I assume when we receive the Laptop back it will be able to be run from the laptop so I can show it for demo purposes?
> 3. If I wanted to customize the name of the Software is that possible? I want to make sure it's branded (that may be the better term) for the client we intended it for.

255.

Later on May 22, 2017 McFarlane, hoping to dupe BCSD, this Court and jurors from the

Middle District of Georgia into believing that the Proscenium Software actually existed, wrote to

Redstone/Dynasty:

> Can I pay you to Private label it for me?  I want to call is *(sic)* "Pinnacle
> Proscenium School Management System" and our client will be "Bibb
> County School District."

256.

Redstone/Dynasty, however, refused because it had sold the license to Dynasty Software

to Progressive Consulting and not Pinnacle.  Redstone/Dynasty replied:

> Cory,
>
> This is going to be a legal issue.
> I sold a license to [Progressive Consulting], a Georgia company, and you
> are implying that the product has been transferred to Pinnacle, Florida.
> …
> [Progressive Consulting] is the legal entity I dealt with.
> Using the source outside [Progressive Consulting] is strictly prohibited.
>
> Cory, you have basically two options:  one is to keep the source code
> under [Progressive Consulting] and do marketing as a division of
> [Progressive Consulting].  The second is that you resolve the license
> issue by purchasing another license for Pinnacle, Florida.

257.

BCSD never received the purported Pinnacle Items for which it paid $3,247,200.00.

BCSD has never seen the Pinnacle Items in any demonstration or otherwise.  The Pinnacle Items

do not exist.

### o. The Proscenium Website

258.

Pinnacle did not own the domain name or website that was allegedly associated with the purported Pinnacle Items at the time the Pinnacle Invoice was sent to Progressive Consulting or at the time the Pinnacle Invoice was paid by BCSD.

259.

The domain name and website for the purported Pinnacle Items was www.ProsceniumSoft.com ("Proscenium website"). Progressive Networks ("Progressive Networks") acquired the domain name and Proscenium website on or about September 12, 2007. Progressive Networks was the actual owner of the Proscenium website until it was deleted between August 11, 2014 and August 15, 2014.

260.

Defendant Culver was CFO of Progressive Networks and Defendant Dave Carty, was CEO and registered agent. The principal office address for Progressive Networks was 971 Washington Avenue, Macon, Georgia 31201-6720 which has been the principal office address for Defendant Progressive Consulting since 2001. Defendants Progressive Consulting and Culver, along with Defendant Dave Carty were owners of Progressive Networks at all times relevant to this Complaint.

261.

Defendants Progressive Consulting, Culver, and Carty, in violation of 18 U.S.C. § 1343 and having devised a scheme and artifice to defraud school systems and to obtain money by means of false and fraudulent pretenses and representations, transmitted or caused to transmitted by wire communication in interstate commerce, a writing for purpose of executing such scheme

and artifice when, on September 12, 2017 it acquired the domain name

www.ProsceniumSoft.com, (the "Proscenium website") as part of their scheme to defraud school

systems such as BCSD.  By doing so, Progressive Consulting, Culver, and Carty committed wire

fraud.

262.

From at least April 10, 2011 until the Proscenium website was deleted sometime between

August 11, 2014 to August 15, 2014, the Proscenium website was hosted by Defendant

Progressive Consulting on Progressive Consulting's server(s).

263.

From April 10, 2011 until it was deleted between August 11, 2014 and August 15, 2014,

Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles, and McFarlane, through

the Proscenium website, falsely and fraudulently advertised that Proscenium Software exists and

that it "provides a suite of software applications to support the administrative needs of schools

and school district offices" which it did not.

264.

From April 10, 2011 until it was deleted between August 11, 2014 and August 15, 2014,

Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles, and McFarlane, through

the Proscenium website, falsely and fraudulently advertised that Proscenium Software was

copyrighted.  There has never been a copyright for the "Proscenium Software."  "Proscenium

Software" has never even existed.

265.

Defendants Progressive Consulting, Culver, Carty, Pinnacle, McFarlane, Knowles, and

Knowles and Randolph, in violation of 18 U.S.C. § 1343 and having devised a scheme and

artifice to defraud BCSD and other school districts and to obtain money by means of false and fraudulent pretenses and representations, transmitted or caused to transmitted by wire communication in interstate commerce, a writing for purpose of executing such scheme and artifice when, from April 10, 2011 until it was deleted between August 11, 2014 and August 15, 2014, by falsely and fraudulently advertising through the Proscenium website that Proscenium Software was copyrighted when it has not – it does not even exist.  By doing so, Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles, and McFarlane committed the crime of wire fraud.

266.

For over three years, Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles, and McFarlane, through the Proscenium website, misrepresented the existence, purpose, and utility of the Proscenium Software Suite to school districts that viewed the website. These misrepresentations were made as part of their regular way of doing business.

267.

Defendants Progressive Consulting, Culver, Carty, Pinnacle, McFarlane, Knowles, and Knowles and Randolph, in violation of 18 U.S.C. § 1343 and having devised a scheme and artifice to defraud BCSD and other school districts and to obtain money by means of false and fraudulent pretenses and representations, transmitted or caused to transmitted by wire communication in interstate commerce, a writing for purpose of executing such scheme and artifice when, from April 10, 2011 until it was deleted between August 11, 2014 and August 15, 2014, by falsely and fraudulently advertising through the Proscenium website,  they misrepresented the existence, purpose, and utility of the Proscenium Software Suite to school

districts that viewed the website By doing so, Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles, and McFarlane committed the crime of wire fraud.

268.

Between August 11, 2014 and August 15, 2014, the Proscenium Software website was deleted in attempt to conceal the crimes and fraud committed by Defendants Dallemand, Progressive Consulting, Culver, Carty, Pinnacle, Knowles, McFarlane, and Whitby in relation to the Pinnacle Items. The deletion followed initiation of an investigation by the Georgia Attorney General, an audit of the purchases by Mauldin and Jenkins, calls for an investigation by a Macon-Bibb Commissioner and numerous Macon Telegraph articles questioning the purchase and reporting the investigation.

**p. The NComputing Item**

269.

Another significant part of the Technology Project was providing BCSD students at each of BCSD's schools with direct access to technology in the learning environment.

270.

Defendants Dallemand, Progressive Consulting, Culver and Carty chose to address this need by ordering NComputing devices, which are virtual desktops that enable multiple users to simultaneously share a single operating system.

271.

Defendants Dallemand, Progressive Consulting, Culver and Carty decided to purchase 15,000 NComputing devices for BCSD.

272.

No bids were solicited and no Request for Proposals were issued or advertised for the purchase of the NComputing devices as required by applicable BCSD policies.

273.

The Board of Education did not approve the purchase of the NComputing devices as required by BCSD policies.  The Board of Education was not even aware of the purchase.

274.

Under the terms of the Services Agreement Defendants Dallemand and Culver signed on September 24, 2012, Defendant Progressive Consulting was not supposed to be a vendor of any hardware or software provided in connection with the Technology Project.  Even so, Defendant Progressive Consulting made arrangements to purchase 15,000 NComputing devices from NComputing, Inc. and sale them to BCSD.

275.

Defendants Progressive Consulting, Culver, Carty, CompTech and Stephen devised a scheme to hide Defendant Progressive Consulting's involvement in the sale of NComputing devices to BCSD and to defraud, steal, and obtain money of BCSD by means of false and fraudulent pretenses, representations and promises.

276.

On December 17, 2012, Defendant Carty sent Defendant Stephen an e-mail with an invoice totaling $3,768,000.00, which described NComputing devices and related accessories and services and included their price.  The invoice was blank as to the identity of the purported vendor (the "Blank Invoice").  Defendant Carty requested that Defendant Stephen transfer the information contained on the Blank Invoice to CompTech's letterhead to make it appear as if

CompTech was the vendor of the NComputing devices and related accessories and services and then send the completed invoice back to Defendant Carty.

277.

At Defendant Culver's direction, Defendant CompTech transferred the information contained on the Blank Invoice sent by Defendant Carty to Defendant CompTech's letterhead to make it appear as if Defendant CompTech was the vendor of the NComputing devices and related accessories and services. Also, at Defendant Culver's direction, Defendant CompTech fraudulently included CompTech's GSA Schedule number on the invoice. The GSA number which Defendants CompTech fraudulently included on the invoice had no relationship whatsoever to the items described in the invoice. The GSA number was included to dupe BCSD's employees into believing that the purchase was proper when it was not.

278.

On December 17, 2012, at Defendant Carty's request, Defendant Stephen sent Defendant Carty an e-mail with an invoice totaling $3,768,000.00 attached to it.

279.

On December 18, 2012, Defendants CompTech, as instructed by Defendant Culver, transmitted by wire in interstate commerce from Ohio to Georgia, an e-mail with an invoice on Defendant CompTech's letterhead attached. The invoice totaled $3,768,000.00 (the "CompTech Invoice"). The CompTech Invoice was e-mailed to Mr. Tourand, Director of Technology for BCSD, and indicated that BCSD was to pay for 15,000 NComputing L300 devices, 15,000 1-year warranties, 15,000 vSpace Management Centers, 15,000 Premium Support vSpace Servers (annual), 15,000 Premium Support vSpace Management Centers, and charges for installation of the 15,000 NComputing L300 devices (the "NComputing Items"). The NComputing Items and

the prices for each of them matched those listed on the Blank Invoice Defendant Carty sent to Defendant Stephen on December 12, 2012.

280.

The CompTech Invoice was fraudulent.

281.

On December 18, 2012, just hours after Mrs. Roberts was presented with the $3,247,200.00 Pinnacle Invoice, Defendant Culver submitted the $3,768,000.00 CompTech Invoice to Mrs. Roberts for payment. Mr. Tourand and Ms. Canty-Aaron had already approved the CompTech Invoice for payment when it was presented to Ms. Roberts.

282.

As with the Pinnacle Invoice, on December 18, 2012, Defendants Dallemand, Progressive Consulting, and Culver improperly, illegally and without authority directed, coerced, manipulated and demanded that Mrs. Roberts pay the CompTech Invoice by wire without the legally required Board approval and in violation of applicable BCSD policies. Funds to pay the CompTech Invoice could not be wired on December 18, 2012 because the funds first needed to be consolidated from various accounts and transferred to an account with sufficient funds to pay the invoice.

283.

On December 19, 2012, Mrs. Roberts expressed concerns about the purchase of the NComputing Items to Defendant Dallemand. In response to her concerns, Defendant Dallemand demanded that Mrs. Roberts wire $3,768,000.00 to Defendant CompTech "now." On December 21, 2012, Mrs. Roberts wired $3,768,000.00 from a BCSD bank account in Georgia to Defendant CompTech's bank account in Ohio against her wishes.

284.

Defendants Dallemand, Progressive Consulting, Culver and Stephen caused Mrs. Roberts to wire $3,768,000.00 from a BCSD bank account in Georgia to Defendant CompTech's bank in Ohio on December 21, 2012.

285.

In an effort to hide Defendants Progressive Consulting's involvement in the sale of the NComputing Items to BCSD and, defraud, steal, and obtain money from BCSD by means of false and fraudulent practices, representations and promises, on December 21, 2012. Defendant Culver sent an e-mail to Defendant Stephen with a copy to Mr. Tourand.  In the e-mail, Defendant Culver thanked Defendant Stephen for "agreeing to lower CompTech's profit margins on the sales of equipment to the school system."  Defendant CompTech, however, had nothing to do with the pricing of the CompTech Items.

286.

On December 21, 2012, Defendant Culver sent an e-mail to Defendant Stephen, directing Defendant Stephen to wire $2,151,750.00 of the $3,768,000.00 that had been wired from BCSD's bank account to Defendant CompTech earlier that day to Defendant Progressive Consulting's bank account with Bank of America in Tampa, Florida. Defendant Culver told Defendant Stephen that he did not have the wire instructions for a second wire transfer, but the amount would be $1,509,730.00.

287.

On December 24, 2012, per Defendant Culver's directions, Defendant CompTech wired $2,151,750.00 of the $3,768,000.00 that had been wired from BCSD's bank account to Defendant CompTech on December 21, 2012 to Defendant Progressive Consulting's bank

account with Bank of America in Tampa, Florida.  This was the amount Defendant Culver directed Defendant Stephen to wire to Defendant Progressive Consulting and the wire was sent to the bank account Defendant Culver requested.  Defendant CompTech initiated this wire from its local bank in Dayton, Ohio.

288.

That same day, December 24, 2012, Defendant Progressive Consulting wired $1,749,000.00 to NComputing, Inc. to purchase the NComputing Items for which $3,768,000.00 had been wired to Defendant CompTech from BCSD's bank account on December 21, 2012. Defendant Progressive Consulting's purchase of the NComputing devices was not made pursuant to the GSA schedule.

289.

Defendant Progressive Consulting's December 24, 2012 purchase of the NComputing devices was the largest purchase of NComputing devices in the United States in 2012.

290.

Defendant Progressive Consulting's December 24, 2012 purchase of the NComputing Items was made by Progressive Consulting using its own forces and it was without the knowledge or authorization of BCSD.

291.

On the same Defendant Progressive Consulting purchased the NComputing Items, December 24, 2012, Defendant Culver sent Defendant Stephen an e-mail that provided instructions for Defendant CompTech to send Defendant Progressive Consulting, by Federal Express, a check in the amount of $1,537,990.00 from the $3,768,000.00 that had been wired to Defendant CompTech from BCSD's bank account on December 21, 2012.

292.

On January 3, 2013, per Defendant Culver's instructions, Defendant CompTech wrote a check payable to Defendant Progressive Consulting in the amount of $1,537,990.00 and sent it from Dayton, Ohio to Defendant Progressive Consulting's office in Macon, Georgia by Federal Express.  Defendant Progressive Consulting accepted the check and deposited it into its bank account.

293.

Of the $3,768,000.00 that was wired from BCSD's bank account to Defendant CompTech on December 21, 2012, Defendant CompTech wired or mailed $3,689,740.00 to Defendant Progressive Consulting.  Defendant CompTech kept the remaining $78,260.00.

294.

Although it received $3,689,000.00 from Defendant CompTech, Defendant Progressive Consulting only paid NComputing, Inc. $1,749,000.00 for the NComputing devices.  It retained the remaining $1,940,000 for its own benefit.

295.

Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen obtained $3,768,000.00 from BCSD on December 21, 2012 by deceitful means and artful practices with the intention of depriving BCSD of $3,768,000.00 in violation of O.C.G.A. 16-8-3.  In doing so, Defendants Progressive Consulting, Culver, Carty, CompTech and Stephen committed the crime of theft by deception.

296.

On January 3, 2013, Defendants Progressive, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud BCSD and to obtain money of BCSD by means of false or

fraudulent pretenses, representations, or promises, and for executing their scheme deposited or caused to be deposited a check in the amount of $1,537,990.00 be sent or delivered by a commercial interstate carrier and knowingly caused the $1,537,990.00 check to be delivered by such carrier, according to the direction thereon or at the place at which it was directed to be delivered by the person to whom it was addressed. Also, Defendants Progressive Consulting, Culver, and Carty knowingly took or received the $1,537,990.00 check from the commercial interstate carrier.  Defendants Progressive, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1341 and committed the crime of mail fraud.

297.

On December 17, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce a writing for the purpose of executing such scheme when Defendant Carty sent Defendant Stephen an e-mail with the Blank Invoice attached. Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud in doing so.

298.

On December 17, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce a writing for the purpose of executing such scheme when Defendant Stephen sent Defendant Carty an e-mail with an invoice totaling $3,768,000.00

attached to it.  Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

299.

On December 18, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce a writing for the purpose of executing such scheme when Defendant CompTech sent Mr. Tourand the CompTech Invoice.  Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

300.

On December 19, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce a writing for the purpose of executing such scheme when Mrs. Roberts wired $3,768,000.00 from BCSD's bank account in Georgia to Defendant CompTech's bank account in Ohio.  Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

301.

On December 21, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted

by means of wire in interstate commerce a writing for the purpose of executing such scheme when Defendant Culver sent Defendant Stephen an e-mail that thanked Defendant Stephen for "agreeing to lower CompTech's profit margins on the sales of equipment to the school system." Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

302.

On December 21, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce a writing for the purpose of executing such scheme when Defendant Carty sent Defendant Stephen an e-mail directions for Defendant Stephen to wire $2,151,750.00 to Progressive Consulting's bank account in Tampa, Florida. Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

303.

On December 21, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce a writing for the purpose of executing such scheme when Defendant CompTech wired $2,151,750.00 from its bank account in Ohio to Defendant Progressive Consulting's bank account in Tampa, Florida. Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

304.

On December 24, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce a writing for the purpose of executing such scheme when Defendant Progressive Consulting, Inc. wired $1,749,000.00 to NComputing, Inc. Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

305.

