**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **BIBB COUNTY SCHOOL DISTRICT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION NO. 5:16-CV-549 (MTT)** |
| | ) |
| | ) |
| **ROMAIN DALLEMAND, _et al.,_** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Defendants Pinnacle/CSG, Inc. and Cory McFarlane (the "Pinnacle Defendants")
have moved to "amend [their] answer and affirmative defenses to the first amended
complaint, Doc. 69, by adding a counterclaim." Doc. 289. McFarlane is the CEO,
"Chief Visionary," and President of Pinnacle, a Florida construction firm. Doc. 202 ¶¶ 5,
7. For the following reasons, their motion (Doc. 289) is **DENIED**.

## I. BACKGROUND

On December 15, 2016, Plaintiff Bibb County School District ("BCSD") filed this
action against a number of Defendants, including the Pinnacle Defendants, alleging the
Defendants participated in schemes to defraud BCSD. _See generally_ Doc. 1. Relevant
to the Pinnacle Defendants, the alleged scheme primarily involved a non-existent
financial and accounting software product that BCSD purchased from Pinnacle. _See
generally id._ On April 3, 2017, BCSD amended its complaint as a matter of course and
asserted the same claims against the Pinnacle Defendants. Docs. 55; 59. In their

answer to the first amended complaint on April 30, 2017,[1] the Pinnacle Defendants asserted, among others, prevention and frustration of contract as an affirmative defense. Doc. 69 at 84. Notably, the Pinnacle Defendants did not assert a counterclaim in their answer.

On November 20, 2017, after the Court granted BCSD's motion to amend, BCSD filed its second amended complaint, joining new Defendants and asserting, in relevant part, the same claims against the Pinnacle Defendants.[2] *See generally* Docs. 161; 162. On January 18, 2018, the Pinnacle Defendants filed an answer to the second amended complaint and separately filed, for the first time, a counterclaim. Docs. 196; 197.[3] In their counterclaim, the Pinnacle Defendants allege that BCSD interfered with their performance of the contract to provide the accounting and financial software because they were African-American. *See generally* Doc. 202. Specifically, the Pinnacle Defendants allege that on July 31, 2013, six months into Pinnacle's contract with BCSD, and four and a half years before filing their counterclaim, BCSD "was in the process of

---

[1] This was the Pinnacle Defendants' first responsive pleading.

[2] In its second amended complaint, BCSD maintained its fraud claims against the Pinnacle Defendants for the allegedly bogus software but added new allegations. *Compare* Doc. 59 ¶ 181C, *with* Doc. 162 ¶ 405C. Specifically, BCSD alleged that the software transaction was facilitated by a bribe and that the Pinnacle Defendants laundered some of the $3,247,200.00 BCSD paid for the software. *Id.* Separate from its claims arising from the software transaction, BCSD alleged the Pinnacle Defendants were involved in bribery schemes to facilitate other transactions. *Id.*

[3] On January 24, 2018, the Pinnacle Defendants filed an amended counterclaim. Doc. 202. In their initial counterclaim, the Pinnacle Defendants had asserted discrimination claims against members of BCSD's Board of Education who were not, and are not, parties to the litigation. *See generally* Doc. 197. Because the Board members were not parties to the litigation, the Clerk filed a "Notice of Deficiency." On January 23, 2018, the Pinnacle Defendants filed a "Notice of Deficiency Compliance," noting "the inconvenience caused by the erroneous inclusion of individual members of the Board of Public Education." Doc. 201 at 2. The Pinnacle Defendants removed the names of the Board members in their amended counterclaim. Doc. 202.

approving the contracts of white contractors" and was interfering with and frustrating the performance of three minority contract vendors, one of which was Pinnacle. *Id.* ¶ 31.

Viewing July 31, 2013 as the time when the alleged discriminatory conduct occurred and, thus, the date on which the counterclaim accrued, BCSD moved to dismiss the Pinnacle Defendants' counterclaim, arguing the counterclaim was barred by the statute of limitations. Doc. 205-1 at 3. In response, the Pinnacle Defendants argue that BCSD "takes too much liberties in misconstruing [their counterclaim]," because they "did not allege that the injury accrued on [July 31, 2013]." Doc. 215 at 12-13. But even assuming the injury accrued on or before July 31, 2013, the Pinnacle Defendants contend their counterclaim is not barred by the statute of limitations because it relates back to the date they filed their answer to the first amended complaint.[4] *Id.* at 8. BCSD argues, however, that for the January 24, 2018 counterclaim to relate back to their April 30, 2017 answer, the Pinnacle Defendants must obtain leave of Court to amend that answer. Doc. 219 at 4. At the time, the Pinnacle Defendants had not sought leave to assert their omitted counterclaim.

---

[4] The Pinnacle Defendants also argue that their counterclaim relates back to the date BCSD filed its initial complaint. Doc. 215 at 9. That argument is patently frivolous and is dispatched now. Federal Rule of Civil Procedure 15 provides, in relevant part, that a party may amend "its" pleading and that, under certain conditions, an amendment to a pleading relates back to the date of the original pleading. Clearly, BCSD's complaint is not the Pinnacle Defendants' pleading. Accordingly, the counterclaim cannot amend BCSD's initial complaint, nor can it relate back to the date of that complaint.

That leads to a related, but still completely separate, point. Courts have held that the filing of a complaint tolls the statute of limitations for a compulsory counterclaim so long as that counterclaim is timely asserted. *See generally* 6 Wright, Miller & Kane, Federal Practice and Procedure § 1419 (3d ed. 2010) (citing cases). For example, if a plaintiff files a complaint one day before the applicable statute of limitations has run on a defendant's compulsory counterclaim, then the defendant's counterclaim, which would otherwise be time-barred, will still fall within the limitations period so long as it is asserted within the time provided by Rule 12(a) for serving a responsive pleading. *Id.* The Pinnacle Defendants do not argue that the time for filing their counterclaim was tolled, and, in any event, tolling is not available because they did not timely assert their counterclaim in response to BCSD's initial complaint.

