IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BIBB COUNTY SCHOOL DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:16-CV-549 (MTT) |
| | ) | |
| | ) | |
| ROMAIN DALLEMAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Newly added Defendants Harold Knowles and Knowles and Randolph, P.A. ("the

Knowles Defendants") have moved to dismiss Plaintiff Bibb County School District's

("BCSD") second amended complaint.  Docs. 232; 241.  For the following reasons, their

motion is **DENIED**.

## I. BACKGROUND

BCSD filed its initial complaint on December 15, 2016.  Doc. 1.  On November

20, 2017, BCSD filed its second amended complaint and joined new Defendants,

including the Knowles Defendants.[1]  Doc. 162.  The amended complaint asserts the

following claims against the Knowles Defendants: (1) federal RICO violation (Count I);

---

[1] Prior to the filing of the second amended complaint, the following were Defendants in the case: Romain Dallemand; Thomas Tourand (Tourand passed away on July 2, 2017 – Doc. 97); Progressive Consulting Technologies, Inc.; Isaac Culver, III; CompTech Computer Technologies, Inc.; Allen J. Stephen, III; Pinnacle/CSG, Inc.; and Cory McFarlane.  *See generally* Doc. 59.  The second amended complaint joined, in addition to the Knowles Defendants, Defendants Cliffard Whitby; Whitby, Inc.; Central Georgia Partnership for Individual and Community Development; Positiventures Initiative, LLC; Integrated Technologies Consulting, LLC; Dave Carty; and Progressive Property Management, LLC, for a total of nine new Defendants.  As explained below, all of the Defendants are no longer in the case except Romain Dallemand, Pinnacle, McFarlane, and the Knowles Defendants.  Unless otherwise stated, "Defendants" refers to the nine newly added Defendants.

(2) Georgia RICO violation (Count II); (3) fraud (Count III); (4) Unjust Enrichment (Count IX); and (5) aiding and abetting a breach of fiduciary duties (Count XI). *See generally id.*

The amended complaint followed the June 13, 2017 indictment of Isaac J. Culver, Dave Carty, and Progressive Consulting Technologies, Inc., and the August 10, 2017 indictment of Cliffard Whitby, Harold Knowles, Central Georgia Partnership for Individual and Community Development ("PICD"), and Positiventures Initiative, LLC ("PVI"). *See generally* Doc. 136-5. Incorporating in large part the allegations made in both indictments, the amended complaint asserts that the Defendants engaged in multiple schemes to defraud BCSD, causing BCSD over $8 million in damages. *See generally* Doc. 162. BCSD claims it learned of the new Defendants' involvement in the fraudulent schemes from the indictments. Doc. 136 at 3-9. BCSD also learned that Dallemand was not indicted and that Dallemand entered into a plea agreement with the Government in which Dallemand stated he received a $100,000.00 check from "Cliffard Whitby, with assistance from Harold Knowles, as a bribe for Dallemand to perform certain actions in his official capacity as the Superintendent of the Bibb County School District in Bibb County, Georgia." *Id.* at 5. Indeed, Dallemand cooperated with the Government in its prosecution of the Defendants, which explains why the indictments and the amended complaint were as detailed as they were regarding the Defendants' alleged involvement in the fraudulent schemes.

Since the filing of the amended complaint, the following events took place:

- BCSD reached a settlement agreement with all of the Defendants except Defendant Romain Dallemand, the Knowles Defendants, and Defendants Pinnacle/CSG Inc. and Cory McFarlane (the "Pinnacle Defendants"). Docs. 293; 296; 318; 319.

- The Pinnacle Defendants filed without leave of Court a counterclaim, then later moved to amend their answer to assert that counterclaim.[2] Docs. 201; 289.

- The Court stayed the case pending the resolution of the criminal trials involving some of the Defendants. Doc. 221. There were three trials in total. On July 24, 2018, Defendants Culver and Progressive Consulting Technologies, Inc. were convicted of conspiracy to commit wire and mail fraud, wire fraud, mail fraud, and conspiracy to launder money. *United States v. Culver and Progressive Consulting Technologies, Inc.*, No. 5:17-cr-26, Doc. 117 (M.D. Ga. July 24, 2018). On October 9, 2018, Defendants Whitby, Knowles, PICD, and PVI were found not guilty on charges of bribery, and conspiracy to commit bribery and launder money. *United States v. Whitby, et al.*, No. 5:17-cr-43, Doc. 176 (M.D. Ga. Oct. 9, 2018). On February 1, 2019, Defendant Carty was convicted of wire fraud. *United States v. Carty*, No. 5:17-cr-26, Doc. 272 (M.D. Ga. Feb. 1, 2019).

- During the stay on June 1, 2018, the Court held a status conference to address primarily the arguments raised in the Knowles Defendants' motion to dismiss, particularly the issue of whether BCSD's claims are barred by the statutes of limitations. *See generally* Doc. 291. As the Court explained at the status conference, the Knowles Defendants' motion is decided on the allegations raised in the second amended complaint. *Id.* at 35.

---

[2] The Court addresses this in a separate order. Doc. 329.

Again, according to BCSD, the Defendants engaged in multiple schemes to defraud BCSD. The factual bases for BCSD's allegations are stated in its 549-paragraph second amended complaint. Because of the issues raised by the Knowles Defendants' motion, it is necessary to discuss those factual allegations in detail.

On February 1, 2011, BCSD entered into an employment contract with Defendant Dallemand. Doc. 162 ¶ 22. Pursuant to that contract, Dallemand became the school district's new superintendent and, during that tenure, was in a relationship of trust and confidence with BCSD and its Board of Education. *Id.* ¶¶ 22, 24. In April 2011, in one of his first acts as superintendent, Dallemand reorganized the purchasing department so that proposed purchases, like those involved in this case, would be reviewed and approved by employees unfamiliar with BCSD's bid procedures. *Id.* ¶ 139. According to BCSD, "Dallemand's reorganization was essential to the execution of the Defendants' scheme to defraud BCSD." *Id.* For purposes of this Order, the Court need not go into detail as to these alleged schemes other than stating that Dallemand's reorganization allegedly played a role in BCSD paying over $7 million to Culver, Carty, Progressive Consulting, Pinnacle, and McFarlane for a technology upgrade involving computer devices and software that are either unused or nonexistent.[3]

---

[3] According to BCSD, Defendant Integrated and Defendant Whitby, Inc. were involved in these schemes. Integrated is a Maryland limited liability company formed and created by Whitby and his brother-in-law, Tyrone Lewis. Doc. 162 ¶ 10. Whitby, Inc. is a Georgia for-profit corporation formed and created by Whitby. *Id.* ¶ 7. The second amended complaint alleges that following one of the schemes to defraud BCSD involving the sale of 15,000 computer terminals for $3,768,000.00, a portion of those proceeds was sent to Integrated and Whitby, Inc. *Id.* ¶¶ 279, 315. Specifically, on February 14, 2013, Whitby, Inc. received $73,126.38, and on November 6, 2013, Integrated received $276,000.00. *Id.* ¶ 315 BCSD also alleges that Integrated, after receiving the money, transferred $155,000.00 by check to PVI, which then transferred that amount to Whitby, Inc. Doc. 248 ¶¶ 55-56. BCSD alleges that in June and July 2017, Whitby and Whitby, Inc. wired $125,000.00 to Culver's criminal defense attorneys and wired $125,000.00 to Carty's criminal defense attorneys—as retainers to defend the criminal charges brought against Culver, Progressive, and Carty related to the computer terminals transaction. Docs. 162 ¶¶ 351-52; 248 ¶¶ 57-58.