On December 24, 2012, Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen, having devised a scheme to defraud and obtain money of BCSD by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire in interstate commerce for the purpose of executing such scheme when Defendant Culver e-mailed Defendant Stephen with instructions for Defendant CompTech to send Defendant Progressive Consulting a check in the amount of $1,537,990.00 by Federal Express.  Defendants Progressive Consulting, Culver, Carty, CompTech, and Stephen therefore violated 18 U.S.C. § 1343 and committed the crime of wire fraud.

306.

The following financial transactions (the "NComputing Transactions") were dependent upon each other:

(a)    Mrs. Robert's wiring (caused by Defendants Progressive Consulting, Culver, Carty, CompTech and Stephen) of $3,768,000.00 from a BCSD bank account in Georgia to Defendant CompTech's bank account in Ohio on December 21, 2012;

(b)    Defendant CompTech's wiring of $2,151,750.00 to Defendant Progressive Consulting's bank account in Tampa, Florida on December 21, 2012;

(c)    Defendant Progressive Consulting's wiring of $1,749,000.00 to NComputing, Inc. on December 24, 2012; and

(d)    Defendant CompTech's sending of a check made payable to Defendant Progressive Consulting by Federal Express on January 3, 2013.

307.

Each of the NComputing Transactions were part of a single plan or arrangement.

308.

Being dependent financial transactions that were part of a single plan or arrangement, each of NComputing Transactions shall be considered to be one involving the proceeds of wire fraud under 18 U.S.C. § 1956.

309.

Defendants Progressive Consulting, Culver, Carty, CompTech and Stephen knew that the property involved in each of the NComputing Transactions represented some form of unlawful activity.

310.

With the exception of Defendant CompTech's sending of a check made payable to Defendant Progressive Consulting by Federal Express on January 3, 2013, each of the NComputing Transactions in fact involved the proceeds of wire fraud.

311.

Defendant CompTech's sending of a check made payable to Defendant Progressive Consulting by Federal Express on January 3, 2013 in fact involved the proceeds of wire fraud.

312.

Defendants Progressive Consulting, Culver and Carty conducted each of the NComputing Transactions knowing that each transactions was designed in whole or in part to conceal or disguise the nature the location, the source, the ownership or the control of the proceeds of mail fraud and wire fraud.

314.

Defendants CompTech and Stephen conducted each of the NComputing transactions, with the exception of Defendant Progressive Consulting's wiring of $1,749,000.00 to NComputing's wiring of $1,749,000.00 to NComputing, Inc., knowing that each transaction was designed in whole or part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of mail fraud and wire fraud.

315.

Upon its receipt of the $2,151,750.00, Defendant CompTech wired on December 24, 2012 and continuing after its receipt of the check for $1,537,900.00 Defendant CompTech sent to it by Federal Express on January 3, 2013, Defendant Progressive Consulting engaged in numerous financial transactions.   These transactions included the following transfer of funds:

| Funds Disbursed To | Date of Disbursement | Amount of Disbursement |
| --- | --- | --- |
| Defendant Isaac Culver | December 24, 2012 | $88,000.00 |
| | January 7, 2013 | $8,000.00 |
| | January 22, 2013 | $10,000.00 |
| | January 28, 2013 | $40,000.00 |
| | April 16, 2013 | $84,000.00 |
| | August 22, 2013 | $2,800.00 |

|  | November 5, 2013 | $1,500.00 |
|  | December 16, 2013 | $4,000.00 |
| Defendant Dave Carty | December 24, 2012 | $88,000.00 |
|  | January 22, 2013 | $50,000.00 |
|  | January 22, 2013 | $10,000.00 |
|  | February 21, 2013 | $13,227.97 |
|  | February 25, 2014 | $17,022.56 |
|  | April 11, 2013 | $6,795.39 |
|  | April 15, 2013 | $147,000.00 |
|  | April 20, 2013 | $2,500.00 |
|  | September 2, 2013 | $22,111,65 |
|  | October 7, 2013 | $16, 2014.98 |
|  | November 6, 2013 | $14,338.03 |
|  | December 2, 2013 | $4,549.76 |
|  | December 19, 2013 | $4,000.00 |
|  | March 13, 2013 | $65,000.00 |
|  | April 12, 2013 | $62,000.00 |
|  | April 23, 2013 | $64,000.00 |
|  | April 26, 2013 | $12,000.00 |
|  | May 21, 2013 | $63,000.00 |
|  | May 28, 2013 | $10,000.00 |
|  | June 19, 2013 | $25,000.00 |
|  | June 25, 2013 | $28,000.00 |
|  | July 3, 2013 | $46,000.00 |

| | | |
|---|---|---|
| | July 23, 2013 | $2,000.00 |
| | August 13, 2013 | $65,000.00 |
| | August 21, 2013 | $30,000.00 |
| | October 3, 2013 | $30,000.00 |
| | October 4, 2013 | $85,000.00 |
| | October 9, 2013 | $64,000.00 |
| | October 11, 2013 | $12,000.00 |
| | October 23, 2013 | $54,000.00 |
| | November 12, 2013 | $30,000.00 |
| | December 5, 2013 | $20,000.00 |
| | December 27, 2013 | $35,000.00 |
| Defendant Progressive Consulting Wells Fargo Operating Account | January 10, 2013 | $40,000.00 |
| | January 10, 2013 | $30,000.00 |
| | January 14, 2013 | $50,000.00 |
| | June 11, 2013 | $10,000.00 |
| Defendant Progressive Property | January 22, 2013 | $150,000.00 |
| | January 22, 2013 | $75,000.00 |
| | January 25, 2013 | $230,000.00 |
| | April 11, 2013 | $20,000.00 |
| | November 13, 2013 | $48,000.00 |
| Defendant Positiventures | January 28, 2013 | $100,000.00 |
| Defendant Whitby, Inc. | February 14, 2013 | $73,126.38 |
| Defendant Integrated Technology | November 6, 2013 | $276,000.00 |

316.

The transfers identified in the chart above will hereafter be referred to as the "Progressive Consulting Transfers."

317.

Defendant Progressive Property transferred $205,018.00 to Defendant Whitby, Inc. on January 18, 2013 and another $222,000.00 to Defendant Whitby, Inc. on January 24, 2013. These transfers are hereafter referred to as the "Progressive Property Transfers."

318.

Defendants Progressive Consulting, Culver, and Carty conspired to conduct and conducted the Progressive Consulting Transfers involving the transfers of funds from Defendant Progressive Consulting to Defendants Culver, Carty, Defendant Progressive Consulting's Payroll Account and Defendant Progressive Consulting's Operating Account and Progressive.

319.

The Progressive Consulting Transfers involving the transfers of funds from Defendant Progressive Consulting to Defendants Culver, Carty, Defendant Progressive Consulting's Payroll Account and Defendant Progressive Consulting's Operating Account were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

320.

Defendants Progressive Consulting, Culver, and Carty committed the crime of money laundering in violation of 18 U.S.C. § 1956 (a) when they conducted the Progressive Computing Transfers from Defendant Progressive Consulting to Defendants Culver, Carty, Defendant

Progressive Consulting's Payroll Account and Defendant Progressive Consulting's Operating Account.

321.

Defendants Progressive Consulting, Culver, and Carty committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (h) when they conspired to conduct the Progressive Computing Transfers Defendants Culver, Carty, Defendant Progressive Consulting's Operating Account and Defendant Progressive Consulting's Payroll Account to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

322.

Defendant s Progressive Consulting, Progressive Property, Culver, and Carty conspired to and conducted the Progressive Consulting Transfers involving the transfers of funds from Defendant Progressive Consulting to Defendant Progressive Property.

323.

The Progressive Consulting Transfers involving the transfers of funds from Defendant Progressive Consulting to Defendant Progressive Property were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

324.

Defendants Progressive Consulting, Progressive Property, Culver, and Carty committed the crime of money laundering in violation of 18 U.S.C. § 1956(a) when they conducted the Progressive Computing Transfers involving the transfers of funds from Defendant Progressive Consulting to Defendant Progressive Property.

325.

Defendants Progressive Consulting, Progressive Property, Culver, and Carty committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired to conducted the Progressive Computing Transfers involving the transfers of funds from Defendant Progressive Consulting to Defendant Progressive Property to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

326.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Positiventures were involved in the Progressive Consulting Transfer made to Defendants Positiventures.

327.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Positiventures conspired to and conducted the Progressive Consulting Transfer made to Defendants Positiventures.

328.

The Progressive Consulting Transfer involving the transfers of funds from Defendant Progressive Consulting to Defendant Positiventures was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

329.

Defendants Progressive Consulting, Progressive Property, Culver, Cart, Whitby, and Positiventures  committed the crime of money laundering in violation of 18 U.S.C. § 1956(a) when they conducted the Progressive Computing Transfer involving the transfers of funds from Defendant Progressive Consulting to Defendant Positiventures.

330.

Defendants Progressive Consulting, Progressive Property, Culver, Carty, Whitby and Positiventures committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired to conduct the Progressive Computing Transfer involving the transfer of funds from Defendant Progressive Consulting to Defendant Positiventures to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

331.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Whitby, Inc. were involved in the Progressive Consulting Transfer made to Defendant Whitby, Inc.

332.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Whitby, Inc. conspired to and conducted the Progressive Consulting Transfer made to Defendant Whitby, Inc.

333.

The Progressive Consulting Transfer involving the transfer of funds from Defendant Progressive Consulting to Defendant Whitby, Inc. was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

334.

Defendants Progressive Consulting, Progressive Property, Culver, Carty, Whitby and Whitby, Inc. committed the crime of money laundering in violation of 18 U.S.C. § 1956(a) when they conducted the Progressive Computing Transfer involving the transfers of funds from Defendant Progressive Consulting to Defendant Whitby, Inc.

335.

Defendants Progressive Consulting, Progressive Property, Culver, Carty, Whitby and Whitby, Inc. committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired to conduct the Progressive Computing Transfer involving the transfer of funds from Defendant Progressive Consulting to Defendant Whitby, Inc. to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

336.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Integrated were involved in the Progressive Consulting Transfer made to Defendant Integrated.

337.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Integrated conspired to and conducted the Progressive Consulting Transfer made to Defendant Integrated.

338.

The Progressive Consulting Transfer involving the transfer of funds from Defendant Progressive Consulting to Defendant Integrated was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

339.

Defendants Progressive Consulting, Culver, Carty, Whitby and Integrated committed the crime of money laundering in violation of 18 U.S.C. § 1956(a) when they conducted the Progressive Computing Transfer involving the transfer of funds from Defendant Progressive Consulting to Defendant Integrated.

340.

Defendants Progressive Consulting, Culver, Carty, Whitby and Integrated committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired to conduct the Progressive Computing Transfer involving the transfer of funds from Defendant Progressive Consulting to Defendant Integrated to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

341.

Defendants Progressive Consulting, Culver, Carty and Whitby transported, transmitted, or transferred in interstate commerce the proceeds of the Progressive Computing Transfer involving the transfer of funds from Defendant Progressive Consulting to Defendant Technology knowing that the proceeds had been stolen, converted or taken by fraud in violation of 18 U.S.C. 2314.

342.

Defendants Progressive Consulting, Culver, Carty and Whitby committed the crime of transporting stolen or fraudulently taken goods when they transferred to Defendant Integrated the proceeds of the Progressive Computing Transfer to Defendant Integrated.

343.

After the proceeds of the Progressive Computing Transfer to Defendant Integrated crossed the Georgia boundary, Defendant Integrated received those proceeds knowing they had been stolen, unlawfully converted, or taken in violation of 18 U.S.C. § 2315.

344.

Defendant Integrated committed the crime of receiving stolen moneys when it received the proceeds of the Progressive Computing Transfer to Defendant Integrated.

345.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Whitby, Inc. were involved in the Progressive Property Transfers.

346.

Defendants Progressive Consulting, Culver, Carty, Whitby, and Whitby, Inc. conspired to and conducted the Progressive Property Transfers made to Defendant Whitby, Inc.

347.

The Progressive Property Transfers were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

348.

Defendants Progressive Consulting, Progressive Property, Culver, Carty, Whitby and Whitby, Inc. committed the crime of money laundering in violation of 18 U.S.C. § 1956(a) when they conducted the Progressive Property Transfers.

349.

Defendants Progressive Consulting, Progressive Property, Culver, Carty, Whitby and Whitby, Inc. committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired to conduct the Progressive Property Transfers to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of mail fraud and wire fraud.

350.

On November 6, 2013, Defendant Progressive Consulting transferred $276,000.00 to Defendant Integrated.   On that same day, Defendant Integrated transferred $155,000.00 to

Defendant Positiventures and on December 26, 2013 transferred the remainder of the funds to

Defendant Positiventures.  Subsequently, Defendant Positiventures transferred the funds to

Defendant Whitby, Inc.  Defendant Whitby, Inc. held the funds until June, 2017.

351.

In June and July, 2017, Defendants Whitby and Whitby, Inc., caused $125,000.00 to be

transmitted by means of wire communication in interstate commerce to pay the attorney's fees of

Defendant Culver to defend the criminal charges brought against him by this Court as a result of

the CompTech Purchases.  The transmission of these funds were designed in whole or in part to

conceal or disguise the nature, the location, the course, the ownership or the control of the

proceeds of mail fraud and wire fraud.

352.

In June and July, 2017, Defendants Whitby and Whitby, Inc., caused $125,000.00 to be

transmitted by means of wire communication in interstate commerce to pay the attorney's fees of

Defendant Carty to defend the criminal charges brought against him by this Court as a result of

the CompTech Purchases.  The transmission of these funds were designed in whole or in part to

conceal or disguise the nature, the location, the course, the ownership or the control of the

proceeds of mail fraud and wire fraud.

**q.    Failure in Deployment of NComputing Devices**

353.

The 15,000 NComputing devices were delivered to BCSD, but they are unusable and not

compatible with existing BCSD infrastructure.  The 15,000 NComputing devices are not suited

for the purposes intended and neither Defendant Progressive Consulting nor BCSD were ever

able to have the devices operate as represented. Only 300 of the devices were ever installed and they do not operate properly. The remaining devices are unusable and are currently being stored in BCSD's warehouse.

354.

Each of the NComputing devices needed additional equipment such as a computer screen, keyboard, an Ethernet cord and a computer mouse in order to be operated by a student. A licensing agreement would also need to be purchased on a yearly basis for each of the 15,000 devices to access software for the devices.  The appropriate equipment needed to operate the 15,000 NComputing devices would have required BCSD to invest significantly more funds in this project than the $3,768,000.00 already spent. Defendants Dallemand, Progressive Consulting, Culver and Carty were aware of the need for additional equipment and licenses when the decision to order these devices was made.  Like the decision to purchase the CompTech Items themselves, the need for this additional equipment was never disclosed to the Board.

355.

Northeast High School ("Northeast") was selected to serve as BCSD's pilot school for the deployment of 300 NComputing devices.

356.

In late March and early April 2013, Defendant Progressive Consulting's employees attempted to install 300 of the 15,000 NComputing devices at Northeast.   Defendants CompTech and Stephen were not involved in the installation process even though the CompTech Invoice included a fee of $351,750.00 for "NComputing L300 installation."

357.

On or about April 30, 2013, BCSD requested that Defendant CompTech provide BCSD with various documents regarding the NComputing devices.  Because CompTech had not acted as vendor and had no knowledge or experience with the NComputing devices, CompTech in turn contacted Defendant Culver who provided information on the NComputing license confirmation, warranty, and license agreement for CompTech to provide to the BCSD.  These documents were subsequently sent from Defendant CompTech to BCSD.

358.

On September 30, 2013, Defendants Progressive Consulting, Culver and Carty caused to be transmitted by wire to BCSD a white paper discussing the utilization of NComputing devices at BCSD fraudulently representing that the NComputing devises were appropriate and compatible for BCSD when Progressive Consulting, Culver and Carty knew that they were not and concealing their role in the purchase of the devices.

359.

The deployment and installation of the NComputing devices at Northeast was a complete failure.  There were compatibility issues with the NComputing devices working with the existing technology infrastructure at Northeast.  Defendants Progressive Consulting, Culver, Carty, CompTech and Stephen were unable to come up with a solution to address the issues relating to the NComputing devices.  These compatibility issues would have been obvious if just a single NComputing device had been tested for compatibility purposes before ordering and paying for 15,000 NComputing devices.

**r.  Defendant Dallemand's Severance Agreement**

360.

On December 5, 2012, Defendant Dallemand entered into a new Employment Contract with BCSD that extended his term of employment to December 31, 2015 and provided other substantial benefits to Defendant Dallemand.

361.

On January 17, 2013, which was only a little more than one (1) month after the date Defendant Dallemand's new Employment Agreement was executed, Defendant Dallemand told the members of the Board that he could not work with them and asked the Board to "buy out" his contract.

362.