Only at a June 1, 2018 status conference, when the Court raised the point, did counsel for the Pinnacle Defendants acknowledge "maybe that's what we should do," i.e., move to amend their answer to the first amended complaint.[5]  Doc. 291 at 66:7-14. On June 4, 2018, the Pinnacle Defendants moved to amend their April 30, 2017 answer to the first amended complaint to include their counterclaim; BCSD opposes the motion. Docs. 289; 289-3; 295.

## II. DISCUSSION

### A.    The legal effect of the counterclaim

The Pinnacle Defendants maintain that their counterclaim relates back to its "First Answer and Affirmative Defenses" and that they were "not required to seek an amendment to the First Amended Answer."  Doc. 289 at 2-3.  They contend that "BCSD reset the parties' responsive pleading obligation when it filed the Second Amended Complaint, which superseded the original and First Amended Complaints and permitted the filing of new defenses and [the] omitted [] counterclaim that arose out of [the Pinnacle Defendants'] first answer and affirmative defense outside of the amendatory requirements of Rule 15."  *Id.* at 3.  It seems the Pinnacle Defendants' argument is that when BCSD filed its November 20, 2017 second amended complaint, the Pinnacle Defendants could file their January 18, 2018 counterclaim as a matter of course and that because the counterclaim arises from the same conduct, transaction, or occurrence set forth in their April 30, 2017 answer to the first amended complaint, the amendment relates back to the date of that answer.  *See* Doc. 289 at 3.  The Pinnacle Defendants

---

[5] Counsel for the Pinnacle Defendants stated at the June 1, 2018 status conference that, though he would "cover [his] bets" on whether he needed to seek leave to amend, he "disagree[d]" he had to do so for the counterclaim to relate back to the date the Pinnacle Defendants filed their answer to the first amended complaint.  Doc. 291 at 67:14-16.  As explained below, the Court disagrees.

do not, and could not, dispute that their counterclaim arises "out of the transaction or occurrence that is the subject matter" of the claim asserted against them in BCSD's initial and first amended complaint.  Fed. R. Civ. P. 13(a)(1)(A); *see* Doc. 289 at 4. Accordingly, the salient issue is whether a defendant may assert a counterclaim that should have been asserted earlier in response to an amended complaint without seeking leave to amend.

The Federal Rules of Civil Procedure do not directly address this issue.  Rule 13 provides that a counterclaim, whether compulsory or permissive, must be raised in "a pleading" by a "pleader."  *See* Fed. R. Civ. P. 13(a), (b).  A counterclaim is not one of the pleadings recognized under Rule 7(a); therefore, if a defendant seeks to assert a counterclaim, it must do so in its answer.  *See* Fed. R. Civ. P. 7(a).  When a defendant fails to assert a counterclaim in its answer, that omission has consequences.

Though descriptive of what happened here, "omitted counterclaim" is technically an obsolete term.  In a 2009 amendment, Rule 13(f), which addressed omitted counterclaims, was abrogated.  *See* Adv. Comm. Notes on 2009 Amendments to Fed. R. Civ. P. 13.  Until then, Rule 13(f) provided that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f) (2008).  The Advisory Committee's Notes explain that Rule 13(f) was "deleted as largely redundant and potentially misleading" in light of Rule 15, which addresses amendments of pleadings.  *See* Adv. Comm. Notes on 2009 Amendments to Fed. R. Civ. P. 13.  Thus, the abrogation of Rule 13(f) "establishes Rule 15 as the sole

rule governing amendment of a pleading to add a counterclaim." Adv. Comm. Notes on 2009 Amendments to Fed. R. Civ. P. 15.

Under Rule 15(a)(1), a party may amend its pleading once as a matter of course within 21 days after serving the pleading or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3). While Rule 15 addresses *when* a defendant may respond to an amended complaint, it does not squarely address whether a defendant may bring an omitted counterclaim as a matter of course in response to an amended complaint. Nor does it appear that any appellate court has squarely addressed this issue. *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., Ltd.*, 11 F. Supp. 3d 622, 629 (E.D. Va. 2014) (citations omitted).

Consequently and in light of the 2009 amendments, district courts have taken various approaches to address the issue.[6] The majority of courts have adopted what is

---

[6] Before the 2009 amendments, district courts had followed three main approaches to this issue: "permissive," "narrow," and "moderate." *See, e.g.*, *Uniroyal Chem. Co. v. Syngenta Crop Prot., Inc.*, 2005 WL 677806, at *2 (D. Conn. Mar. 23, 2005) (discussing three competing approaches and adopting the "moderate" view). As explained below, courts continue to apply the "moderate" and "permissive" approaches. However, to the Court's knowledge, no court has adopted the "narrow" approach since the 2009 amendments. Under the "narrow" approach, counterclaims as of right are allowed only if they are "strictly confined to the new issues raised by the amended complaint." *S. New England Tel. Co. v. Global NAPS, Inc.*, 2007 WL 521162, at *2-3 (D. Conn. Feb. 14, 2007) (adopting the "narrow" view based on "its view of the interplay between certain provisions of Rule 13 and Rule 15(a)") (citation omitted). Some courts have concluded that the "narrow" approach "is no longer viable because it was premised in large part on Rule 13(f)." *UDAP Indus. Inc. v. Bushwacker Backpack & Supply Co.*, 2017 WL 1653260, at *3