In addition to technology upgrade schemes, Dallemand also facilitated the Defendants' scheme to defraud BCSD through the Macon Promise Neighborhood ("MPN"). MPN was supposed to be a collaborative effort by thirty-five non-profit or governmental partners, including Defendant PICD, to improve education and quality of life for students living in targeted areas of Macon. *Id.* ¶ 25. According to BCSD and the indictments, that is not how things turned out. PICD purchased a surplus school building for $220,000.00 to house the MPN. *Id.* ¶¶ 26-27. PICD was formed and created by Defendant Whitby. *Id.* ¶ 8. Whitby was not only the executive director of PICD, but he was also the executive director and fiscal agent of MPN. *Id.* ¶¶ 6, 59.

Initially, Dallemand resisted the collaborative MPN concept. *Id.* ¶ 34. That changed after Whitby "outlined" and "explained" just how Whitby envisioned MPN would work. *Id.* ¶ 35. That explanation came to include an initial $100,000.00 bribe paid to Dallemand in exchange for his support of the MPN. *Id.* ¶ 37. Further, Whitby and Dallemand agreed that Dallemand would receive ten percent of ten annual $1 million payments BCSD would agree to pay to the MPN. *Id.* ¶ 39. Of course, Dallemand did not disclose that he had been bribed to either BCSD or its Board of Education.

Understandably, Whitby and Dallemand both had concerns over Whitby directly paying Dallemand the first $100,000.00. *Id.* ¶ 76. Whitby suggested they create a company through which they could route the money. *Id.* Until that was done, they agreed to use Defendants Knowles and Knowles & Randolph as the "middle man." *Id.* Knowles is the CFO and general counsel of Pinnacle and an attorney of Knowles & Randolph, a Florida legal entity. *Id.* ¶¶ 17, 19. Dallemand knew Knowles from an event in Tallahassee, Florida. *Id.* ¶ 77. After Dallemand gave Knowles's contact information

to Whitby, Knowles and Whitby began communicating with one another on how to funnel the money to Dallemand. *Id.* Dallemand later learned from Whitby and Knowles that the money had been transferred and that Knowles had a check for $100,000.00 for Dallemand. *Id.* ¶ 78.

With the bribe arrangements finalized, the Board of Education adopted on June 27, 2012 a resolution to support the MPN. *Id.* ¶ 52. Pursuant to the resolution, BCSD agreed to offer its "programs, resources, current-budgeted funds, and related in-kind contributions (the "Resources") for purposes of supporting the MPN initiative and act as matching requirements for the DOEPN grant." *Id.* The Resources would help support four schools—Ingram-Pye, Hartley, Ballard and Southwest—in amounts not exceeding $250,000.00 per school, per year. *Id.* Thus, at that point, BCSD's contributions to the MPN were to be "in-kind."

On July 17, 2012, Dallemand delivered a $1 million invoice from PICD to Ron Collier, BCSD's Chief Financial Officer at the time. *Id.* ¶¶ 53-54. The invoice was for a "2012 Macon Children's Promise Neighborhood contribution for PICD." *Id.* ¶ 54. Dallemand directed Collier to pay the invoice from BCSD's funds, but Collier had concerns and did not pay the invoice. *Id.* ¶¶ 54-55. When Dallemand learned Collier had not paid the invoice, he told Collier to contact Jimmie Samuel, the president of PICD. *Id.* ¶ 56. But before Collier had a chance to contact Samuel, Samuel called him but was unable to allay Collier's concerns. *Id.* Collier decided to consult Sharon Roberts, BCSD's director of accounting who had worked with the collaborative group. *Id.* ¶ 57. Roberts told him she did not know anything about the invoice, and Dr. Peter

Brown, the co-principal investigator for the MPN, said the same after Roberts emailed a copy of the invoice to Dr. Brown. *Id.* ¶¶ 33, 57.

On the morning of July 20, 2012, Dallemand called Collier at home to complain about Collier's failure to pay the invoice. *Id.* ¶ 58. Dallemand said he was "disappointed" in Collier and that the president of the Board of Education wanted to know why the invoice had not been paid and asked if he needed to hire another Chief Financial Officer. *Id.* Collier told Dallemand that he—Dallemand—should approve the payment of the invoice, but Dallemand refused to do so. *Id.* Because Collier still had concerns about the invoice, he refused to pay it. *Id.*

On July 25, 2012, Collier received an email from Ebony Harris, the project director of the MPN. *Id.* ¶ 59. In that email, Harris wrote: "I was asked by Mr. Cliffard Whitby Macon Promise Neighborhood, Executive Director and Mr. Jimmie Samuel Partnership for Individual and Community Development, President to forward a copy of the attached invoice to you." *Id.* This second invoice, also for $1 million with PICD as the payee, was issued to the "Bibb County Board of Education" and was for "School System 2012 contribution for Macon Children's Promise Neighborhood match Commitment." *Id.* ¶ 61. A few hours after receiving Harris's email, Collier received a letter from Dallemand directing him to prepare a $1 million check or wire transfer to PICD and to "have this check or wire transfer authorization . . . to me no later than 5:00 p.m. on Thursday, July 26, 2012." *Id.* ¶ 62.

In response, Collier sent a letter on July 26, 2012 to Dallemand stating he could not "'in good conscience write the check'" because he believed doing so would violate "'Georgia Laws, Rules and Regulations as well as The State Board of Education Rules

and Regulations.'" *Id.* ¶ 63. Consequently, Collier did not pay the invoice, and Dallemand thereafter excluded Collier from all discussions regarding the MPN until after the Board of Education met on October 18, 2012. *Id.* ¶ 64.

On July 27, 2012, the president of the Board of Education, with Dallemand's knowledge and consent, signed a lease agreement in which BCSD agreed to lease a portion of the surplus building for a period of ten years from PICD. *Id.* ¶ 65. Pursuant to the lease agreement, BCSD would pay $575,000.00 to PICD as rent per year for ten years. *Id.* ¶ 66.