After a short period of negotiation, Defendant Dallemand and the Defendant Dallemand, BCSD, and the Board of Education entered into a Severance Agreement dated February 25, 2013 (the "Severance Agreement") that ended Defendant Dallemand's employment with BCSD.

363.

Defendant Dallemand was in a fiduciary relationship with BCSD and the Board of Education at all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013 and Defendant Dallemand owed BCSD and the Board of Education the duties of a fiduciary throughout that entire period of time.

364.

Defendant Dallemand was in a relationship of trust and confidence with BCSD and the Board of Education at all times during his tenure as BCSD's Superintendent from February 1,

2011 to February 25, 2013 and Defendant Dallemand owed BCSD and the Board of Education a duty of utmost good faith.

365.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty to prepare and submit to the Board of Education recommendations relative to all matters requiring action of the Board.

366.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to place before the Board of Education such necessary and helpful facts, information and reports as were needed to ensure the making of informed decisions by the Board.

367.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to keep the Board of Education informed about the activities operating under the Board's authority.

368.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board of Education a clear and detailed explanation of any proposed procedure which would involve departure from established policy.

369.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board of

Education a clear and detailed explanation of any proposed procedure which would involve the expenditure of substantial sums.

370.

Defendant Dallemand had a duty and responsibility to communicate to the Board of Education and the BCSD that

(a)    Defendant Whitby had offered Defendant Dallemand a bribe of $100,000.00 for Defendant Dallemand's support of the MPN;

(b)    Dallemand had accepted Defendant Whitby's $100,000.00 bribery offer;

(c)    Defendant Whitby had offered Defendant Dallemand a bribe of $100,000.00 each year for ten (10) years for Defendant Dallemand's continued support of the MPN;

(d)    Defendant Dallemand had accepted Defendant Whitby's bribery offer of $100,000.00 each year for ten (10) years for Defendant Dallemand's continued support of the MPN;

(e)    on November 19, 2012, Defendant Knowles gave Defendant Dallemand $100,000.00 in bribe money in or around the Tifton, Georgia area;

(f)    Defendants Whitby and Dallemand had established Belhannes to carry on Defendant Whitby's bribery of Defendant Dallemand and to hide the proceeds of the bribery;

(g)    Defendant Knowles had offered Defendant Dallemand a bribe of twenty-four percent (24%) of the business interest of Defendant Pinnacle for Defendant Dallemand securing future construction contracts for Defendant Pinnacle from BCSD;

(h)     Defendant Dallemand had accepted Defendant Knowles' bribery offer of twenty-four percent (24%) of the business interest of Defendant Pinnacle for Defendant Dallemand securing future construction contracts for Defendant Pinnacle from BCSD;

(i)     Defendants Whitby, Knowles, and Pinnacle had offered Defendant Dallemand a bribe of $500,000.00 for the purpose of influencing Defendant Dallemand to push through a purchase by BCSD of accounting financial software from Defendant Pinnacle;

(j)     Defendant Dallemand had accepted the $500,000.00 bribery offer made by Defendants Whitby, Knowles, and Pinnacle for the purpose of influencing Defendant Dallemand to push through a purchase by BCSD of accounting financial software from Defendant Pinnacle;

(k)     Defendant Dallemand had caused BCSD to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items;

(l)     the circumstances surrounding Defendant Dallemand causing BCSD to wire $3,247,200.00 to Defendant Pinnacle;

(m)     Defendant Dallemand had caused BCSD to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the NComputing Items; or

(n)     the circumstances surrounding Defendant Dallemand causing BCSD to wire $3,247,200.00 to Defendant Pinnacle.

These matters will be referred to hereinafter as the "Material Information."

371.

Defendant Dallemand, in bad faith, failed to communicate any the Material Information to BCSD or the Board of Education before entering into the Severance Agreement with them. Rather, Defendant Dallemand suppressed the disclosure of this information to the Board of Education and BCSD.

372.

The Board of Education and BCSD would not have entered into the Severance Agreement had Defendant Dallemand communicated any of the Material Information to them.

373.

At the time Defendant Dallemand, BCSD the Board of Education entered into the Severance Agreement, neither the Board of Education nor BCSD had any knowledge and had no reason to know about any of the Material Information.

374.

Defendant Dallemand procured the Severance Agreement by fraud and it was therefore void under O.C.G.A. § 13-5-5.

375.

The processing and timing of the payment of the Pinnacle Invoice and the CompTech Invoice are related to the Defendants' scheme to defraud BCSD. The invoices were processed and paid immediately prior to the 2012 winter break, after Mr. Collier was removed as CFO and prior to significant changes in the membership of the BCSD Board.

376.

Defendant Dallemand, knowing that there would soon be significant changes in the membership of the BCSD Board and that he would soon be asking the Board to "buy out" his

new contract, forced BCSD employees to process the payments to Defendants Pinnacle and CompTech in late December 2012 to insure that the funds would be transferred prior to his departure from his position as BCSD's Superintendent.

377.

The consideration for the Severance Agreement was illegal as a violation of Ga. Const. Art. 3, § 6, paragraph VI(a) because BCSD did not receive any prospective substantial benefit in return from Defendant Dallemand and the release was an impermissible forgiveness of a debt or obligation owing to the public. Further, the indemnification was an impermissible waiver of sovereign immunity.

378.

Because the consideration for the Severance Agreement was illegal, the Severance Agreement was void as against public policy and under O.C.G.A. § 13-3-45.

379.

The Severance Agreement purported to obligate BCSD to (1) pay Defendant Dallemand $350,000.00; (2) grant Defendant Dallemand pension benefits based on that sum; and (3) pay Defendant Dallemand's health insurance premiums for another year and four months.

380.

On February 26, 2013 Defendant Dallemand caused BCSD to wire $259,643.33 from Georgia to the Wells Fargo Bank NA in Minnesota for his benefit in order for BCSD to satisfy one of its purported obligations under the Severance Agreement.

381.

On February 26, 2013 Defendant Dallemand caused BCSD to wire $42,500.68 from Georgia to the Bank of New York Mellon in New York for his benefit in order for BCSD to satisfy one of its purported obligations under the Severance Agreement.

382.

Having devised a scheme to defraud and for obtaining money by means of false and fraudulent pretenses, representations, and promises, on February 26, 2013 Defendant Dallemand caused BCSD to transmit by means of wire communication in interstate commerce $259,643.33 for the purposes of executing such scheme..

383.

Defendant Dallemand committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when he caused BCSD to transmit $259,643.33 by means of wire communication in interstate commerce on February 26, 2013.

384.

After the $259,643.33 Defendant Dallemand caused BCSD to transmit by means of wire communication in interstate commerce on February 26, 2013 crossed the Georgia boundary, Defendant Dallemand received those funds knowing they had been stolen, unlawfully converted, or taken in violation of 18 U.S.C. § 2315.

385.

Defendant Dallemand committed the crime of receiving stolen moneys when he received the $259,643.33 Defendant Dallemand caused BCSD to transmit by means of wire communication in interstate commerce on February 26, 2013.

386.

Having devised a scheme to defraud and for obtaining money by means of false and fraudulent pretenses, representations, and promises, on February 26, 2013 Defendant Dallemand caused BCSD to be transmit by means of wire communication in interstate commerce $42,500.68 for the purposes of executing such scheme.

387.

Defendant Dallemand committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when he caused BCSD to transmit $42,500.68 by means of wire communication in interstate commerce on February 26, 2013.

388.

After the $46,500.68 Defendant Dallemand caused BCSD to transmit by means of wire communication in interstate commerce on February 26, 2013 crossed the Georgia boundary, Defendant Dallemand received those funds knowing they had been stolen, unlawfully converted, or taken in violation of 18 U.S.C. § 2315.

389.

Defendant Dallemand committed the crime of receiving stolen moneys when he received the $46,500.68 Defendant Dallemand caused BCSD to transmit by means of wire communication in interstate commerce on February 26, 2013.

390.

Defendant Dallemand obtained the $259,643.33 BCSD wired from Georgia to the Wells Fargo Bank NA in Minnesota for Defendant Dallemand's benefit on February 26, 2013 by deceitful means and artful practices with the intention of depriving BCSD of the money.

391.

Defendant Dallemand committed the crime of theft by deception in violation of O.C.G.A. § 16-8-3 when he obtained the $259,643.33 that BCSD wired from Georgia to the Wells Fargo Bank NA in Minnesota for Defendant Dallemand's benefit on February 26, 2013.

392.

Defendant Dallemand obtained the $42,500.58 BCSD wired from Georgia to Bank of New York Mellon in New York for Defendant Dallemand's benefit on February 26, 2013 by deceitful means and artful practices with the intention of depriving BCSD of the money.

393.

Defendant Dallemand committed the crime of theft by deception in violation of O.C.G.A. § 16-8-3 when he obtained the $42,500.58 that BCSD wired from Georgia to Bank of New York Mellon in New York for Defendant Dallemand's benefit on February 26, 2013.

## COUNT I

## RICO Sections 1962(c), 1962(d) and 1964(c)

394.

The allegations of paragraph 1 through 249 are incorporated herein by reference.

395.

This Count is asserted against all Defendants.

396.

Pursuant to 18 U.S.C. § 1962(c) of the United States Racketeer Influenced and Corrupt Organizations Act (the "federal RICO Act"), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt."

397.

Pursuant to 18 U.S.C. § 1962(d) it is unlawful for any person to conspire to violate any of the provisions of 18 U.S.C. § 1962(c).

398.

Pursuant to 18 U.S.C. § 1964(c) "[a]ny person injured in his business or property by a reason of a violation of Section 1962 of this chapter may sue therefor in any appropriate United States district court…."

399.

To constitute an offense under the federal RICO Act, "at least two acts of racketeering activity" are required to have been committed.

400.

Collectively, the Defendants agreed to form and, in fact, formed an enterprise (the "Enterprise") that was engaged in, or the activities of which affected, interstate commerce. Each Defendant was associated with the Enterprise.

401.

Defendants conspired and agreed to and did conduct and participate in the conduct of the Enterprise's affairs through an ongoing pattern of racketeering activity and for the common, ongoing and unlawful purpose of intentionally defrauding BCSD and other schools and school districts of their money and property to the Defendants' benefit. The acts of racketeering of the Defendants were intentional and designed to deceive and, in fact, did deceive BCSD.

402.

Defendants intentionally devised and intentionally participated in a scheme to defraud BCSD and other schools and school districts of money and property.

403.

Defendants met and conferred throughout the course of their conspiracy to discuss and plan their scheme, to assign roles of each Defendant, the division of responsibilities of each Defendant and the payment each Defendant would receive for their intentional commission of the racketeering acts set forth below.

404.

Defendants Culver and Carty and other representatives of Progressive Consulting and Progressive Property, met with Defendant Dallemand behind closed doors on a nearly daily basis at BCSD offices from July 2012 through February 2013 to discuss and plan the scheme, to assign roles of each Defendant, the division of responsibilities for each Defendant and payments or benefits each Defendant would receive for their intentional commission of the racketeering acts set forth below in furtherance of the Defendants' scheme to defraud BCSD of its money and property. Defendants Progressive Consulting, Progressive Property, Culver and Dallemand communicated with Defendants Pinnacle, Knowles, Knowles and Randolph, McFarlane, Whitby, Positiventures, CGPICD, Whitby, Inc., Integrated, CompTech and Stephen by phone and email to discuss the scheme, assign roles for each Defendant and the payments or benefits each Defendant would receive for their participation in the scheme, including the commission of the racketeering acts set forth below.

405.

The acts of racketeering of the Defendants were intentional and include the following:

A.   <u>Defendant Dallemand</u> – Defendant Dallemand intentionally engaged in acts and intentionally participated in a scheme the purpose of which was to defraud BCSD and other schools and school districts of money and property and which acts are indictable under the provisions of 18 U.S.C. § 666, 18 U.S.C. § 1956, 18 U.S.C. § 1343, 18 U.S.C. § 2314, 18 U.S.C. § 2315 and O.C.G.A. § 16-10-2 when:

(i)    In April, 2011, Defendant Dallemand, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally reorganized purchasing procedures at BCSD by first eliminating the position of Director of Purchasing.  He then reorganized purchasing procedures in a way that proposed purchases and expenditures, like those involved in this Second Amended Complaint, would be reviewed and approved by employees unfamiliar with BCSD bid procedures.   This reorganization was designed to avoid bid procedures and board approval which was essential to execute the Defendants' scheme to maneuver around Board policies to defraud BCSD.  As an incident to Defendants' scheme, in April, 2011, Defendant Dallemand caused a chart reflecting organizational changes to be posted by wire in interstate commerce on the BCSD website so that it would be widely disseminated to potential vendors, like the other Defendants in this case, so that bid procedures and board approval could be avoided allowing the Defendants to execute their fraudulent scheme all in violation of 18 U.S.C. § 1343;

(ii)    Sometime between August 17, 2011 and June 27, 2012, the exact date being unknown, Defendant Dallemand, having intentionally devised a scheme with

other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of  bribery in violation of O.C.G.A. § 16-10-2(a)(2)  and 18 U.S.C. § 666(a)(1) when he corruptly agreed to accept a bribe of $100,000.00 from Defendants Whitby and CGIPCD to support the MPN;

(iii)    Sometime between August 17, 2011 and June 27, 2012, the exact date being unknown, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme committed the crime of Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(2)  when he corruptly agreed to accept a bribe from Defendants Whitby and CGPICD of ten percent (10%) of the $1,000,000.00 BCSD would pay for the MPN each year ($100,000.00 per year for ten years) for his continued support of the MPN;

(iv)    Sometime between August 17, 2011 and June 27, 2012, the exact date being unknown, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme committed the crime of bribery in violation of  in violation of 18 U.S.C. § 666(a)(2) when he corruptly agreed to accept a bribe from Defendants Whitby and CGPICD of ten percent (10%) of the $1,000,000.00 BCSD would pay for the MPN each year ($100,000.00 per year for ten years) for his continued support of the MPN;

(v)     On November 19, 2012, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of bribery and receipt of stolen goods in violation of O.C.G.A. § 16-10-2(a)(2) when he accepted from Defendant Knowles a check in the amount of $100,000.00;

(vi)    On November 19, 2012, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of Bribery Concerning Programs Receiving Federal Funds and receipt of stolen goods in violation of 18 U.S.C. § 666(a)(1) when he corruptly accepted from Defendants Knowles and Knowles and Randolph a check in the amount of $100,000.00 intending to be influenced or rewarded in connection with the business, a transaction, or series of transactions involving BCSD;

(vii)    Defendant Dallemand, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme committed the crime of transportation of stolen goods in violation of 18 U.S.C. § 2314 when Defendants Knowles and Knowles and Randolph transported the $100,000.00 check they gave Defendant Dallemand on November 19, 2012 in interstate commerce;

(viii)    On November 19, 2012, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of receipt of stolen moneys in violation of 18 U.S.C. § 2315 when Defendants Knowles and Knowles and Randolph gave him a check in the amount of $100,000.00;

(ix)    On or before November 19, 2012, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when he conspired to receive a $100,000.00 check from Defendants Knowles and Knowles and Randolph with the intent to promote the carrying on of bribery and knowing that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of bribery;

(x)    On November 19, 2012, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of money laundering in violation of 18 U.S.C. § 1956(a)(1) when he received a $100,000.00 check from Defendant Knowles with the intent to promote the carrying on of bribery and knowing that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of bribery;

(xi)    Sometime between November 19, 2012 and December 18, 2012, the exact date being unknown, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(2) and U.S.C. § 666(a)(1)(B) when he corruptly accepted Defendants Whitby, Knowles and Pinnacle's offer of a bribe of $500,000.00 to influence him to push through a purchase of financial and accounting software from Defendant Pinnacle;

(xii)    On December 19, 2012, Defendant Dallemand, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, fraudulently, intentionally, improperly, illegally and without authority, directed, coerced, demanded and caused to be transmitted by means of wire $3,247,200.00 from BCSD in Georgia to Defendant Pinnacle in Florida for the purported purchase of the Pinnacle Items without soliciting bids and without Board approval in violation of applicable BCSD policies.  Defendant Dallemand intentionally represented to BCSD's employees that the payment was legal and proper when he knew that it was not.  Further, Defendant Dallemand knew the funds he demanded and caused to be transmitted by wire to Defendant Pinnacle were taken from BCSD by fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2314;

(xiii)    On December 21, 2012, Defendant Dallemand, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such  scheme,

fraudulently, intentionally, improperly, illegally and without authority, directed, coerced, demanded and caused to be transmitted by means of wire from BCSD in Georgia to Defendant CompTech in Ohio $3,768,000.00 for the purported purchase of the CompTech Items without soliciting bids and without Board approval in violation of BCSD policies. Defendant Dallemand intentionally represented to BCSD's employees that the payment was legal and proper when he knew that it was not. Further, Defendant Dallemand knew the funds he demanded and caused to be transmitted to Defendant CompTech were taken from BCSD by fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2314;