called the "moderate" approach. *See, e.g.*, *UDAP Indus. Inc. v. Bushwacker Backpack & Supply Co.*, 2017 WL 1653260, at *3 (D. Mont. May 2, 2017) (applying the "moderate" approach); *see also Poly-Med, Inc. v. Novus Scientific Pte Ltd.*, 2017 WL 2874715, *2 (D.S.C. July 6, 2017) (same). Under this approach, a counterclaim may be filed without leave "only when the amended complaint changes the theory or scope of the case," and the breadth of the changes in the counterclaim must "reflect the breadth of the changes in the amended complaint." *Poly-Med*, 2017 WL 2874715, at *2 (citation omitted). Put another way, a defendant may bring a counterclaim as a matter of course if the amended complaint broadened the scope or theory of the case and the counterclaim was proportional to that amendment. *Id.* Under the so-called "permissive" approach, which appears to be what the Pinnacle Defendants rely on, once a plaintiff amends a complaint, a defendant may amend its answer as of right to bring a new counterclaim, regardless of the scope of the change in the amended complaint. *UDAP*, 2017 WL 1653260, at *3 (citation omitted); *see also Berrada v. Cohen*, 2017 WL 6513954, at *2-3 (D.N.J. Dec. 20, 2017) (interpreting the language in Rule 15 to not limit the scope of a defendant's response to an amended pleading, such that a new counterclaim may be asserted as a matter of right).

Finally, courts, including one in this Circuit, have adopted a third approach, which is to "simply apply the Rule 15 standard equally to amended complaints and amended (or new) counterclaims." *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 179 (D. Mass. 2014); *Digital Ally, Inc. v. DragonEye Tech. LLC*, 2014 WL 2865592, at *4 (D.

---

(D. Mont. May 2, 2017) (citation omitted); *see also Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., Ltd.*, 11 F. Supp. 3d 622, 631 (E.D. Va. 2014) (noting that courts followed the narrow approach based on the interplay of Rules 13(f) and 15 but that interplay was eliminated by the 2009 amendments) (quotation marks and citations omitted).

Kan. June 24, 2014) (adopting the approach in *Bern*); *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, 2017 WL 4868638, at *1 (S.D. Fla. June 1, 2017) (same).  These courts reason that because Rule 15(a)(1) does not address a new or different counterclaim being asserted after an amended complaint, the catch-all phrase "[i]n all other cases" from Rule 15(a)(2) applies, requiring "the court's leave" (or the opposing party's consent) to assert the counterclaim.  *See, e.g.*, *Bern*, 25 F. Supp. 3d at 179.  And as a practical matter, this approach provides for a simple and consistent application of the Rule 15 standard for amendments of pleadings that assert claims for relief.  *See, e.g.*, *Digital Ally*, 2014 WL 2865592, at *4.  In short, courts believe this third approach "appears to require the least contortion of the language of Rule 15(a), and is the most consistent with its purpose." *Bern*, 25 F. Supp. 3d at 179.

The Court agrees that the third approach (which the Court will call the "uniform" approach) makes the most sense.  Given the specific circumstances and procedural history of this case, neither the "permissive" nor "moderate" approach is appropriate.  As one court explained in rejecting the "permissive" approach, "[i]f every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause.  This would deprive the Court of its ability to effectively manage the litigation." *E.E.O.C. v. Morgan Stanley & Co.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002); *see also Virginia Innovation Scis.*, 11 F. Supp. at 632 (adopting the reasoning in *Morgan Stanley* and rejecting the "permissive" approach).  That reasoning particularly applies here because, as discussed below, the Pinnacle Defendants asserted a new counterclaim in response to BCSD's second amended complaint, despite knowing

information supporting that counterclaim years before BCSD filed its initial complaint. Allowing that counterclaim to be asserted as of right, when it would cause undue delay, cause undue prejudice, and otherwise be futile, runs contrary to the purpose and spirit of Rule 15 and certainly was not the intended result of Rule 13(f)'s abrogation. Moreover, it would "create an imbalanced, if not inequitable, situation where the plaintiff would be required to obtain leave to make amendments to its pleadings, but the defendant-counterclaimant would not." *Bern*, 25 F. Supp. 3d at 179.

As for the "moderate" approach, the Pinnacle Defendants do not contend they can assert as of right their counterclaim because of changes in the second amended complaint. If they had, the Court would not have been persuaded. While the second amended complaint, in adding new allegations and parties, has broadened somewhat the scope of the case, BCSD's claim arising from the software transaction, although buttressed, remains the same—the Pinnacle Defendants defrauded BCSD. Buttressing allegations and adding new Defendants does not by itself allow the Pinnacle Defendants to assert an omitted counterclaim as of right. If they could, then the "moderate" approach would become almost identical to the "permissive" approach in that a defendant could bring any new, unrelated counterclaim, or one that could have been asserted earlier without leave, any time the amended complaint expands—even minimally—the scope of the case. *Bern*, 25 F. Supp. 3d at 179 n.7. That would obviate the proportionality requirement under the "moderate" approach and "circumvent[] the requirements of Rule 15." *Id.* And even assuming the changes in the second amended complaint are proportional to the counterclaim, again, the point is that the Pinnacle Defendants could have asserted their counterclaim in response to BCSD's initial or first

amended complaint. But instead, they waited until after the filing of the second amended complaint to assert their counterclaim. Consistent with the general purpose of Rule 15(a), therefore, just as BCSD had to seek leave to bring its second amended complaint, so too must the Pinnacle Defendants seek leave to bring their counterclaim and explain why they failed to assert it earlier.