On October 18, 2012, upon Dallemand's recommendation, the Board of Education approved a Memorandum of Understanding ("MOU") between PICD and BCSD. *Id.* ¶ 67. Pursuant to that MOU, BCSD would pay PICD $1 million to customize the interior of the building that BCSD was already leasing a part of from PICD. *Id.* BCSD also agreed to provide up to $325,000.00 per year for ten years to PICD for costs and services incurred in the implementation of the MPN. *Id.* In sum, BCSD agreed to give PICD a one-time payment of $1 million along with $900,000.00 per year for ten years for the costs and services and rent of the building. *Id.* The lease agreement and the MOU were separate from the June 27, 2012 resolution and the invoices that resulted from it.

On October 30, 2012, BCSD wrote a check for $1 million made payable to PICD. *Id.* ¶ 68. On November 2, 2012, PICD gave a $950,000.00 check to Defendant PVI, a Georgia limited liability company that was formed and created by Whitby and whose registered agent was Whitby. *Id.* ¶¶ 9, 80. On November 9, 2012, PVI gave a $100,00.00 check to Knowles and Knowles & Randolph to fund the initial bribe payment

to Dallemand. *Id.* ¶ 87. On November 19, 2012, Knowles gave a $100,000.00 check to Dallemand at a rendezvous in Tifton, Georgia. *Id.* ¶¶ 96-97. The $100,000.00 check from Knowles to Dallemand was drawn from the trust account of Knowles & Randolph. *Id.* ¶ 98. The words "Trust Refund" are written on the memo line of the check. *Id.* Along with the $100,000.00 check, Knowles gave Dallemand a letter indicating the $100,000.00 was being returned as money that Dallemand had put into Knowles & Randolph's trust account to purchase a house. *Id.* ¶ 99. Dallemand had never used Knowles as an attorney and had never given Knowles money to keep in trust for any purpose. *Id.*

Around the time he gave Dallemand the $100,000.00 check, Knowles offered Dallemand stock in Defendant Pinnacle, a construction firm in Tallahassee, Florida, if Dallemand helped secure future construction contracts for Pinnacle from BCSD. *Id.* ¶¶ 122, 241. Specifically, on November 11, December 1, and December 2, 2012, Knowles, individually and on behalf of Defendants Pinnacle and McFarlane, emailed Dallemand a draft stock purchase agreement in which Dallemand would pay $500,000.00 to obtain stock in Pinnacle; however, contrary to what was stated in the purchase agreement and based on conversations between Knowles and Dallemand, Dallemand would not pay any money but instead would obtain stock in Pinnacle in exchange for helping Pinnacle obtain future construction contracts with BCSD. *Id.* ¶ 123-26. BCSD was not aware of this discussion between Knowles and Dallemand. *Id.* ¶ 129. In the end, Dallemand resigned from his position as superintendent and BCSD did not enter into any construction contracts with Pinnacle. *Id.* ¶ 130. Dallemand, therefore, did not obtain any stock in Pinnacle and never signed the stock purchase

agreement that Knowles had sent him.  *Id.*  However, Knowles and Pinnacle later offered additional bribes to Dallemand in order to obtain computer software business from BCSD related to the technology upgrade project mentioned earlier.  *Id.*

Specifically, between November 19, 2012 and December 18, 2012, Whitby and Knowles told Dallemand about a financial transaction in which Pinnacle would be the company "on paper" selling an accounting and financial software program to BCSD; however, in reality, the software would be developed by another entity.  *Id.* ¶ 192. Whitby, Knowles, and Pinnacle offered Dallemand $500,000.00 in exchange for Dallemand ensuring that BCSD purchased the software from Pinnacle.  *Id.*  Dallemand accepted the offer "and, in fact, did push through a purchase by BCSD of accounting and financial software from Defendant Pinnacle."  *Id.* ¶ 193.

On December 19, 2012, BCSD wired $3,247,200.00 to Pinnacle for the software. *Id.* ¶¶ 213, 215.  On January 8, 2013, Pinnacle gave Knowles and Knowles & Randolph $100,000.00.  *Id.* ¶ 225.  On January 10, 2013, Knowles and Knowles & Randolph gave PVI $100,000.00 as reimbursement for the alleged bribe money that PVI gave to them to give to Dallemand.  *Id.* ¶¶ 226-27.

After the initial $100,000.00 bribe payment, Whitby and Dallemand established Belhannes, LLC to facilitate payment of subsequent installments.  *Id.* ¶ 115.  A chart in the second amended complaint shows payments made to Belhannes from August 15, 2013 to June 25, 2016 totaling $337,400.00.  *Id.* ¶ 116.  Sometime in 2015, Dallemand contacted Knowles to ask whether he would be paid as Knowles and Whitby promised for helping push through BCSD's purchase of Pinnacle's software.  *Id.* ¶ 232.  On April 2, 2017, Whitby met with Dallemand at a restaurant in South Georgia and gave

Dallemand $24,000.00 in cash.  *Id.* ¶ 119.  BCSD alleges it did not discover or have any reason to believe Whitby paid Dallemand bribe money on April 2, 2017 until Whitby was indicted on August 11, 2017.  *Id.* ¶ 121.

## II. DISCUSSION

### A.    Motion to Dismiss Standard under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly,* 550 U.S. at 555 (quotation marks and citation omitted).  Where there are dispositive issues of law, a court may

dismiss a claim regardless of the alleged facts.  *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993) (citations omitted).

**B.     Analysis**

The Knowles Defendants raise multiple arguments as to why the claims in BCSD's second amended complaint should be dismissed.  The Court divides these arguments into three categories and addresses them in turn: (1) statutes of limitations; (2) RICO pleading requirements; and (3) other miscellaneous arguments.

**1.  Statutes of limitations**

The Knowles Defendants contend that BCSD's federal civil RICO claims arising out of the MPN and software transactions are barred by the applicable statute of limitations.  Doc. 241-1 at 9-11.  As BCSD points out in its response brief, the Knowles Defendants did not move to dismiss BCSD's state law claims for fraud and unjust enrichment.  Doc. 268 at 15 n.10.  Realizing this, and perhaps realizing that other, now-dismissed Defendants had moved to dismiss these claims, the Knowles Defendants state in their reply brief that they "reserve the right to raise the statute of limitations defense" as to the other state law claims.  Doc. 283 at 1 n.2.  That is not good enough. Because the Knowles Defendants did not move to dismiss BCSD's state law claims for fraud and unjust enrichment, they are not entitled to dismissal of those claims. Nevertheless, the Court briefly addresses below the other Defendants' argument that the applicable statutes of limitations bar BCSD's state law claims for fraud and unjust enrichment.[4]

---

[4] No Defendant moved to dismiss on statute of limitations grounds BCSD's claims for Georgia civil RICO and inducing and aiding breach of fiduciary duty.  And for good reason—the statute of limitations for the Georgia civil RICO claim is five years, and, given the allegation that Dallemand, induced and aided by the Defendants, failed to disclose the bribery scheme to BCSD in breach of his fiduciary duty arising out of