(xiv)  On February 26, 2013, Defendant Dallemand, having intentionally devised  a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, fraudulently, intentionally, improperly, illegally and without authority directed, demanded and caused to be transmitted by wire from BCSD in Georgia to the Bank of New York Mellon in New York $42,500.68 of the funds paid to Defendant Dallemand in connection with the Severance Agreement Defendant Dallemand had procured by fraud. Defendant Dallemand intentionally transmitted the money in interstate commerce knowing it had been taken from BCSD by fraud. Defendant Dallemand also intentionally received and possessed the money after it had crossed a State boundary and after it had been taken from BCSD by fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2314;

(xv)  On February 26, 2013, Defendant Dallemand, having intentionally devised  a scheme with other Defendants to defraud BCSD and other schools and school

districts of money and property and for purposes of executing such scheme, fraudulently, intentionally, improperly, illegally and without authority directed, demanded and caused BCSD employees to transmit by wire $259,643.33 of the funds paid to Defendant Dallemand in connection with the Severance Agreement Defendant Dallemand had intentionally procured by fraud from BCSD in Georgia to the Wells Fargo Bank NA in Minnesota. Defendant Dallemand caused the money to be transmitted in interstate commerce knowing it had been taken from BCSD by fraud. Defendant Dallemand also intentionally received and possessed the money after it had crossed a State boundary and after it had been taken from BCSD by fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2314 and 2315;

(xvi)    Beginning August 15, 2013 through June 25, 2016, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, accepted the Belhannes Payments and committed the crimes of bribery, money laundering and receipt of stolen goods with the intent to carry on bribery and knowing that each of the Belhannes payments was designed to conceal and disguise the nature, the location and the source of the bribe payments with each Belhannes Payment being a separate and distinct violation of O.C.G.A. § 16-10-2(a)(2), 18 U.S.C. §666(a), 18 U.S.C. § 1956(a) and (h) and 18 U.S.C. § 2315;

(xvii)    Sometime in 2015, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed wire

fraud when he contacted by email or telephone Defendant Knowles soliciting the bribe money that Defendant Whitby and Knowles promised to him from BCSD's purchase of the accounting and financial software from Defendant Pinnacle in violation of 18 U.S.C. § 1343;

(xviii) Sometime in 2015, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme solicited from Defendant Knowles bribe money that Defendant Whitby and Defendant Knowles promised him from BCSD's purchase of the Pinnacle Items in violation of O.C.G.A. § 16-10-2(a)(2) and 18 U.S.C. § 666(a)(1)(B);

(xix) Sometime in 2015, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, conspired to and committed the offense of money laundering when he contacted by email or telephone Defendant Knowles soliciting the bribe money that Defendant Whitby and Knowles promised to him from BCSD's purchase of the Pinnacle Items from Defendant Pinnacle with the intent to promote the carrying on of bribery and knowing that the transaction was designed to conceal and disguise the nature, the location and the source of unlawful activity in violation of 18 U.S.C. § 1956(a)(1) and (h); and

(xx) On April 2, 2017, Defendant Dallemand having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, conspired to and

received a bribe payment of $24,000.00 from Defendant Whitby at a South Georgia restaurant related to Defendant Dallemand's support of the MPN in violation of  O.C.G.A. § 16-10-2, 18 U.S.C. § 1956(a)(1) and (h), 18 U.S.C. § 666(a) and 18 U.S.C. § 2315 .

B.  <u>Defendants Progressive Consulting, Progressive Property, Culver and Carty</u> – Defendants Progressive Consulting, Progressive Property, Culver and Carty intentionally engaged in acts and intentionally participated in a scheme the purpose of which was to defraud BCSD and other school district such as BCSD of money and property which acts are indictable under the provisions of 18 U.S.C. § 666, 18 U.S.C. § 1956,18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 2314, 18 U.S.C. § 2315 and O.C.G.A. § 16-10-2 when:

(i)  Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed wire fraud in violation of 18 U.S.C. § 1343 when they, by use of wire in interstate commerce, acquired the domain name www.ProsceniumSoft.com, (the "Proscenium website") on or about September 12, 2007.  The Proscenium website was an essential part of the scheme of Defendants Progressive Consulting, Culver and Carty to defraud schools districts such as BCSD;

(ii)  From at least April 10, 2011 until sometime between August 11, 2014 and August 15, 2014, as a regular part of its business, the Proscenium website was hosted by Defendant Progressive on its server.  During that time, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme with other

Defendants to defraud BCSD and other school districts of money and property, for purposes of executing such scheme, and as a regular part of their business, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 have falsely and fraudulently advertised on the Proscenium website that the Proscenium Software exists and that it provides "a suite of software application to support the administrative needs of schools and district school offices." In fact, the Proscenium software did not exist;

(iii)    From April 10, 2011 until the Proscenium website was deleted sometime between August 11, 2014 and August 15, 2014, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme with other Defendants to defraud BCSD and other school districts of money and property, for purposes of executing such scheme, and as a regular part of their business, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they falsely and fraudulently advertised on the Proscenium website that the "Proscenium Software" was copyrighted.  In fact, the Proscenium Software has never been copyrighted;

(iv)    From April 10, 2011 until the Proscenium website was deleted sometime between August 11, 2014 and August 15, 2014, Defendants Progressive Consulting, Culver and Carty having intentionally devised a scheme with other Defendants to defraud BCSD and other school districts of money and property, for purposes of executing such scheme, and as a regular part of their business, fraudulently and intentionally through the Proscenium website, committed the crime of wire fraud in violation of U.S.C. § 1343 when they misrepresented the existence and utility

of Proscenium software to BCSD and other school districts that viewed the website;

(v)     On July 13, 2012 Defendant Culver, having intentionally devised a scheme with other Defendants to defraud BCSD and other school districts of money and property, for purposes of executing such scheme, and as a regular part of conducing his business, committed the crime of wire fraud in violation of 18 U.S.C. § 1943 when he sent Defendant Stephen an e-mail requesting a letter of reference for the Technical Project Manager position for BCSD. Culver noted in the e-mail that the reference was "totally made up," and provided the wording for the written reference. The wording contained an outline of work purportedly performed for Defendant CompTech by Defendant Progressive Consulting. The described work, however, never took place;

(vi)    On or about December 13, 2012, Defendant Culver having intentionally devised a scheme with other Defendants to defraud BCSD and other school districts of money and property and for purposes of executing such scheme, committed wire fraud in violation of 18 U.S.C. § 1343 when he sent to Defendant McFarlane via email an invoice for Defendant Pinnacle to send to BCSD for the accounting and financial software which Defendant Pinnacle would purportedly provide to BCSD pursuant to their scheme to defraud BCSD. Defendant Culver requested that Defendant McFarlane transfer the information from the invoice to Pinnacle's letterhead to make it appear as if Pinnacle was the vendor for the software and send the completed invoice back to Defendant Culver;

(vii)     Defendants Progressive Consulting and Culver, having intentionally devised a scheme with other Defendants to defraud BCSD and other school districts of money and property and for purposes of executing such scheme, committed wire fraud in violation of 18 U.S.C. § 1943 when they fraudulently and intentionally executed a Project Manager's Certification for Payment bearing the date of December 13, 2012 intentionally representing to BCSD that payment of the fraudulent Pinnacle Invoice was authorized and proper and that the Pinnacle Items were appropriate and then intentionally transmitting this fraudulent document by wire or sent by mail in interstate commerce from Georgia to Defendant Pinnacle in Florida.   The fraudulent Manager's Certification was included with the fraudulent Pinnacle Invoice which was presented to Sharon Roberts by Defendants Culver and Tourand in Mrs. Roberts' office for the first time on December 18, 2012;

(viii)    On or around December 18, 2012, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they, by wire in interstate commerce, intentionally arranged a sham purchase of the purported Pinnacle Items which did not exist and in which they impermissibly profited in furtherance of their scheme to defraud BCSD and other school district;

(ix)     On December 19, 2012, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme with other Defendants to defraud BCSD

and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. 1343 when they intentionally telephoned from Georgia Defendants Pinnacle and McFarlane in Florida to obtain wiring instructions for BCSD to pay the fraudulent Pinnacle Invoice;

(x)     On December 19, 2012, Defendants Progressive Consulting, Culver and Carty, Having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for the purpose of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they cause BCSD to wire $3,247,200.00 from a BCSD bank account in Georgia to Defendant Pinnacle's bank account in Florida.

(xi)    On or around January 24, 2013, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they caused an inexpensive Ingram Micro server to be shipped from Tennessee via private or commercial carrier in interstate commerce to Defendant Progressive Consulting in Georgia. Defendant Culver and Henry Scott, a Progressive Consulting employee, delivered the server to BCSD's technology department and intentionally and fraudulently represented to the BCSD Executive Director of Technology that it contained the Pinnacle Items for which BCSD paid $3,247,200.00 when Defendants Progressive Consulting and Culver knew that it did not;

(xii)  On December 17, 2012, Defendant Carty, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when he sent Defendant Stephen an e-mail with the Blank Invoice totaling $3,768,000.00 and requested that Defendant Stephen transfer the information contained on the Blank Invoice to CompTech's letterhead to make it appear as if CompTech was the vendor of the NComputing devices and related accessories and services and then send the completed invoice back to Defendant Carty;

(xiii)  On December 17, 2012, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they caused Defendant Stephen to send Defendant Carty an e-mail with an invoice totaling $3,768,000.00 attached to it;

(xiv)  On December 18, 2012, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they caused Defendant Stephens to email BCSD the fraudulent CompTech Invoice;

(xv)  Defendants Progressive Consulting and Culver, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with

other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they caused BCSD to wire $3,768,000.00 from a BCSD bank account in Georgia to Defendant CompTech's bank in Ohio on December 21, 2012;

(xvi)    Defendant Progressive Consulting and Culver, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they sent Defendant Stephen an e-mail thanking Defendant Stephen for "agreeing to lower CompTech's profit margins on the sales of equipment to the school system" when, in fact, neither Defendant CompTech nor Defendant Stephen had anything to do with the pricing of the CompTech items;

(xvii)   On December 21, 2012, Defendants Progressive Consulting and Culver, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they sent an e-mail to Defendant Stephen, directing Defendant Stephen to wire $2,151,750.00 of the $3,768,000.00 that had been wired from BCSD's bank account to Defendant CompTech earlier that day to Defendant Progressive Consulting's bank account with Bank of America in Tampa, Florida;

(xviii)  Defendants Progressive Consulting and Culver, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the

crime of wire fraud in violation of 18 U.S.C. § 1343 when they caused Defendant CompTech to wire $2,151,750.00 of the $3,768,000.00 that had been wired from BCSD's bank account to Defendant CompTech on December 21, 2012 to Defendant Progressive Consulting's bank account with Bank of America in Tampa, Florida on December 24, 2012;

(xix)    Defendants Progressive Consulting, Culver and Carty having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they wired $1,749,000.00 to NComputing, Inc. to purchase the NComputing Items for which $3,768,000.00 had been wired to Defendant CompTech from BCSD's bank account on December 21, 2012;

(xx)    On December 24, 2012, Defendant Culver, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when he sent Defendant Stephen an e-mail that provided instructions for Defendant CompTech to send Defendant Progressive Consulting, by Federal Express, a check in the amount of $1,537,990.00 from the $3,768,000.00 that had been wired to Defendant CompTech from BCSD's bank account on December 21, 2012;

(xxi)    Defendants Progressive Consulting and Culver, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the

crime of mail fraud in violation of 18 U.S.C. § 1341 when they caused Defendant CompTech to send a check payable to Defendant Progressive Consulting in the amount of $1,537,990.00 and sent it from Dayton, Ohio to Defendant Progressive Consulting's office in Macon, Georgia by Federal Express on January 3, 2013;

(xxii)    Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they engaged in the Progressive Consulting Transactions and were involved with and conducted each of the Progressive Consulting Transactions;

(xxiii)    Defendants Progressive Consulting, Progressive Property, Culver and Carty, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of money laundering in violation 18 U.S.C. § 1951(a)(1) by being involved with and conducting each of the Progressive Property Transactions;

(xxiv)    Defendants Progressive Consulting, Culver and Carty having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme committed the crime of transporting stolen or fraudulently taken goods when they transferred or caused to  be transferred to Defendant Integrated the proceeds of the Progressive Computing Transfer to Defendant Integrated;

(xxv)   On March 30, 2013, Defendants Progressive Consulting and Culver having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they, by wire in interstate commerce, assisted Defendants Pinnacle, McFarlane and Knowles to update the Proscenium website registration to show Pinnacle and Harold Knowles as the purported owners of the Proscenium website;

(xxvi)   On June 25, 2013, Defendants Progressive Consulting and Culver, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts and for purposes of executing such scheme committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they, by wire in interstate commerce assisted Defendants Pinnacle and McFarlane to update the Proscenium website to show Defendants Pinnacle and McFarlane as the purported owners of the Proscenium website with associated software even though the Proscenium website continued to be hosted on Progressive Consulting's server and maintained the same IP address in Macon, Georgia until it was deleted sometime between August 11, 2014 and August 15, 2014;

(xxvii)   On September 30, 2013, Defendants Progressive Consulting, Culver and Carty, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they caused to be transmitted by wire to BCSD a white paper discussing the utilization of NComputing devices at BCSD fraudulently representing that the NComputing

devises were appropriate and compatible for BCSD when Progressive Consulting,

Culver and Carty knew they were not; and

(xxviii) On November 6, 2013, Defendant Progressive Consulting transferred

$276,000.00 to Defendant Integrated.

C.      Defendants Pinnacle, Knowles, Knowles and Randolph, and McFarlane – Defendants

Pinnacle, Knowles, Knowles and Randolph, and McFarlane intentionally engaged in acts

and intentionally participated in a scheme the purpose of which was to defraud BCSD

and other schools and school districts of money and property, and which acts are

indictable under the provisions of 18 U.S.C. § 666, 18 U.S.C. § 1956, 18 U.S.C. § 1341,

18 U.S.C. § 1343, 18 U.S.C. § 2314, 18 U.S.C § 2315 and O.C.G.A. § 16-10-2 when:

(i)      From April 10, 2011 until it was deleted between August 11, 2014 and August 15,

2014, Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles,

Knowles and Randolph and McFarlane, having devised a scheme and artifice to

defraud BCSD and other school districts and to obtain money by means of false

and fraudulent pretenses and representations, committed the crime of wire fraud

in violation of 18 U.S.C. § 1343 when they, through the Proscenium website,

falsely and fraudulently advertised that Proscenium Software exists and that it

"provides a suite of software applications to support the administrative needs of

schools and school district offices" which it did not;

(ii)     Defendants Pinnacle, McFarlane, Knowles, and Knowles and Randolph, having

devised a scheme and artifice to defraud BCSD and other school districts and to

obtain money by means of false and fraudulent pretenses and representations,

committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they,

transmitted or caused to transmitted by wire communication in interstate commerce, a writing for purpose of executing such scheme and artifice when, from April 10, 2011 until it was deleted between August 11, 2014 and August 15, 2014, by falsely and fraudulently advertising through the Proscenium website that Proscenium Software was copyrighted when it was not – it does not even exist. By doing so, Defendants Progressive Consulting, Culver, Carty, Pinnacle, Knowles, and McFarlane committed the crime of wire fraud;

(iii)   Defendants Progressive Consulting, Culver, Carty, Pinnacle, McFarlane, Knowles, and Knowles and Randolph, having devised a scheme and artifice to defraud BCSD and other school districts and to obtain money by means of false and fraudulent pretenses and representations, committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they, transmitted or caused to transmitted by wire communication in interstate commerce, by false and fraudulent advertising that they misrepresented the existence, purpose, and utility of the Proscenium Software Suite to school districts that viewed the website;

(iv)    On or about November 9, 2012, Defendants Knowles and Knowles and Randolph, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) by conspiring for Defendants Whitby and Positiventures to give Defendants Knowles and Knowles and Randolph a $100,000.00 check to be passed along to Defendant Dallemand as a bribe with the intent to promote the carrying on of bribery and knowing that the

transaction was designed to conceal and disguise the nature, the location, the source and the ownership of the proceeds of bribery;

(v)     Defendants Knowles and Knowles and Randolph having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of money laundering in violation of 18 U.S.C. § 1956(a)(1) when, on November 9, 2012, Defendant Positiventures gave a $100,000.00 check to Defendants Knowles and Knowles and Randolph to be passed along by Defendants Knowles and Knowles and Randolph to Defendant Dallemand as a bribe knowing that the transaction involved the proceeds of unlawful activity, with the intent to carry on bribery and knowing that the transaction was designed to conceal and disguise the nature, location and source of the money;

(vi)    Having crossed the Georgia boundary, Defendants Knowles and Knowles and Randolph having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of receipt of stolen goods in violation of 18 U.S.C. § 2315 when they accepted from Defendants Whitby, CGPICD and Positiventures a check in the amount of $100,000.00 on November 9, 2012;