In sum, neither the filing of the second amended complaint nor the changes made in that complaint excuse the Pinnacle Defendants' failure to assert timely their counterclaim.[7] Thus, under the "uniform" approach, the Court concludes the Pinnacle Defendants are required to seek leave to assert their omitted counterclaim. Because leave is required and the Pinnacle Defendants filed their counterclaim without seeking leave (or obtaining BCSD's consent), the counterclaim has no legal effect. *See Hoover v. Blue Cross and Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1988) (noting generally that "if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, *it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval*" and concluding that "the district court acted properly in treating [a party's] supplemental pleading as a nullity, particularly since it was inclined to deny any motion for leave to amend that [the party] might have filed") (citation omitted). As discussed below, the Court denies the Pinnacle Defendants' motion to amend.

---

[7] To be sure, if an amended complaint asserted a claim arising from a transaction different from the transaction alleged in an earlier complaint, a defendant's counterclaim arising from the new transaction almost certainly could be asserted in the defendant's answer to the amended complaint without leave of court. That, of course, is not the case here.

Accordingly, the counterclaim (Doc. 202) is **DISMISSED as null**, and BCSD's motion to dismiss the counterclaim (Doc. 205) is **DENIED as moot**.[8]

## B.      Standard and analysis under Rule 16

Before addressing the propriety of the proposed amendment under Rule 15, the Court must first determine whether the Pinnacle Defendants' motion is untimely under the controlling Scheduling Order issued in this case. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (noting that when a motion to amend was filed after the scheduling order's deadline, the movant must first demonstrate good cause under Rule 16(b) before the court considers whether the amendment is proper under Rule 15(a)) (citations omitted). Pursuant to Rule 16(b), a district court must issue a scheduling order that limits the time to amend the pleadings. The Court entered its Scheduling Order on June 7, 2017 and set October 6, 2017 as the deadline for filing motions to amend.[9] Docs. 85; 108 at 2; 115 at 30:20-24, 31:15-19. Because the Pinnacle Defendants filed their motion eight months after this deadline and did not seek any extensions to file an amendment, their motion is untimely. Thus, the Pinnacle Defendants must show good cause under Rule 16(b) for seeking leave to amend their

---

[8] In most cases involving the issue of whether a defendant may assert as of right a counterclaim in response to an amended complaint, the plaintiffs moved to strike the counterclaim under Rule 12(f). *See, e.g.*, *UDAP*, 2017 WL 1653260, at *1; *see also Virginia Innovation*, 11 F. Supp. 3d at 629. Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Technically, because the Pinnacle Defendants did not assert their counterclaim in their answer to the second amended complaint but rather filed the counterclaim separately, there is nothing to strike from the pleading, and, thus, Rule 12(f) does not seem to apply. In any event, as discussed, the separately filed counterclaim is dismissed as having no legal effect.

[9] The initial deadline to amend pleadings was August 7, 2017. Doc. 85 at 20. However, at a July 28, 2017 hearing, the Court granted a 60-day extension for all discovery deadlines, including the deadline to file motions to amend pleadings. Docs. 108 at 2; 115 at 30:20-24, 31:15-19. Though the Court later extended the discovery deadline to May 31, 2019, that was in response to the Court's stay of the case on February 27, 2018. Docs. 221; 311. The deadline for amending pleadings had already passed before the stay was entered, while the deadline for discovery had not. Accordingly, the Court's extension of the discovery deadline did not extend the deadline for amending pleadings.

answer after the deadline. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241, 1241 n.3 (11th Cir. 2009) (citation omitted); Fed. R. Civ. P. 16(b)(4). A lack of diligence in pursuing a claim is sufficient to show lack of good cause. *S. Grouts & Mortars*, 575 F.3d at 1241 (citation omitted); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (noting that "carelessness is not compatible with a finding of diligence," and if the movant "was not diligent, the [good cause] inquiry should end") (citations omitted). An example of a lack of diligence is the failure to either assert a claim or timely amend when "the information supporting the proposed amendment to the [pleading] was available to the [movant] even before [a suit was filed]." *Sosa*, 133 F.3d at 1419.

The Pinnacle Defendants were not diligent in pursuing their counterclaim. As the record makes clear, the Pinnacle Defendants were aware of the information supporting their omitted counterclaim, at the latest, in July 2013. First, the Pinnacle Defendants allege in their counterclaim that on July 31, 2013, BCSD interfered with and frustrated the performance of their contract because of their race. Doc. 202 ¶ 31. That allegation on its face indicates the Pinnacle Defendants had knowledge of the alleged discrimination on that date, several years before BCSD filed its complaint.

Nonetheless, the Pinnacle Defendants argue that paragraph 31 of their counterclaim is "descriptive of what Pinnacle now knows; it is not a definitive statement of when Pinnacle knew of the District's discriminatory behavior." Doc. 215 at 12 n.8. The Pinnacle Defendants instead argue the "more salient paragraph" is paragraph 27, in which they allege they learned BCSD's actions to impede contract performance against them "based on reports in the community by minority-owned companies

participating in [various projects for BCSD]." *Id.*; Doc. 202 ¶ 27. Even if this argument were credible (see below), the Pinnacle Defendants "do[] not state when [they] learned of the community reports." Doc. 215 at 12 n.8. This does not satisfy their burden to show good cause for their failure to timely seek leave to amend. *See Northstar Marine, Inc. v. Huffman*, 2014 WL 3720537, at *3 (S.D. Ala. July 28, 2014) ("The burden of establishing good cause / diligence rests squarely on the party seeking relief from the scheduling order.") (citation omitted).