### a) Federal civil RICO claims

BCSD has asserted two separate federal civil RICO claims against the Knowles

Defendants, one arising out of the MPN transaction and the other arising out of the

software transaction.  The parties agree that both of these claims have a four-year

statute of limitations and that the injury discovery accrual rule applies.  Doc. 291 at 3-4;

*Rotella v. Wood*, 528 U.S. 549, 553-54 (2000).  BCSD seems to assume that its MPN

transaction RICO claim accrued on October 30, 2012, when BCSD wrote a $1 million

check to PICD, and that its software transaction RICO claim accrued on December 19,

2012, when BCSD wired funds to Pinnacle for the software.  While it is doubtful that

mere payment under these facts constitutes discovery of injury, the Court assumes, as

BCSD does, that the claims accrued when the payments were made.  *See, e.g.*,

*Weaver v. Nat'l Better Living Ass'n, Inc.*, 2014 WL 12614481, at *8 (N.D. Ala. July 3,

2014) (noting that in a civil RICO case it is "not fair to say that the plaintiff knew, or

should have known, that she was *injured* just because she made the payments")

(citation omitted).  Next, because it was not alleged in the initial complaint, BCSD also

agrees that the MPN transaction RICO claim does not relate back to the December 15,

2016 complaint and thus the claim accrued outside the applicable four-year statute of

limitations.  Doc. 291 at 4.  However, BCSD argues, and the Knowles Defendants do

not dispute, that the software transaction RICO claim relates back to the filing of its

---

his employment contract with BCSD, the applicable limitation period for the inducing and aiding breach of
fiduciary duty claim is six years.  *See Glock, Inc. v. Harper*, 340 Ga. App. 65, 66, 796 S.E.2d 304, 306
(2017) (noting that O.C.G.A. § 16-14-8 "provides a five-year statute of limitation for a civil action brought
for RICO violations"); *see also Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 38-39, 766 S.E.2d 497,
504 (2014) (noting that Georgia's statute of limitation for breach of fiduciary duty claims depends on the
injury alleged and the conduct giving rise to the claim, and that for breach of fiduciary duty claims arising
out of a contract or agreement, the six-year limitation period for breach of contracts under § 9-3-24
applies) (citations omitted).

initial complaint and thus that claim accrued within the four-year limitations period.[5]

Doc. 268 at 18-20.  Accordingly, for purposes of this Order, the software transaction

RICO claim was filed within the four-year statute of limitations, and the MPN transaction

RICO claim was not.

Assuming the MPN transaction RICO claim accrued in October 2012, and

because it was filed in November 2017, the Knowles Defendants have met their initial

burden to show that the claim is barred by the four-year statute of limitations.  *Blue

Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990) (citations

omitted).  Accordingly, the burden shifts to BCSD to demonstrate that tolling applies to

prevent the statute of limitations from barring its MPN transaction RICO claim.  *Id.* at

1552 n.13.  In a nutshell, BCSD claims that the statute of limitations was tolled until the

August 10, 2017 indictment of Knowles because only then did BCSD learn of the bribery

---

[5] The Knowles Defendants argue that the software transaction RICO claim accrued on November 9, 2012, when PVI placed a $100,000.00 check into the Knowles and Randolph Trust Account.  Doc. 241-1 at 11.  That argument is wholly without merit.  There is no basis in law or fact to conclude that a transaction between two Defendants, unknown to BCSD at the time and for a purpose unrelated to the software transaction, somehow results in the accrual of BCSD's software transaction RICO claim. Surprisingly though, BCSD does not quite make this argument.  Rather, it argues that under the "separate accrual" rule, the software transaction RICO claim accrued on December 19, 2012 at the earliest because that was when BCSD knew or should have known it sustained a "new and independent" injury resulting from new RICO predicate acts, such as Knowles bribing Dallemand with $500,000.00 to push through the software transaction and Knowles committing mail and wire fraud.  Doc. 268 at 18-19.  Given the facts of this case, the Court agrees with BCSD.  *See Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).

With respect to relation back, the Knowles Defendants have never disputed that the software transaction RICO claim relates back to the December 15, 2016 complaint.  Doc. 268 at 20 n.13.  Clearly, the software transaction RICO claim arose out of the conduct set out in the initial complaint, and the Knowles Defendants, given their alleged role in the fraudulent schemes and their affiliation with the Pinnacle Defendants, had timely notice of BCSD's claims and knew that but for a mistake, i.e., BCSD's ignorance of their alleged involvement, they would have been joined at the outset.  Fed. R. Civ. P. 15(c). Even in their reply brief, the Knowles Defendants did not contest relation back; rather, they maintained their position that the claims accrued outside the limitations period even with relation back.  Doc. 283 at 2 n.3.  In any event, as discussed below, the facts that warrant tolling of the statute of limitations for the MPN transaction RICO claim warrant tolling for the software transaction RICO claim.  Only after the indictments did BCSD learn the Knowles Defendants were key players in the bribery schemes and, specific to the software transaction, that they had offered Dallemand a $500,000.00 bribe to facilitate the software transaction.

and money laundering schemes and the Knowles Defendants' involvement in those schemes.

In federal civil RICO actions, the doctrine of equitable tolling generally applies when extraordinary circumstances prevented an otherwise diligent plaintiff from timely filing its complaint. *See Rotella*, 528 U.S. at 560 ("[W]e do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling.") (citation omitted); *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (citations omitted). These extraordinary circumstances can be established either by fraudulent concealment or a self-concealing wrong. *Foudy v. Indian River Cty. Sheriff's Office*, 845 F.3d 1117, 1124-25 (11th Cir. 2017) (citation omitted). Generally, "a plaintiff relying on the doctrine of fraudulent concealment must show affirmative actions by the defendant constituting concealment." *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir. 1987) (citations omitted). That is, fraudulent concealment has two elements: successful concealment and fraudulent means. *Crummer Co. v. DuPont*, 255 F.2d 425, 428 (5th Cir. 1958).[6] On the other hand, a self-concealing wrong is "one in which the clandestine nature of the activity is essential to the act itself, where a deception, misrepresentation, trick or contrivance is a necessary step in carrying out the illegal act, not merely separate from the illegal act and intended only to cover up the act." *Foudy*, 845 F.3d at 1125 (quotation marks and citations omitted). Put another way, a self-concealing wrong is one of such character that conceals itself, e.g., fraud. *See Bailey v. Glover*, 88 U.S. 342, 349-50 (1874). In sum, a self-concealing wrong is one that requires deceptive conduct to carry it out, whereas fraudulent concealment

---

[6] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

occurs when the deceptive conduct is separate from and intended only to conceal the wrong. BCSD argues both types of concealment are present here. Docs. 275 at 1-5; 291 at 41.