(vii)   Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing such scheme, signed a Software Subscribers License bearing the date of

November 12, 2012 which was never signed by BCSD or approved by the BCSD Board. They committed the crime of wire fraud in violation of 18 U.S.C. § 1343 when they later transmitted the License by wire in interstate commerce from Florida to Georgia intentionally representing that Defendant Pinnacle would provide BCSD with the Pinnacle Items which they did not own, which did not exist, and which they did not have the expertise to develop, install, set up, configure and which they never provided and had no intention of providing and which License BCSD had no knowledge of on December 18, 2012 when presented with the Pinnacle Invoice;

(viii)   On November 19, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(1) when Defendant Knowles and Randolph gave Defendant Dallemand a check for $100,000.00;

(ix)    On November 19, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C § 666(a)(2) when Defendant Knowles and Randolph gave Defendant Dallemand a check for $100,000.00;

(x)     On or about November 19, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired for Defendant Knowles to give Defendant Dallemand a check for $100,000.00 with the intent to carry on bribery and knowing the transaction was designed to conceal and disguise the nature, the location and the source of the proceeds of unlawful activity;

(xi)    Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of money laundering in violation of 18 U.S.C. § 1956(a)(1) when Defendant Knowles gave Defendant Dallemand a check for $100,000.00 with the intent to carry on bribery and knowing the transaction was designed to conceal and disguise the nature, the location and the source of the proceeds of unlawful activity;

(xii)   On or about November 12, 2012, December 1, 2012 and December 2, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of bribery in violation of O.C.G.A. § 16-10-2(a)(1) and 18 U.S.C. § 666(a)(2) when Defendant Knowles offered to Defendant

Dallemand stock in Defendant Pinnacle with the intent to influence Defendant Dallemand in connection with Pinnacle obtaining future construction contracts;

(xiii)   Sometime between November 19, 2012 and December 18, 12012, the exact date being unknown, Defendants Pinnacle, Knowles, Knowles and Randolph, and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of bribery when Defendant Knowles and Whitby offered Defendant Dallemand a bribe of $500,000.00 for the purpose of influencing Defendant Dallemand to push through a purchase by BCSD of accounting and financial software from Defendant Pinnacle in violation of O.C.G.A. § 16-10-2(a)(1) and 18 U.S.C. § 666(a)(2);

(xiv)   On December 19, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing such scheme, intentionally received and participated in a phone conversation while in Florida with Defendant Culver, who was in Georgia, in which Defendant Culver requested wiring instructions for use by BCSD in paying the fraudulent Pinnacle Invoice in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts in violation of 18 U.S.C. § 1343;

(xv)   On December 19, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for

purposes of executing such scheme, while in Florida, intentionally provided wiring instructions by phone to BCSD in Georgia for use by BCSD to pay the fraudulent Pinnacle Invoice in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property in violation of 18 U.S.C. § 1343;

(xvi)    On December 19, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally received and retained in Florida $3,247,200.00 that BCSD had transmitted by wire in interstate commerce from Georgia in payment of the Pinnacle Items that they never provided to BCSD and had no intention of providing to BCSD.  Defendants Pinnacle and McFarlane knew that the funds they  received and retained were sent to them without proper authority and were procured from BCSD by fraud and, in fact, intentionally participated in and were complicit in the fraud in violation of 18 U.S.C. § 1343;

(xvii)   On December 19, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane ,having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property intentionally received by wire and possessed $3,247,200.00 taken from BCSD by fraud which had crossed a State boundary and which Defendants Pinnacle and McFarlane knew to have been taken from BCSD by fraud in violation of 18 U.S.C. § 1343;

(xviii) On December 20, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property committed the crimes of wire fraud and money laundering when on December 20, 2012 Defendant Pinnacle transferred $500,000.00 to the Pinnacle Technology Account in violation of 18 U.S.C. § 1956(a)(1) and (h) and 18 U.S.C. § 1343.

(xix) On December 20, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property committed the crimes of wire fraud and money laundering when on December 20, 2012 Defendant Pinnacle transferred two payments of $25,000.00 to Defendant Knowles and then again on June 27, 2013 when Defendant Pinnacle transferred $75,000.00 to Defendant Knowles in violation of 18 U.S.C. § 1956(a)(1) and (h) and 18 U.S.C. § 1343.

(xx) On December 21, 2012, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property committed the crimes of wire fraud and money laundering when on December 21, 2012 Defendant Pinnacle transferred $45,000.00 to Defendant McFarlane in violation of 18 U.S.C. § 1956(a)(1) and (h) and 18 U.S.C. § 1343.

(xxi) On January 3, 2013, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property

committed the crimes of wire fraud and money laundering when on January 3, 2013 Defendant Pinnacle transferred $500,000.00 to the LLC Account in violation of 18 U.S.C. § 1956(a)(1) and (h) and 18 U.S.C. § 1343.

(xxii)  On January 8, 2013, Defendants Pinnacle, Knowles, Knowles and Randolph, and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, having conspired to commit and having committed the crime of money laundering when Defendant Pinnacle gave to Defendant Knowles and Randolph a Pinnacle check in the amount of $100,000.00 to be passed along to Positiventures to reimburse Defendant Positiventures for the $100,000.00 bribe money Positiventures had paid to Defendant Dallemand on November 19, 2012 with the intent to promote the carrying on of bribery and designed to conceal and disguise the proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1) and (h);

(xxiii) On January 8, 2013,  Defendants Pinnacle, Knowles, Knowles and Randolph, and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of Bribery Concerning Program Receiving Federal Funds when Pinnacle gave to Defendant Knowles and Randolph a check in the amount of $100,000.00 to be passed along to Positiventures to reimburse Positiventures for the $100,000.00 bribe money Positiventures had paid to Defendant Dallemand on November 12, 2012 for Defendant Dallemand's support of the MPN with the intent to influence

Defendant Dallemand in the performance of acts related to his employment with BCSD in violation of 18 U.S.C. § 666(a)(2);

(xxiv)   On January 10, 2013, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, conspired to committed and committed money laundering when Knowles and Randolph gave to Defendant Positiventures a $100,000.00 check to reimburse Positiventures for the $100,000.00 in bribe money Positiventures paid to Defendant Dallemand on November 19, 2012 with the intent to promote the carrying on of bribery and knowing that the transaction was designed to disguise and conceal the proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1) and (h);

(xxv)   On January 10, 2013, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of Bribery Concerning Program Receiving Federal Funds when Knowles and Randolph gave Positiventures a $100,000.00 check to reimburse Positiventures for the $100,000.00 bribe Positiventures paid to Defendant Dallemand on November 19, 2012 in violation 18 U.S.C. § 666(a)(2);

(xxvi)   Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally  devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of

executing such scheme, intentionally transmitted or caused to be transmitted by wire in interstate commerce or placed or caused to be placed in a post office or authorized depository for mail matter to be sent or delivered by the U.S. Postal Service, or placed or caused to be placed with a private or commercial carrier to be sent or delivered by that private or commercial carrier in interstate commerce from Florida to Georgia, the fraudulent Pinnacle Invoice in the amount of $3,247,200.00 to Defendants Progressive Consulting and Culver and presented to BCSD for the first time on December 18, 2012 by Defendants Culver and Tourand for the Pinnacle Items which they did not own and did not exist, intentionally representing to BCSD that Pinnacle would provide the Pinnacle Items which Pinnacle never provided, had no intention of providing and had no ability, capacity or expertise to provide in violation of 18 U.S.C § 1341 and 18 U.S.C. § 1343;

(xxvii) On or around January 24, 2013, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts with other Defendants and for purposes of executing such scheme, caused a single inexpensive blank Ingram Micro server to be placed with a private or commercial carrier in interstate commerce to be sent or delivered from Tennessee to Defendant Progressive Consulting in Georgia intentionally representing to BCSD that the server contained the product for which BCSD had paid $3,247,200.00 to Defendant Pinnacle when Defendants Pinnacle and McFarlane knew that it did not in violation of 18 U.S.C. § 1341;

(xxviii) From March 30, 2013 until deletion of the Proscenium website, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having devised a scheme to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme misrepresented the existence, purpose and utility of the Proscenium Software Suites to BCSD and other schools and school districts which viewed the website.  The Pinnacle Defendants' misrepresentations about the Proscenium website and ownership of Proscenium Software were made as part of Defendants' regular way of doing business.  The Proscenium website was an advertisement the purpose of which was to induce schools and school districts by means of misrepresentation and fraud to "purchase Proscenium software"  from Defendants which they did not own and which did not exist in furtherance of the Defendants' scheme to defraud BCSD and other schools and school districts in violation of 18 U.S.C § 1343;

(xxix)  On July 2, 2013 Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of wire or mail fraud when Defendant Knowles on behalf of Defendant Pinnacle, wrote to BCSD by U.S. Mail or email representing that Defendant Pinnacle "stands ready to implement and install" the Pinnacle Items when the Items did not exist in violation of 18 U.S.C. § 1341 or 1343;

(xxx)  On February 25, 2014,  Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme with other Defendants to

defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of wire fraud when Defendant Knowles, on behalf of Defendant Pinnacle, wrote to BCSD by email representing that Pinnacle stood ready to deliver the Pinnacle Items to BCSD when the Items did not exist in violation of 18 U.S.C. § 1343;

(xxxi)    At sometime between August 11, 2014 and August 15, 2014, Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme to defraud BCSD and other schools and school districts of money and property with other Defendants and for purposes of executing the scheme, by use of wire in interstate commerce caused the Proscenium website to be deleted in an effort to conceal their fraudulent conduct from BCSD, the public, the Macon Telegraph and the investigations of the Georgia Attorney General in violation of 18 U.S.C. § 1343; and

(xxxii)   On May 22, 2017,  Defendants Pinnacle, Knowles, Knowles and Randolph and McFarlane, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of wire fraud when Defendant McFarlane emailed Redstone/Dynasty asking that Redstone/Dynasty install Dynasty Software on Defendant McFarlane's laptop computer and requesting that Redstone/Dynasty label the software    "Proscenium School Management Systems" and further requesting that Redstone/Dynasty reference BCSD as Pinnacle's client in violation of 18 U.S.C. § 1343.

D.    <u>Defendants CompTech and Stephen</u> – Defendants CompTech and Stephen intentionally engaged in acts and intentionally participated in a scheme the purpose of which was to defraud BCSD and other schools and school districts of money and property and which acts are indictable under the provisions of 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 2314, and 18 U.S.C. § 2315 when:

(i)    On July 13, 2012, Defendant Culver having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of wire fraud in violation of 18 U.S.C..§ 1343 when he sent Defendant Stephen an e-mail requesting a letter of reference for the Technical Project Manager position for BCSD.  Culver noted in the e-mail that the reference was "totally made up" and provided the wording for the letter;

(ii)    In 2012, Defendants CompTech and Stephen, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally transmitted by wire in interstate commerce from Ohio to Georgia, caused to be transmitted by wire in interstate commerce from Ohio to Georgia, placed or caused to be placed in a post office or authorized depository for mail matter to be sent or delivered by the U.S. Postal Service, or  placed or caused to be placed with a private or commercial carrier to be sent or delivered by that private or commercial carrier in interstate commerce from Ohio to Georgia, a letter of recommendation in support of Defendant Progressive Consulting's effort to become BCSD's Technical Project Manager, which recommendation was

attached to Defendant Progressive Consulting's July 18, 2012 response to RFQ No. 12-72;

(iii)    On December 18, 2012, by invoice dated December 17, 2012, Defendants CompTech and Stephen, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, intentionally transmitted or caused to be transmitted by wire in interstate commerce from Ohio to Georgia, the fraudulent CompTech Invoice to be paid by BCSD for the CompTech Items that BCSD was purportedly purchasing from Defendant CompTech and which were completely incompatible with existing BCSD infrastructure.    Defendants CompTech and Stephen fraudulently represented to BCSD employees by sending the CompTech Invoice to BCSD that Defendant CompTech would supply the CompTech Items but had no intention of doing so and instead promptly and intentionally diverted all but $50,000.00 of the $3,768,000.00 it received to Defendants Progressive Consulting and Culver in furtherance of the Defendants' scheme to defraud BCSD.   Further, the CompTech Invoice fraudulently charged BCSD for installation of the CompTech Items but Defendant CompTech never installed any of the CompTech Items or intended to CompTech Items.   The CompTech Invoice also fraudulently overcharged BCSD for unneeded accessories and support;

(iv)    On December 21, 2012, Defendants CompTech and Stephen, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts and for purposes of executing such scheme, intentionally and

fraudulently retained in Ohio $50,000.00 of the $3,768,000.00 that BCSD had transmitted by wire in interstate commerce from Georgia to Ohio in payment for the CompTech Items.  Defendants CompTech and Stephen were aware that the funds Defendant CompTech received were sent to Defendant CompTech without proper authority and were procured from BCSD by fraud and, in fact, were complicit in the fraud.  Defendants CompTech and Stephen further knew that BCSD was overcharged for unneeded accessories and support;

(v)     Defendants CompTech and Stephen intentionally received and possessed money in the amount of $3,768,000.00 that had crossed a State boundary after being taken from BCSD by fraud in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property;

(vi)    Shortly after receiving the illegal, unauthorized, and fraudulently obtained payment from BCSD, Defendants CompTech and Stephen, having intentionally devised a scheme with other Defendants to defraud BCSD and for purposes of executing such a scheme, intentionally transmitted or caused to be transmitted by wire in interstate commerce from Ohio to Georgia all but $50,000.00 of the $3,768,000.00 it received from BCSD without the knowledge of BCSD. Defendants CompTech and Stephen knew that the funds Defendant CompTech received and diverted to Defendant Progressive Consulting were obtained from BCSD by fraud in furtherance of Defendants' scheme to defraud BCSD and other schools and school districts of money and property; and

(vii)   Defendants CompTech and Stephen intentionally transmitted or transferred in interstate commerce money in the amount of $3,718,000.00 they knew had been

taken from BCSD by fraud in furtherance of Defendants' scheme to defraud
BCSD of money and property.

E.  Defendants Whitby, Whitby, Inc., Positiventures, CGPICD, and Integrated Technology –
Defendants Whitby, Whitby, Inc., Positiventures, CGPICD and Integrated Technology
intentionally engaged in acts and intentionally participated in a scheme the purpose of
which was to defraud BCSD and other schools and school districts of money and
property and which acts are indictable under the provisions of  18 U.S.C. § 666, 18
U.S.C. § 1956, 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 2314 18 U.S.C. § 2315
and O.C.G.A. § 16-10-2 when:

(i)     Sometime between August 17, 2011 and June 27, 2012, the exact date being
unknown, Defendant Whitby, having intentionally devised a scheme with other
Defendants to defraud BCSD and other schools and school districts of money and
property and for purposes of executing such scheme, committed the crime of
Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C.
§ 666(a)(2) when Defendant Whitby offered Defendant Dallemand a bribe of
$100,000.00 to influence Defendant Dallemand in the performance of acts related
to his employment with BCSD;

(ii)    Sometime between August 17, 2011 and June 27, 2012, the exact date being
unknown, Defendant Whitby, having intentionally devised a scheme with other
Defendants to defraud BCSD and other schools and school districts of money and
property and for purposes of executing such scheme, committed the crime of
bribery in violation of O.C.G.A. § 16-10-2(a)(1) when Defendant Whitby offered

Defendant Dallemand a bribe of $100,000.00 to influence Defendant Dallemand in the performance of acts related to his employment with BCSD;

(iii)    Sometime between August 17, 2011 and June 27, 2012, the exact date being unknown, Defendants Whitby, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(2) when Defendant Whitby offered Defendant Dallemand a bribe of ten percent (10%) of the $1,000,000.00 BCSD would pay to the MPN each year ($100,000.00 per year for 10 years) to influence Defendant Dallemand in the performance of acts related to his employment with BCSD  and specifically to continue to support the MPN;

(iv)    Sometime between August 17, 2011 and June 27, 2012, the exact date being unknown, Defendants Whitby, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of bribery in violation of O.C.G.A. § 16-10(a)(2) when Defendant Whitby offered Defendant Dallemand a bribe of ten percent (10%) of the $1,000,000.00 BCSD would pay to the MPN each year ($100,000.00 per year for 10 years) to influence Defendant Dallemand in the performance of acts related to his employment with BCSD  and specifically to continue to support the MPN;

(v)    Beginning on October 30, 2012, Defendants Whitby and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other

schools and school districts of money and property and for purposes of executing such scheme, committed the crime of theft by deception in violation of O.C.G.A. § 16-8-3 when they obtained funds paid by BCSD (including the $1,000,000.00 Check) pursuant to the MOU by deceitful means and artful practices with the intention of depriving BCSD of those funds;