Nor is their argument that they were unaware of the facts supporting their counterclaim years before they finally filed the omitted counterclaim credible. On July 2, 2013, Harold Knowles,[10] the CEO and general counsel of Pinnacle, wrote, on Pinnacle's letterhead, to Randy Howard, the in-house counsel of BCSD, that "[b]ased on *additional anecdotal information we have recently received*, it is also our understanding some persons in Bibb County have chosen to '*target' minority-owned companies* participating in similar or related projects in the District." Doc. 219-1 at 4 (emphasis added). It is clear to the Court that "based on reports in the community," as alleged in the counterclaim, is simply a rewording of "based on additional anecdotal information we have recently received" in the July 2, 2013 letter. This is not the only instance in which the counterclaim references and incorporates the contents of the letter. The following are examples of the striking similarity between the counterclaim and letter:

- Paragraph 20 of the counterclaim alleges: "Pinnacle has always been available, and communicated the same, to [BCSD], to deliver the contracted services/Items. Pinnacle communicated this message to the District . . . in two written

---

[10] Knowles and his law firm, Knowles & Randolph, P.A., are newly added Defendants to the case.

correspondences on *July 2, 2013* and February 25, 2014, and directed its counsel, at the start of this litigation, to convey to the District that Pinnacle was on standby to complete the project" (emphasis added). Page five of the July 2, 2013 letter from Pinnacle's counsel reads: "Accordingly, this correspondence is intended to advise you and your client that PinnacleCSG stands ready to perform its outstanding obligations to implement and install the technology applications which the District's authorized agents previously engaged us to install."

- Paragraph 21 alleges: "In the correspondence to the District, Pinnacle reminded the District that, as a party to the contract with Pinnacle, it had a duty not to do anything that prevented it from performing its obligation." Page four of the letter reads: "As a licensed attorney in Georgia, I am certain you are familiar with the legal maxim that a contracting party has an implied duty not to do anything that prevents the other party from performing its obligation."

- Paragraph 22 alleges: "Pinnacle suffered through weeks of delays of one genus or another in obtaining the existing technology codes, e.g., vital information to facilitate the transition and properly structuring of the software design to complete the project." Page four of the letter reads: "We suffered through weeks of delays of one sort or another in obtaining the existing technology codes to facilitate the transition."

In sum, it is clear from both the allegations in the counterclaim and the July 2, 2013 letter that the Pinnacle Defendants had knowledge of information supporting their counterclaim in July 2013.[11] Nevertheless, the Pinnacle Defendants did not assert their

---

[11] The Pinnacle Defendants challenge the authenticity and admissibility of their July 2, 2013 letter. Doc. 298 at 3-4. They contend they did not attach the letter to a pleading and that the letter is inadmissible under Federal Rule of Evidence 408 because it was part of the parties' settlement communication and, thus, is confidential. *Id.* As an initial matter, the present inquiry is whether the Pinnacle Defendants have

counterclaim in their answer to BCSD's first amended complaint.  Instead, they filed

their motion to amend on June 4, 2018—a year and a half after BCSD filed its

complaint, and eight months after the expiration of the deadline for amending pleadings.

At best, the Pinnacle Defendants' delayed filing was the result of sheer inadvertence or

carelessness—the antithesis of diligence.

The Court notes that the Pinnacle Defendants nonetheless contend they have

"diligently examined the voluminous discovery in the case and only, recently, concluded

with the filing of [their counterclaim] that BCSD has a practice of approving contracts for

---

met their burden to show good cause for failing to timely seek leave to amend.  Making that showing appropriately requires going outside of the pleadings.  The Court finds it significant that the Pinnacle Defendants do not rely on the letter to show they were diligent—most likely because the letter shows just the opposite.  In any event, their stated arguments for why the letter is not authentic or admissible are without merit.  First, "a document need not be physically attached to a pleading to be incorporated by reference into it."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted).  The Court may consider that document so long as the document's contents are (1) alleged in a pleading; (2) undisputed—meaning, the authenticity of the document is not challenged; and (3) central to the pleading. *Id.* (citations omitted).  A document is "central" to the pleading when it is a "necessary part of [the counter-plaintiff's] effort to make out a claim." *Id.*

As discussed, the counterclaim references and incorporates, almost verbatim, the contents of the July 2, 2013 letter.  Though the Pinnacle Defendants argue that the contents are disputed, such as the viability of the contract, the product price, and the issue of racial targeting (Doc. 298 at 4), "'[u]ndisputed' in this context means that the authenticity of the document is not challenged," that is, whether the letter was a true and accurate copy of what Knowles actually wrote.  *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (citations omitted).  It is clear the Pinnacle Defendants cannot, in good faith, challenge the authenticity of the letter.  The letter is on Pinnacle's letterhead, it is signed by Pinnacle's lawyer, and the Pinnacle Defendants allege in their counterclaim that they "directed" their lawyer to write this letter on their behalf to BCSD's counsel.  Finally, as the Pinnacle Defendants point out, the contents of the letter involve a contract between BCSD and the Pinnacle Defendants, discuss the product price, and allege racial targeting.  These are all necessary to determine whether the Pinnacle Defendants can prove their claims of frustration and prevention of contract and discrimination.  Therefore, the argument that the unattached letter cannot be considered is unavailing.