According to BCSD, the Defendants committed, among others, the crimes of bribery and money laundering when they offered bribes to Dallemand, who was acting as BCSD's superintendent, and laundered money to effectuate their various schemes to defraud BCSD.[7] *E.g.,* Doc. 274 at 6. As an initial matter, the Court assumes, as the Defendants argue, that these alleged crimes are not self-concealing wrongs, because they are not deceptive in nature—to accomplish the act of offering bribes and laundering money does not necessarily require trickery or deceit. *See Foudy*, 845 F.3d at 1125. However, such acts do go to show an attempt to conceal the Defendants' alleged schemes to defraud BCSD. For example, the alleged bribes to Dallemand were offered not only so that Dallemand would take certain actions as the superintendent but so that he would not disclose why he was taking those actions, and the alleged laundering of money sought to hide or give a veneer of legitimacy to the distribution of unlawfully obtained money. *See, e.g.*, *Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1252 (11th Cir. 2001) ("If these bribes were offered, the [defendants] employing them were attempting to conceal the fraud."); *see also United States v. Shepard*, 396 F.3d 1116, 1122 (10th Cir. 2005) (finding that depositing assets into a third party's bank account was concealment because the defendant attempted to

---

[7] The federal RICO predicate acts alleged against each Defendant are: (1) Knowles – mail fraud, wire fraud, bribery, money laundering, and receipt of stolen property; (2) Knowles & Randolph – mail fraud, wire fraud, bribery, money laundering, and receipt of stolen property; (3) Whitby – bribery, money laundering, transportation and receipt of stolen property, (4) PICD – bribery, money laundering, and transportation of stolen property, (5) PVI – money laundering and transportation of stolen property, (6) Whitby, Inc. – money laundering and transportation of stolen property; (7) Integrated – money laundering and receipt of stolen property. *See generally* Doc. 162.

commingle unlawfully obtained money with money from a legitimate business or legitimate owner of the account). At the very least, the acts raise a question of fact as to whether BCSD had knowledge of the alleged crimes and whether the Knowles Defendants intended to and did conceal the alleged schemes and their participation in them. *DuPont*, 255 F.2d at 432-33. Accordingly, based on BCSD's allegations in its second amended complaint, particularly that the Knowles Defendants conspired to defraud BCSD through bribery and money laundering, the Court cannot conclude as a matter of law that the Knowles Defendants did not fraudulently conceal their alleged involvement in the schemes, and, in turn, the alleged harm to BCSD.

Nonetheless, the Knowles Defendants argue that even if there was fraudulent concealment, the statute of limitations is not tolled because BCSD did not act with reasonable diligence to discover the alleged unlawful activity or injury. Doc. 283 at 2-6. "[F]raudulent concealment in the context of civil RICO embodies a due diligence requirement." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 196 (1997) (quotation marks omitted). To defeat equitable tolling, the Knowles Defendants have the "heavier burden" to prove, "indisputably," that BCSD "had notice sufficient to prompt [it] to investigate and that, had [it] done so diligently, [it] would have discovered the basis for [its] claims."[8] *Harrison v. United States*, 708 F.2d 1023, 1028 n.1 (5th Cir. 1983)

---

[8] Because the statute of limitations is an affirmative defense and the Knowles Defendants have the burden to prove that BCSD failed to exercise due diligence, the Court cannot accept their argument that BCSD was required to allege in its complaint that it had diligently investigated. Doc. 291 at 25; *see La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quotation marks and citation omitted) ("A statute of limitations bar is an affirmative defense, and plaintiff [is] not required to negate an affirmative defense in [its] complaint."). In fact, the case upon which the Knowles Defendants rely does not support that contention. *See* Doc. 283 at 5 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)).

To be sure, a plaintiff may certainly plead itself out of court. *See Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) (noting a complaint may be dismissed based on an affirmative defense "when [the complaint's] own allegations indicate the existence of an affirmative defense")

(citations omitted); *Pacific Harbor*, 252 F.3d at 1252 (quotation marks and citations omitted).

The Knowles Defendants contend BCSD had such notice when its chief financial officer, Ron Collier, expressed his concerns to Dallemand in his July 26, 2012 letter regarding the payment of $1 million to PICD. Doc. 283 at 3. In that letter, Collier stated he "cannot in good conscience write the check to [PICD]" because he believed to do so would violate "Georgia Laws, Rules and Regulations as well as The State Board of Education Rules and Regulation." Doc. 275-1 at 2. Collier then recommended exercising due diligence by consulting with external auditors, other school districts, and State of Georgia Education professionals to ensure there were no violations of any laws. *Id.* at 3. Thus, according to the Knowles Defendants, BCSD at that point either knew or should have known something was amiss, but because it did not act on Collier's concerns, its MPN transaction RICO claim is barred.[9] Doc. 241-1 at 11. BCSD contends it had sufficient notice not when Collier expressed his concerns in the letter but when the Defendants were indicted for conspiracy, bribery, and money laundering on August 10, 2017, which falls within the limitations period. Doc. 275 at 5. At the status conference, BCSD argued the context of the letter is important to show it was

---

(citations omitted). However, as discussed, the Court finds it is not apparent from the face of the complaint that BCSD has done so.

[9] The Knowles Defendants also contend BCSD was not reasonably diligent because BCSD should have known the $1 million payment exceeded the $250,000.00 cash commitment in the Board's resolution and BCSD was aware of an audit of the purchases by Mauldin and Jenkins, calls for an investigation by a Macon-Bibb Commissioner, and numerous Macon Telegraph articles questioning the purchase. Docs. 241-1 at 13; 283 at 4. That contention is without merit. First, the complaint alleges that the audit, calls for investigation, and the Macon Telegraph articles were in response to the alleged fraud surrounding the Pinnacle software transaction. Doc. 162 ¶ 268. Even assuming they were also in response to the $1 million payment to PICD, as discussed below, the Court cannot conclude as a matter of law that BCSD failed to exercise due diligence. Moreover, apart from the payment not being made pursuant to the resolution, the resolution clearly states that the amount would not exceed $250,000.00 per school for four schools, totaling $1 million. *Id.* ¶ 52.

reasonably diligent. Doc. 291 at 42. The letter came "on the heels of a resolution that was made by the [B]oard of [E]ducation" on June 27, 2012, a resolution connected with the Promise Neighborhood grant in which BCSD would give $250,000 of in-kind donations to four different schools for a total of $1 million. *Id.*; Doc. 162 ¶ 52. Collier did not believe the resolution required $1 million of cash contribution by BCSD. Doc. 291 at 43. Thus, when receiving two invoices from PICD, each for $1 million, Collier believed paying those invoices would violate laws, rules, and regulations, as noted in his letter. Subsequently, BCSD did not pay those invoices. *Id.* Four months later, on October 18, 2012, the Board of Education approved a memorandum of understanding ("MOU") between BCSD and PICD. Doc. 162 ¶ 67. The resolution was not a part of the MOU. Pursuant to that MOU, BCSD paid PICD $1 million to customize the interior of an old Ballard-Hudson Middle School building, a portion of which BCSD leased from PICD. *Id.* So BCSD did ultimately pay $1 million to PICD, but that payment was made under the MOU, not the resolution or the invoices that stemmed from the resolution.