(vi)   Defendants Whitby and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(2) when they corruptly gave Defendant Positiventures the $950,000.00 check on November 2, 2012 with intent to influence Defendant Dallemand in connection with the business of, a transaction of, and a series of transactions of BCSD;

(vii)  On or about, November 2, 2012, Defendants Whitby, CGPICD, and Positiventures, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme and committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they conspired for Defendants Whitby and CPICD to give Defendant Positiventures a check in the amount of $950,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the transaction would be designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of bribery;

(viii)  On November 2, 2012, Defendants Whitby, CGPICD, and Positiventures, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme and committed the crime of money laundering in violation of 18 U.S.C. § 1956(a)(1) when Defendants Whitby and CGIPCD gave Defendant Positiventures a check in the amount of $950,000.00 (a) with the intent to promote the carrying on of bribery, and (b) knowing that the transaction was designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of bribery;

(ix)  On or about November 9, 2012, Defendants Whitby, Whitby, Inc., Positiventures and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) by conspiring for give Defendants Whitby and Positiventures to give Defendants Knowles and Knowles and Randolph a $100,000.00 check to be passed along to Defendant Dallemand as a bribe with the intent to promote the carrying on of bribery and knowing that the transaction was designed to conceal and disguise the nature, the location, the source and the ownership of the proceeds of bribery;

(x)  On November 9, 2012, Defendants Whitby, Whitby, Inc., Positiventures and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of money laundering in

violation of 18 U.S.C. § 1956(a)(1) when Defendants Whitby and Positiventures gave Defendants Knowles and Knowles and Randolph a check in the amount of $100,000.00 to be passed along to Defendant Dallemand as a bribe with the intent to promote the carrying on of bribery and knowing that the transaction was designed to conceal and disguise the nature, the location, the source and the ownership of the proceeds of bribery;

(xi)    On November 9, 2012, Defendants Whitby, Whitby, Inc., Positiventures and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of transportation of stolen goods in violation of 18 U.S.C. § 2314 when Defendants Whitby and Positiventures gave Defendants Knowles and Knowles and Randolph a check in the amount of $100,000.00 to be passed along to Defendant Dallemand as a bribe;

(xii)   Defendants Whitby, CGPICD and Positiventures, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme committed the crime of transportation of stolen goods in violation of 18 U.S.C. § 2314 when they gave Defendants Knowles and Knowles and Randolph a check in the amount of $100,000.00 on November 9, 2012;

(xiii)  On November 19, 2012, Defendants Whitby, Whitby, Inc., Positiventures and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of bribery in violation

of O.C.G.A. § 16-10-2(a)(1) when Defendant Knowles and Knowles and Randolph gave Defendant Dallemand a check in the amount of $100,000.00;

(xiv)   On November 19, 2012, Defendants Whitby, Whitby, Inc., Positiventures and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. 666(a)(2) when Defendant Knowles and Knowles and Randolph gave Defendant Dallemand a check in the amount of $100,000.00;

(xv)   On or about November 19, 2012, Defendants Whitby, Whitby, Inc., Positiventures and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) when they, along with other Defendants, conspired for Defendants Knowles and Knowles and Randolph to give Defendant Dallemand a check in the amount of $100,000.00 which was the bribe money promised to Defendant Dallemand to influence Defendant Dallemand in the performance of acts related to the functions of his employment with BCSD;

(xvi)   On November 19, 2012 Defendants Whitby, Whitby, Inc., Positiventures and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the crime of money laundering  in

violation of 18 U.S.C. § 1956(a)(1) when Defendants Knowles and Knowles and Randolph gave Defendant Dallemand a check in the amount of $100,000.00 with the intent to carry on bribery and knowing that the transaction was designed to conceal and disguise the nature, the location and the source of the proceeds of bribery;

(xvii)   Defendants Whitby, CGPICD, Positiventures, and CGPICD committed the crime of transportation of stolen goods in violation of 18 U.S.C. § 2314 when Defendants Knowles and Knowles and Randolph transported the $100,000.00 check they gave Defendant Dallemand on November 19, 2012 in interstate commerce;

(xviii)  At some time between November 19, 2012 and December 18, 2012, the exact date being unknown, Defendants Whitby and Knowles offered Defendant Dallemand a bribe of $500,000.00 for the purpose of influencing him to push through a purchase by BCSD of accounting and financial software from Defendant Pinnacle in violation of O.C.G.A. O.C.G.A. § 16-10-2(a)(1) and 18 U.S.C. § 666(a)(2);

(xix)    Defendant Whitby committed the crime of bribery in violation of O.C.G.A. § 16-10-2(a)(1) and 18 U.S.C. § 666(a)(2) when he offered Defendant Dallemand the $500,000.00 bribe described above;

(xx)     Defendants Whitby and Whitby, Inc., having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of money laundering in violation 18 U.S.C. § 1951(a)(1) by being involved in the Progressive Consulting Transfer to Defendant Whitby, Inc.;

(xxi)   Defendants Whitby and Positiventures., having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of money laundering in violation 18 U.S.C. § 1951(a)(1) by being involved in and conducting each of the Progressive Consulting Transfer to Defendant Positiventures;

(xxii)  Defendants Whitby and Integrated, having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of money laundering in violation 18 U.S.C. § 1951(a)(1) by being involved in and conducting the Progressive Consulting Transfer to Defendant Integrated;

(xxiii) Defendants Whitby and Whitby, Inc., having intentionally devised a scheme to defraud BCSD and other school districts of money and property with other Defendants and for purposes of executing such scheme, committed the crime of money laundering in violation 18 U.S.C. § 1951(a)(1) by being involved in and conducting each of the Progressive Property Transfers to Defendant Whitby, Inc.;

(xxiv)  Beginning August 15, 2013 through June 25, 2016, Defendants Whitby, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, made the Belhannes Payments for the purpose of making the bribe payments that had been promised to Defendant Dallemand to influence Defendant Dallemand in the performance of acts related to the functions of Defendant Dallemand's employment with BCSD, to reward Defendant Dallemand, for the

purpose of obtaining business from BCSD, with the intent to carry on bribery, and knowing that the transactions were designed to conceal and disguise the nature, the location and the source of the bribe payments with each transaction representing a separate and distinct violation of O.C.G.A. § 16-10-2(a)(1), 18 U.S.C. § 1956(a)(1) and (h), 18 U.S.C. § 666(a)(2), and 18 U.S.C. § 2314;

(xxv)  On April 2, 2017, Defendant Whitby, Whitby, Inc., Positiventures,  and CGPICD, having intentionally devised a scheme with other Defendants to defraud BCSD and other schools and school districts of money and property and for purposes of executing such scheme, committed the offense of bribery in violation of O.C.G.A. § 16-10-2(a)(1), 18 U.S.C. § 666(a)(2), 18 U.S.C. § 1951(a)(1) and (h) when, on April 2, 2017,  Defendant Whitby gave Defendant Dallemand $24,000.00 cash which payment was made pursuant to bribe money which was promised to Defendant Dallemand to influence Defendant Dallemand in the performance of his employment with BCSD;

(xxvi)  After the proceeds of the Progressive Computing Transfer to Defendant Integrated crossed the Georgia boundary, Defendant Integrated received those proceeds knowing they had been stolen, unlawfully converted, or taken in violation of 18 U.S.C. § 2315;

(xxvii)  On November 6, 2013, Defendant Progressive Consulting transferred $276,000.00 to Defendant Integrated.   On that same day, Defendant Integrated transferred $155,000.00 to Defendant Positiventures and on December 26, 2013 transferred the remainder of the funds to Defendant Positiventures.  Subsequently,

Defendant Positiventures transferred the funds to Defendant Whitby, Inc. Defendant Whitby, Inc. held the funds until June, 2017;

(xxviii) In June and July, 2017, Defendants Whitby and Whitby, Inc., caused $125,000.00 to be transmitted by means of wire communication in interstate commerce to pay the attorney's fees of Defendant Culver to defend the criminal charges brought against him by this Court as a result of the CompTech Purchases. The transmission of these funds were designed in whole or in part to conceal or disguise the nature, the location, the course, the ownership or the control of the proceeds of mail fraud and wire fraud; and

(xxix) In June and July, 2017, Defendants Whitby and Whitby, Inc., caused $125,000.00 to be transmitted by means of wire communication in interstate commerce to pay the attorney's fees of Defendant Carty to defend the criminal charges brought against him by this Court as a result of the CompTech Purchases. The transmission of these funds were designed in whole or in part to conceal or disguise the nature, the location, the course, the ownership or the control of the proceeds of mail fraud and wire fraud.

406.

Pursuant to and in furtherance of their fraudulent  scheme to defraud BCSD and other schools and school districts, the Defendants agreed to and voluntarily and intentionally participated in and knowingly committed multiple, continuous and related acts of bribery, money laundering, wire fraud, mail fraud and violations of 18 U.S.C. § 2314 and 18 U.S.C. § 2315 as specified above.

407.

The acts of the Defendants set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5). Each of the Defendants committed the above listed acts willfully and in furtherance of their scheme to defraud BCSD and other schools and school districts and with actual knowledge that the acts were illegal.

408.

The Defendants have directly and indirectly conducted and participated in and agreed to conduct and participate in the conduct of the Enterprise's affairs through the pattern of racketeering activity described above in violation of 18 U.S.C. § 1962(c).

409.

The Defendants intentionally conspired to, agreed to and intentionally participated in the scheme in violation of 18 U.S.C. § 1962(c) as set forth herein in violation of 18 U.S.C. 1962(d).

410.

As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) and § 1962(d) set forth above, BCSD has been directly injured in its business and property in an amount that exceeds $8,865,200.00.

411.

The Defendants' pattern of racketeering activities both threaten repetition in the future and are part of the Defendants' regular way of doing business.

412.

Defendant Culver has publically announced that Progressive Consulting continues to do business and have contracts with CompTech involving government purchases.

413.

CompTech and Progressive Consulting have formed a partnership, CompTech-Progressive, formed on March 8, 2011. United States Office of Personnel Management ("OPM") records reflect five recent contracts with OPM. The "kickoff" for the first of these contracts was April 7, 2014 and the completion date for the last contract is July 6, 2017. CompTech-Progressive is based in Ohio but the majority of its work is in Middle Georgia.

414.

CompTech maintains an office in Warner Robins, Georgia.

415.

At least some of the Defendants continue to seek government contracts including contracts with schools and school districts. Defendants also seek positions with governmental bodies and other entities that will enable them to perpetrate schemes and frauds involving bribes, kickbacks, fraudulent purchases and bid avoidance designed to enrich themselves like the scheme described in this Second Amended Complaint.

416.

In 2009, while Defendant Dallemand was superintendent of schools in Rochester, Minnesota a whistleblower suit was filed alleging concerns about spending and hiring practices. In 2012, the Rochester Minnesota school board paid $320,000.00 to settle the suit.

417.

Bribery, frauds and schemes are a regular way of doing business for Defendants as demonstrated by the facts set forth in this Second Amended Complaint.

## COUNT II – GEORGIA RICO

### 418.

The allegations of paragraph 1 through 204 are incorporated herein by reference.

### 419.

This Count is asserted against all Defendants.

### 420.

Section 16-14-4 of the Georgia Racketeer Influenced and Corrupt Organizations Act

("Ga. RICO") provides:

(a)    It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

(b)    It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

(c)    It shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section.  A person violates this subsection when:

(1)    He or she together with one or more persons conspires to violate any of the provisions of subsection (a) or (b) of this Code section and any one or more of such persons commits any overt act to effect the object of the conspiracy; or

(2)    He or she endeavors to violate any of the provisions of subsection (a) or (b) of this Code section and commits any overt act to effect to the object of the endeavor.

421.

Collectively and individually, the Defendants, through a pattern of racketeering activity, acquired and maintained control of and retained money from BCSD as set forth in Count I above.

422.

As noted in Count I above, Defendants, collectively and individually, were associated with the Enterprise.  The purpose of the Enterprise was to intentionally defraud BCSD of its money and property to the Defendants' benefit.

423.

Defendants, collectively and individually, have conspired and agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity to commit overt acts to effect the object of the conspiracy and for the purpose of intentionally defrauding BCSD of money to the Defendants' benefit.  The acts of racketeering of the Defendants were designed to deceive and, in fact, did deceive BCSD.

424.

The specific acts demonstrating a pattern of racketeering activity of each of the Defendants are set forth in Count I above and by this reference are incorporated herein.

425.

BCSD's employees reasonably and justifiably relied on the fraudulent representations of the Defendants set forth in Counts I above and BCSD was directly damaged as a result.

426.

As a direct result of Defendants' collective racketeering activities, BCSD has been damaged in an amount that exceeds $7,865,200.00.

427.

Defendants have acted with the specific intent to cause harm to BCSD.  BCSD is therefore entitled to punitive damages against Defendants with no limitation regarding the amount of punitive damages which may be awarded.

## **COUNT III – FRAUD**

428.

The allegations of paragraphs 1 through 214 are incorporated herein by reference.

429.

This Count is asserted against all Defendants.

430.

The Defendants made false representations of material facts to BCSD's employees which the Defendants knew were false.  Defendants also fraudulently concealed material information from BCSD's Board that they had a duty to disclose.  The concealments of information and false representations were made for the purpose of and with the intention of deceiving BCSD and did, in fact, deceive BCSD.

431.

Certain false representations and concealments of material facts which Defendants made to or from BCSD and its employees are set forth in Count I above which are incorporated herein by this reference as if set forth fully herein.

432.

Additional false representations of material facts and concealments of fact made to BCSD and its employees by the Defendants include, but are not limited to, the following:

A.    Defendants Dallemand, Culver and Progressive Consulting had a duty to disclose to the Board and seek Board approval of the purchase of the Pinnacle Items and the CompTech Items but instead conspired to avoid bid procedures and fraudulently concealed the purchases from BCSD and its Board in violation of Board Policy DJED;

B.    Defendant Dallemand, induced and aided by Defendant Whitby and Defendant CGPICD, committed fraud upon the BCSD by failing to communicate to the BCSD or the Board of Education  (a) that Defendant Whitby offered Defendant Dallemand a bribe of $100,000.00 for Defendant Dallemand's support of the MPN; (b) that Defendant Whitby had offered to give Defendant Dallemand $100,000.00 each year for ten (10) years for his continued support of the MPN, and (c) that Defendant Dallemand had accepted Defendant Whitby's offers before the Board of Education voted to approve the MOU before BCSD gave Defendant CGPICD the Check and (d) that Defendant Whitby and Knowles offered him a bribe of $500,000.00 to push through the purchase of the Pinnacle Items.