The Pinnacle Defendants' argument that the letter is inadmissible under Rule 408 also fails.  While it does appear the letter was written as a part of negotiations (or ceasing negotiations) between BCSD and the Pinnacle Defendants, Rule 408 specifically permits the admission of settlement negotiation evidence when it is presented for a reason other than demonstrating liability, including, but not limited to, proving bias or prejudice of a witness and negating a contention of undue delay.  Fed. R. Evid. 408(b).  Moreover, the Advisory Committee's Notes to the 2006 Amendments make clear that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice.  Here, the July 2, 2013 letter is only being considered to determine whether the Pinnacle Defendants had notice or knowledge of BCSD's alleged discriminatory practices.  Accordingly, Rule 408 is inapplicable, and the Court may consider the letter as part of the record in addressing the Pinnacle Defendants' motion.

white contractors without competitive bidding." Doc. 289 at 4. Their counsel claims he did not know until BCSD's production of discovery in the "Fall of 2017" that his clients had a "viable discrimination counterclaim." *Id.* at 2. Again, that is not true, given both the allegations in the counterclaim and the July 2, 2013 letter.[12] And even assuming the Pinnacle Defendants learned more details of the alleged discriminatory practice through discovery, the point is that they knew information supporting their counterclaim well before BCSD brought its suit, and certainly prior to conducting discovery, but were not diligent in asserting their counterclaim in their answer to BCSD's first amended complaint. At the very least, the Pinnacle Defendants, given their knowledge and during the early stages of discovery, could have moved to amend or moved for an extension of time to amend their answer before the deadline to amend pleadings expired on October 6, 2017. But it seems clear the Pinnacle Defendants are, in effect, attempting to circumvent the consequences of their failure to timely amend their answer by relying on BCSD's filing of its second amended complaint that, like BCSD's prior complaints, sought recovery for the Pinnacle Defendants' fraudulent conduct relating to the software transaction. That will not be countenanced. Accordingly, because the Pinnacle

---

[12] If BCSD's evidence is to be believed, the representation that "viable" information was first received in the "Fall of 2017" is false for other reasons. Docs. 202 at 8; 295 at 5. The information in question is taken from an April 3, 2013 attorney-client communication to the then members of BCSD's Board of Education. Docs. 295 at 5; 295-2 at 7. Counsel for BCSD states he provided the Pinnacle Defendants with copies of this letter during discovery on July 29, 2017. Doc. 295-1 ¶ 3. More importantly, and somewhat troubling to the Court, although this letter is marked privileged and confidential, the Pinnacle Defendants, in their initial disclosures, produced a copy of "the first three pages" of the letter which reflects that it was printed on December 29, 2015 from Pinnacle's attorney's computer. Docs. 295 at 6; 295-3. The parties do not address how Pinnacle came to have a copy of this privileged communication, but at the very least, the document shows that the Pinnacle Defendants had in December 2015 the information they say they first received in the "Fall of 2017." In any event, the Court relies on none of this evidence in reaching its conclusion that the Pinnacle Defendants knew information supporting their counterclaim well before the Fall of 2017.

Defendants have failed to demonstrate good cause under Rule 16(b) for their belated attempt to assert their counterclaim and seek leave to amend, their motion is **DENIED**.

**C.      Standard and analysis under Rule 15**

Although not necessary, the Court also addresses whether amendment is proper under Rule 15.  *See Sosa*, 133 F.3d at 1419 (denying plaintiff's motion to amend as untimely under Rule 16(b) without addressing whether amendment is proper under Rule 15(a)).  Rule 15(a)(2) provides that the Court "should freely give leave [to amend] when justice so requires."  "The decision whether to grant leave to amend a [pleading] is within the sole discretion of the district court."  *Laurie v. Ala Ct. of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001).  "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (quotation marks and citation omitted).  Put another way, the Court must identify a substantial reason to justify denying leave to amend.  *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (citation omitted).  Substantial reasons include "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, substantial reasons justify denying leave to amend.  First, as discussed, the Pinnacle Defendants knew of the information supporting their counterclaim several years before BCSD filed suit against them and had ample opportunity to timely seek leave to assert their counterclaim.  *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d

1171, 1186 (11th Cir. 2013) ("A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings.") (citations omitted). Despite that, they failed to seek leave to amend until thirteen months after they filed their answer to the first amended complaint and eight months after the Scheduling Order's deadline for amending pleadings expired.  And again, the Pinnacle Defendants' explanation for the delay—that they recently discovered facts supporting their counterclaim—is not only inadequate but also untrue.  That alone is sufficient to deny leave to amend.  *See In re Engle Cases*, 767 F.3d 1082, 1119 (11th Cir. 2014) ("[A] district court has discretion to deny leave to amend. . . when the moving party offers no adequate explanation for a lengthy delay.") (citations omitted).  Accordingly, the Court finds the proposed amendment would cause undue delay.

The Court also finds the proposed amendment would cause undue prejudice to BCSD.  The Pinnacle Defendants argue BCSD will not suffer prejudice from the proposed amendment because BCSD "was on notice that the suit's objectives were in derogation of BCSD's vendor/contractor approval practice as they related to Pinnacle's contract and that action of the District's employees frustrated and prevented Pinnacle's full and complete contract performance."  Doc. 289 at 4.  They also point out that discovery is ongoing and that BCSD's second amended complaint extended the discovery deadline.  *Id.*

The Court is not persuaded.  Even assuming BCSD, by virtue of the July 2, 2013 letter, had some notice that at one time there were allegations of racial discrimination, the fact remains that when the Pinnacle Defendants filed their April 30, 2017 answer,

they did not assert claims of racial discrimination. BCSD was entitled to rely on the absence of those claims in the Pinnacle Defendants' answer and proceed with the case—which it did. Moreover, while discovery is not set to close until May 31, 2019, allowing the proposed amendment would greatly expand the nature and scope of the case beyond the claims pleaded in BCSD's initial, first amended, and second amended complaints. The discrimination claims would undoubtedly require additional discovery for BCSD to rebut, further delaying the proceedings. *See Tampa Bay Water*, 731 F.3d at 1186 ("[P]rejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery.") (quotation marks and citation omitted). Given the trial date is set for August 12, 2019, the Court finds the belated counterclaim at this stage of the litigation would unduly prejudice BCSD. Doc. 312.