Given this context, BCSD argues that the harm it suffered was not from the invoices it received and that the evidence will show it exercised due diligence by having its lawyers look into Collier's concerns and draft the MOU. Doc. 291 at 44-45. While BCSD does not allege in its complaint that it investigated Collier's concerns, accepting the well-pleaded facts as true and viewing them in the light most favorable to BCSD, the Court can reasonably infer that BCSD took action to address Collier's concerns before entering into the MOU. What that action is, and whether it demonstrates that BCSD was reasonably diligent, can be explored through discovery. Therefore, the Court

cannot, at this stage, conclude as a matter of law that BCSD failed to exercise due diligence.

### b) State law fraud and unjust enrichment claims

As noted, the Knowles Defendants have not moved to dismiss BCSD's state law claims for fraud and unjust enrichment. Because these claims arise from the MPN transaction and do not relate back to the filing of the initial complaint, the claims *might* have accrued outside the respective four-year statutes of limitations.[10] Thus, in response to the now dismissed Defendants' arguments that these claims were time-barred, BCSD argued that tolling for fraud applies. *E.g.*, Doc. 275 at 6-7. Under Georgia law, there are two circumstances in which the statute of limitations is tolled for fraud: (1) "where the actual fraud is the gravamen of the action," and (2) if "the gravamen of the action is other than actual fraud, such as constructive fraud, negligence, breach of contract, etc.," where there is a "separate independent actual fraud involving moral turpitude which debars and deters the plaintiff from bringing [its] action." *Shipman v. Horizon Corp.,* 245 Ga. 808, 808-09, 267 S.E.2d 244, 246 (1980). In each circumstance, the due diligence requirement applies. *Id.* at 809, 267 S.E.2d at 246. However, unlike in the first circumstance where silence "is treated as a continuation of the original actual fraud," in the second circumstance, "'mere silence' is not sufficient to toll the statute unless there is a duty to make a disclosure because of a relationship of trust and confidence between the parties." *Id.*

Here, BCSD alleges the Defendants "committed fraud by inducing and aiding Dallemand's failure to disclose the bribery scheme to the School District before the

---

[10] The parties agree that the state law claims for fraud and unjust enrichment have a four-year statute of limitations. And here, too, BCSD seems to assume these claims accrued outside the limitations period.

School District entered into the MOU with [PICD] and paid [PICD] $1,000,000.00." Doc. 275 at 6. The now-dismissed Defendants contended that BCSD has not alleged actual, affirmative fraud but rather has alleged the Defendants committed fraud by remaining silent. Doc. 282 at 5. They argued this alleged fraud does not toll the statute because (1) they had no fiduciary relationship with BCSD—and thus no duty to disclose the alleged bribe, and (2) "silence is not considered fraudulent unless there is a duty to speak." *Id.* In effect, the Defendants argued that BCSD has alleged constructive fraud,[11] which "does not toll the statute." *Shipman*, 245 Ga. at 808, 267 S.E.2d at 245.

However, it is clear the gravamen of BCSD's underlying complaint as to the Defendants is actual fraud, and, therefore, the Defendants' silence "is treated as a continuation of the original actual fraud." Even assuming the gravamen is not actual fraud, the allegations in the complaint show that BCSD's fraud claim is not based solely on the Defendants' remaining silent. As BCSD pointed out at the status conference, it has alleged a conspiracy between Dallemand and the Defendants for Dallemand to not disclose the fact that he had been bribed. Doc. 291 at 39-40. Unbeknownst to BCSD, the alleged conspiracy plausibly began in 2011, when Dallemand initiated his reorganization plan for the purchasing procedures, and when Dallemand and Whitby met to discuss his support of the MPN and how Knowles would be the "middle man" to conceal the alleged bribe. BCSD has plausibly alleged the Defendants met multiple times to discuss the source and payment of the alleged bribes, and it can be reasonably inferred the Defendants and Dallemand agreed to keep the discussion about the alleged

---

[11] The Georgia Supreme Court in *Shipman* notes that "constructive fraud" is "any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." 245 Ga. at 808 n.3, 267 S.E.2d at 245 n.3 (quotation marks and citation omitted).

bribes a secret.  The alleged conspiracy then plausibly continued in 2017, when Whitby allegedly made payments to Belhannes to fund the bribe and met Dallemand in person to hand him $24,000.00 in cash.  All the while, the Defendants allegedly reaped and laundered the proceeds flowing from their bribes.

This alleged conspiracy to induce a fiduciary to breach his duty is more than merely remaining silent; it is actively concealing.  Thus, even assuming the Defendants did not have a fiduciary relationship with BCSD and did not breach any duty to disclose by remaining silent, their alleged act of conspiring with one another is "a separate independent actual fraud involving moral turpitude which debars and deters [BCSD] from bringing [its] action."  *Shipman*, 245 Ga. at 809, 267 S.E.2d at 245.  In other words, BCSD does not need to show a fiduciary relationship between BCSD and the Defendants to establish fraudulent concealment sufficient to toll the statute for fraud when there is, as in this case, a fact question as to whether each Defendant engaged in a joint venture to conceal a scheme to defraud an entity and become unjustly enriched. *Van v. Encore Medical GP, Inc.*, 2012 WL 32918, at *4 (M.D. Ga. Jan. 6, 2012) ("Under Georgia law, fraudulent concealment by one party to a joint venture or common enterprise can toll the statute of limitations of claims against other parties to the venture.") (citation omitted); *see also Drake v. Whaley*, 2009 WL 10664669, at *6 (N.D. Ga. Apr. 27, 2009) ("An alleged fraud by a third party is not imputable to a defendant for purposes of tolling the statute of limitations absent some evidence of a conspiracy to commit the alleged fraud.") (citation omitted).  And as noted, the Court cannot conclude as a matter of law that BCSD was not reasonably diligent.  Accordingly, the Court

cannot conclude as a matter of law that BCSD's fraud and unjust enrichment claims are time-barred.

As another basis for tolling the statute of limitations, at least with respect to its fraud claim, BCSD argues it is the alleged victim of the Defendants' alleged crimes under Georgia's crime victim statute.[12] The statute provides that:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years, except as otherwise provided in Code Section 9-3-33.1.

O.C.G.A. § 9-3-99. The Georgia Court of Appeals in *Harrison v. McAfee*, 338 Ga. App. 393, 788 S.E.2d 872 (2016) reexamined the language in the crime victim statute and construed it broadly, thereby expanding the statute's application. Specifically, the court construed the phrase "arising out of" to mean "grew out of" or "flowed from" and noted that almost any causal connection will suffice, including a "but for" analysis. *Id.* at 398, 788 S.E.2d at 876. Here, the alleged bribes to Dallemand and the laundering of the ill-gotten gains "flowed from" and were a critical part of the Defendants' alleged schemes to defraud BCSD. But for these alleged crimes, BCSD would not have a cause of action for fraud. Accordingly, because BCSD's fraud claim "arises out of the facts and circumstances" of the alleged crimes committed in this case, as early as August 17, 2011, the crime victim statute tolled the limitations period for six years—until August 17,

---

[12] Counsel for BCSD acknowledged at the status conference that the crime victim statute only applies to tort claims and thus does not toll the statute of limitations for BCSD's unjust enrichment claim. Doc. 291 at 37-38.