C.    Defendants Dallemand and Progressive Consulting had a duty to disclose to BCSD and its Board the actual vendor of the Pinnacle Items, the ownership of the Pinnacle Items and that the Pinnacle Items did not exist but instead fraudulently concealed this information;

D.    Defendant Dallemand who had a duty to disclose to the Board and seek Board approval of expenditures in excess of $500,000.00, failed to disclose to BCSD and the Board the December 18, 2012 $500,000.00 increase in Purchase Order No. 70-36372   payable to Defendant Progressive Consulting. Defendant

Progressive Consulting was eventually paid $1,000,000.00 for its work at Technical Project Manager. Instead, Defendant Dallemand conspired with the Defendants to avoid bid procedures and Board approval and fraudulently concealed this increase from BCSD and its Board in violation of Board Policy DJED;

E.    On December 18, 2012, Defendant Dallemand while in his office and Defendants Progressive Consulting and Culver in the office of Mrs. Roberts falsely represented to BCSD and Mrs. Roberts that payment of the fraudulent Pinnacle Invoice was properly authorized and lawful when they knew that it was not because of the complete failure to comply with Board Policy DJED and because they knew the Pinnacle Items did not exist;

F.    On December 18, 2012, Defendants Dallemand while in his office and Defendants Progressive Consulting and Culver while in Mrs. Roberts' office falsely represented  to Mrs. Roberts that payment of the unauthorized and fraudulent Pinnacle Invoice was proper by demanding that she pay the Pinnacle Invoice when they knew that Pinnacle did not own the Pinnacle Items and did not have the capacity, expertise or ability to develop, set up or configure the Pinnacle items or to train BCSD to use the Items;

G.    Defendants Progressive Consulting, Culver and Carty fraudulently initiated, arranged and negotiated the purchase from Pinnacle of the Pinnacle Items in which they had an ownership interest and concealed their interest in the Pinnacle Items from BCSD and its Board;

H.    Defendants Progressive Consulting, Culver and Carty fraudulently acted as a vendor in connection with the purchase of the NComputing devices which they had a duty to disclose to BCSD but fraudulently concealed;

I.    Defendants Progressive Consulting, Culver and Carty fraudulently acted as a vendor in connection with the purchase of the Pinnacle Items which they had a duty to disclose to BCSD but fraudulently concealed;

J.    On December 18, 2012, Defendants Dallemand, Progressive Consulting and Culver falsely represented to Mrs. Roberts in her office that payment of the fraudulent CompTech Invoice was properly authorized and lawful when they knew it was not because of the complete failure to comply with Board Policy DJED;

K.    On December 18, 2012, Defendants Dallemand, Progressive Consulting, Culver, Pinnacle and McFarlane made fraudulent representations to Sharon Roberts in her office as to the number of Proscenium Enterprise Suites and related systems and accessories BCSD needed by overcharging BCSD for unneeded equipment when they submitted the fraudulent Pinnacle Invoice for payment;

L.    On December 19, 2012, Defendant Dallemand fraudulently represented to Mrs. Roberts in her office and in his office that payment of the fraudulent Pinnacle Invoice and the fraudulent CompTech Invoice was authorized, lawful and proper when he knew that it was not because of the complete failure to comply with Board Policy DJED;

M.    Defendants Progressive Consulting and Culver fraudulently represented to Mrs. Roberts in her office that the purchase of the Pinnacle Items was authorized,

lawful and that payment was proper by executing the Program Manager's Certificate dated December 13, 2012 for payment when they knew that the purchase violated Board Policy DJED, when they knew that Pinnacle did not own the Pinnacle Items and where they had an ownership interest in the purported Pinnacle Items which Program Manager's Certificate was presented to BCSD for the first time by Defendant Culver in Mrs. Robert's office on December 18, 2012;

N.    Defendants Pinnacle and McFarlane fraudulently and intentionally represented to BCSD's employees that Defendant Pinnacle would provide to BCSD the Pinnacle Items when it sent the fraudulent Pinnacle Invoice dated December 13, 2012 to Defendant Progressive Consulting which was presented to BCSD by Defendant Culver and Mr. Tourand in Mrs. Robert's office for the first time on December 18, 2012.  Defendant Pinnacle did not own the Pinnacle Items, did not have the ability, capacity or expertise to provide the Pinnacle Items and never provided the Pinnacle Items to BCSD;

O.    On December 18, 2012, Defendants Dallemand, Progressive Consulting, Culver, CompTech and Stephen fraudulently represented to BCSD's employees and Mrs. Roberts in her office and Defendant Dallemand  again on December 19, 2012 in his office that the CompTech Items were economical and compatible with existing BCSD infrastructure when they knew that they were not;

P.    Defendants Dallemand, Progressive Consulting, Culver, CompTech and Stephen fraudulently represented the cost of the CompTech Items to BCSD's employees and Mrs. Roberts in her office on December 18, 2012 when they caused BCSD's employees to pay the fraudulent CompTech Invoice;

Q.     Defendants Dallemand, Progressive Consulting, Culver, CompTech and Stephen fraudulently represented to BSCD's employees in Mrs. Robert's office and at the BCSD district office the role of Defendant CompTech in the purchase of the CompTech Items by invoicing BCSD for the purchase of the CompTech Items and demanding that Mrs. Roberts make payment to Defendant CompTech without disclosing that Defendant CompTech intended to promptly divert the funds paid to Defendant CompTech by BCSD to Defendant Progressive Consulting;

R.     Defendants Dallemand, Progressive Consulting and Culver had a duty to disclose the role of Defendant CompTech in the purchase of the CompTech Items and that the funds received by Defendant CompTech would be promptly diverted to Defendant Progressive Consulting.  Instead, they  concealed the role of Defendant CompTech from BCSD's employees in furtherance of their scheme to defraud BCSD;

S.     Defendants Dallemand, Progressive Consulting and Culver fraudulently represented to BCSD's Board the hourly rates which would be charged by Defendant Progressive Consulting for personnel working on the Technology Project by representing to the Board in Defendant Progressive Consulting's September 17, 2012 Contract Administration Plan that certain rates would be charged and one week later significantly changing those rates without notice to the Board and concealed the new rates from the Board;

T.     Defendants Dallemand, Progressive Consulting, Culver, CompTech and Stephen fraudulently represented that Defendant CompTech had or would install the CompTech Items by coercing BCSD's employees, in Mrs. Robert's office on

December 18, 2012, and Defendant Dallemand again on December 19, 2012 in Defendant Dallemand's office to pay the CompTech Invoice which included charges for installation of the CompTech Items when they knew that the CompTech Items were not installed, and where Defendant CompTech had no intention of and never installed the CompTech Items;

U.    On or about January 24, 2013, Defendants Pinnacle, McFarlane, Progressive Consulting and Culver fraudulently represented the contents of a shipment of a single inexpensive, blank Ingram Micro server that was password protected to Defendant Progressive Consulting by representing to the BCSD Executive Director of Technology that it contained the Pinnacle Items for which BCSD paid $3,247,200.00 when they knew that it did not;

V.    Defendants Pinnacle and McFarlane fraudulently represented that Defendant Pinnacle would setup and configure the Pinnacle Items and train BCSD personnel when Defendant Pinnacle had no intention of doing so and, did not have the capability, ability or expertise to do and where they did not even own the Pinnacle;

W.    On or about January 24, 2013, Defendants Pinnacle and McFarlane made fraudulent representations as to the ability of BCSD to access the password protected inexpensive Ingram Micro server which they provided BCSD; and

X.    On January 30, 2013, Defendants Pinnacle and McFarlane falsely represented to BCSD that Pinnacle would provide the Pinnacle Items and would train BCSD employees to operate the Proscenium Enterprise Suite software when Stanley Williams met with interim CFO Sharon Roberts.

433.

BCSD justifiably relied on the false representations of material facts of the Defendants listed above as well as those set forth in Count I and sustained total damages in an amount that exceeds $7,865,200.00 as a proximate result of the Defendants' material and false representations.

434.

Defendants acted with the specific intent to cause harm to BCSD.  BCSD is therefore entitled to punitive damages against Defendants with no limitation regarding the amount of punitive damages which may be awarded.

435.

Defendants have acted in bad faith, been stubbornly litigious, and have caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## <u>COUNT IV - BREACH OF CONTRACT AS TO DEFENDANT DALLEMAND</u>

436.

The allegations of paragraphs 1 through 222 are incorporated herein by reference.

437.

This Count is asserted against Defendant Dallemand.

438.

Defendant Dallemand entered into a valid, binding, and enforceable Employment Contract with BCSD whereby he took office as BCSD's Superintendent beginning in February

2011.  Defendant Dallemand's Employment Contract commenced on February 1, 2011 and was set to terminate on June 30, 2013.

439.

On December 5, 2012, upon the prior approval by BCSD to renew his Employment Contract, Defendant Dallemand executed another Employment Contract on December 5, 2012 to extend his term as BCSD's Superintendent.  The term of the renewed Employment Contract was from January 1, 2013 until December 31, 2015.

440.

At all relevant times, BCSD fully performed its obligations pursuant to Defendant Dallemand's Employment Contracts.

441.

Defendant Dallemand was bound by the terms of his Employment Contracts with BCSD.

442.

Each of Defendant Dallemand's Employment Contracts required, among other things, that Defendant Dallemand:

- "[F]aithfully and diligently perform all duties, and shall assume all responsibilities connected with the Superintendency of the District as provided by law, regulations of the State Board, and by the policies, rules and regulations of the District…. ;

-  [S]ee that all policies of the Board are implemented…. ;

- Prepares and submits to the Board recommendations relative to all matters requiring Board action,  placing before the Board such necessary and helpful facts, information and reports as are needed to ensure the making of informed decisions…. ;

- Secures and nominates for employment the best qualified and most competent teachers and supervisory and administrative personnel; and

- Submit to the Board a clear and detailed explanation of any proposed procedure which would involve either departure from established policy or the expenditure of substantial sums."

443.

Defendant Dallemand materially breached his Employment Contracts with BCSD by failing to comply with Board Policy DJED in connection with the purchases from Defendants Pinnacle and CompTech and the additional $500,000.00 paid to Defendant Progressive Consulting as described in the Complaint.

444.

Defendant Dallemand materially breached his Employment Contracts with BCSD by failing to disclose and concealing from the Board the purchases from Defendants Pinnacle and CompTech and the additional $500,000.00 paid to Defendant Progressive Consulting as described in this Complaint.

445.

Defendant Dallemand materially breached his Employment Contracts with BCSD by failing to secure and nominate for employment the best qualified and most competent administrative personnel when he nominated Mr. Tourand to become BCSD's Executive Director of Technology.

446.

Defendant Dallemand materially breached his Employment Contracts by failing to submit to the Board a clear and detailed explanation of departures from established policy and the expenditure of substantial funds in connection with the amounts for the supposed purchases of the Pinnacle Items and the CompTech Items and the additional $500,000.00 paid to Defendant Progressive Consulting as described in this Complaint.

447.

Defendant Dallemand breached his employment contracts by accepting bribes for his support of purchases which were not in the best interest of BCSD which are set forth in this Complaint.

448.

As a direct and proximate result of Defendant Dallemand's material breaches of his Employment Contract, BCSD was damaged in an amount in excess of $7,865,200.00.

449.

The material breaches by Defendant Dallemand entail fraud as set forth in this Complaint and therefore punitive damages are appropriate.  Defendant Dallemand also acted with the specific intent to cause harm to BCSD.  Therefore, BCSD entitled to punitive damages against Defendant Dallemand with no limitation regarding the amount of punitive damages which may be awarded.

450.

Defendant Dallemand has acted in bad faith, been stubbornly litigious, and has caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT V- BREACH OF CONTRACT
## AS TO DEFENDANT PROGRESSIVE CONSULTING

451.

The allegations of paragraphs 1 through 236 are incorporated herein by reference.

452.

This Count is asserted against Defendant Progressive Consulting.

453.

BCSD has alleged that Services Agreement that is the subject of this Count V is void because it was entered into by Defendant Dallemand without authority. BCSD therefore only asserts this Count V in the event that the Court finds that the Services Agreement is not void.

454.

In response to RFP No. 13-09, Defendant Progressive Consulting submitted, on September 17, 2012, a document entitled "Contract Administration Plan" to BCSD which included, among other items, Defendant Progressive Consulting's detailed approach to the planning and management of BCSD's Technology Project as well as proposed hourly rates for Defendant Progressive Consulting's personnel to perform such services.

455.

On September 24, 2012, Defendant Dallemand and Defendant Culver, on behalf of Defendant Progressive Consulting, executed a "Services Agreement" which contained a summation of "Contract Services" and "Deliverables" which Defendant Progressive Consulting was to furnish to BCSD.

456.

The Services Agreement submitted by Defendant Progressive Consulting contained a significantly increased schedule for hourly rates for personnel than Defendant Progressive Consulting's September 17, 2012 Contract Administration Plan. The Board was never advised of and never approved Defendant Progressive Consulting's new schedule of hourly rates.

457.

At all relevant times, BCSD fully performed its obligations pursuant to the respective Services Agreement with Defendant Progressive Consulting.

458.

Defendant Progressive Consulting was bound by the Services Agreement and the representations contained in the Contract Administration Plan, which served as the basis for the award of the Services Agreement, in its role as Project Manager for BCSD's Technology Project.

459.

The Agreement provides in Section 4.01 that Progressive Consulting's services "shall be performed on a best efforts basis." Section 1.02 of the Agreement refers to deliverables in Exhibit B. Exhibit B provides that Progressive Consulting "shall participate in long range technical planning" and "evaluate and recommend new and evolving network technologies." Progressive Consulting breached these provisions and did not undertake the performance of the Agreement in good faith as set forth in Counts I and III above which are incorporated herein.

460.

Further Defendant Progressive Consulting, by and through Defendant Culver, materially breached the Services Agreement including its duty of good faith and fair dealing in performance of the Agreement with BCSD when it engaged in those actions that include, but are not limited to, the following:

A.    Defendant Progressive Consulting materially breached its contract by failing to disclose to the Board and seek Board approval of the supposed purchases from Defendant Pinnacle and Defendant CompTech described in this Complaint and by failing to abide by the procedures mandated by Board Policy DJED;

B.    Defendant Progressive Consulting materially breached its contract by, without authority and power, representing to Mrs. Roberts on December 18, 2012 in

Roberts' office that payment of the fraudulent Pinnacle Invoice was authorized, lawful and proper when Defendant Progressive Consulting knew that it was not;

C.    Defendant Progressive Consulting materially breached its contract when, without authority and power, Defendant Culver represented to Mrs. Roberts in her office on December 18, 2012 that payment of the fraudulent CompTech Invoice was authorized, lawful and proper when Defendant Progressive Consulting knew that it was not;

D.    Defendant Progressive Consulting materially breached its contract by inflating the number of Pinnacle Items needed by BCSD for the Technology Project as evidenced by the fraudulent Pinnacle Invoice;

E.    Defendant Progressive Consulting materially breached its contract by failing to ensure that Defendant Pinnacle properly developed, implemented and installed the Pinnacle Items;

F.    Defendant Progressive Consulting materially breached its contract when Defendant Culver executed, without pertinent authority, the Program Manager's Certificate for payment to Defendant Pinnacle for the Pinnacle Items when Defendant Progressive Consulting knew that the purchase violated Board Policy DJED which Culver delivered to Sharon Roberts on December 18, 2012;

G.    Defendant Progressive Consulting materially breached its contract by initiating and participating in the supposed purchase of the Pinnacle Items;

H.    Defendant Progressive Consulting materially breached its contract by recommending to BCSD that the CompTech Items, which Defendant Progressive Consulting and others caused BCSD to purchase on December 21, 2012, were

economical and compatible with existing BCSD infrastructure when Defendant Progressive Consulting knew that they were not;

I.     Defendant Progressive Consulting materially breached its contract when it misrepresented the cost of the CompTech Items to BCSD;

J.     Defendant Progressive Consulting materially breached its contract by initiating, participating and actually purchasing the CompTech Items in violation of its contract with BCSD; and

K.     Defendant Progressive Consulting materially breached its contract by failing to install or have installed the CompTech Items.

461.

As a direct and proximate result of Defendant Progressive Consulting's material breaches of contract, BCSD has been directly and proximately damaged in an amount that exceeds $7,865,200.00.

462.

The material breaches by Defendant Progressive Consulting described above entail fraud and therefore BCSD is entitled to recover punitive damages.  Defendant Progressive Consulting also acted with the specific intent to cause harm to BCSD.  Therefore, BCSD is entitled to punitive damages against Defendant Progressive Consulting with no limitation regarding the amount of punitive damages which may be awarded.

463.

Defendant Progressive Consulting has acted in bad faith, been stubbornly litigious and has caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT VI – BREACH OF CONTRACT
## AS TO DEFENDANT PINNACLE

464.

The allegations of paragraphs 1 through 249 are incorporated herein by reference.

465.

This Count is asserted against Defendant Pinnacle.

466.

Georgia law permits multiple documents to be considered a single contract "as long as all the necessary terms are contained in signed contemporaneous writings." *Bd. of Regents for Univ. Syst. Of Georgia v. Tyson,* 261 Ga. 368, 369 (1991).

467.

Defendant Pinnacle prepared and sent the fraudulent Pinnacle Invoice dated December 13, 2012 to Defendant Progressive Consulting for $3,247,200.00 for the Pinnacle Items. The Pinnacle Invoice included charges for setup and configuration of the Pinnacle Items and training. The Pinnacle invoice was first presented to BCSD by Defendants Progressive Consulting and Culver along with Defendant Progressive Consulting's Program Manager's Certification of Payment on December 18, 2012.

468.

The Pinnacle Invoice and the BCSD general journal entry confirming the wiring of $3,247,200.00 to Defendant Pinnacle on December 19, 2012 serve as contemporaneous writings providing for the material terms of the contract.

469.

Defendant Pinnacle materially breached its contract with BCSD because Defendant Pinnacle has never provided the Pinnacle Items called for by the contract and for which BCSD paid Defendant Pinnacle.

470.

Pinnacle materially breached its contract with BCSD because Pinnacle failed to set up and configure the Pinnacle Items as called for by the contract and for which BCSD paid Defendant Pinnacle.

471.

Defendant Pinnacle materially breached its contract with BCSD because Defendant Pinnacle failed to train BCSD staff as called for by the contract and for which BCSD paid Defendant Pinnacle.

472.

Defendant Pinnacle materially breached its duty of good faith and fair dealing as described in this Complaint.

473.

As a direct and proximate result of these material breaches, BCSD has sustained direct damages in an amount in excess of $3,247,200.00.

474.

The material breaches by Defendant Pinnacle described above entail fraud and therefore BCSD is entitled to recover punitive damages.  Defendant Pinnacle also acted with the specific intent to cause harm to BCSD.  Therefore, BCSD is entitled to punitive damages against

Defendant Pinnacle with no limitation regarding the amount of punitive damages which may be awarded.

475.

Defendant Pinnacle has acted in bad faith, been stubbornly litigious, and has caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT VII – BREACH OF CONTRACT
## AS TO DEFENDANT COMPTECH

476.

The allegations of paragraphs 1 through 260 are incorporated herein by reference.