Finally, the Court finds the proposed amendment, which alleges intentional racial discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, would be futile in several ways. Doc. 202 ¶¶ 46-53. As an initial matter, the Court notes that the proposed amendment contains really only two claims: a Title VI claim and a § 1981 claim brought under § 1983. That is because while Title VI provides an implied private right of action for intentional discrimination, § 1981 claims against state actors must be brought under § 1983. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (noting it is "beyond dispute that private individuals may sue to enforce Title VI") (quotation marks and citation omitted); *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) ("Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983.") (citation

omitted).  The Pinnacle Defendants seem to acknowledge as much, stating that "[s]ection 1983 is merely a vehicle to effectuate *Pinnacle's* constitutional contractual rights guaranteed by Section 1981."  Doc. 215 at 11 (emphasis added).

With that in mind, it is clear McFarlane lacks standing to assert a § 1981 claim.  Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. . . ."  42 U.S.C. § 1981(a).  Notably, "[s]ection 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006).  As BCSD points out, and the Pinnacle Defendants do not dispute, it was Pinnacle, not McFarlane, that allegedly entered into a contract with BCSD.  Docs. 205-1 at 5; 295 at 10 n.4.  Therefore, because McFarlane had no contractual relationship with BCSD, he cannot seek recovery under § 1981.

Moreover, the Pinnacle Defendants' Title VI claim is barred by the applicable statute of limitations.  Title VI prohibits racial discrimination in federally funded programs and activities.  42 U.S.C. § 2000d *et seq.*  Though Title VI does not have its own statute of limitations, it, like § 1983, borrows the forum state's personal injury statute of limitations, which in this case is Georgia's two-year personal injury limitations period.  *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996).  As the July 2, 2013 letter clearly shows, the Pinnacle Defendants' discrimination claims accrued, at the latest, in July 2013 when the Pinnacle Defendants were aware that "some time ago" BCSD allegedly impeded their attempt to provide services and that BCSD had allegedly chosen to

"target" minority-owned companies.[13]  Doc. 219-1 at 4; *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) ("Generally, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.") (quotation marks and citation omitted); *see Everett v. Cobb Cty. Sch. Dist.*, 138 F.3d 1408, 1410 (11th Cir. 1998) ("Claims of discrimination accrue when the [alleged injured party] is informed of the discriminatory act."); *see also Brantley v. Muscogee Cty. Sch. Dist.*, 535 F. App'x 912, 914 (11th Cir. 2013) (noting the statute of limitations under § 1981 claims "begins to run when [the alleged injured party] should reasonably have discovered the alleged violations").  Accordingly, because the Title VI claim accrued in 2013 and was asserted in 2018, it is clearly barred by the two-year statute of limitations.[14]

Regarding the § 1981 claim, though it is brought under § 1983, the two-year § 1983 statute of limitations does not necessarily apply.  *See Baker*, 531 F.3d at 1338-39 (holding that the "catch-all" four-year limitations period under § 1658, and not the two-

---

[13] At the February 27, 2018 hearing on BCSD's motion to dismiss the Pinnacle Defendants' counterclaim, counsel for the Pinnacle Defendants raised two theories on when the claims accrued.  Doc. 220 at 24-25.  First, he argued the claims accrued on the date BCSD filed its initial complaint because that was when BCSD "sought a return of the money," thus injuring the Pinnacle Defendants.  *Id.* at 25-26.  That argument is not only frivolous but also factually inaccurate.  In a July 19, 2013 letter, which was in response to Knowles's July 2, 2013 letter, an attorney for BCSD stated that BCSD "demands that [the Pinnacle Defendants] immediately refund [BCSD] $3,247,200 no later than July 31, 2013."  Doc. 242-2 at 3.  So even assuming the alleged injury is when BCSD "sought a return of the money," that injury occurred in July 2013, not when BCSD filed its initial complaint.  In any event, it is clear the alleged injury for purposes of accrual is interference with contract and racial discrimination.  Whether the discovery rule or occurrence rule applies, the alleged injury accrued, at the latest, in July 2013.  *See Amy v. Anderson*, 2017 WL 1098823, at *2 n.3 (M.D. Ga. Mar. 23, 2017) (discussing the different rules for accrual).

The second theory appears to be that, assuming the claims accrued in July 2013, their § 1981 claim has a four-year statute of limitations and, therefore, is not barred because the counterclaim relates back to the date the Pinnacle Defendants filed their April 30, 2017 answer to the first amended complaint.  Doc. 220 at 26.  The Court addresses that argument below.

[14] The Pinnacle Defendants do not seem to dispute that their Title VI claim would be time-barred even if the counterclaim relates back to their April 30, 2017 answer.

year § 1983 statute of limitations, applies to the plaintiff's § 1981 claim because the §

1981 claim was made possible by the Civil Rights Act of 1991). Rather, the applicable

limitations period depends on whether the claim was "made possible by" the Civil Rights

Act of 1991, which amended § 1981. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S.

369, 382 (2004). If the claim was possible, or actionable under § 1981, prior to the

1991 Act, then Georgia's two-year statute of limitations for personal injury applies. *See

id.* at 371; *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545-46 (11th Cir.

1988). If the claim was made possible only by the 1991 Act, then the "catch-all" four-

year statute of limitations under 28 U.S.C. § 1658 applies. *Jones*, 541 U.S. at 382

(asserting that § 1658 applies to all claims "made possible" by a post-1990 enactment).