2017.[13]  BCSD raised its fraud claim against the Defendants on November 20, 2017, which is within the applicable four-year limitations period; therefore, the Court cannot conclude as a matter of law that the fraud claim is barred.

### 2. RICO pleading requirements

The Knowles Defendants contend that BCSD's federal civil RICO allegations are deficient.  Docs. 241-1 at 4-8.  According to the Knowles Defendants, the allegations fail to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b) because they do not describe "'what and when' each defendant participated and/or associated in the scheme."  *Id.* at 7.  Rule 9(b) provides that when alleging fraud or mistake, a plaintiff "must state with particularity the circumstances constituting fraud or mistake."  Therefore, when a plaintiff's civil RICO claim is "based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply . . . with [Rule] 9(b)'s heightened pleading standard."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citation omitted).

Because BCSD alleges the Knowles Defendants, along with Pinnacle and McFarlane, committed the RICO predicate acts of fraud related to the software transaction, those allegations must meet the heightened pleading standard under Rule 9(b).[14]  Doc. 162 ¶ 405C.  They do.  The Court concludes that just as BCSD met the

---

[13] BCSD alleges in its complaint that the Defendants committed the alleged crimes as early as August 17, 2011.  Doc. 162 ¶ 37.  Though the crime victim statute provides that the limitations period shall be tolled until the prosecution of the alleged crimes becomes final, which in this case is October 9, 2018, the statute also provides that the tolling period must not exceed six years.  Thus, the four-year limitations period for BCSD's fraud claim began to run on August 17, 2017.

[14] BCSD has also alleged against the Knowles Defendants predicate acts arising from both the software and MPN transactions that do not involve fraud.  While those allegations need not meet Rule 9(b)'s heightened pleading standard, the Court concludes, again based on the 549-paragraph second amended

heightened pleading standard in its initial complaint as to the Pinnacle Defendants regarding the software transaction, so too does it meet the standard as to the Knowles Defendants based on the sufficient and plausible allegations, in the 549-paragraph second amended complaint, that the Knowles Defendants had a relationship with Pinnacle and McFarlane and were involved in the software transaction to defraud BCSD. *See id.* ¶¶ 192-200, 225, 231-32.

The Knowles Defendants also argue that BCSD failed to allege sufficient facts to establish its federal civil RICO claim under 18 U.S.C. § 1962(c).[15] Doc. 241-1 at 5-6. Pursuant to 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." Thus, to establish a federal civil RICO violation under § 1962(c), BCSD "must satisfy four elements of proof:

---

complaint, that they have. *Compare Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citation omitted) (holding that because the plaintiffs' civil RICO claim is "based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply . . . with [Rule 9(b)'s] heightened pleading standard"), *with Liquidation Comm'n of Banco Intercont'l, S.A.*, 530 F.3d 1339, 1355-56 (11th Cir. 2008) ("We now hold that RICO predicate acts not sounding in fraud need not necessarily be pleaded with the particularity required by Fed. R. Civ. P. 9(b).").

[15] BCSD also brings its RICO claims under section 1962(d) of the federal RICO statute. Docs. 162 ¶ 409; 268 at 12. Pursuant to § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subjection (a), (b), or (c) of this section." Thus, to state a claim for civil RICO conspiracy, a plaintiff must "allege an illegal agreement to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (citations omitted). "An agreement to participate in a RICO conspiracy may be shown in one of two ways: (1) showing an agreement on the overall objective of the conspiracy, or (2) showing that the defendant agreed to commit personally two predicate acts, thereby agreeing to participate in a single objective." *United States v. Godwin*, 765 F.3d 1306, 1323 (11th Cir. 2014) (quotation marks and citation omitted).

The Knowles Defendants do not address BCSD's federal civil RICO claim under § 1962(d). Even if they had, any argument for dismissing it would have failed. The Court concludes, based on the allegations of the complaint and particularly at this stage of the litigation, that BCSD has alleged plausible facts showing the Defendants agreeing—whether it be individuals agreeing with other individuals or an agent agreeing with corporate entities—to participate in a RICO conspiracy to defraud BCSD.

(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."
*Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (quotation marks
and citations omitted), *abrogated on other grounds as recognized in Simpson v.
Sanderson Farms, Inc.*, 744 F.3d 702, 714-15 (11th Cir. 2014).

Though defining a "pattern of racketeering activity," the Knowles Defendants
primarily argue that the existence of an "enterprise" is not sufficiently alleged.[16]  Doc.
241-1 at 5-8.  A RICO "enterprise" is defined as including "any individual, partnership,
corporation, association, or other legal entity, and any union or group of individuals
associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The alleged
enterprise in this case is an association-in-fact enterprise; that is, it "does not itself
comprise a legal entity."  *Ray*, 836 F.3d at 1352.  For an association-in-fact enterprise to
exist, there must be "a group of persons associated together for a common purpose of
engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).
The group need not be formal, so long as there is "evidence of an ongoing organization"
and that "the various associates function as a continuing unit."  *Id.*  Members of the
group need not have fixed roles, and different members may perform different roles at
various times.  *Boyle v. United States*, 556 U.S. 938, 948 (2009).  The group also "need
not have a name, regular meetings, dues, established rules and regulations, disciplinary
procedures, or induction or initiation ceremonies."  *Id.*  The only "three structural
features" required are: "(1) a purpose, (2) relationships among those associated with the

---

[16] As discussed below, the Knowles Defendants argue in a footnote that BCSD has not sufficiently
alleged that Knowles and Randolph engaged in racketeering activity.  They do not, however, make that
argument as to Knowles.  Even if they had, the Court would not have been persuaded.  BCSD has
alleged multiple related predicate acts by Knowles, i.e., bribery and money laundering, that plausibly
extended over a substantial period of time.  These allegations are sufficient to establish a "pattern of
racketeering activity" under federal RICO.

enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Almanza v. United Airlines Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (quotation marks and citations omitted).

Here, BCSD alleges that the Defendants, collectively, "agreed to form and, in fact, formed an enterprise (the "Enterprise") that was engaged in, or the activities of which affected, interstate commerce" and that each Defendant "was associated with the Enterprise." Doc. 162 ¶ 400. BCSD also alleges the Defendants "conspired and agreed to and did conduct and participate in the conduct of the Enterprise's affairs through an ongoing pattern of racketeering activity and for the common, ongoing and unlawful purpose of intentionally defrauding BCSD and other schools and school districts of their money and property to the Defendants' benefit." *Id.* ¶ 401. Based on these paragraphs, in addition to paragraphs 403 and 404 of the complaint, the Knowles Defendants argue that BCSD failed to allege the specifics of the enterprise. Doc. 241-1 at 5-6. However, Eleventh Circuit precedent is clear that BCSD is not required to plead anything other than a "'loose or informal'" association of distinct entities, particularly at this stage of the litigation.[17] *See Williams*, 465 F.3d at 1284 ("This [c]ourt has never required anything other than a "loose or informal" association of distinct entities.").