477.

This Count is asserted against Defendant CompTech.

478.

Defendant CompTech, by and through Defendant Stephen and in conjunction with Defendant Progressive Consulting, fraudulently invoiced BCSD on December 17, 2012 in the amount of $3,768,000.00 for the CompTech Items which included a charge for installation of all of the CompTech Items.

479.

On December 21, 2012, a wire was sent from BCSD to Defendant CompTech for payment in full of the CompTech Invoice for the CompTech Items including installation of the CompTech Items.

480.

Defendant CompTech never installed the CompTech Items and never intended to install the CompTech Items despite invoicing BCSD and receiving payment from BCSD for installation.

481.

The CompTech Items are unusable and not compatible with existing BCSD infrastructure.  The CompTech Items are not suited for BCSD and neither Defendant Progressive Consulting nor BCSD were ever able to have the CompTech Items operate as represented.

482.

Defendant CompTech materially breached the terms of its contract by not performing the services indicated despite receiving $3,768,000.00 in unauthorized payment from BCSD.

483.

Defendant CompTech materially breach the terms of its contract with BCSD by breaching its duty of good faith and fair dealing as set forth in this Complaint.

484.

As a direct result of this material breach, BSCD has sustained direct damages in an amount that exceeds $3,768,000.00.

485.

The material breaches by Defendant CompTech described above entail fraud and therefore BCSD is entitled to recover punitive damages.  Defendant CompTech also acted with the specific intent to cause harm to BCSD.  Therefore, BCSD is entitled to punitive damages against Defendant CompTech with no limitation regarding the amount of punitive damages which may be awarded.

486.

Defendant CompTech has acted in bad faith, been stubbornly litigious, and has cause BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT VIII - NEGLIGENCE OF
## DEFENDANTS PROGRESSIVE CONSULTING, CULVER AND CARTY

487.

The allegations of paragraphs 1 through 270 are incorporated herein by reference.

488.

This Count is asserted against Defendants Progressive Consulting and Culver and Carty.

489.

Defendants Progressive Consulting, Culver and Carty had a duty to insure that the appropriate BCSD policies were adequately followed and applied and had a duty not to act or otherwise conduct themselves in a manner that was in derogation of BCSD's policies.

490.

Defendants Progressive Consulting, Culver and Carty breached these duties by negligently approving and certifying payments to Defendants Pinnacle and CompTech and without verifying compliance with BCSD Policy DJED and in violation of BCSD Policy DJED as described in this Complaint.

491.

Moreover, Defendants Progressive Consulting, Culver and Carty had a duty to insure that the services and products being obtained, i.e. the Pinnacle Items and the CompTech Items) were compatible, functional or otherwise appropriate for BCSD prior to such purchases.

492.

Defendants Progressive Consulting , Culver and Carty were negligent in failing to perform simple and basic due diligence to insure the compatibility of the CompTech Items with existing BCSD infrastructures before recommending and approving the payment of $3,768,000.00 to Defendant CompTech for the CompTech Items.

493.

Defendants Progressive Consulting, Culver and Carty negligently failed to test the CompTech Items to determine whether the CompTech Items were compatible and functional with BCSD's existing infrastructure.

494.

As a result of Defendants Progressive Consulting's, Culver's and Carty's negligent failure to conduct simple and basic testing of the CompTech Items, BCSD incurred damages in an amount exceeding $3,768,000.00.

495.

Defendants Progressive Consulting , Culver and Carty negligently failed to test or have demonstrated the capabilities and functions of the Pinnacle Items to determine whether they were appropriate for the needs of BCSD prior to certifying for payment by BCSD $3,247,200.00 to Defendant Pinnacle.

496.

Defendants Progressive Consulting, Culver and Carty negligently failed to determine whether the Pinnacle Items even existed before certifying for payment by BCSD $3,247,200.00 to Defendant Pinnacle for the Pinnacle Items.

497.

Defendants Progressive Consulting, Culver and Carty negligently failed to determine whether the quantity of Proscenium Enterprise Suites ordered was the appropriate amount for the needs and uses of BCSD.

498.

Defendants Progressive Consulting, Culver and Carty negligently failed to require that the Pinnacle Items be delivered, setup and configured by Defendant Pinnacle.

499.

As a result of Defendants Progressive Consulting's, Culver's and Carty's negligent failure to perform simple tests or make reasonable inquiries, BCSD incurred damages in the amount of $3,247,200.00 which it paid for the Pinnacle Items that Defendant Pinnacle never even provided to BCSD.

500.

As the proximate result of such breach, BCSD has sustained direct damages in an amount that exceeds $7,015,200.00.

## COUNT IX – UNJUST ENRICHMENT

501.

The allegations of paragraphs 1 through 284 are incorporated herein by reference.

502.

Defendants have unjustly retained to their benefit public funds from BCSD which they received to the detriment of BCSD as set forth in this Complaint.

503.

It would be unjust to allow Defendants to retain the public funds they received through their illegal and fraudulent conduct as set forth in this Complaint.

504.

Board Policy DJED requires the solicitation of bids, advertisement for bids, and Board approval for expenditures in excess of $6,001.00.

505.

All Defendants were aware of and are charged with knowledge of the requirements of Board Policy DJED but conspired to avoid the bidding requirements of Board Policy DJED as bids were not solicited, advertisements for bids were not made, and Board approval was not obtained for supposed purchases of the Pinnacle Items and CompTech Items described in this Complaint.

506.

Because Defendants knew that the competitive bid requirements were not complied with and because Defendants fraudulently conspired to avoid these requirements and avoid Board approval for the purchases and expenditures as described in this Complaint, Defendants are not entitled to payment.

507.

Defendant Pinnacle never provided the Pinnacle Items for which BCSD paid.  The CompTech Items for which BCSD paid Defendant CompTech are unusable because they are

incompatible with existing BCSD infrastructure and Defendant CompTech never installed or intended to install the CompTech Items for which Defendant CompTech was paid. The additional $500,000.00 paid to Progressive Consulting was unauthorized and violated Board policies. The severance paid to Defendant Dallemand was based on fraud. Defendants committed each of the crimes set forth in Count I which crimes are incorporated herein by reference.

508.

Defendants' retention of the fraudulently obtained public monies violates the principles of justice, equity, and good conscience.

509.

Defendants have acted in bad faith and unjustly enriched themselves at BCSD's expense and as a direct result of Defendants bad faith conduct have damaged BCSD in the amount of $7,865,200.00 as described in this Complaint and equitably ought to return or compensate BCSD in the amount of $7,865,200.00 for the fraudulently obtained funds.

510.

Defendants have acted with the specific intent to cause harm to BCSD. BCSD is therefore entitled to punitive damages against Defendants with no limitation regarding the amount of punitive damages which may be awarded.

511.

Defendants have acted in bad faith, been stubbornly litigious and have caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT X – BREACH OF FIDUCIARY DUTY
## AS TO DEFENDANT DALLEMAND

512.

The allegations of paragraphs 1 through 295 are incorporated herein by reference.

513.

This claim is asserted against Defendant Dallemand.

514.

Defendant Dallemand was in a fiduciary relationship with BCSD and the Board at all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013 and Defendant Dallemand owed BCSD and its Board the duties of a fiduciary throughout that entire period of time.

515.

Defendant Dallemand was in a relationship of trust and confidence with BCSD and its Board at all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013 and Defendant Dallemand owed BCSD and its Board a duty of utmost good faith.

516.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty to prepare and submit to the Board recommendations relative to all matters requiring action of the Board.

517.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to place before the Board

such necessary and helpful facts, information and reports as were needed to insure the making of informed decisions by the Board.

518.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to keep the Board informed about the activities operating under the Board's authority.

519.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board a clear and detailed explanation of any proposed procedure which would involve departure from established policy.

520.

At all times during his tenure as BCSD's Superintendent from February 1, 2011 to February 25, 2013, Defendant Dallemand had a duty and responsibility to submit to the Board a clear and detailed explanation of any proposed procedure which would involve the expenditure of substantial sums.

521.

Defendant Dallemand, induced and aided by Defendant Whitby and Defendant CGPICD, breached his fiduciary duties to the BCSD and the Board of Education when he failed to communicate to the BCSD or the Board of Education (a) that Defendant Whitby had offered Defendant Dallemand $100,000.00 for Defendant Dallemand's support of the MPN; (b) that Defendant Whitby had offered to give Defendant Dallemand $100,000.00 each year for ten (10) years for his continued support of the MPN and (c) that Defendant Dallemand had accepted

Defendant Whitby's offers before the Board of Education voted to approve the MOU and before BCSD gave Defendant CGPICD the Check.

522.

Defendant Dallemand, induced and aided by Defendants Whitby, Knowles, McFarlane and Pinnacle breached his fiduciary duties to the BCSD and the Board of Education Defendants Whitby, Knowles, McFarlane and Pinnacle offered to give him $500,000.00 for the purpose of influencing him to push through the purchase of the Pinnacle Items without complying with Board Policy and that he had agreed to accept Defendants Whitby, Knowles, McFarlane and Pinnacle's bribe.

523.

Defendant Dallemand had a duty and responsibility to communicate to the Board and BCSD that, on December 19, 2012, he caused the District to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items.

524.

Defendant Dallemand, in bad faith, failed to communicate to the Board and BCSD that, on December 19, 2012, he caused BCSD to wire $3,247,200.00 to Defendant Pinnacle to supposedly purchase the Pinnacle Items.  Rather, Defendant Dallemand suppressed the disclosure of that information to the Board and BCSD.

525.

Defendant Dallemand had a duty and a responsibility to communicate to the Board and BCSD that, on December 21, 2012, he caused BCSD to wire $3,768,000.00 to Defendant CompTech to supposedly purchase the CompTech Items.

526.

Defendant Dallemand had a duty and responsibility to communicate to the Board and BCSD that, on December 18, 2012, a $500,000.00 increase was made to Purchase Order No. 70-36372 payable to Defendant Progressive Consulting, bringing the total amount to be paid to Defendant Progressive Consulting to $1,000,000.00.

527.

Defendant Dallemand, in bad faith, breached his duties and responsibilities to the Board and BCSD and failed to communicate that, on December 18, 2012, a $500,000.00 increase was made to Purchase Order No. 70-36372 payable to Defendant Progressive Consulting, bringing the total amount to be paid to Defendant Progressive Consulting to $1,000,000.00. Rather, Defendant Dallemand suppressed the disclosure of that information to the Board and BCSD.

528.

As a direct and proximate result of Defendant Dallemand's breach of his fiduciary duties, BCSD entered into a Severance Agreement with Defendant Dallemand and paid Defendant Dallemand $350,000.00.

529.

As the proximate result of such breach, BSCD has sustained direct damages in an amount that exceeds $7,865,200.00.

530.

Defendant Dallemand acted with the specific intent to cause harm to BCSD. Therefore, BCSD is entitled to punitive damages against Defendant Dallemand with no limitation regarding the amount of punitive damages which may be awarded.

531.

Defendant Dallemand has acted in bad faith, has been stubbornly litigious, and has caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT XI – INDUCING AND AIDING
## BREACH OF FIDUCIARY DUTY

532.

The allegations of paragraphs 1 through 313 are incorporated herein by reference.

533.

This Count is asserted against Defendants Progressive Consulting, Culver, Carty, Progressive Property, CompTech, Stephen, Pinnacle, Knowles, Knowles and Randolph, McFarlane, Whitby, Whitby, Inc., Positiventures, CGPICD, and Integrated (the "Count XI Defendants").

534.

The Count XI Defendants, through their improper, wrongful and fraudulent activities described in Counts I through X of this Complaint, wrongfully, and without privilege intentionally colluded and acted to procure a breach of Defendant Dallemand's fiduciary duty to BCSD and its Board.

535.

The Count XI Defendants acted with knowledge that Defendant Dallemand owed a fiduciary duty to BCSD and its Board and acted purposefully and with intent to injure BCSD and its Board.

536.

The Count XI Defendants knowingly and substantially assisted Defendant Dallemand in breaching his fiduciary duty to BCSD and its Board as set forth in Counts I through X of this Complaint.

537.

As a direct and proximate result of the Count XI Defendants' actions and assistances, Defendant Dallemand breached his fiduciary duties to BCSD.

538.

The Count XI Defendants acted purposefully, with malice and with the intent to injure BCSD and its Board and as a result directly and proximately damaged BCSD in an amount in excess of $7,865,200.00.

539.

The Count XI Defendants acted with the specific intent to cause harm to BCSD. Therefore, BCSD is entitled to punitive damages against the Count XI Defendants with no limitation regarding the amount of punitive damages which may be awarded.

540.

The Count XI Defendants have acted in bad faith, been stubbornly litigious, and have caused BCSD unnecessary trouble and expense so as to justify an award of attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT XII – RESCISSION OF THE SEVERANCE AGREEMENT

541.

The allegations of paragraphs 1 through 322 are incorporated herein by reference.

542.

As has been alleged above in Paragraphs 153-161 and Counts I, II, and III, Defendant Dallemand made false representations and concealed material facts from BCSD concerning the payments that were made to Defendants Pinnacle, CompTech, and Progressive Consulting.

543.

Defendant Dallemand knew that these representations and concealments were false.

544.

Defendant Dallemand made these false representations and concealments with the intent to induce BCSD to enter into the Severance Agreement.

545.

BCSD justifiably relied on Defendant Dallemand's false representations and concealments because Defendant Dallemand owed a fiduciary duty to BCSD.

546.

BCSD was damaged as a result of Defendant Dallemand's false representations and concealments, which damages include the $350,000.00 that BCSD paid to Defendant Dallemand under the terms of the Severance Agreement.

547.

After Defendant Dallemand left his position as superintendent of the Bibb County school system, he lost his teacher's license and BCSD hired a new superintendent.

548.

After BCSD discovered Defendant Dallemand's fraud, it was both impossible and unreasonable for BCSD to offer to restore Defendant Dallemand to his position as superintendent

because he could no longer serve in that position due to the loss of his teacher's license and that position was already held by someone else.

549.

The Severance Agreement is void under O.C.G.A. § 13-5-5 because of the fraud committed by Defendant Dallemand and BCSD is entitled to rescission of the Severance Agreement.

## DEMAND FOR JURY TRIAL

BCSD demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BCSD prays for the following relief:

1.    The issuance of process as to each Defendant;

2.    A Judgment in favor of Plaintiff and against each Defendant in amount that includes:

    a.    Damages in an amount not less than $8,865,200.00;

    b.    As to BCSD's claims set forth in Count I above, threefold the amount of damages BCSD has sustained by reason of the violations of 18 U.S.C. § 1962 that are described in Count I, and the cost of this suit including a reasonable attorney's fee;

    c.    As to BCSD's claims that are set forth in Count II above, three times the actual damages sustained by reasons of the violations of O.C.G.A. § 16-14-4 that are described in Count II, punitive damages, attorneys' fees in

the trial and appellate courts and costs of investigation and litigation reasonably incurred;

d.    Punitive damages in such amount that will punish, penalize and deter each Defendant;

e.    Interest;

f.    The costs of this action; and

3.    Such other relief that this Honorable Court deems just and appropriate.

Date:  November 20, 2017.

<u>s/W. Warren Plowden, Jr.</u>
W. WARREN PLOWDEN, JR.
STATE BAR NO. 582200
Attorney for Plaintiff
Bibb County School District

<u>s/Thomas W. Joyce</u>
THOMAS W. JOYCE
STATE BAR NO. 405527
Attorney for Plaintiff
Bibb County School District

<u>s/Brandon A. Oren</u>
BRANDON A. OREN
STATE BAR NO. 554277
Attorney for Plaintiff
Bibb County School District

OF COUNSEL:
JONES CORK, LLP
435 Second Street
P.O. Box 6437
Macon, Georgia 31208-6437
(478) 745-2821
warren.plowden@jonescork.com
tom.joyce@jonescork.com
brandon.oren@jonescork.com

s/Jerry A. Lumley
JERRY A. LUMLEY
STATE BAR NO. 460866
Attorney for Plaintiff
Bibb County School District
Lumley and Harper, LLC
6030 Lakeside Commons Drive
Macon, GA 31210
T: 478-471-1776
F: 478-352-0177
E: jlumley@lumleyandharper.com

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **Second Amended Complaint** upon Defendants

Romain Dallemand, Progressive Consulting Technologies, Inc., Isaac Culver, III, CompTech

Computer Technologies, Inc., Allen J. Stephen, III, Pinnacle/CSG, Inc., and Corey McFarlane

Defendants on November 20, 2017 by using the Court's electronic transmission facilities.

Date:  November 20, 2017.

s/Jerry A. Lumley
Georgia Bar No. 460866
Attorney for Plaintiff
6030 Lakeside Commons Drive
Macon, Georgia 31210
Telephone:  478-471-1776
Facsimile:  478-352-0177
Email:  JLumley@lumleyandharper.com