Though the Pinnacle Defendants contend that the four-year limitations period applies to

the § 1981 claim, they fail to explain why or how the claim was made possible only by

the 1991 Act. Doc. 215 at 12. They merely state that they have "made it pure and

simple in [their] response to [BCSD's] Motion to Dismiss that the First Counterclaim

allegations are post-December 1, 1990." *Id.*

   Notwithstanding their unhelpful "pure and simple" response, it does appear that

the four-year statute of limitations applies to *Pinnacle*'s § 1981 claim. The Supreme

Court in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) substantially limited the

scope of § 1981 claims, holding that § 1981 did "not apply to conduct which occurs after

the formation of a contract and which does not interfere with the right to enforce

established contract obligations." *Id.* at 171. The 1991 Act, however, "overturned"

*Patterson* by defining the key phrase "make and enforce contracts" to include post-

formation conduct, such as "termination of contracts, and the enjoyment of all benefits,

privileges, terms, and conditions of the contractual relationship." *Jones*, 541 U.S. at 383

(quotation marks and citation omitted). Because Pinnacle's § 1981 claim involves post-

formation conduct—BCSD allegedly preventing Pinnacle from performing the contract

due to racial animus—the claim would have been made possible only by the 1991 Act.

Thus, assuming the counterclaim relates back to the April 30, 2017 answer, it appears

Pinnacle's § 1981 claim might fall within the four-year statute of limitations.[15]  In the

end, out of all the claims the Pinnacle Defendants seek to bring, only the Pinnacle

Defendants'—rather, *Pinnacle*'s—§ 1981 claim would potentially survive dismissal.[16]

---

[15] The parties dispute whether the counterclaim relates back to the April 30, 2017 answer.  "Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (citations omitted). Attempting to "salvage" the § 1981 claim that has a four-year statute of limitations, the Pinnacle Defendants rely on Rule 15(c)(1)(B), arguing that their counterclaim arises out of the same conduct, transaction, or occurrence set forth in their affirmative defense in the April 30, 2017 answer and in BCSD's initial, first amended, and second amended complaint. *See* Doc. 215 at 8.  In response, BCSD contends the counterclaim does not relate back because the April 30, 2017 answer did not give BCSD fair notice of the discrimination claims.  Doc. 295 at 10-12.  It is true that the "critical issue in Rule 15(c) determinations is whether the original [pleading] gave notice to the defendant of the claim now being asserted." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (citation omitted). And of course, the original pleading at issue is the Pinnacle Defendants' April 30, 2017 answer, not BCSD's initial complaint.
     However, because "an answer without counterclaims typically does not provide much 'notice' of anything, other than the defendant's general denial of the plaintiff's allegations, in such a circumstance the inquiry is not narrowly focused on the content of the original pleading, but on the broader, more fundamental question of whether [the counter-defendant was] aware that the matters giving rise to the counterclaims would be at issue in [the] litigation." *Steadfast Ins. Co. v. SMX 98, Inc.*, 2009 WL 890398, at *18 (S.D. Tex. Mar. 30, 2009) (quotation marks and citation omitted).  The notice inquiry, therefore, turns on "whether the adverse party, viewed as a reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question." *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 337 (W.D.N.Y. 2007) (quotation marks and citation omitted).  At the time the Pinnacle Defendants filed their initial answer, it appears that BCSD, again based on the July 2, 2013 letter, should have anticipated allegations of racial discrimination in response to BCSD's claims of fraud and breach of contract.  While ultimately the Pinnacle Defendants did not assert any discrimination claims in their answer, BCSD has overstated its lack of notice, relying only on what was, or was not, asserted in the Pinnacle Defendants' April 30, 2017 answer.  Thus, the Court assumes relation back applies.

[16] There is also a question of whether Pinnacle can make out a *prima facie* case of discrimination under § 1981.  In particular, BCSD argues that Pinnacle cannot prove racial discrimination because there are no "similarly situated" comparators.  Doc. 295 at 12.  While the Court need not decide this issue, it notes that BCSD has a compelling argument, particularly given the discovery documents (which the Court does not consider at this stage) showing three white companies involved in the same technology project as Pinnacle but that, unlike Pinnacle, had contracts with BCSD through a bidding process, and in light of the

Accordingly, after carefully considering all relevant factors under Rule 15—the Pinnacle Defendants' inadequately explained delay in moving to assert their counterclaim, the undue prejudice it would cause BCSD, and the counterclaim's near-total futility—the Court concludes that substantial reasons justify denying the Pinnacle Defendants' leave to amend.

### III. CONCLUSION

For the foregoing reasons, the Pinnacle Defendants' motion to amend (Doc. 289) is **DENIED**.  Their counterclaim (Doc. 202) is **DISMISSED as null**, and BCSD's motion to dismiss the counterclaim (Doc. 205) is **DENIED as moot**.

**SO ORDERED**, this 8th day of April, 2019.


S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

Eleventh Circuit's recent opinion in *Lewis v. City of Union City, Ga.*, ---F.3d--- (11th Cir. 2019), which made clear "once and for all the proper standard for comparator evidence in intentional-discrimination cases," including § 1981 cases.  ---F.3d---, ---, 2019 WL 1285058, at *1 (11th Cir. Mar. 21, 2019).  The Eleventh Circuit in *Lewis* held not only that a meaningful comparator analysis must remain part of the *prima facie* case but also that the appropriate "similarly situated" standard is whether a claimant and its comparators are "similarly situated in all material respects."  *Id.* at *6.  It seems clear the white companies, which Pinnacle contends were treated more favorably, are not similar to Pinnacle "in all material respects," either because some white companies were not involved in the technology project (and accepted purchase orders from BCSD during different time periods) or because for those that were, they participated in the bidding process.  But again, the Court declines to rule on this issue because substantial reasons overwhelmingly support declining the Pinnacle Defendants' leave to amend.