---

[17] To establish an enterprise to sustain RICO liability, a plaintiff must also prove that each party to the enterprise is distinct from the enterprise. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). "The distinction between the RICO person and the RICO enterprise is necessary because the enterprise itself can be a passive instrument or victim of the racketeering activity." *United States v. Goldin Indus., Inc.,* 219 F.3d 1268, 1270 (11th Cir. 2000). Thus, RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993).

The Knowles Defendants do not contend they are not distinct entities from the alleged enterprise. In any event, it is clear from the complaint that BCSD does not allege the corporate Defendants themselves formed the enterprise but rather that each Defendant—individual and corporate—together formed an enterprise in which they were participants. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("When an individual defendant acts through a corporation, he may have formed an association-in-fact with an entity distinct from himself."). Accordingly, the Court concludes BCSD has sufficiently alleged that the Knowles Defendants are a distinct entity from the enterprise.

Moreover, considering not just a few paragraphs of the complaint but the complaint as a whole, which describes in great detail the relationships among the Defendants[18] and their alleged involvement in multiple predicate acts dating back to 2011, the Court can reasonably infer the existence of the alleged enterprise in which the Defendants each participated long enough to pursue a common purpose of defrauding BCSD. *See United States v. Church*, 955 F.2d 688, 698 (11th Cir. 1992) (holding that "proof of an association's devotion to making money from repeated criminal activity demonstrates an enterprise's common purpose of engaging in a course of conduct") (quotation marks and citations omitted); *see also Boyle*, 556 U.S. at 951 (noting that "proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise"). Accordingly, the Court concludes BCSD has sufficiently alleged its federal civil RICO claims.

### 3. Other arguments

The Knowles Defendants' remaining arguments merit little discussion. First, the Knowles Defendants argue that BCSD, as a local government entity, is not a "person" capable of suing or being sued under the federal RICO statute. Doc. 241-1 at 2-3. The Court disagrees. The federal RICO statute defines a "person" as including "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961. The Knowles Defendants do not contest that BCSD is an entity with an interest in property. There is no question that it is. Indeed, "Georgia has empowered its counties . . . to own interests in property." *Pine Ridge Recycling, Inc. v. Butts Cty., Ga.*,

---

[18] As the Eleventh Circuit recently made clear, BCSD does not need to show that the Defendants originally formed a relationship with the purpose to defraud, just that the Defendants later shared the wrongful purpose through an existing relationship, even without forming a business or a separate business entity. *Al-Rayes v. Willingham*, 914 F.3d 1302, 1310 (11th Cir. 2019).

855 F. Supp. 1264, 1273 (M.D. Ga. 1994) (citations omitted).  Accordingly, BCSD is a "'person[]' subject to the application of civil RICO."  *Id.* (citations omitted).

Notwithstanding, the Knowles Defendants argue that because local government entities are incapable of forming the necessary criminal intent to be liable under RICO, they should not be allowed to bring a civil RICO action.  Doc. 241-1 at 3.  In effect, their argument is that because an entity cannot be sued, it also cannot sue.  But that logic fails.  There is nothing in the RICO statutes, nor was it Congress's intent when enacting the RICO Act, to limit "persons" who can bring a civil RICO action to only those who are capable of forming the requisite criminal intent.  A person is a person no matter the intent.[19]  Accordingly, BCSD is a "person" that may bring a civil RICO action.[20]

The Knowles Defendants also contend, albeit in a footnote, that BCSD's "allegations against Knowles and Randolph are insufficient" because the allegations "rest on the fact that Harold Knowles is the managing shareholder of the firm to show that Knowles & Randolph—the law firm—engaged in racketeering activity."  Doc. 241-1 at 8 n.2.  To support their argument, the Knowles Defendants cite a district court opinion for the proposition that one's "status as a partner does not mean that she conducted the affairs of the Law Firm by . . . acting in a managerial capacity, through racketeering activity.  *Id.* (quoting *Reynolds v. Condon*, 908 F. Supp. 1494, 1530 (N.D. Iowa 1995)

---

[19] In any event, because BCSD is not being sued under RICO, it is immaterial whether BCSD can form the necessary criminal intent.

[20] Of all the cases the Knowles Defendants cite, none of which are binding, only one found that a government entity is not a "person" that has standing to bring a civil RICO action.  Doc. 241-1 at 3 (citing *State of Mich., Dept. of Treasury, Revenue Div. v. Fawaz*, 653 F. Supp. 141 (E.D. Mich. 1986)).  Based on "judicial policy considerations" that the federal courts would be "barraged with state agencies' vindictive civil RICO actions against tax cheaters," the court in *Fawaz* found that the Revenue Division of the State Treasury Department is not a person having standing to bring a civil RICO action against a state sales tax violator.  653 F. Supp. at 143.  No such "judicial policy considerations" exist here.

(quotation marks, citation, and alterations omitted)). But clearly, that quote was in the context of whether a plaintiff has sufficiently alleged conduct of a RICO enterprise when a RICO defendant's law firm is alleged to be the RICO enterprise and another RICO defendant is the partner of the firm. *Condon*, 908 F. Supp. at 1530. As discussed, BCSD does not allege that any one of the corporate defendants comprised the enterprise but rather that these defendants, along with the individual defendants, formed an enterprise in which they participated to pursue a common purpose of defrauding BCSD.

Notwithstanding the Knowles Defendants' misplaced reliance on *Condon*, their argument that BCSD has not sufficiently alleged facts to show Knowles & Randolph engaged in racketeering activity is unavailing. The complaint plausibly alleges that Knowles was acting within the scope of his employment as managing shareholder of Knowles & Randolph when he, using Knowles & Randolph's trust account, gave Dallemand a $100,000.00 check and when he gave a letter to Dallemand indicating that the $100,000.00 was the money Dallemand put in Knowles & Randolph's trust account to purchase a house. Doc. 162 ¶¶ 98-99. The complaint also alleges that after receiving $100,000.00 from Pinnacle, Knowles & Randolph gave that money to PVI as reimbursement for the bribe money to Dallemand. *Id.* ¶¶ 225-230. Based on these allegations, it is reasonable to infer the Knowles Defendants not only knew of the scheme to defraud BCSD, but also actively participated in it. Accordingly, the Court concludes BCSD has sufficiently alleged the Knowles Defendants engaged in racketeering activity.

## III. CONCLUSION

For the foregoing reasons, the Knowles Defendants' motion to dismiss (Docs. 232; 241) is **DENIED**.

**SO ORDERED**, this 8th day of April, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT